UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
SERGEY LEONTIEV,                                               :
                                                               :
                    Plaintiff,                                 :
                                                               :  Case No. 1:16-cv-03595 (JSR)
                    - v. -                                     :
                                                               :
ALEXANDER VARSHAVSKY,                                          :
                                                               :
                    Defendant.                                 :
                                                               :
-------------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S SECOND CAUSE OF ACTION**


DEBEVOISE & PLIMPTON LLP
Sean Hecker
William H. Taft V
Nicholas C. Tompkins
919 Third Avenue
New York, New York 10022
Tel:  (212) 909-6000
Fax: (212) 521-6836
shecker@debevoise.com
whtaft@debevoise.com
ntompkin@debevoise.com

*Counsel to Defendant Alexander Varshavsky*

Dated:  June 24, 2016

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

THE ALLEGATIONS OF THE COMPLAINT ........................................................................ 2

ARGUMENT .................................................................................................................................. 5

    I.    Plaintiff's Claim For Intentional Infliction Of Emotional Distress Should Be Dismissed For Failure To State A Cause Of Action. .......................................................... 5

        A.    The Conduct Alleged Is Not Extreme And Outrageous As Required To State A Claim For Intentional Infliction Of Emotional Distress. ................................................. 6

            1.    Allegations That Mr. Varshavsky Threatened To Institute Baseless Criminal Charges Against Mr. Leontiev In Russia. ................................................. 7

            2.    Allegations That Mr. Varshavsky Threatened To Link Mr. Leontiev To Terrorism Financing .................................................................................................. 10

            3.    Allegations That Mr. Varshavsky Solicited Mr. Leontiev's Participation In An Unlawful Bribery Scheme. ................................................................................ 11

        B.    Plaintiff Does Not Plausibly Allege That The Conduct Alleged In The Complaint Caused Sufficiently Severe Emotional Distress .......................................... 12

    II.    Plaintiff's Request For Punitive Damages Is Unsustainable As A Matter Of Law. ............ 13

CONCLUSION ............................................................................................................................ 13

## TABLE OF AUTHORITIES

**CASES**

*Ahmed v. Purcell*,
  No. 14 Civ. 7491, 2016 WL 1064610 (S.D.N.Y. Mar. 14, 2016) ........................................8, 11

*Ahrens v. Stalzer*,
  4 Misc.3d 1013(A), 2004 WL 1796489 (N.Y. Sup. Ct. Aug. 5, 2004) ....................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................................12, 13

*Chanko v. Am. Broad. Cos.*,
  27 N.Y.3d 46 (2016) ........................................................................................................5, 6, 7

*Cruz v. HSBC Bank, USA, N.A.*,
  5 F. Supp. 3d 253 (E.D.N.Y. 2014) .........................................................................................5

*Edwards v. Great N. Ins. Co.*,
  No. 03 CV 2947, 2006 WL 2053717 (E.D.N.Y. July 21, 2006) .............................................10

*Fiorito v. Ramos-Kelly*,
  No. 10 Civ. 4645, 2010 WL 4967976 (S.D.N.Y. Dec. 2, 2010) ...............................................5

*Higazy v. Millennium Hotel & Resorts*,
  346 F. Supp. 2d 430 (S.D.N.Y. 2004) ....................................................................................11

*Hong v. KBS Am., Inc.*,
  951 F. Supp. 2d 402 (E.D.N.Y. 2013) ...............................................................................8, 12

*Kaye v. Trump*,
  58 A.D.3d 579 (N.Y. App. Div. 2009) .....................................................................................9

*Kiser v. HSH Nordbank AG*,
  No. 09 Civ. 8849, 2010 WL 286647 (S.D.N.Y. Jan. 20, 2010) (Rakoff, J.) .......................5, 10

*Levin v. McPhee*,
  917 F. Supp. 230 (S.D.N.Y. 1996) .........................................................................................12

*Linde v. Arab Bank, PLC*,
  384 F. Supp. 2d 571 (E.D.N.Y. 2005) ....................................................................................11

*Marino v. Jonke*,
  Nos. 11-CV-430, 11-CV-4425, 2012 WL 1871623 (S.D.N.Y. Mar. 30, 2012) ........................9

*Marmelstein v. Kehillat New Hempstead: Rav Aron Jofen Cmty. Synagogue*,
  11 N.Y.3d 15 (2008) ................................................................................................................7

*Owen v. Leventritt*,
    174 A.D.2d 471 (N.Y. App. Div. 1991) ................................................................10, 11

*Press v. United Airlines, Inc.*,
    No. 3:11-CV-2265, 2012 WL 1569786 (M.D. Pa. May 3, 2012)............................11

*Rivers v. Towers, Perrin, Forster & Crosby, Inc.*,
    No. CV-07-5441, 2009 WL 817852 (E.D.N.Y. Mar. 27, 2009)................................9

*Saleh v. United States*,
    No. 12 Civ. 4598, 2013 WL 5439140 (S.D.N.Y. Sept. 27, 2013)................7, 10, 11

*Sesto v. Slaine*,
    No. 15-cv-1118, 2016 WL 1126537 (S.D.N.Y. Mar. 18, 2016)................................6

*Slatkin v. Lancer Litho Packaging Corp.*,
    33 A.D.3d 421 (N.Y. App. Div. 2006) .....................................................................9

*Solomon v. Siemens Indus., Inc.*,
    8 F. Supp. 3d 261 (E.D.N.Y. 2014) ..........................................................................8

*Stephens v. Shuttle Assocs., LLC*,
    547 F. Supp. 2d 269 (S.D.N.Y. 2008)..................................................................6, 12

*Stram v. Farrell*,
    223 A.D.2d 260 (N.Y. App. Div. 1996) .................................................................13

*Stuart v. Danka Corp.*,
    986 F. Supp. 741 (E.D.N.Y. 1997) .........................................................................12

*Vasarhelyi v. New School for Social Research*,
    230 A.D.2d 658 (N.Y. App. Div. 1996) ...................................................................9

*Villacorta v. Saks Inc.*,
    32 Misc.3d 1203(A), 2011 WL 2535058 (N.Y. Sup. Ct. May 6, 2011) ...................9

*Wiener v. Unumprovident Corp.*,
    202 F. Supp. 2d 116 (S.D.N.Y. 2002)..................................................................6, 12

Defendant Alexander Varshavsky respectfully brings this motion to dismiss Plaintiff Sergey Leontiev's second cause of action, alleging intentional infliction of emotional distress, for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

Mr. Leontiev has brought two claims against Mr. Varshavsky. The first seeks a sweeping declaratory judgment that Mr. Leontiev, a Russian citizen domiciled in Cyprus, is not personally liable for a debt, under any possible legal theory recognized by any applicable body of law, because his name allegedly does not appear on the lending agreements; the second asserts that Mr. Varshavsky's alleged attempts to obtain repayment of the debt from Mr. Leontiev caused him to suffer severe emotional distress, and seeks up to $25 million in damages.

Mr. Varshavsky is not moving to dismiss Mr. Leontiev's declaratory judgment claim; instead, he intends to litigate that claim to judgment against Mr. Leontiev. Mr. Varshavsky intends to establish that millions of dollars were loaned to foreign shell companies controlled directly or indirectly by Mr. Leontiev; that these funds were then transferred into and among a web of other foreign shell companies also controlled directly or indirectly by Mr. Leontiev; and that these funds ultimately were diverted to or used for Mr. Leontiev's personal benefit, leaving the borrowing companies insolvent and unable to repay the loaned amounts.

This motion seeks to dismiss Mr. Leontiev's second claim because Mr. Leontiev's allegations fall well short of New York's stringent standard for intentional infliction of emotional distress claims, which requires that the conduct complained of be so "extreme and outrageous" as to "go beyond all possible bounds of decency" and be "utterly intolerable in a civilized community." While Mr. Leontiev makes the conclusory assertion that he was subjected to "a campaign of threats, demands, and harassment," Compl. ¶ 3, the well-pled allegations of his

Complaint make clear that his claim is founded entirely on a handful of statements alleged to have been made by Mr. Varshavsky in the course of business discussions between the parties regarding the debt – including at a meeting attended by the parties' respective counsel.  Mr. Leontiev's allegations regarding Mr. Varshavsky's conduct in the course of these discussions, even if accepted to be true, do not establish the type of "extreme and outrageous" conduct required to state a cause of action for intentional infliction of emotional distress.  Mr. Leontiev's insufficient claim should be dismissed as a matter of law.

## THE ALLEGATIONS OF THE COMPLAINT

Mr. Leontiev alleges that he has experienced severe emotional distress caused by Mr. Varshavsky's alleged efforts to obtain repayment of a debt.  Compl. ¶¶ 50-52.  Mr. Leontiev argues that he is not personally liable for the debt because his name does not appear on the face of the lending agreements, which he alleges are between various "corporate entities."  Compl. ¶¶ 5, 33, 43.  Mr. Leontiev does not, however, allege that he had nothing to do with the loans. Despite seeking affirmative relief that he is not personally liable for the debt under any legal theory, Mr. Leontiev makes no allegations with respect to his control over the borrowers, whether the loaned funds were transferred from those borrowers to other companies he controls, or whether the loaned funds were ultimately diverted to or used by him in his personal capacity. He merely states that Mr. Varshavsky had not provided him with proof of the same before he filed the Complaint. *See* Compl. ¶ 34.  Mr. Leontiev also does not allege that Mr. Varshavsky's belief that Mr. Leontiev is personally liable for the debt is not held in good faith.

In support of his claim that Mr. Varshavsky's alleged efforts to obtain repayment of the debt caused him emotional distress, Mr. Leontiev relies on a total of five alleged statements.  Of these, Mr. Leontiev has identified only three purportedly wrongful statements allegedly made by

Mr. Varshavsky directly to him, all to the effect that if he did not pay the debt, Mr. Varshavsky would seek to institute criminal charges against him in Russia.  Mr. Leontiev first alleges that when the parties met to discuss the debt in Moscow in August 2015, Mr. Varshavsky "hinted" that he "would have trouble with Russian prosecutors if he failed to pay Mr. Varshavsky," but that if he were to make a payment "all of [his] problems would be resolved."  Compl. ¶¶ 28-29.  Mr. Leontiev next alleges that he and Mr. Varshavsky met again in London "shortly thereafter," and that when he denied responsibility for the debt, "Mr. Varshavsky threatened to institute criminal charges against him."  Compl. ¶ 30.  Finally, Mr. Leontiev alleges that the parties met to discuss the debt for a third time on January 15, 2016, in New York – with their respective counsel present – and that during that meeting, Mr. Varshavsky "suggested" that a criminal investigation would be opened "if he informed certain parties in Russia."  Compl. ¶ 31.

The Complaint also alleges that at the meeting in New York, Mr. Varshavsky "demanded immediate payment, claiming that he 'need[s] security because what if God forbid you die tomorrow.'"  *Id*.  However, Mr. Leontiev does not allege that this statement about the need for security in the context of a dispute over the payment of a debt was intended to be a threat of physical harm, nor could it plausibly be viewed as such.  In any event, Mr. Leontiev does not allege that this statement caused him emotional distress or rely on it as a basis for his claim. *See* Compl. ¶¶ 47-48.

Mr. Leontiev also relies on two other statements allegedly made by Mr. Varshavsky to Alexander Zheleznyak, Mr. Leontiev's friend and business partner, rather than to Mr. Leontiev personally.  First, he alleges that in February 2016, Mr. Varshavsky told Mr. Zheleznyak that if Mr. Leontiev did not pay the debt, Mr. Varshavsky "would arrange to have Mr. Leontiev's name linked to terrorism financing."  Compl. ¶ 36.  Second, he alleges that in March 2016, Mr.

3

Varshavsky told Mr. Zheleznyak that if Mr. Leontiev made a payment to him, "Mr. Varshavsky would arrange it so that authorities in Russia would cease their investigation of certain individuals associated with Probusinessbank." Compl. ¶ 37.  Mr. Leontiev does not allege that Mr. Varshavsky made any statements along these lines to Mr. Leontiev personally, nor does he allege that Mr. Varshavsky asked or intended for Mr. Zheleznyak to convey these alleged statements to Mr. Leontiev.  While the Complaint also contains scattered, conclusory references to Mr. Varshavsky allegedly threatening Mr. Zheleznyak himself with criminal prosecution in Russia, Compl. ¶¶ 10, 39, 48, its well-pled factual allegations do not actually identify any instances in which such threats allegedly were made against Mr. Zheleznyak.

Mr. Leontiev's claim for intentional infliction of emotional distress is predicated entirely on the five statements identified above.  *See* Compl. ¶ 47 ("Mr. Varshavsky has intentionally inflicted emotional distress upon Mr. Leontiev by threatening to institute baseless criminal charges against him, threatening to link him to terrorism financing, and soliciting his participation in an unlawful bribery scheme, all in order to receive payment on the Alleged Loans for which Mr. Leontiev has no personal liability.").  Mr. Leontiev alleges that as a result of these five statements, he has experienced "anxiety, stress, loss of sleep," and the "exacerbation" of other, unspecified "physical harms." Compl. ¶ 51.  He also claims that Mr. Varshavsky's alleged conduct has caused him "to fear for his safety and for the safety of his family and friends," *id.*, but does not identify how allegedly "threatening to institute baseless criminal charges against him" in Russia, "threatening to link him to terrorism financing," or "soliciting his participation in an unlawful bribery scheme" could reasonably have caused him to fear for his physical safety, let alone the physical safety of others.

4

# ARGUMENT

I. **Plaintiff's Claim For Intentional Infliction Of Emotional Distress Should Be Dismissed For Failure To State A Cause Of Action.**

A cause of action for intentional infliction of emotional distress (IIED) has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 56 (2016). These requirements are "rigorous, and difficult to satisfy." *Id.* at 57; *accord Kiser v. HSH Nordbank AG*, No. 09 Civ. 8849, 2010 WL 286647, at *1 (S.D.N.Y. Jan. 20, 2010) (Rakoff, J.); *see Fiorito v. Ramos-Kelly*, No. 10 Civ. 4645, 2010 WL 4967976, at *3 (S.D.N.Y. Dec. 2, 2010) ("[T]he threshold for intentional infliction of emotional distress claims is very high."). The New York Court of Appeals recently emphasized earlier this year that "of the intentional infliction of emotional distress claims considered by this Court, ***every one*** has failed because the alleged conduct was not sufficiently outrageous." *Chanko*, 27 N.Y.3d at 57 (emphasis in original).

It is not enough for the conduct complained of to be offensive or even illegal; it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 56; *see Cruz v. HSBC Bank, USA, N.A.*, 5 F. Supp. 3d 253, 261 (E.D.N.Y. 2014) ("[T]his tort is disfavored in New York, and only the most egregious conduct establishes such a claim."), *aff'd* 586 F. App'x 723 (2d Cir. 2014). Even conduct that "would likely be considered reprehensible by most people" has been found to be "not so extreme and outrageous as to satisfy [this] exceedingly high legal standard." *Chanko*, 27 N.Y.3d at 57. "Further, the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it." *Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 122 (S.D.N.Y. 2002) (quoting

Restatement (Second) of Torts § 46 cmt. J (1997)); *see Stephens v. Shuttle Assocs., LLC*, 547 F. Supp. 2d 269, 274 (S.D.N.Y. 2008) (alleged conduct was not "so severe that no reasonable man could be expected to endure it").

Measured against conduct alleged in other cases that was much more egregious but still found to be insufficient to state a claim, the conduct alleged by Mr. Leontiev does not even approach the level of "extreme and outrageous" conduct as a matter of law.  Nor has Mr. Leontiev plausibly alleged that the conduct at issue here could possibly have caused him to suffer "severe" emotional distress to the extent required to state a claim.

### A. The Conduct Alleged Is Not Extreme And Outrageous As Required To State A Claim For Intentional Infliction Of Emotional Distress.

The only conduct that Mr. Leontiev has alleged inflicted emotional distress on him was Mr. Varshavsky's allegedly: (i) "threatening to institute baseless criminal charges" in Russia against Mr. Leontiev and his friend and business partner Mr. Zheleznyak[1]; (ii) "threatening to link [Mr. Leontiev] to terrorism financing"; and (iii) "soliciting [Mr. Leontiev's] participation in an unlawful bribery scheme."  Compl. ¶¶ 47-48.  Because these allegations do not describe conduct that "go[es] beyond all possible bounds of decency" or is "utterly intolerable in a civilized community," Mr. Leontiev's claim should be dismissed as a matter of law.  *See Chanko*, 27 N.Y.3d at 57 (allegations were "not sufficient to support this cause of action because they do not rise to the level necessary to satisfy the outrageousness element"); *see generally Sesto v. Slaine*, No. 15-cv-1118, 2016 WL 1126537, at *4 (S.D.N.Y. Mar. 18, 2016) ("When pleading intentional infliction of emotional distress, the bar is extremely high, and this highly

---

[1] As noted above, although the Complaint contains conclusory references to Mr. Varshavsky allegedly having threatened Mr. Zheleznyak, the well-pled factual allegations of the complaint do not actually allege any such threats.

6

disfavored cause of action is almost never successful.  Indeed, such claims are routinely dismissed on pre-answer motion.").

Allegations much more egregious than those set forth in Mr. Leontiev's Complaint are routinely held insufficient to support a claim of intentional infliction of emotional distress.  *See, e.g.*, *Chanko*, 27 N.Y.3d at 57-58 (the broadcasting of a recording of a patient's last moments of life without his consent was "reprehensible" but still not sufficiently extreme and outrageous to state a claim); *Marmelstein v. Kehillat New Hempstead: Rav Aron Jofen Cmty. Synagogue*, 11 N.Y.3d 15, 22-23 (2008) (allegations that spiritual adviser abused position of trust and confidence to take advantage of plaintiff, entered into a sexual relationship with her, and threatened to "have her placed into a straight jacket," "have her banned" from her religious community, and "turn the community against her" if she revealed the existence of the relationship were not sufficiently extreme and outrageous to state a claim); *Saleh v. United States*, No. 12 Civ. 4598, 2013 WL 5439140, at *11 (S.D.N.Y. Sept. 27, 2013) (allegations that government agents attempted to coerce plaintiff into cooperating with an anti-terrorism action against a relative, conspired to deny him permanent residency status when he refused, and even threatened to kill him were "not sufficiently 'extreme and outrageous' to state a claim under the rigorous New York IIED standard").  When compared against these cases, it is plain that Mr. Leontiev's allegations concerning Mr. Varshavsky's conduct in this action cannot satisfy New York's rigorous standard.

### 1. Allegations That Mr. Varshavsky Threatened To Institute Baseless Criminal Charges Against Mr. Leontiev In Russia.

Mr. Leontiev's allegations that in the course of business discussions over a debt Mr. Varshavsky stated that he would pursue criminal charges if the debt was not repaid do not describe conduct that can give rise to a cause of action under New York's stringent standard.  *See*

7

*Solomon v. Siemens Indus., Inc.*, 8 F. Supp. 3d 261, 284-85 (E.D.N.Y. 2014) ("The evidence demonstrates that plaintiffs' claims involve, in essence, a commercial dispute among companies engaged in business together…. This is simply not the stuff of 'extreme and outrageous conduct that transcends all bounds of decency, and that is regarded by civilized society as atrocious and utterly intolerable.'"); *cf. Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 425 (E.D.N.Y. 2013) (describing IIED claim challenging conduct arising in a "commercial setting" as "[s]eeming far out of place"). Mr. Leontiev's willingness to engage in extended negotiations regarding the debt, both through in-person meetings with Mr. Varshavsky and through correspondence exchanged by counsel, belies his current claim that Mr. Varshavsky's conduct in those negotiations was so outrageous or extreme as to cause him severe emotional distress.

As an initial matter, the Court is not required to accept Leontiev's conclusory assertion that seeking to initiate criminal charges against him would be "baseless." *See Ahmed v. Purcell*, No. 14 Civ. 7491, 2016 WL 1064610, at *6 (S.D.N.Y. Mar. 14, 2016) ("[W]hile the Court must accept the well-pleaded allegations in the Complaint, it need not accept Plaintiff's characterization of any lawsuit contemplated by Defendant as 'frivolous.'"). Mr. Leontiev has not alleged any well-pled, non-conclusory facts establishing that seeking to institute criminal charges against him would be unwarranted or wrongful; indeed, the allegations of the Complaint, which admit that numerous other Probusinessbank executives were charged with embezzlement in connection with the bank's collapse, Compl. ¶ 24, strongly suggest otherwise.

But even if the Court were to accept Mr. Leontiev's assertion, his allegations that Mr. Varshavsky stated that he would seek to institute even "baseless" criminal proceedings unless Mr. Leontiev repaid the debt still do not describe "extreme and outrageous" conduct. *See, e.g., Slatkin v. Lancer Litho Packaging Corp.*, 33 A.D.3d 421, 422 (N.Y. App. Div. 2006) ("[T]he

8

conduct alleged – faxes and phone calls, including to the individual plaintiff's parents, threatening his arrest and criminal prosecution; instigation of the individual plaintiff's arrest by means of false statements to the police concerning plaintiffs' indebtedness to defendants – is not so outrageous as to be utterly intolerable."); *Kaye v. Trump*, 58 A.D.3d 579, 579 (N.Y. App. Div. 2009) (allegations that defendant "commenced two baseless lawsuits and filed a criminal complaint against [plaintiff], and frightened her and her daughter by attempting to instigate her arrest" did not state cause of action); *Marino v. Jonke*, Nos. 11-CV-430, 11-CV-4425, 2012 WL 1871623, at *11 (S.D.N.Y. Mar. 30, 2012) ("[F]alsely pursuing the arrest and criminal prosecution of an individual … has been held not to constitute intentional infliction of emotional distress."); *Rivers v. Towers, Perrin, Forster & Crosby, Inc.*, No. CV-07-5441, 2009 WL 817852, at *8 (E.D.N.Y. Mar. 27, 2009) (allegation that defendant "intentionally, falsely and maliciously asserted to the police that plaintiff had committed various crimes" did not state cause of action for IIED); *Villacorta v. Saks Inc.*, 32 Misc.3d 1203(A), 2011 WL 2535058, at *7 (N.Y. Sup. Ct. May 6, 2011) (allegations of "instigation of a criminal investigation and providing false information to the police" fell "far short of the strict standard necessary for a claim for intentional emotional distress").

The facts alleged in the Complaint are easily distinguished from the small number of cases predicated on threats of wrongful prosecution that have survived the pleading stage. *See, e.g.*, *Vasarhelyi v. New School for Social Research*, 230 A.D.2d 658, 659-60 (N.Y. App. Div. 1996) (plaintiff threatened with unjustified criminal charges by her employer during "hostile, abusive and threatening," multi-day "intense interrogation" in which investigators humiliated her and "impugn[ed] both her honesty and her chastity"). Mr. Leontiev's allegations that Mr. Varshavsky stated, in the course of business meetings to discuss the debt (one of which even was

attended by the parties' counsel), that he would seek to initiate criminal charges if the debt was not repaid, are far removed from the abusive, coercive conduct alleged in *Vasarhelyi* and similar cases. *See, e.g.*, *Edwards v. Great N. Ins. Co.*, No. 03 CV 2947, 2006 WL 2053717, at *6 (E.D.N.Y. July 21, 2006) (dismissing claim predicated on allegedly wrongful threat of prosecution after distinguishing *Vasarhelyi* and other cases where the threat of prosecution "was accompanied by abusive interrogation" and other coercive elements); *see also Kiser*, 2010 WL 286647, at *2 (rejecting plaintiff's invocation of *Vasarhelyi* and dismissing claim because "none of the alleged actions was remotely outrageous enough to state a cause of action for intentional infliction, even at the pleadings stage").

### 2. Allegations That Mr. Varshavsky Threatened To Link Mr. Leontiev To Terrorism Financing.

Mr. Leontiev's allegation that Mr. Varshavsky told Mr. Zheleznyak that unless the debt was paid he would seek to link Mr. Leontiev to terrorism financing also fails to state a claim. Indeed, because the statement at issue is alleged to have been made only to Mr. Zheleznyak, not to Mr. Leontiev – and there is no allegation that Mr. Varshavsky asked or intended for Mr. Zheleznyak to convey that statement to Mr. Leontiev – the alleged statement cannot serve as the basis for a claim of intentional infliction of emotional distress. *See, e.g.*, *Saleh,* 2013 WL 5439140, at *11 (dismissing claim where "the most outrageous conduct alleged – the threats to Saleh's life – were made to Shalaby, rather than to Saleh"); *Owen v. Leventritt*, 174 A.D.2d 471, 471-72 (N.Y. App. Div. 1991) (threats to kill plaintiff, who was pregnant, made when plaintiff was not present but which were later reported to her were "insufficient to support a cause of action for intentional infliction of emotional distress").

Regardless, even an alleged threat to link Mr. Leontiev to terrorism financing would not rise to the level of "extreme and outrageous" conduct under New York's stringent standard.  *See*

10

*Higazy v. Millennium Hotel & Resorts,* 346 F. Supp. 2d 430, 460 (S.D.N.Y. 2004) (allegation that hotel's head of security agreed not to contradict statements made to the FBI that he knew or suspected to be false, leading to plaintiff's detention in terrorism investigation, "[fell] far short of that which qualifies as extreme and outrageous"), *aff'd in part, rev'd in part on other grounds by Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007); *Press v. United Airlines, Inc.*, No. 3:11-CV-2265, 2012 WL 1569786, at *10 (M.D. Pa. May 3, 2012) (allegations that defendant conspired to maliciously declare plaintiff a security threat and have him detained did not state a claim under New York law); *see also Ahmed*, 2016 WL 1064610, at *5 (allegations that defendant threatened to "destroy Plaintiff's reputation" not extreme and outrageous); *cf. Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 590-91 (E.D.N.Y. 2005) (allegations that bank provided financial services and support to agents of terrorist organization were "too removed" to state cause of action).

### 3. Allegations That Mr. Varshavsky Solicited Mr. Leontiev's Participation In An Unlawful Bribery Scheme.

Similarly, Mr. Leontiev's allegation that Mr. Varshavsky "solicit[ed] his participation in an unlawful bribery scheme" by allegedly telling Mr. Zheleznyak – not Mr. Leontiev – that if Mr. Leontiev made a payment to him, he would arrange for Russian authorities to stop investigating certain individuals associated with Probusinessbank, cannot serve as the basis for a claim. *See Saleh*, 2013 WL 5439140, at *11 (dismissing IIED claim alleging indirect death threat made to fellow mosque member); *Owen*, 174 A.D.2d at 471-72 (dismissing IIED claim alleging indirect death threat made at public meeting where plaintiff was not present). But even if the Court were to consider this allegation, soliciting another's participation in an unlawful bribery scheme does not rise to the level of "extreme and outrageous" conduct as a matter of law. *See Stuart v. Danka Corp.*, 986 F. Supp. 741, 746 (E.D.N.Y. 1997) ("Plaintiff's constructive termination as a result of refusing to participate in an alleged bribery scheme does not, as a

11

matter of law, rise to the level of 'outrageous conduct.'"). "A wide range of conduct – though offensive or even otherwise illegal – is not considered 'utterly intolerable in a civilized society' to support a cause of action for intentional infliction of emotional distress." *Hong*, 951 F. Supp. 2d at 426 (threats that plaintiff would "be put out of business" if he refused to participate in illegal price-fixing scheme "[did] not rise to the level of patent outrageousness"); *see Levin v. McPhee*, 917 F. Supp. 230, 243 (S.D.N.Y. 1996) ("[T]hat conduct may be unlawful … has not in itself been held to render such conduct so outrageous and intolerable as to support an action for intentional infliction of emotional distress.").

### B. Plaintiff Does Not Plausibly Allege That The Conduct Alleged In The Complaint Caused Sufficiently Severe Emotional Distress.

Even apart from the legal insufficiency of his allegations concerning Mr. Varshavsky's alleged conduct, Mr. Leontiev's conclusory allegations that he has experienced unspecified levels of "anxiety," "stress," "loss of sleep," and the "exacerbation" of unidentified "other physical harms" also are woefully insufficient to state a claim as a matter of law. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[E]ntitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

Mr. Leontiev's conclusory and formulaic allegations do not plausibly establish that the emotional distress he purportedly suffered as the result of Mr. Varshavsky's alleged conduct was sufficiently severe to state a cause of action – "so severe that no reasonable man can be expected to endure it." *Wiener*, 202 F. Supp. 2d at 122 (S.D.N.Y. 2002); *see Stephens*, 547 F. Supp. 2d at 274 ("Stephens's conclusory allegation that Gregory intentionally inflicted emotional distress is insufficient as a matter of law.") (citing *Twombly*, 550 U.S. at 553-55). And in any event, even a well-pled factual allegation that the conduct alleged in the Complaint caused Mr. Leontiev – an experienced businessman who ran one of Russia's largest banks for more than 20 years, Compl.

¶ 19 – to suffer mental anguish so severe that no reasonable person could withstand it would not be plausible on its face. *See Twombly*, 550 U.S. at 570 (to survive a motion to dismiss, a complaint must "state a claim that is plausible on its face").

## II.  Plaintiff's Request For Punitive Damages Is Unsustainable As A Matter Of Law.

Plaintiff's request for up to $25 million in punitive damages also is unsustainable as a matter of law.  Punitive damages are available for an intentional infliction of emotional distress claim only where the conduct complained of is truly reprehensible, evil, or morally culpable. *See Ahrens v. Stalzer*, 4 Misc.3d 1013(A), 2004 WL 1796489, at *5 (N.Y. Sup. Ct. Aug. 5, 2004) ("[P]unitive damages are recoverable in an action seeking damages for the intentional infliction of emotional distress if the tortious act is morally culpable, or is actuated by evil and reprehensible motives"); *Stram v. Farrell*, 223 A.D.2d 260, 265 (N.Y. App. Div. 1996) (punitive damages unavailable on intentional infliction of emotional distress claim where defendants' conduct was not "so unacceptable as to evince a high degree of moral turpitude and a criminal indifference to civil obligations").  Mr. Leontiev's allegations concerning Mr. Varshavsky's alleged attempts to obtain repayment of the debt do not meet this high standard.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiff's second cause of action alleging intentional infliction of emotional distress be dismissed.

Dated: New York, New York
       June 24, 2016

                                    DEBEVOISE & PLIMPTON LLP

                                    /s/ Sean Hecker
                                    Sean Hecker
                                    William H. Taft V
                                    Nicholas C. Tompkins
                                    919 Third Avenue
                                    New York, New York 10022
                                    Tel: (212) 909-6000
                                    Fax: (212) 521-6386
                                    shecker@debevoise.com
                                    whtaft@debevoise.com
                                    ntompkin@debevoise.com

                                    *Counsel to Defendant Alexander Varshavsky*