UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                 :

SERGEY LEONTIEV,                  :

                  Plaintiff,           :

      -against-             :   No. 16-cv-03595 (JSR)
                                     :

ALEXANDER VARSHAVSKY,    :   **<u>ORAL ARGUMENT REQUESTED</u>**

                Defendant.      :

                                     :

                                     :
------------------------------------------------------------------x

## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S <u>MOTION TO DISMISS PLAINTIFF'S SECOND CAUSE OF ACTION</u>**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Sergey Leontiev*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

STANDARD OF REVIEW ....................................................................................... 6

ARGUMENT ....................................................................................................... 6

    I.    The Complaint States a Claim for Intentional Infliction of Emotional Distress............ 6

        A.    Mr. Leontiev Has Adequately Pleaded That The Totality of Mr.
               Varshavsky's Conduct Was Extreme and Outrageous. ........................................ 8

        B.    Mr. Leontiev Has Adequately Pleaded Emotional Distress................................ 16

    II.    Mr. Leontiev's Allegations Entitle Him to Seek Punitive Damages ........................... 17

CONCLUSION.................................................................................................... 18

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**Cases**

*164 Mulberry St. Corp. v. Columbia Univ.*,
    4 A.D.3d 49, 771 N.Y.S.2d 16 (1st Dep't 2006) ..................................................15

*Ahrens v. Stalzer*,
    4 Misc. 3d 1013(A), 791 N.Y.S.2d 867 (Sup. Ct. N.Y. Cnty. 2004).....................17

*Allam v. Meyers*,
    No. 09-cv-10580 (KMW), 2011 WL 721648 (S.D.N.Y. Feb. 24, 2011)................8

*Bonner v. Guccione*,
    916 F. Supp. 271 (S.D.N.Y. 1996) ........................................................................9

*Chanko v. American Broadcasting Cos.*,
    27 N.Y.3d 46, 49 N.E.3d 1171 (2016)...............................................................7, 8

*Collins v. Willcox Inc.*,
    158 Misc. 2d 54, 600 N.Y.S.2d 884 (Sup. Ct. N.Y. Cnty. 1992) ....................9, 17

*Edwards v. Great Northern Ins. Co.*,
    No. 03-cv-2947 (NG), 2006 WL 2053717 (E.D.N.Y. 2006)...............................13

*Ericson v. Syracuse Univ.*,
    35 F. Supp. 2d 326 (S.D.N.Y. 1999)................................................................7, 11

*ESPN, Inc. v. Quiksilver, Inc.*,
    586 F. Supp. 2d 219 (S.D.N.Y. 2008)...................................................................6

*Eves v. Ray*,
    42 A.D.3d 481, 840 N.Y.S.2d 105 (1st Dep't 2007) .............................................8

*Feinberg v. Poznek*,
    12 Misc. 3d 1185(A), 824 N.Y.S.2d 762 (Sup. Ct. N.Y. Cnty. 2006)...............3, 17

*Green v. Fischbein Olivieri Rozenholc & Badillo*,
    119 A.D.2d 345, 507 N.Y.S.2d 148 (1st Dep't 1986) ...........................................8

*Herman v. Spitz*,
    5 Misc. 3d 1026 (A), 799 N.Y.S.2d 160 (N.Y.C. Civ. Ct. 2004) .....................3, 16

*Higazy v. Millenium Hotel & Resorts*,
    346 F. Supp. 2d 430 (S.D.N.Y. 2004),
    *aff'd in part, rev'd in part sub nom.*
    *Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007)...........................................15

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Howell v. New York Post Co.*,
    81 N.Y.2d 115, 612 N.E.2d 699 (1993)..................................................................7

*Kaye v. Trump*,
    Index No. 116572/07, 2008 WL 2078675 (Sup. Ct. N.Y. Cnty. May 7, 2008),
    *aff'd* 58 A.D.3d 579, 873 N.Y.S.2d 5 (1st Dep't 2009).........................................10

*Kiser v. HSH Nordbank AG*,
    No. 09-cv-8849 (JSR), 2010 WL 286647 (S.D.N.Y. Jan. 20, 2010)......................13

*Koster v. Chase Manhattan Bank, N.A.*,
    609 F. Supp. 1191 (S.D.N.Y. 1985)...................................................................2, 15

*Laurie Marie M. v. Jeffrey T.M.*,
    159 A.D.2d 52, 599 N.Y.S.2d 336 (2d Dep't 1990) ...............................................3

*Leonard v. Reinhardt*,
    20 A.D.3d 510, 799 N.Y.S.2d 118 (2d Dep't 2005) .............................................10

*Marino v. Jonke*,
    No. 11-cv-430 (VB), 2012 WL 1871623 (S.D.N.Y. Mar. 30, 2012)....................10

*Nader v. General Motors Corp.*,
    25 N.Y.2d 560, 255 N.E.2d 765 (1970)..............................................................8, 15

*Neufeld v. Neufeld*,
    910 F. Supp. 977 (S.D.N.Y. 1996) ...............................................................2, 9, 15

*Owen v. Leventritt*,
    174 A.D.2d 471, 571 N.Y.S.2d 25 (1st Dep't 1991) .............................................14

*Peoples v. Fischer*,
    898 F. Supp. 2d 618 (S.D.N.Y. 2012)..................................................................14

*Press v. United Airlines*,
    No. 11-cv-2265 (ARC), 2012 WL 1569786 (M.D. Pa. May 3, 2012)...................15

*Rivers v. Towers, Perrin, Forster & Crosby, Inc.*,
    No. 07-cv-5441 (DGT), 2009 WL 817852 (E.D.N.Y. Mar. 27, 2009)..................10

*Saleh v. United States*,
    No. 12-cv-4598 (KBF), 2013 WL 5439140 (S.D.N.Y. Sept. 27, 2013)................14

*Slatkin v. Lancer Litho Packaging Corp.*,
    33 A.D.3d 421, 822 N.Y.S.2d 507 (1st Dep't 2006) .............................................10

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Solomon v. Siemens Indus., Inc.*,
    8 F. Supp. 3d 261 (E.D.N.Y. 2014) ........................................................................13

*Stephens v. Shuttle Assocs. LLC*,
    547 F. Supp. 2d 269 (S.D.N.Y. 2008).....................................................................17

*Stuart v. Danka*,
    986 F. Supp. 741 (E.D.N.Y. 1997) ..........................................................................16

*Tuxxedo Network, Inc. v. Hughes Commc'ns Carrier Servs., Inc.*,
    753 F. Supp. 514 (S.D.N.Y. 1990) ...........................................................................6

*Varsity Brands, Inc. v. J & M Spirit Wear, Inc.*,
    No. 09-cv-1795 (PKC), 2009 WL 3401182 (S.D.N.Y. Oct. 19, 2009) .....................6

*Vasarhelyi v. New School for Social Research*,
    230 A.D.2d 658, 646 N.Y.S.2d 795 (1st Dep't 1996) ............................................12

*Villacorta v. Saks Inc.*,
    32 Misc. 3d 1203(A), 932 N.Y.S.2d 764 (Sup. Ct. N.Y. Cnty. 2011).....................10

*Wiener v. Unumprovident Corp.*,
    202 F. Supp. 2d 116 (S.D.N.Y. 2002) .....................................................................17

**Statutes**

Sergey Magnitsky Rule of Law and Accountability Act of 2012, Pub. L. No. 112-
    208, 126 Stat. 1496 (2012)................................................................................11, 12

**Other Authorities**

Moscow Times, *Russia Leads Europe in Prison Inmate Deaths – COE Report*
    (Mar. 08, 2016) ......................................................................................................12

Radio Free Europe, *Former Butyrka Inmate Says 'They Throw You There to
    Break You* (Dec. 22, 2009), *available at*
    http://www.rferl.org/content/Former_Butyrka_Inmate_Says_They_Throw_Yo
    u_There_To_Break_You_/1910566.html ..............................................................12

Zoya Svetova, *Prison as a death sentence*, Open Democracy (May 14, 2010),
    *available at* https://www.opendemocracy.net/zoya-svetova/prison-as-death-
    sentence....................................................................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................6

Plaintiff Sergey Leontiev ("Plaintiff" or "Mr. Leontiev") respectfully submits this memorandum of law in opposition to the motion of Defendant Alexander Varshavsky ("Defendant" or "Mr. Varshavsky") to dismiss the Complaint's second cause of action.[1]

## PRELIMINARY STATEMENT

Plaintiff's Complaint describes a calculated and unified scheme plotted and carried out by the Defendant, Alexander Varshavsky, to take advantage of the most vulnerable time in Plaintiff Sergey Leontiev's life to the tune of tens of millions of dollars.  As alleged in the Complaint, in August 2015, the life and business that Mr. Leontiev had worked so hard to create came crashing down.  In that month, the Russian government seized Probusinessbank, a bank that Mr. Leontiev founded over twenty years ago.  In addition to brazenly stealing Mr. Leontiev's life's work, the Russian government ran Mr. Leontiev out of his home country in fear for his personal safety and well-being.  In the midst of this turmoil, Mr. Varshavsky swooped in to capitalize on Mr. Leontiev's troubles by extorting him for tens of millions of dollars in a classic protection racket.

The Complaint details the numerous occasions, over a period of eight months, on which Mr. Varshavsky, a well-known and well-connected Russian businessman, demanded that Mr. Leontiev pay him $83 million—or else.  The nature of the threats varied.  Sometimes, Mr. Varshavsky threatened that he would institute criminal charges against Mr. Leontiev in Russia (a nation where Mr. Leontiev would be deprived of any semblance of due process) and that he would place Mr. Leontiev on a terrorist financing watch list.  Mr. Varshavsky's known connections to the Russian government and its inner circle made these threats credible.  At other times, Mr. Varshavsky made thinly veiled threats on Mr. Leontiev's life.  On yet other occasions,

---

[1] All references to "Compl. ¶ _" are to the Complaint filed in this action (Dkt. 1).  All references to "Br." are to the Memorandum of Law in Support of Defendant's Motion to Dismiss (Dkt. 15).

Mr. Varshavsky replaced vinegar with honey, promising that he would make Probusinessbank's problems with Russian regulators and prosecutors "go away" if Mr. Leontiev paid him.  These promises of protection always carried with them the implied threat that if Mr. Leontiev did not comply with Mr. Varshavsky's demands, Mr. Varshavsky would make Mr. Leontiev's problems with Russian regulators and prosecutors worse.

The so-called basis for these demands was a series of loan agreements, promissory notes, and guarantees, none of which named Mr. Leontiev or purported to establish a debt owed by him.  Mr. Leontiev maintains in his first cause of action that there is no basis under which he could be held liable to Mr. Varshavsky, or anyone acting in concert with him, for any debt purportedly represented by these documents.  But Mr. Varshavsky is separately liable for the tortious campaign of intimidation and harassment he launched and executed against Mr. Leontiev, which forms the basis of the Complaint's second cause of action.

Mr. Varshavsky's motion to dismiss Mr. Leontiev's intentional infliction of emotional distress ("IIED") claim improperly disaggregates each threat and intimidating action alleged in the Complaint, divorces it from its context, seeks inferences favorable to Defendant, and asserts that it does not constitute "extreme and outrageous" conduct as a matter of law.  That is <u>not</u> the law, nor how such a claim must be evaluated.  Courts have repeatedly held that "continuous and coercive harassment" establishes an IIED claim, especially where it is "geared towards defendant's ultimate economic gain."  *Neufeld v. Neufeld*, 910 F. Supp. 977, 984-85 (S.D.N.Y. 1996).  And it is immaterial whether "each individual act alleged is [separately] actionable" because "when aggregated over time, the continuous nature of the conduct" renders it "sufficiently outrageous" to state a cause of action for IIED.  *Koster v. Chase Manhattan Bank, N.A.*, 609 F. Supp. 1191, 1198 (S.D.N.Y. 1985).

Mr. Varshavksy's back-up argument that Mr. Leontiev failed to allege emotional distress is equally baseless. New York courts have upheld IIED claims based on allegations of emotional distress identical to those pleaded here—including "anxiety," "exacerbation of physical harm," and "loss of sleep." *Herman v. Spitz*, 5 Misc. 3d 1026 (A), at *1, 799 N.Y.S.2d 160 (Table) (N.Y.C. Civ. Ct. 2004); *Feinberg v. Poznek*, 12 Misc. 3d 1185(A), at *2, 824 N.Y.S.2d 762 (Table) (Sup. Ct. N.Y. Cnty. 2006). Finally, Mr. Varshavsky's attempt to escape liability for punitive damages is misguided and premature. Punitive damages are available where defendant's conduct is "quasi-criminal," "utterly reckless," or accompanied by "malicious intent to injure the plaintiff." *Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52, 59, 599 N.Y.S.2d 336, 340 (2d Dep't 1990) (internal citation and quotation marks omitted). That is exactly what the Complaint alleges here. The facts alleged in the Complaint show that Mr. Varshavsky committed criminal acts, including extortion and solicitation of Mr. Leontiev's participation in a bribery scheme. Mr. Leontiev has pled his entitlement to punitive damages and Mr. Varshavsky cannot prevent discovery by claiming that his criminal conduct was not "outrageous."

The motion to dismiss should be denied.

### STATEMENT OF FACTS

The following facts are drawn from the Complaint and presumed true on this motion.

Mr. Leontiev is a well-known and highly regarded Russian businessman. Compl. ¶ 1. Until August 2015, Mr. Leontiev was the Chairman of Probusinessbank, a full-service commercial bank headquartered in Moscow that Mr. Leontiev started together with his friend and business associate, Mr. Alexander Zheleznyak, in 1993. *Id.* ¶ 19. By August 2015, Probusinessbank had grown to become the 51st largest bank in Russia in terms of assets and the fourth largest in terms of branches. *Id.*

3

Although Probusinessbank had received multiple clean opinions from independent auditors, including from ZAO Deloitte & Touche CIS, it drew the attention of Russia's Central Bank regulators in the fall of 2014.  Compl. ¶ 20.  This attention came against the backdrop of the collapse of the Russian financial system and President Vladimir Putin's corresponding consolidation of Russian banks.  *Id.*  Over 100 Russian banks had their banking licenses revoked in 2015.  *Id.* ¶ 22.  Probusinessbank made every effort to comply with the Central Bank's requests and had its solvency confirmed on at least two occasions after the investigation started, including as late as June 2015.  *Id.* ¶ 21.  Nevertheless, on August 7, 2015, one day after Probusinessbank was told that it was in compliance with nearly all requirements, temporary administrators from Russia's Deposit Insurance Agency arrived at Probusinessbank's offices and disconnected its access to banking networks.  *Id.*  Five days later, on August 12, the Central Bank revoked Probusinessbank's license and subsequently took the bank into bankruptcy.  *Id.* ¶¶ 22-23.

Given the abrupt and unjustified nature of the Russian government's actions and the history of its persecution of businessmen following state seizure of assets, Mr. Leontiev and Mr. Zheleznyak became concerned for their personal safety and were forced to flee the country. Compl. ¶ 23.  The concern was prescient—in February 2016, the Russian government arrested five former managers of Probusinessbank and charged them with embezzlement despite a prior written opinion from a senior prosecutor stating that criminal charges were unwarranted in connection with the bankruptcy.  *Id.* ¶ 24.

Mr. Varshavsky is a Russian-born, naturalized United States citizen and a well-known businessman with significant personal and business holdings in both the United States and Russia.  Compl. ¶¶ 25-27.  Mr. Varshavsky is considered to be a politically powerful and

influential person, with personal relationships with members of the Russian government and its inner circle. *Id.* ¶ 38.

In or around August 2015—at the peak of Probusinessbank's turmoil—Mr. Varshavsky contacted Mr. Leontiev and arranged a meeting in Moscow. Compl. ¶ 28. At that meeting, Mr. Varshavsky demanded payment of $100 million and threatened that Mr. Leontiev would have trouble with Russian prosecutors if he failed to pay Mr. Varshavsky. *Id.* ¶¶ 28-29. Mr. Varshavsky also offered to "resolve" all of Mr. Leontiev's problems with the Central Bank if Mr. Leontiev agreed to transfer a 50% interest in Probusinessbank to Mr. Varshavsky. *Id.* Shortly thereafter, Mr. Varshasky set up another meeting with Mr. Leontiev in London. *Id.* ¶ 30. At that meeting, Mr. Varshavsky again demanded payment on the alleged loans and threatened to institute criminal charges against Mr. Leontiev if he failed to agree to a payment schedule. *Id.*

On January 15, 2016, Mr. Varshavsky and Mr. Leontiev met, together with their respective counsel, in New York City. Compl. ¶ 31. Mr. Varshavsky demanded that Mr. Leontiev immediately pay him $83 million—claiming that he "need[s] security because what if God forbid you die tomorrow." *Id.* Mr. Varshavsky followed up this thinly veiled threat with yet another vow that he would open a criminal investigation in Russia against Mr. Leontiev. *Id.*

Mr. Varshavsky also communicated threats directed at Mr. Leontiev through Mr. Zheleznyak, Mr. Leontiev's friend and business associate. In February 2016, Mr. Varshavsky told Mr. Zheleznyak that, unless he received immediate payment from Mr. Leontiev, he would arrange to have Mr. Leontiev's name linked to terrorism financing. Compl. ¶ 36. And in March 2016, Mr. Varshavsky told Mr. Zheleznyak that if Mr. Leontiev paid him $40 million, Mr. Varshavsky would have the Russian authorities cease their investigation of Probusinessbank's former managers and employees. *Id.* ¶ 37.

Mr. Leontiev has refused each and every one of these demands.  But Mr. Varshavsky's targeted and malicious campaign of intimidation and harassment has caused Mr. Leontiev severe emotional distress and mental pain and anguish, including anxiety, stress, loss of sleep, exacerbation of other physical ailments, and fear for his safety and for the safety of his family and friends.  Compl. ¶¶ 51-52.

## STANDARD OF REVIEW

Defendant's motion to dismiss the IIED claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be denied.  The standard of review on a motion to dismiss for failure to state a claim "is heavily weighted in favor of the plaintiff." *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 224 (S.D.N.Y. 2008).  At this stage of the proceeding, all pleadings "must be construed in the light most favorable to plaintiff and all doubts resolved in [his] favor." *Tuxxedo Network, Inc. v. Hughes Commc'ns Carrier Servs., Inc.*, 753 F. Supp. 514, 516-17 (S.D.N.Y. 1990) (citation omitted).  The Court may consider only whether the complaint "states a plausible claim for relief," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Varsity Brands, Inc. v. J & M Spirit Wear, Inc*., No. 09-cv-1795 (PKC), 2009 WL 3401182, at *2 (S.D.N.Y. Oct. 19, 2009) (citation and quotation marks omitted); *see also ESPN*, 586 F. Supp. 2d at 224-25 ("The issue [on a motion to dismiss] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") (citation and quotation marks omitted).  Mr. Varshavsky has failed to meet the standard required for dismissal under Rule 12(b)(6).

## ARGUMENT

## I.     The Complaint States a Claim for Intentional Infliction of Emotional Distress

Under New York law, a claim for intentional infliction of emotional distress has four elements:  "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial

probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Chanko v. American Broadcasting Cos.*, 27 N.Y.3d 46, 56, 49 N.E.3d 1171, 1178 (2016). The tort "does not proscribe specific conduct, but imposes liability based on after-the-fact judgments about the actor's behavior." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 702 (1993). Accordingly, "[t]he tort is as limitless as the human capacity for cruelty." *Id.* The court may not dismiss a claim for intentional infliction of emotional distress at the pleading stage "unless it appears beyond doubt that plaintiffs can prove no set of facts that would entitle them to such relief." *Ericson v. Syracuse Univ.*, 35 F. Supp. 2d 326, 330 (S.D.N.Y. 1999) (Rakoff, J.).

As described *supra* at 3-6, the Complaint sufficiently pleads all four elements of an IIED claim. Specifically, it alleges that Mr. Varshavsky knowingly and maliciously engaged in a campaign of threats and harassment aimed at extorting tens of millions of dollars from Mr. Leontiev. As alleged in the Complaint, Mr. Varshavsky exploited his connections to powerful Russian government officials and cronies—and Mr. Leontiev's knowledge of such connections—to make threat after credible threat of criminal prosecution and placement on a terrorist financing watch list. Mr. Varshavsky even made thinly veiled threats on Mr. Leontiev's life and solicited his participation in an unlawful bribery scheme. Each one of these statements and actions was targeted at a unified goal—obtaining Mr. Leontiev's money. As a result of Mr. Varshavsky's conduct, Mr. Leontiev has suffered severe emotional distress in the form of anxiety, stress, and fear.

Defendant argues that Mr. Leontiev has failed to state a claim for IIED for two reasons: (1) Mr. Varshavsky's conduct was not "extreme and outrageous" as a matter of law, and (2) Mr. Leontiev failed to plead severe emotional distress. *See* Br. at 5-13. Each argument is meritless.

### A.     Mr. Leontiev Has Adequately Pleaded That The Totality of Mr. Varshavsky's Conduct Was Extreme and Outrageous.

The first element of an IIED claim—extreme and outrageous conduct—is satisfied by allegations that defendant "engaged in a 'deliberate and malicious campaign of harassment or intimidation.'"  *Eves v. Ray*, 42 A.D.3d 481, 482-83, 840 N.Y.S.2d 105, 106 (1st Dep't 2007) (quoting *Nader v. General Motors Corp.*, 25 N.Y.2d 560, 569, 255 N.E.2d 765, 770 (1970)) (upholding IIED counterclaim where a man "threatened" his wife's attorney "both physically and financially" "on several occasions" and "in an attempt to intimidate" the lawyer).  Where, as here, a complaint "alleges a pattern of conduct" aimed at intimidating or harassing another individual, it states a claim for IIED.  *Green v. Fischbein Olivieri Rozenholc & Badillo*, 119 A.D.2d 345, 350, 507 N.Y.S.2d 148, 152 (1st Dep't 1986) (plaintiff sufficiently stated a claim for IIED against landlord who instituted a series of "allegedly baseless eviction proceedings," and took other concerted actions to "interrupt[]" or 'discontinu[e]" services to disrupt plaintiff's living conditions); *see also Allam v. Meyers*, No. 09-cv-10580 (KMW), 2011 WL 721648, at *10-11 (S.D.N.Y. Feb. 24, 2011) (allegations that defendant engaged in a "five months-long" campaign of intimidation and harassment, including threats of violence, sufficient to state an IIED claim).  The lengthy period of repeated harassment alleged here—motivated by naked economic greed—contrasts sharply with cases such as *Chanko*, where the New York Court of Appeals held that a television news documentary that included a "brief, edited segment" concerning the medical treatment and death of the plaintiffs' relative, which "did not include decedent's name," included only a "blurred" image of the decedent, and lasted "less than three minutes," did not rise to the level of "extreme and outrageous" conduct.  27 N.Y.3d at 57-58, 49 N.E.3d at 1177.

It is by no means required that "each individual act" in the campaign separately be "actionable" because "the continuous nature of the conduct may make it sufficiently outrageous that a jury could reasonably find in [plaintiff's] favor on the emotional distress" claim. *Collins v. Willcox Inc.*, 158 Misc. 2d 54, 57, 600 N.Y.S.2d 884, 886 (Sup. Ct. N.Y. Cnty. 1992). "[W]here a plaintiff is the target of a planned program of harassment or threats, accompanied by vindictiveness," he is entitled to seek relief in the form of an IIED claim. *Bonner v. Guccione*, 916 F. Supp. 271, 277 (S.D.N.Y. 1996) (citation and quotation marks omitted).

Defendant ignores this well-established case law and improperly disaggregates each threat or action taken by Mr. Varshavsky to analyze whether it would separately constitute a cause of action for IIED. As explained below, Mr. Varshavsky's analysis of each action is wrong because it rests on inapposite case law, elides the detailed factual allegations of the Complaint, and ignores the context of the relationship between Mr. Leontiev and Mr. Varshavsky. But Defendant's motion amplifies these errors by treating each threat as if it were the basis for a separate cause of action. That is not what the Complaint alleges. The basis of Mr. Leontiev's claim for intentional infliction of emotional distress is the totality of Mr. Varshavsky's eight-month long systematic "continuous and coercive" campaign of threats and harassment. *Neufeld*, 910 F. Supp. at 984.

> **1.      Mr. Varshavsky's Threats to Institute Criminal Charges Against Mr. Leontiev in Russia are Extreme and Outrageous Because Mr. Leontiev Would Never Receive Due Process in Russia.**

Mr. Varshavsky blithely asserts that threats to "pursue criminal charges" are not actionable where made "in the course of business discussions" and cites a series of cases that purport to state that the commencement of baseless lawsuits is insufficiently "extreme or outrageous." Br. at 7-10. But the cases cited by Mr. Varshavsky are inapposite because they pertain to the instigation of criminal or civil lawsuits where the plaintiffs had an opportunity to

defend themselves and clear their names. *See Slatkin v. Lancer Litho Packaging Corp.*, 33 A.D.3d 421, 422, 822 N.Y.S.2d 507, 509 (1st Dep't 2006) (criminal charges dismissed because of insufficient evidence); *Kaye v. Trump*, Index No. 116572/07, 2008 WL 2078675 (Sup. Ct. N.Y. Cnty. May 7, 2008), *aff'd* 58 A.D.3d 579, 579, 873 N.Y.S.2d 5, 6 (1st Dep't 2009) (plaintiff litigated the dismissal of two baseless lawsuits filed by defendant, Donald Trump); *Marino v. Jonke*, No. 11-cv-430 (VB), 2012 WL 1871623, at *3 (S.D.N.Y. Mar. 30, 2012) (plaintiff obtained dismissal of wrongfully instituted criminal charges); *Rivers v. Towers, Perrin, Forster & Crosby, Inc.*, No. 07-cv-5441 (DGT), 2009 WL 817852, at *2 (E.D.N.Y. Mar. 27, 2009) (criminal charges dismissed); *Villacorta v. Saks Inc.*, 32 Misc. 3d 1203(A), at *6, 932 N.Y.S.2d 764 (Table) (Sup. Ct. N.Y. Cnty. 2011) (plaintiff litigated to trial criminal proceedings instituted upon her employer's complaint).  None of these cases involved threats to put the plaintiffs on a list of terrorists—an action here that would restrict Mr. Leontiev's liberty in numerous ways—or the sort of concerted campaign that Mr. Varshavsky has engaged in here. Moreover, in *each* of the cases cited by Defendants, the IIED claim was improperly duplicative of a malicious prosecution claim simultaneously brought by the plaintiff.  *See, e.g.*, *Villacorta*, 32 Misc. 3d 1203(A), at *2 (because IIED claim is "based on the same facts as the claims for malicious prosecution and false imprisonment, it should be dismissed").[2]

That is not the nature of the threats at issue in this case.  Here, the Complaint alleges that Mr. Varshavsky has threatened to draw on his connections to powerful individuals in the Russian government to institute criminal charges against Mr. Leontiev and to have his name associated with terrorism financing, Compl. ¶¶ 29-30, 36-37, in a criminal justice system where Mr.

---

[2]  New York caselaw provides that intentional infliction of emotional distress claims that are duplicative of other existing causes of action may be dismissed.  *See Leonard v. Reinhardt*, 20 A.D.3d 510, 510, 799 N.Y.S.2d 118, 119 (2d Dep't 2005).

Leontiev believes he would never be able to adequately defend himself or protect his life or liberty, *id*. ¶ 23.  Mr. Leontiev is entitled to prove through discovery that the institution of baseless criminal proceedings in Russia is a far greater threat to his life and safety than the institution of baseless criminal proceedings in the United States, such that Mr. Varshavsky's unjustified threat to institute such charges is extreme and outrageous.[3]  *See Ericson*, 35 F. Supp. 2d at 330 (denying motion to dismiss intentional infliction of emotional distress claim where plaintiff could "adduce facts that would render" defendant's "wrongful[]" and "bad faith" actions sufficiently outrageous).

Indeed, the public record is replete with such facts.  *See, e.g.*, The Sergey Magnitsky Rule of Law and Accountability Act of 2012, Pub. L. No. 112-208, 126 Stat. 1496 (2012) (imposing sanctions on Russian government officials in connection with the death of an attorney, Sergey Magnitsky, in a Russian prison).  As summarized in the preamble to the Magnitsky Act, Congress found that "Magnitsky's arrest and detention was illegal; he was denied access to justice by the courts and prosecutors of the Russian Federation . . . ; he was denied necessary medical care in custody; he was beaten by 8 guards with rubber batons on the last day of his life; and the ambulance crew that was called to treat him as he was dying was deliberately kept outside of his cell for one hour and 18 minutes until he was dead."  126 Stat. at 1503.  The preamble also discussed the sham trials of former Yukos executives Mikhail Khodorkovsky and Platon Lebedev, which "evoke[d] serious concerns about the right to a fair trial and the

---

[3] Defendant appears to seek an inference that criminal charges against Mr. Leontiev would be justified, based on Russia's initiation of criminal proceedings against several former Probusinessbank employees.  Br. at 8.  To the contrary, it is Plaintiff who is entitled to an inference that both the existing criminal charges—which were commenced despite a written opinion by a government official that such charges were unwarranted (Compl. ¶ 24)—as well as any that might be brought against Mr. Leontiev, are trumped up and unwarranted.

11

independence of the judiciary in the Russian Federation." *Id.* at 1504 (noting that "[t]he lack of credible charges, intimidation of witnesses, violations of due process and procedural norms, falsification or withholding of documents, denial of attorney-client privilege, and illegal detention" in the Khodorkovsky and Lebedev case were "highly troubling").[4]

Mr. Leontiev is equally entitled to prove through discovery the basis for his belief that Mr. Varshavsky's connections to powerful individuals in the Russian government and its inner circle made his threats credible and coercive.[5] "The extreme and outrageous nature of [defendant's] conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests." *Vasarhelyi v. New School for Social Research*, 230 A.D.2d 658, 661, 646 N.Y.S.2d 795, 797 (1st Dep't 1996) (citing Prosser & Keeton, Torts § 12, at 61 [5th ed.]) (affirming IIED claim based on "threats of unjustified criminal charges" by plaintiff's employer who had the "apparent power to impair plaintiff's professional standing").

---

[4]  *See also Russia Leads Europe in Prison Inmate Deaths – COE Report*, Moscow Times (Mar. 08, 2016) (reporting Council of Europe study that found 4,200 inmate deaths in Russia's prisons in 2013); Zoya Svetova, *Prison as a death sentence*, Open Democracy (May 14, 2010), *available at* https://www.opendemocracy.net/zoya-svetova/prison-as-death-sentence (discussing case of Vera Trifonova, a real estate business owner arrested in Russia on trumped up charges of fraud and found dead in prison); Radio Free Europe, *Former Butyrka Inmate Says 'They Throw You There to Break You* (Dec. 22, 2009), *available at* http://www.rferl.org/content/Former_Butyrka_Inmate_Says_They_Throw_You_There_To_Break_You_/1910566.html (interview with Roman Popkov, former inmate who spent more than two years in pretrial detention in Russia).

[5]  Such facts are also discernible through the existing public record, including the association of Mr. Varshavsky with Agro-Invest, a Russian agricultural company that has received financing from a bank owned by Boris and Arkady Rotenberg, two of the most powerful men in Russia who are currently subject to United States sanctions as a result of their connections in Russia.  *See* Declaration of Robert L. Weigel, dated July 8, 2016, Exs. A-F (showing Maxbond Ltd.'s  control of Agro-Invest, Varshavsky's control of Maxbond Ltd., and Agro-Invest's receipt of financing from Severny Morskoy Put Bank, owned by the Rotenbergs).

Tellingly, Defendant fails to distinguish *Vasarhelyi* because the two cases he cites have nothing to do with the type of allegations at issue in the Complaint.  *See* Br. at 9-10.  In *Edwards v. Great Northern Ins. Co.*, the alleged threats of prosecution involved a report prepared by an insurance company "which simply set forth defendant's bases for its suspicions" that plaintiff was engaged in insurance fraud so as to determine the insurance company's obligations under its policy.  No. 03-cv-2947 (NG), 2006 WL 2053717, at *6 (E.D.N.Y. 2006).  Here, the Complaint alleges that Mr. Varshavsky has never explained the basis for Mr. Leontiev's personal liability or instituting criminal charges against Mr. Leontiev and has merely used the threat as a method of extracting payment from Mr. Leontiev.  And *Kiser v. HSH Nordbank AG* did not even involve the threatened institution of false criminal charges—rather, it involved the institution of bogus internal investigations by plaintiff's employer.  No. 09-cv-8849 (JSR), 2010 WL 286647, at *1 (S.D.N.Y. Jan. 20, 2010).  Internal investigations are not at all comparable to the threatened institution of criminal proceedings in a corrupt justice system, which bears the same mark of abusive and coercive conduct at issue in *Vasarhelyi*.

Finally, the notion that Mr. Varshavsky's threats were made in the context of legitimate business negotiations is absurd on the face of the Complaint.  Mr. Varshavsky's extortionate threats to institute criminal proceedings and to link Mr. Leontiev to terrorism financing, Compl. ¶¶ 29-31, 36, take this case far outside the realm of "a commercial dispute among companies engaged in business together."  *Solomon v. Siemens Indus., Inc.*, 8 F. Supp. 3d 261, 284-85 (E.D.N.Y. 2014).

**2.    Mr. Varshavsky's Threat to Link Mr. Leontiev's Name to Terrorism Financing and Soliciting His Participation in a Bribery Scheme are Actionable as Part of the Same Pattern of Coercive Conduct.**

Mr. Varshavsky's efforts to explain away the remaining allegations in Mr. Leontiev's Complaint also fail.  First, Defendant makes the absurd argument that Mr. Varshavsky's threat to

link Mr. Leontiev to terrorism financing and the offer to cease the criminal investigation of

Probusinessbank in exchange for payment cannot be actionable because these statements were

"made only to Mr. Zheleznyak, not to Mr. Leontiev."  Br. at 10-11.  But Mr. Leontiev "is entitled

to all reasonable inferences" on a motion to dismiss.  *Peoples v. Fischer*, 898 F. Supp. 2d 618,

624 (S.D.N.Y. 2012).  The inference that Mr. Varshavsky intended Mr. Zheleznyak to convey

these threats to Mr. Leontiev is not only reasonable, but overwhelming:  The Complaint alleges

that Mr. Varshavsky knew that Mr. Zheleznyak and Mr. Leontiev were friends and business

associates, Compl. ¶ 8, and that Mr. Varshavsky made the threats in order to "receive[]

immediate payment from Mr. Leontiev," *id.* ¶¶ 36-37, which necessarily required that the threats

be conveyed to Mr. Leontiev.  Further, the threats were made as part of the same pattern of

harassment as other threats made *directly* to Mr. Leontiev.[6]

The allegations here are sufficient to demonstrate Mr. Varshavsky's intent to intimidate

Mr. Leontiev through these threats, and thus are readily distinguishable from the cases cited by

Defendant.  *See Owen v. Leventritt*, 174 A.D.2d 471, 471-72, 571 N.Y.S.2d 25, 25 (1st Dep't

1991) (threat conveyed "at a public meeting of [a] cooperative's shareholders" and there was no

basis from which to infer that Defendant made it with the goal of conveying it to plaintiff); *Saleh

v. United States*, No. 12-cv-4598 (KBF), 2013 WL 5439140, at *3 (S.D.N.Y. Sept. 27, 2013)

(threat made by an FBI informant to a member of plaintiff's mosque with the goal of threatening

the member, not the plaintiff).  But where, as here, several threats are conveyed, even to "distinct

individuals," those threats "could be construed in the aggregate as presenting a campaign of

---

[6]  Insofar as the Court believes that pleading an IIED claim requires an express allegation "that Mr. Varshavsky asked or intended for Mr. Zheleznyak to convey [those] statement[s] to Mr. Leontiev," Br. at 10, and that such an intention cannot reasonably be inferred from the existing allegations of the Complaint, Plaintiff is prepared to amend the Complaint to make such an allegation.

14

harassment." *164 Mulberry St. Corp. v. Columbia Univ.*, 4 A.D.3d 49, 56, 771 N.Y.S.2d 16, 22 (1st Dep't 2006).

Finally, Defendant argues that the threat to link Mr. Leontiev with terrorism financing and the solicitation of Mr. Leontiev's participation in a bribery scheme are not "extreme and outrageous" as a matter of law. Again, these statements cannot be disaggregated and are properly considered in the context of the overall campaign of threats and harassment instituted by Mr. Varshavsky. *See Koster*, 609 F. Supp. at 1198 ("Although each individual act alleged by Koster is probably not actionable, when aggregated over time, the continuous nature of the conduct may make it sufficiently outrageous"). These threats, like the threats to institute criminal charges, were part of a "unified campaign" that was "geared towards [Mr. Varshavsky's] ultimate economic gain"—the receipt of tens of millions of dollars from Mr. Leontiev. *Neufeld*, 910 F. Supp. at 985. As such, they are actionable as the same "deliberate and malicious" pattern of conduct. *Nader*, 25 N.Y.2d at 569, 255 N.E.2d at 770.

Once again, Mr. Varshavsky's cases are inapposite. In *Press v. United Airlines*, the court dismissed an intentional infliction of emotional distress claim against United Airlines flight attendants who allegedly "conspired to have the captain" of a plane "declare [Plaintiff] a security alert" on the flight. No. 11-cv-2265 (ARC), 2012 WL 1569786, at *10 (M.D. Pa. May 3, 2012). The complaint in that case did not allege, as here, that the flight attendants acted with a personal financial motive or that they used the threat in an attempt to extract a payment from the plaintiff. In *Higazy v. Millenium Hotel & Resorts*, the court dismissed an IIED claim against a hotel's head of security who allegedly failed to correct statements made to the FBI that led to plaintiff's arrest in connection with terrorism charges. 346 F. Supp. 2d 430, 460 (S.D.N.Y. 2004), *aff'd in part, rev'd in part sub nom. Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007). The court's reasoning

15

had nothing to do with the inherent outrageousness of causing someone to be associated with terrorism—to the contrary, it dismissed the IIED claim (and a related malicious prosecution claim) because the individual defendant acted passively and "did not advise, encourage, or importune the authorities to arrest and detain [plaintiff]." *Id.* Here, Mr. Leontiev alleges that Mr. Varshavsky threatened to directly cause Mr. Leontiev to be associated with terrorism by government entities, with whom he has a close relationship. Compl ¶¶ 36, 38-39. Had Mr. Varshavsky carried out his threat—or if he does so subsequently—the consequences for Mr. Leontiev would be severe:  irreparably damaging his name and reputation, preventing him from any cross-border travel, restricting his ability to bank or obtain loans, and raising the prospect of adverse actions by immigration authorities.

Finally, the court in *Stuart v. Danka* dismissed the IIED claim because it was an effort to recast an "abusive discharge" claim not recognized under New York law, not because soliciting participation in a bribery scheme is not outrageous as a matter of law. 986 F. Supp. 741, 746 (E.D.N.Y. 1997). Here, Mr. Leontiev pleads that Mr. Varshavsky's solicitation of his participation in an unlawful bribery scheme was part and parcel of the same continuing campaign to extract tens of millions of dollars from him.

**B.      Mr. Leontiev Has Adequately Pleaded Emotional Distress**

Defendant's argument that Mr. Leontiev failed to plead severe emotional distress is patently ridiculous. Br. at 12-13. Mr. Leontiev alleges that as a result of Mr. Varshavsky's relentless campaign of threats and harassment, he has suffered from "anxiety, stress, loss of sleep, and exacerbation of other physical harms," and has come to "fear for his safety and for the safety of his family and friends." Compl. ¶ 51. These allegations are plainly sufficient on a motion to dismiss. *See Herman*, 5 Misc. 3d 1026(A), at *1 (allegations of "humiliation, shock, intense anxiety, fear, and loss of sleep" are sufficient to plead severe emotional distress);

*Feinberg*, 12 Misc. 3d 1185(A), at *2 (allegations of "anxiety, mental distress, migraine headaches, and exacerbations of physical harm" sufficient to plead severe emotional distress).

Mr. Varshavsky has cited no case—none exists—where comparable allegations were found insufficient to state the "severe emotional distress" element of an IIED claim. Indeed, the cases he cites have little to no bearing on the issue or the allegations in this case. *See Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 122 (S.D.N.Y. 2002) (dismissing IIED claim for failure to allege outrageous conduct "without challenging the sincerity of plaintiff's distress"); *Stephens v. Shuttle Assocs. LLC*, 547 F. Supp. 2d 269, 274 (S.D.N.Y. 2008) (plaintiff was not distressed as a matter of law by virtue of a forty minute delay of her transportation).

## II.   Mr. Leontiev's Allegations Entitle Him to Seek Punitive Damages

Finally, in a single paragraph, Defendant argues that Mr. Leontiev's request for punitive damages is unsustainable as a matter of law because Mr. Varshavsky's conduct was not "truly reprehensible, evil, or morally culpable." Br. at 13. This is not the standard for punitive damages. An award of punitive damages can be based on "quasi criminal conduct," "utterly reckless behavior," "a demonstrated malicious intent to injure the plaintiff," or "gross, wanton, or willful fraud or other morally culpable conduct." *Ahrens v. Stalzer*, 4 Misc. 3d 1013(A), at *5, 791 N.Y.S.2d 867 (Table) (Sup. Ct. N.Y. Cnty. 2004). Plaintiff's allegations that Mr. Varshavsky engaged in a scheme of extortionate threats and solicitation of criminal bribery to wrongfully extract payment of tens of millions of dollars from Mr. Leontiev plainly satisfies this standard. The availability of punitive damages cannot be decided on this motion to dismiss, especially where Mr. Leontiev may prove Mr. Varshavsky's malicious intent through discovery. *See Collins*, 158 Misc. 2d at 59, 600 N.Y.S. 2d at 887 ("Punitive damages are recoverable in all actions based upon tortious acts which involve ingredients of malice, fraud, oppression, insult,

wanton or reckless disregard of one's rights, or other circumstances of aggravation . . . . [T]he determination whether to award punitive damages lies in the discretion of the trier of the facts.").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied. Alternatively, Plaintiff requests leave to amend, because any supposed pleading deficiencies cited by Defendant—assuming that there are such deficiencies—can easily be cured by amendment.


Dated:   July 8, 2016
          New York, New York

                              GIBSON, DUNN & CRUTCHER LLP


                              By: /s/ Robert L. Weigel
                                    Robert L. Weigel
                                    Marshall R. King

                              200 Park Avenue
                              New York, New York 10166
                              Telephone: 212.351.4000
                              Facsimile: 212.351.4035
                              rweigel@gibsondunn.com
                              mking@gibsondunn.com

                              *Attorneys for Plaintiff Sergey Leontiev*