G6H8LEOC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SERGEY LEONTIEV,

               Plaintiff,

          v.                          16 Cv. 3595 (JSR)

ALEXANDER VARSHAVSKY,

               Defendant.

------------------------------x
                                      June 17, 2016
                                      5:00 p.m.
Before:

                   HON. JED S. RAKOFF

                                      District Judge

                        APPEARANCES

GIBSON, DUNN & CRUTCHER, LLP
     Attorneys for Plaintiff
BY:  ROBERT L. WEIGEL
     MARSHALL R. KING
     ESTER MURDUKHAYEVA

DEBEVOISE & PLIMPTON, LLP
     Attorneys for Defendant
BY:  SEAN HECKER
     WILLIAM TAFT
     NICHOLAS TOMPKINS
```

1            (Case called)
2            THE DEPUTY CLERK:  Will everyone please be seated and
3    will the parties please state their names for the record.
4            MR. WEIGEL:  Robert Weigel, together with Marshall
5    King and Ester Murdukhayeva, for the plaintiff.
6            THE COURT:  The law firms in this case are small and
7    collegial firms so I can understand why you might not have the
8    name right.
9            MR. WEIGEL:  I know the name; I just don't know how to
10   pronounce it.
11           Your Honor, just one thing.  The caption seems to have
12   been jumbled in some way.  The defendant is Alexander
13   Varshavsky.
14           THE COURT:  Yes, that's what I have.
15           THE DEPUTY CLERK:  That's what ECF says.
16           MR. HECKER:  Good afternoon, your Honor.  Sean Hecker,
17   Will Taft and Nicholas Tompkins, from Debevoise & Plimpton, for
18   Mr. Varshavsky.
19           THE COURT:  Good afternoon.  It's been much too long,
20   Mr. Hecker, since I last saw you.
21           MR. HECKER:  Likewise.
22           THE COURT:  So I have your report.  The defense says
23   they have serious concerns about the ability to have this case
24   trial ready by November 28.  I have had many cases involving
25   many international parties and much international discovery,

G6H8LEOC

1    far more complicated than this one, in which all discovery was
2    able to be accomplished well within five or six months.  What
3    makes you think this is going to be more difficult?
4              MR. HECKER:  Your Honor, in this case the third
5    parties, from whom discovery will be sought, include a couple
6    of layers of corporate entities that we believe are affiliated
7    with Mr. Leontiev.  They are in Russia; they are in Cyprus;
8    they are in other jurisdictions.  While Cyprus, as we
9    understand it, is a relatively easy jurisdiction, as these
10   things go, pursuant to Hague Convention processes, the
11   situation in Russia is much more tenuous.
12             We are simply alerting the Court.  We will do
13   everything in our power to move discovery as quickly as
14   possible.  We have every incentive in this case.
15             THE COURT:  Tell me specifically the discovery that
16   you anticipate you would need to take that would involve the
17   processes of the Russian government.
18             MR. HECKER:  Well, your Honor, our understanding is
19   that much of the information that will help establish that
20   Mr. Leontiev is affiliated with the entities that borrowed the
21   large sums involved in this case will be in Russia.  We think
22   witnesses will be in Russia, and we think the corporate
23   entities will be in Cyprus and other jurisdictions.
24             THE COURT: Put a little flesh on that.  Give me an
25   example of one situation where you think you would be entitled

1    to discovery where you anticipate there might be delay.

2               MR. HECKER:  I think it would be in connection with

3    trying to obtain either deposition testimony or documents of

4    people located in Russia and documents located in Cyprus.  I

5    think witnesses are likely to be in Cyprus as well, including

6    corporate nominees.

7               THE COURT:  I don't anticipate much problem with

8    Cyprus.  I have right now a case that's going to trial in

9    September in which the parties are spread all over the world,

10   the main party is in Brazil, and numerous requests under the

11   Hague Convention have been made to enumerable countries

12   throughout the world, and they have all been appropriately

13   responded to within a matter of a few months.

14              Now, Russia may be a different situation.  I have had

15   some cases involving Russian entities in which some firm called

16   Gibson Dunn was involved.  They seem to be pretty adept at

17   processing at least their requests in those cases that I had in

18   the past.  So it wasn't a problem there.

19              In terms of what you're trying to establish with

20   respect to the Russian discovery is what?

21              MR. HECKER:  Well, your Honor, I confess that our

22   investigation on these issues is still very preliminary.  This

23   case was brought preemptively as we are still developing the

24   case.  But our understanding is, for example, there is a

25   company incorporated in Russia that Mr. Leontiev is a

1  registered owner of and from which funds passed through that
2  entity and on to other entities in Cyprus, but I am not
3  prepared to make a representation more detailed than that
4  because I just don't know the facts well enough, but I do have
5  reason to believe Russia will be a key piece of discovery in
6  the equation.
7         THE COURT:  To the extent that you're seeking
8  information regarding Mr. Leontiev's own holdings or whatever
9  in Russia, presumably, either he is going to produce that
10 information or he would face sanctions.  Yes?  If he is the
11 plaintiff.  This would have to be a third party to even begin
12 to create problems, right?
13        MR. HECKER:  Your Honor is certainly correct, that if
14 Mr. Leontiev, as we suspect, controls entities in Russia and
15 elsewhere, we believe he would be under an obligation to try to
16 obtain that information.
17        At this stage, your Honor, I'm not sure we are
18 requesting any relief.  We are prepared to move forward as
19 aggressively as we can, to move discovery as aggressively as we
20 can.  We just wanted to alert the Court that there may be some
21 legitimate obstacles here that may make it difficult to operate
22 within the standard time contemplated under the rules.
23        THE COURT:  I will leave it at that, but the
24 allegation, the central allegation here is that the defendant,
25 Mr. Varshavsky, has engaged in a campaign of threats, demands

Case 1:16-cv-03595-JSR   Document 19   Filed 07/13/16   Page 6 of 14      6
G6H8LEOC

1    and harassment in an effort to obtain payment from the
2    plaintiff for a debt that the defendant claims the plaintiff
3    owes him.  So I am a little uncertain as to even the relevancy
4    of some of what you seem to be talking about, but I don't know
5    the facts either of the case.
6               If the threats were wrongful, even if the debt
7    existed, then it would be irrelevant whether the debt existed.
8    If there was a legitimate claim for the debts, the threats
9    still might be wrongful, depending on the nature of the
10   threats, or they might not.  Again, I don't know any more about
11   the case than you do.  I know less than you do.
12              Maybe we should hear from plaintiff at this point.
13              MR. HECKER:  Just one issue.  The first action seeks a
14   declaratory judgment that Mr. Leontiev was entitled to a
15   judgment, stating that he does not owe a debt or obligation to
16   Mr. Varshavsky or anyone acting in concert.
17              THE COURT:  That's fair enough.  The allegation is
18   there can be no theory under which Mr. Leontiev can be held
19   legally responsible for repayment of any of the alleged loans,
20   and they want a declaratory judgment to that effect.  So it is
21   only the second cause of action that gets to the nature of the
22   threats.
23              MR. HECKER:  Exactly.
24              THE COURT:  Let me hear from plaintiff's counsel.
25              MR. WEIGEL:  I think it's a little odd, your Honor,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G6H8LEOC

1   that his client has been demanding that payment be made by my
2   client, but yet they cannot sit here and articulate the theory
3   under which they are claiming that my client is liable and they
4   have to take discovery all over the world.
5               THE COURT:  They didn't quite say that.  What they
6   said is that they thought there might be some discovery.  For
7   example, they say if your client owes them money for X and you
8   deny it, that might involve some dispute over what the
9   underlying facts were, and the underlying facts might be facts
10  that occurred in Russia.
11              By the way, speaking of which, this is to both
12  counsel, will that determination, under the first cause of
13  action, be a matter of U.S. law or Russian law or any other
14  law?
15              MR. WEIGEL:  Well, your Honor, there are loan
16  documents that I have seen that are between a Cyprus company
17  and a Russian company.  The Cyprus company is Ambika and the
18  Russian company is a Russian company that's owned by a New
19  Jersey company that's owned by Mr. Varshavsky who is a U.S.
20  resident.
21              THE COURT:  So to the extent there are documents from
22  the Russian company that he owns, you will be able to produce
23  them, right?
24              MR. WEIGEL:  He should be able to produce those, yes.
25  We don't know what theory they intend to hold Mr. Leontiev

1    liable for the debts of this Cyprus company.  So it's hard for
2    me to say what law would apply until I know what their theory
3    is.  But I don't think it would be Russian law.  I think
4    perhaps it would be Cypriot law, perhaps it would be U.S. law.
5            THE COURT:  Well, I am deemed by law to be an expert
6    in both Cypriot law and Russian law.  I'm not sure that
7    presumption carries over to U.S. law.
8            MR. WEIGEL:  I would vote the other way, your Honor.
9            THE COURT:  Just one other thing.  The loan documents
10   you have seen, the Russian company is Mr. Varshavsky's company.
11   Who owns the Cypriot company?
12           MR. WEIGEL:  That is a company that was related to but
13   not owned by Probusinessbank, which was the Russian bank that
14   my client was a chairman of that guaranteed these loans, that
15   is currently in Russian bankruptcy.  It was seized by the
16   Russian depository insurance company after getting a couple of
17   clean opinions from Deloitte & Touche, and it is now in the
18   hands of the Russian depository insurance company, but it's
19   name is Ambika.  And we have learned that Mr. Varshavsky's
20   company, a lawyer from Mr. Varshavsky's company actually
21   obtained a power of attorney for Ambika and has made a demand
22   upon the Cypriot management company to turn over all the
23   records of that company to Mr. Varshavsky's company by June 10.
24   So, presumably, they have these documents at this point, and we
25   are, frankly, going to get them from them because it's going to

```
 1    be far easier than even going to the Hague Convention.
 2             THE COURT:  Let me ask defense counsel one more thing.
 3             I think your time to answer is not yet, but are you
 4    denying that you have demanded repayment of the loan?
 5             MR. HECKER:  Your Honor, I want to be careful because
 6    I am not ultimately certain of the underlying facts.  My
 7    understanding is that there have been discussions between my
 8    client and plaintiff about this outstanding loan, a series of
 9    outstanding loans.  And so I am not denying that there have
10    been discussions about a proposed repayment schedule with
11    Mr. Leontiev, the plaintiff.  In fact, one of the more
12    surprising statements in the case management plan was a claim
13    that the loans do not involve plaintiff in any way, which I
14    think discovery will prove completely inaccurate.  I don't know
15    about what precise demands were made.
16             THE COURT:  Are the underlying loans loans between
17    these individuals or loans between companies that they
18    guaranteed or had some other alleged obligation with respect to
19    them?
20             MR. HECKER:  Your Honor, there are a series of loans,
21    and my understanding is neither of the names of the plaintiff
22    or the defendant are on the loan agreements.  I think one of
23    the things we will seek to prove in discovery is that
24    Mr. Leontiev controls entities that he established, that he
25    personally had access to these funds, controlled the funds, the
```

1  ability to repay funds, but that is something we will seek to
2  prove in discovery.  So it is surprising to see a claim that he
3  had no involvement in these loans at all.  But it is clear that
4  it is papered between people or entities other than our two
5  clients.
6          THE COURT:  Let me ask you this.  Are any of the
7  alleged demands, threats, whatever, are they in writing?
8          It's really a question for plaintiff's counsel.
9          MR. WEIGEL:  There are a series of e-mails between
10 counsel.  I don't know if they are e-mails between clients.
11 And I believe there are letters too actually.
12         THE COURT:  I'm sorry?
13         MR. WEIGEL:  There are letters too.
14         MR. HECKER:  Between counsel.
15         MR. WEIGEL:  Yes.
16         THE COURT:  So the complaint is filled with various
17 allegations of threats, such as in paragraph 30, for example,
18 Mr. Varshavsky threatened to institute criminal charges against
19 Mr. Leontiev.
20         In paragraph 36, Mr. Varshavsky told Mr. Zheleznyak --
21 who is Mr. Zheleznyak?
22         MR. WEIGEL:  Mr. Zheleznyak, he was another official
23 of the bank.  I think he was effectively the chief executive
24 officer of Probusinessbank and a close friend and business
25 relation with Mr. Leontiev.

1           THE COURT:  Anyway, the allegation was that Mr.
2    Varshavsky told Mr. Zheleznyak, unless Mr. Varshavsky received
3    payment from Mr. Leontiev, he would arrange to have
4    Mr. Leontiev's name linked to terrorism financing.
5           In or around March 2016, Mr. Varshavsky told
6    Mr. Zheleznyak that if Mr. Leontiev paid him approximately $40
7    million, Mr. Varshavsky would arrange it so that authorities in
8    Russia would cease their investigation of certain individuals
9    associated with Probusinessbank, etc.
10          Those were all oral is my question?
11          MR. WEIGEL:  Yes, your Honor.
12          THE COURT:  The Court will take the possibility that
13   there may be some problems in obtaining information from the
14   Russian government, but I still think we should assume the
15   best, and it does sound to me that a lot of the information
16   that will be sought that is relevant will be obtained through
17   the plaintiff or through the plaintiff's control of various
18   entities.
19          So going to the case management plan, the case is to
20   be tried to a jury.
21          The joinder of -- does anyone anticipate any
22   additional parties?
23          MR. HECKER:  We think it's likely that we will be
24   bringing a cross-claim that would involve additional parties.
25          THE COURT:  When is your time to answer?

1         MR. HECKER:  I believe at the moment it's the 24th,
2    next Friday.
3         THE COURT:  When are you seeking?
4         MR. HECKER:  I'm sorry?
5         THE COURT:  Are you seeking an extension on that?
6         MR. HECKER:  May I have one moment, your Honor?
7         THE COURT:  My concern is, if there are going to be
8    new parties, I want them brought in sooner than later.
9         MR. HECKER:  Understood.  The proposed case management
10   plan has joinder of additional parties by July 15.
11        THE COURT:  So that's fine.  Yes?
12        MR. HECKER:  That's fine.
13        THE COURT:  OK.  Good.
14             Amendment of pleadings without leave of the Court,
15   same date.
16             Something that's not part of my case management plan,
17   it's really set by law, but you propose that the Rule 26(a)(1)
18   initial disclosures be by July 8.  That's fine.
19             First requests for production of documents July 1.
20             Interrogatories, the very limited interrogatories that
21   I permit and that our local rule permits, also July 1.
22             Proponent expert report, what kind of expert does
23   anyone have in mind?
24        MR. HECKER:  We are not sure, Judge, but there may be
25   a need for a Russian law expert or potentially a Cypriot law

G6H8LEOC

1   expert.
2           THE COURT:  That's possible.
3           I will set the proposal there October 7 for
4   proponent's and October 21 for opponent's.
5           All depositions to be completed by October 28.
6           Requests to admit served by September 28.
7           All discovery to be completed by October 28.
8           Moving papers on summary judgment, you had November 2.
9   I will give you a little more time in that.  Let's say November
10  10.
11          Answering papers November 24.
12          Reply papers December 1.
13          Final pretrial conference, let's look at December 9.
14          THE DEPUTY CLERK:  December 9, a Friday, any time you
15  like.
16          THE COURT:  December 9 at 3:30.
17          MR. WEIGEL:  Your Honor, November 24 is Thanksgiving.
18          THE COURT:  Good point.  But I didn't think Gibson
19  Dunn took that as a holiday.
20          MR. WEIGEL:  Well, it's not clear whether we will be
21  moving or responding, and I was concerned about Debevoise.
22          THE COURT:  Let's move that to the following Monday
23  because then your associates can spend the Thanksgiving weekend
24  preparing.
25          MR. WEIGEL:  Perhaps Tuesday?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1          THE COURT:  Tuesday is fine.
2          That would be November 29.
3          Then reply papers December 6.
4          Then we will have the final pretrial conference on
5     December 15, Thursday, at 3:30.
6          So that changes the ready for trial date to December
7     15.  So I can't imagine, Mr. Hecker, that you would have any
8     problem, given that extension, in fulfilling all of the
9     discovery requirements.
10         So I will sign the case management plan and it will be
11    filed electronically and therefore available to both sides.
12         Is there anything else that we need to take up today?
13         MR. WEIGEL:  No, your Honor.
14         MR. HECKER:  No, your Honor.
15         THE COURT:  Very good.  Thanks very much.
16         (Adjourned)