UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

SERGEY LEONTIEV,

                          Plaintiff,

           -against-

ALEXANDER VARSHAVSKY,

                       Defendant.

No. 16-cv-03595 (JSR)

------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S FIRST CAUSE OF ACTION**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Sergey Leontiev*

# TABLE OF AUTHORITIES

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 3

STANDARD OF REVIEW ..................................................................................... 6

ARGUMENT ......................................................................................................... 7

I.   This Court Has the Authority to Order the Declaratory Relief Sought by
     Mr. Leontiev ............................................................................................... 7

II.  Mr. Varshavsky Has No Rights Under the Alleged Loans .................................. 8

III. Mr. Varshavsky Fails to Plead That Mr. Leontiev is Personally Liable for
     the Alleged Loans ...................................................................................... 11

     A.   Mr. Varshavsky's Answer Contains No Well-Pleaded Factual
          Allegations ....................................................................................... 13

     B.   Under Cypriot Law, Mr. Leontiev Is Not Personally Liable for the
          Purported Debts of Ambika and Vennop ............................................... 15

     C.   Under Russian Law, Mr. Leontiev Is Not Personally Liable for the
          Debts of Financial Group "Life" ......................................................... 19

CONCLUSION .................................................................................................... 21

# TABLE OF AUTHORITIES

Page

**Cases**

*Artic Ocean Int'l., Ltd. v. High Seas Shipping Ltd.*,
   622 F. Supp. 2d 46 (S.D.N.Y. 2009)..................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................13

*In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*,
   865 F. Supp. 2d 469 (S.D.N.Y. 2012).................................................................................6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................13

*Cont'l Cas. Co. v. Coastal Sav. Bank*,
   977 F.2d 734 (2d Cir. 1992)................................................................................................7

*Cortlandt St. Recovery Corp. v. Hellas Telecommc'ns*,
   790 F.3d 411 (2d Cir. 2015).........................................................................................9, 10

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   411 F.3d 384 (2d Cir. 2005)................................................................................................7

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
   228 F.R.D. 508 (S.D.N.Y. 2005) ..................................................................................11, 12

*Fletcher v. Atex, Inc.*,
   68 F.3d 1451 (2d Cir. 1995)..............................................................................................11

*Gabriel Capital, LP v. NatWest Fin., Inc.*,
   122 F. Supp. 2d 407 (S.D.N.Y. 2000)...............................................................................16

*Hillside Metro Assocs., LLC v. JP Morgan Chase Bank, N.A.*,
   No. 10-cv-1772 (JG), 2011 WL 5008368 (E.D.N.Y. Oct. 20, 2011) ......................................8

*India.Com, Inc. v. Dalal*,
   412 F.3d 315 (2d Cir. 2005)................................................................................................8

*Jonas v. Estate of Leven*,
   116 F. Supp. 3d 314 (S.D.N.Y. 2015)...............................................................................11

*L–7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011)................................................................................................6

*Melodrama Pub., LLC v. Santiago*,
   No. 12-cv-7830 (JSR), 2013 WL 1700929 (S.D.N.Y. Apr. 11, 2013) ......................................6

# TABLE OF AUTHORITIES
## (continued)

Page

*MWH Int'l., Inc v. Inversora Murten, S.A.*,
   No. 11-cv-2444, 2015 WL 728097 (S.D.N.Y. Feb. 11. 2015) ................................................11

*NCC Sunday Inserts Inc. v. World Color Press, Inc.*,
   692 F. Supp. 327 (S.D.N.Y. 1988) ................................................................................12

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
   53 F. Supp. 3d 705 (S.D.N.Y. 2014)..............................................................................9

*Roberts v. Babkiewicz*,
   582 F.3d 418 (2d Cir. 2009)............................................................................................6

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*,
   112 F. Supp. 3d 160 (S.D.N.Y. 2015)..............................................................................6

*Solutia Inc. v. FMC Corp.*,
   385 F. Supp. 2d 324 (S.D.N.Y. 2005)..............................................................................10

*Strojmaterialintorg v. Russian Am. Commercial Corp.*,
   815 F. Supp. 103 (E.D.N.Y. 1993) ................................................................................14

*In re Tyson*,
   433 B.R. 68 (S.D.N.Y. 2010)..................................................................................16, 17

*United Feature Syndicate v. Miller Features Syndicate, Inc.*,
   216 F. Supp. 2d 198 (S.D.N.Y. 2002)........................................................................12, 14

*United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*,
   988 F. Supp. 367 (S.D.N.Y. 1997) ................................................................................10

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008)........................................................................................10

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)....................................................................................................7

*Zinaman v. USTS N.Y., Inc.*,
   798 F. Supp. 128 (S.D.N.Y. 1992) ................................................................................13

**Statutes**

28 U.S.C. § 2201(a) ................................................................................................7

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Rules**

Fed. R. Civ. P. 8(a) ................................................................................................12, 14

Fed. R. Civ. P. 9(b) ...............................................................................................12, 14

Fed. R. Civ. P. 12(c) ...............................................................................................6, 11

Plaintiff Sergey Leontiev ("Plaintiff" or "Mr. Leontiev") respectfully submits this memorandum of law in support of his motion for judgment on the pleadings on the Complaint's first cause of action.[1]

## PRELIMINARY STATEMENT

This action takes place against the backdrop of the collapse of the Russian financial system and a massive forced state consolidation of the Russian banking industry.  Although Plaintiff Sergey Leontiev's bank, Probusinessbank, had received multiple clean opinions from independent auditors, including from ZAO Deloitte & Touche CIS, it drew the attention of Russia's Central Bank regulators in the fall of 2014.  Probusinessbank made every effort to comply with the Central Bank's requests and had its solvency confirmed on at least two occasions after the investigation started.  Nevertheless, on August 7, 2015, one day after Probusinessbank was told that it was in compliance with nearly all requirements, temporary administrators from Russia's Deposit Insurance Agency arrived at Probusinessbank's offices and disconnected its access to banking networks.  Five days later, on August 12, the Central Bank revoked Probusinessbank's license and then took the bank into bankruptcy.

Defendant Alexander Varshavsky chose not to file any claims against Probusinessbank in those bankruptcy proceedings.  Instead, for nearly a year, Mr. Varshavsky has hounded Mr. Leontiev around the world and demanded payment of tens of millions of dollars for a debt that Mr. Varshavsky claims Mr. Leontiev owes him (the "Alleged Loans").  In support of this specious campaign, Mr. Varshavsky has trotted out a motley collection of promissory notes, loan agreements, and guarantees that he claims establish a debt owed to him by Mr. Leontiev.  Yet, as

---

[1]  All references to "Compl. ¶ _" are to the Complaint filed in this action on May 13, 2016 (Dkt. 1).  All references to "Ans. __" are to the Answer filed on June 24, 2016. (Dkt. 16).

1

Mr. Varshavsky admits, these documents show debts owed to various individuals and corporations—none of which is Mr. Varshavsky—by three corporate entities—none of which is Mr. Leontiev.  Neither Mr. Varshavsky's name nor Mr. Leontiev's name appears on the face of these documents.  Despite his dogged insistence that Mr. Leontiev owes him money, Mr. Varshavsky has failed time and again to provide any proof that Mr. Leontiev is personally liable for the Alleged Loans or that Mr. Varshavsky has the authority to collect any such debt.

Mr. Varshavsky's most recent failure comes in the form of his Answer to Mr. Leontiev's declaratory judgment claim.  The Answer provides no factual support for Mr. Varshavsky's persistent assertion that Mr. Leontiev owes him tens of millions of dollars and concedes that, among other things, Mr. Varshavsky has no proof (a) of his authority to collect the Alleged Loans (Ans. ¶ 6), nor (b) that Mr. Leontiev used any of the funds in his personal capacity (Ans. ¶ 34).  Mr. Varshavsky even fails to allege the amount of money that he believes he is owed and the dates on which such obligations were established.  Instead, Mr. Varshavsky articulates his theory of Mr. Leontiev's "personal liability" for the Alleged Loans in a single paragraph consisting of vague, unsupported, and conclusory statements apparently intended to justify veil-piercing or alter ego liability.  *See* Ans. at 2.  Such threadbare allegations do not come close to meeting this Court's pleading standards or the substantive elements of veil-piercing under the laws of the nations in which the borrower entities are incorporated.

Mr. Varshavsky's Answer conclusively demonstrates that Mr. Leontiev is entitled to the declaratory judgment sought in the Complaint's first cause of action for two independent reasons.  *First*, Mr. Varshavsky has no rights with respect to the Alleged Loans.  As he admits, Mr. Varshavsky is not a party to any of the promissory notes, loan agreements, or guarantees at issue in this case.  Nor has he alleged facts showing that he is a third party beneficiary of these

documents or that he has obtained a valid and complete assignment of rights with respect to the Alleged Loans.

*Second*, Mr. Varshavsky's Answer is devoid of any factual allegations to support any theory of Mr. Leontiev's personal liability for the Alleged Loans—whether to Mr. Varshavsky or to anyone else.  Mr. Varshavsky's theory of liability is set forth in a single conclusory paragraph lacking the names of entities, the dates of suspect transactions, and any number of other pertinent factual allegations.  If this Answer were a cause of action or a counterclaim for breach of contract, the Court would be required to dismiss it.  As a "defense" to Mr. Leontiev's declaratory judgment action, it is no less infirm.  Because Mr. Varshavsky has failed to articulate a cognizable claim or defense in this action, the Court should declare that Mr. Leontiev does not owe a debt or obligation to Mr. Varshavsky, or anyone acting in concert or participation with Mr. Varshavsky, relating to the Alleged Loans.

## STATEMENT OF FACTS

Unless otherwise noted, the following facts are alleged in the Complaint and admitted in the Answer.

Mr. Leontiev is a well-known and highly regarded Russian businessman.  Compl. ¶ 1; Ans. ¶ 1.  In 1993, Mr. Leontiev co-founded Probusinessbank, a full-service commercial bank headquartered in Moscow.  Compl. ¶ 19; Ans. ¶ 19.  In August 2015, the Russian Central Bank revoked Probusinessbank's license.  Compl. ¶¶ 1, 22; Ans. ¶¶ 1, 22.  Several days after revoking Probusinessbank's license, the Central Bank filed a petition for bankruptcy on behalf of Probusinessbank.  Compl. ¶ 24; Ans. ¶ 24.  Mr. Leontiev and his friend and business associate Alexander Zheleznyak were forced to flee Russia following the state seizure of the bank. Compl. ¶¶ 1, 9, 19, Ans. ¶¶ 1, 9, 19.

3

Mr. Varshavsky is a Russian-born, naturalized United States citizen, who resides in Holmdel, New Jersey.  Compl. ¶ 2; Ans. ¶ 2.  Mr. Varshavsky is a millionaire with numerous business and property interests in the United States and Russia.  Compl. ¶¶ 2, 15, 17, 25-27; Ans. ¶¶ 2, 15, 17, 25-27.  In or around August 2015, Mr. Varshavsky first contacted Mr. Leontiev to arrange a meeting in Moscow.  Compl. ¶ 28; Ans. ¶ 28.  At that meeting, Mr. Varshavsky demanded repayment of a significant debt.[2]  Compl. ¶ 28; Ans. ¶ 28.  Prior to this meeting, Mr. Leontiev had never met Mr. Varshavsky.  Compl. ¶ 28; Ans. ¶ 28.  Shortly thereafter, Mr. Leontiev and Mr. Varshavsky met in London, where Mr. Varshavsky demanded that Mr. Leontiev agree to a repayment schedule for the Alleged Loans.  Compl. ¶ 30; Ans. ¶ 30.  On January 15, 2016, Mr. Varshavsky and Mr. Leontiev met in New York, together with their respective counsel, to discuss Mr. Varshavsky's demands for repayment of the Alleged Loans.  Compl. ¶ 31; Ans. ¶ 31.[3]

Following this meeting, Mr. Varshavsky, through counsel, provided Mr. Leontiev's counsel with copies of various loan agreements, promissory notes, and guarantees that purportedly comprised the documents underlying the Alleged Loans.  Compl. ¶ 32; Ans. ¶ 32.[4]  These documents, listed in Appendices A-C to the Complaint and attached as Exhibits A-C to the accompanying Declaration of Marshall King ("King Decl."), consist of the following:

---

[2]  The Complaint alleges that Mr. Varshavsky demanded payment of $100 million.  Compl. ¶ 28.  Mr. Varshavsky's Answer admits that he arranged a meeting in Moscow at which he demanded payment of a debt, but refuses to specify the amount of the debt or any other pertinent details.  Ans. ¶ 28.

[3]  The Complaint alleges that Mr. Varshavsky also made numerous demands for payment through communications with Mr. Zheleznyak.  Compl. ¶¶ 8, 36-37.  Mr. Varshavsky denies these allegations.  Ans. ¶¶ 8, 36-37.

[4]  The Complaint alleges that Mr. Varshavsky ignored Mr. Leontiev's prior requests for documentation or explanation of his basis for demanding payment from Mr. Leontiev.  Compl. ¶ 31.  Mr. Varshavsky denies this allegation.  Ans. ¶ 31.

- **Promissory Notes:**  There are 29 promissory notes in total, issued by two different corporate entities, Financial Group "Life" (a Russian closed joint-stock company) and Vennop Trading Limited ("Vennop") (a Cypriot corporation), and made out to three different payees, Karen Avagumyan, Igor Renich, and Diana Karapetyan.  The purported principal amount shown on the face of these notes is approximately $52 million.[5]

- **Loan Agreements:**  There are 2 loan agreements, along with amendments thereto, purporting to represent a loan between New York Motors Moscow or Avilon Automobile Group ("Avilon") as lender, and Ambika Investments Limited ("Ambika") (a Cypriot corporation) as borrower.  The loan agreements were consolidated in December 2014.  The purported principal amount shown on the face of the outstanding loan agreement is approximately $27.6 million.

- **Guarantees:**  There are 5 guarantees of loan agreements between Avilon and Ambika, each of which was issued by Probusinessbank as guarantor and each of which has expired.

Mr. Varshavsky admits, as he must, that neither his name nor Mr. Leontiev's name appears on the face of these documents.  Ans. ¶ 33.  Moreover, Mr. Varshavsky admits that he has neither "provided documentation of his authority to collect any monies owed under the[se] documents," Ans. ¶ 6, nor "provided documentation that any funds were transferred to or used by Mr. Leontiev in his personal capacity," Ans. ¶ 34.  Mr. Varshavsky further admits that his counsel told Mr. Leontiev's counsel that the funds reflected in these documents were lent to

---

[5]  Four of the promissory notes were made out in Euros.  The approximate principal amount of these notes was calculated using the exchange rate as of August 2, 2016.

companies controlled by Probusinessbank and were used by the bank for various bank-related projects.  Ans. ¶ 35.  This, of course, is at odds with Mr. Varshavsky's general allegation that Mr. Leontiev *personally* controlled the borrowers and used the funds for his *personal* benefit. Finally, Mr. Varshavsky admits that his counsel told Mr. Leontiev's counsel that Mr. Leontiev "acknowledged liability" for the Alleged Loans, but fails to allege any facts to support his counsel's assertion.  Compl. ¶ 40; Ans. ¶ 40.

## STANDARD OF REVIEW

"A motion for judgment on the pleadings pursuant to Rule 12(c) is governed by the same standards as a 12(b)(6) motion to dismiss for failure to state a claim."  *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 112 F. Supp. 3d 160, 163 (S.D.N.Y. 2015).  The Court may consider "'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'"  *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).  Where the plaintiff is the moving party, "the Court must accept as true the non-movant's allegations and draw all reasonable inferences in the non-movant's favor."  *Melodrama Pub., LLC v. Santiago*, No. 12-cv-7830 (JSR), 2013 WL 1700929, at *1 (S.D.N.Y. Apr. 11, 2013).  "The Court need not accord legal conclusions, deductions or opinions couched as factual allegations a presumption of truthfulness."  *In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 865 F. Supp. 2d 469, 471-72 (S.D.N.Y. 2012) (internal quotation marks and other alterations omitted).

## ARGUMENT

I.    **This Court Has the Authority to Order the Declaratory Relief Sought by Mr. Leontiev**

The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Any such declaratory relief has "the force and effect of a final judgment or decree." *Id.* The DJA grants courts broad discretion in determining whether or not to exercise jurisdiction over a proposed declaratory action. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83 (1995). The Second Circuit has held that federal district courts should resolve declaratory judgment actions when the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue" or "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (internal citation omitted); *see also Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).

Mr. Varshavsky does not dispute that there is an actual case or controversy in this case regarding the existence (or non-existence) of any valid debt or obligation owed by Mr. Leontiev to Mr. Varshavsky, nor does he argue that this Court should decline to hear Mr. Leontiev's claim for declaratory relief as a matter of discretion. *See* Ans. ¶ 42; Def. Mot. to Dismiss Pl.'s Second Cause of Action (Dkt. 15), at 1 ("Mr. Varshavsky is not moving to dismiss Mr. Leontiev's declaratory judgment claim; instead, he intends to litigate that claim to judgment against Mr.

Leontiev.").[6]  Because all parties agree that declaratory relief would provide clarity with regard to Mr. Leontiev's obligations to Mr. Varshavsky regarding the Alleged Loans, the Court should exercise its discretion to hear the claim.

## II.     Mr. Varshavsky Has No Rights Under the Alleged Loans

Mr. Varshavsky has not filed a counterclaim for breach of contract to enforce his so-called "rights" to collect the Alleged Loans.  Instead, Mr. Varshavsky filed an Answer to Mr. Leontiev's cause of action for a declaratory judgment seeking to "litigat[e] this case" and "prov[e] Plaintiff's personal liability."  Ans. at 2.  But, as the documents and Mr. Varshavsky's threadbare Answer make patently evident, he has no rights under the Alleged Loans and thus, no basis on which to demand payment from Mr. Leontiev.

Generally speaking, only parties to a contract have the right to enforce the terms of that agreement.  *See Hillside Metro Assocs., LLC v. JP Morgan Chase Bank, N.A.*, No. 10-cv-1772 (JG), 2011 WL 5008368, at *7 (E.D.N.Y. Oct. 20, 2011) ("Under general contract law principles, a contract typically vests only its signatories with rights, and non-parties usually have no substantive interest in seeing the contract enforced.").  While an intended "third party beneficiary" of an agreement may also enforce contractual rights, it may do so only where a contract shows, on its face, "an intent to benefit th[at] third party." *India.Com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005).  Finally, and as the Second Circuit recently explained, even "an assignment of rights to collect payments . . . and to pursue all remedies" is insufficient to confer

---

[6]  Having failed to move to dismiss the declaratory judgment claim and, in fact, having represented to the Court that he intends to litigate it, it would be inconsistent for Mr. Varshavsky to now argue in opposition to this motion that the Court should decline to exercise jurisdiction over the claim.  Mr. Varshavsky has engaged in a concerted effort to collect the Alleged Loans from Mr. Leontiev in New York and has agreed to litigate this claim in this Court.

the right to enforce an agreement.  *Cortlandt St. Recovery Corp. v. Hellas Telecommc'ns*, 790

F.3d 411, 420 (2d Cir. 2015).  "[A] purported assignee of a claim must plead a proprietary

interest in that claim, and not simply the ability to pursue the claim on behalf of another" in order

to have legal authority to enforce any rights under that claim.  *Id.*

  Mr. Varshavsky admits, as he must, that he is not a party to any of the guarantees, loan

agreements, or promissory notes.  *See* Ans. ¶ 6; King Decl., Exh. D at 9:20-22 (6/17/16

Transcript of Initial Conference).  These documents, Mr. Varshavsky concedes, "speak for

themselves."  Ans. ¶ 32; King Decl., Exhs. A-C.  Even in his Answer, Mr. Varshavsky fails to

allege the amount that Mr. Leontiev purportedly owes him.  *See* Ans. ¶¶ 3, 11, 28, 30-31

(referencing an unspecified "debt").  In Mr. Varshavsky's reply brief on his motion to dismiss

Mr. Leontiev's intentional infliction of emotional distress claim, he tacitly acknowledges that he

is personally owed no money.  *See* Reply Br. in Support of Defendant's Mot. to Dismiss Pl.'s

Second Cause of Action (Dkt. 21), at 3 (referencing efforts by "creditors, acting through Mr.

Varshavsky and through counsel, to obtain repayment of funds").  There is no question that Mr.

Varshavsky lacks any rights with regard to the Alleged Loans as a party to the agreements.

  Moreover, Mr. Varshavsky has pleaded no facts showing that he is a third party

beneficiary of any of the agreements underlying the Alleged Loans.  None of the agreements at

issue in this case evidence the intent to benefit Mr. Varshavsky.  In fact, the five

Probusinessbank guarantees of the purported loans from Avilon to Ambika explicitly provide

that the "rights under th[e] [g]uarantee[s] may not be assigned to third parties."  King Decl., Exh.

C at 1-4, 6.  At best, public records establish that Mr. Varshavsky is a shareholder and officer of

Avilon, the lender on the face of the loan agreements with Ambika.  That fact standing alone

does not endow an individual with third party beneficiary rights.  *See Restis v. Am. Coal. Against*

*Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 728 (S.D.N.Y. 2014) (rejecting argument that plaintiff is a third party beneficiary "simply by virtue of his corporate ownership interests"); *Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 338 (S.D.N.Y. 2005) ("[A] benefit received through corporate ownership is insufficient to establish rights as a third-party beneficiary."); *United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 988 F. Supp. 367, 372 (S.D.N.Y.1997) (finding that the "indirect benefit" that is "provided to any parent corporation from assets held by its wholly owned subsidiaries . . . is insufficient to establish third-party beneficiary status"). Accordingly, Mr. Varshavsky has no rights under these agreements as a third party beneficiary.

Finally, Mr. Varshavsky admits that he has not "provided documentation of his authority to collect any monies owed under the documents" underlying the Alleged Loans. Ans. ¶ 6. His Answer is devoid of any factual allegations establishing such authority and it fails to attach the documentary evidence required to establish the type of assignment sufficient to confer that authority. *See Cortlandt St.*, 790 F.3d at 418. The Second Circuit has been clear: "[t]o assign a claim effectively, the claim's owner must manifest an intention to make the assignee the owner of the claim." *Id.* (internal quotation marks omitted). While "[a]n assignor's grant of . . . the power to commence and prosecute to final consummation or compromise any suits, actions, or proceedings may validly create a power of attorney," it does not "validly assign a claim, because it does not purport to transfer title or ownership of one." *Id.* (internal quotation marks and citation omitted); *accord W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (holding that a "mere power-of-attorney" does not confer authority to enforce a claim held by another). Mr. Varshavsky does not allege that any of the Alleged Loans have been validly assigned to him.

For these reasons, Mr. Leontiev is entitled to a declaratory judgment that he does not owe any money arising from the Alleged Loans to Mr. Varshavsky.

## III.   Mr. Varshavsky Fails to Plead That Mr. Leontiev is Personally Liable for the Alleged Loans

Even if Mr. Varshavsky had rights with regard to the Alleged Loans, Mr. Leontiev is entitled to a declaratory judgment for a second, independent reason—Mr. Varshavsky fails to sufficiently plead Mr. Leontiev's personal liability for those debts.  Mr. Varshavsky's Answer summarily states—in a single, unsupported paragraph—that Mr. Leontiev is personally liable for the Alleged Loans because he purportedly "set up" unnamed companies that "took in" unidentified funds and "caused" unidentified funds to be transferred to other unnamed entities. Ans. at 2.  These are not factual allegations that may be credited on a motion under Rule 12(c).

Although he does not use the terms, Mr. Varshavsky appears to assert a theory of liability based on veil-piercing or alter ego liability.  But to do so, Mr. Varshavsky must make detailed factual allegations from which this Court may draw the reasonable inference that the corporate forms of Ambika, Vennop, and Financial Group "Life" should be disregarded under Cypriot and Russian law and that somehow, Mr. Leontiev is personally liable for these companies' purported debts.[7]  *See EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y.

---

[7]   "Under New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (alterations and internal quotation marks omitted).  For foreign corporations, courts in this Circuit apply the foreign nation's veil-piercing law.  *See MWH Int'l., Inc v. Inversora Murten, S.A.*, No. 11-cv-2444, 2015 WL 728097, at * 10 (S.D.N.Y. Feb. 11. 2015) ("Because this claim requires the Court to disregard EP-Hidro's corporate form, the Court agrees with the Energo Defendants that Serbian law applies."); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 330 (S.D.N.Y. 2015) ("Since Barneli was incorporated in the Republic of Panama . . . this Court will apply Panama's veil-piercing doctrine to plaintiffs' alter ego allegations").  Accordingly, the alter ego liability of Mr. Leontiev with regard to Ambika and Vennop is governed by Cypriot law, while alter ego liability with regard to Financial Group "Life" is governed by Russian law.

2005) ("[A] party seeking application of the doctrine must come forward with factual allegations as to [the] elements of the veil-piercing claim.").  Veil-piercing and alter ego claims are generally subject to the notice pleading requirements of Rule 8(a), but where such claims arise from fraud, Rule 9(b)'s heightened pleading standards apply and the pleading must state "with particularity . . . the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *United Feature Syndicate v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 223 (S.D.N.Y. 2002).[8]  A veil-piercing claim based on allegations of fraudulent conveyance or intentional undercapitalization is subject to Rule 9(b).  *United Feature*, 216 F. Supp. 2d at 222-24; *EED Holdings*, 228 F.R.D. at 512.

Mr. Varshavsky's veil-piercing allegations—contained entirely within a single paragraph—are conclusory and fail to satisfy even Rule 8(a)'s lenient pleading requirements, much less the higher standard of Rule 9(b), which applies here because the argument alleges fraud.  *See* Ans. at 2 (alleging that Mr. Leontiev intended "to obscure the flow of money" and caused transfers to be made so as to "leav[e] the borrowers insolvent and unable to repay the loaned amounts").  Not only has Mr. Varshavsky failed to articulate a basis on which the corporate forms of the borrower entities should be disregarded under the laws of the nations of incorporation, he has also failed to state any well-pleaded factual allegations that would render Mr. Leontiev personally liable for any debts that may have been incurred by those entities.  For these reasons, Mr. Leontiev is entitled to a declaratory judgment that he does not owe any debts associated with the Alleged Loans.

---

[8]  While the substantive elements of a veil-piercing or alter ego claim are determined by the law of the state of incorporation, the pleading standards are procedural and governed by the Federal Rules of Civil Procedure.  *See NCC Sunday Inserts Inc. v. World Color Press, Inc.*, 692 F. Supp. 327, 330 (S.D.N.Y. 1988).

### A.      Mr. Varshavsky's Answer Contains No Well-Pleaded Factual Allegations

Mr. Varshavsky fails to make a single well-pleaded factual allegation to support the

conclusion that Mr. Leontiev is personally liable for the Alleged Loans.  To survive a plaintiff's

motion for judgment on the pleadings, the answer must allege a cognizable defense.  Where, as

here, Mr. Varshavsky seeks to avail himself of the veil-piercing doctrine, he must allege "factual

content that allows the court to draw the reasonable inference that [an individual] is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Zinaman v. USTS N.Y., Inc.*,

798 F. Supp. 128, 132 (S.D.N.Y. 1992) (stating that alter ego liability must be "pleaded and

proven").  As the Supreme Court stated in *Iqbal*, "[t]hreadbare recitals" and "mere conclusory

statements" are insufficient—a court is "'not bound to accept as true a legal conclusion couched

as a factual allegation.'"  556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007)).

> The Answer's "factual allegations" consist of a single paragraph:
>
> Defendant believes and intends to establish that over the course of several years,
> Plaintiff set up a complicated web of companies in various off-shore jurisdictions
> and in the names of various straw men, which Plaintiff called the "cloud" because
> its purpose was to obscure the flow of money between and among those
> companies.  Plaintiff then took in hundreds of millions of dollars through various
> other shell companies he controlled, including the borrowers at issue in this
> dispute, which acted as "gates" through which money flowed into the cloud.
> After those funds passed through the gates, Plaintiff caused them to be transferred
> between the various entities he controlled inside the cloud, and ultimately to be
> diverted to other companies he owned and controlled, leaving the borrowers
> insolvent and unable to repay the loaned amounts even as he obtained hundreds of
> millions of dollars for his own benefit.

Ans. at 2.  Mr. Varshavsky's lone paragraph does not identify the names of any "cloud" or "gate"

entities, the nature of Mr. Leontiev's legal or contractual relationship to any of those entities, the

dates or amounts of any suspect transactions into or out of the "cloud" or "gate" entities, any

facts to support the legal conclusion that Mr. Leontiev "controlled" any "cloud" or "gate"

entities, any facts to support the legal conclusion that any of the borrower entities are insolvent, or any facts to support the legal conclusion that Mr. Leontiev used any allegedly loaned funds for his personal benefit.

Needless to say, a threadbare and conclusory paragraph, utterly unsupported by detailed factual allegations, comes nowhere near meeting the exacting pleading standards of Rule 9(b).  It does not even meet the more lenient notice pleading standards of Rule 8(a) and *Iqbal*.  If this paragraph constituted a cause of action or a counterclaim, it would rightfully be dismissed.  *See, e.g.*, *Artic Ocean Int'l., Ltd. v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 54 (S.D.N.Y. 2009) (dismissing complaint because plaintiff made only "conclusory allegations . . . to support its alter ego theory of liability" including that Defendant "dominates and controls" numerous contracting entities and uses them as "shell[s]" to "conduct[] its business" and "as 'pass through' entities" to "insulate itself from creditors"); *Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F. Supp. 103, 105 (E.D.N.Y. 1993) (to pierce the corporate veil, "a plaintiff must do more than conclusorily state" that an individual "exercises dominion and control over the corporation" and "must allege specific facts showing that the" individual "is doing business in his or her individual capacity without regard to corporate formality"); *United Feature*, 216 F. Supp. 2d at 221 (dismissing fraudulent conveyance claim because the complaint failed to allege the "'particulars' of the allegedly fraudulent transfers" such as "the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, or the consideration paid").

Because the Answer fails to state any well-pleaded factual allegations supporting Mr. Leontiev's personal liability, or articulate any other theory as to why Mr. Leontiev is not entitled

to the declaratory relief he seeks, this Court should declare that Mr. Leontiev is not personally liable for any debts associated with the Alleged Loans.

> **B.**     **Under Cypriot Law, Mr. Leontiev Is Not Personally Liable for the Purported Debts of Ambika and Vennop**

Ambika and Vennop were incorporated under the laws of Cyprus on July 4, 2006 and January 10, 2013, respectively.  *See* King Decl., Exhs. G and H.  Mr. Varshavsky does not allege facts about the ownership or structure of these entities, although such information is publicly available in the Department of the Registrar of Companies and Official Receiver of the Republic of Cyprus.

Cyprus's Companies Law recognizes corporations as legal entities distinct from their shareholders.  Declaration of Andreas Haviaras ("Haviaras Decl.") ¶ 12.  The Companies Law draws extensively from the parallel English statute.  *See id.*  Cypriot courts also follow the English common law with regard to veil-piercing, specifically as set forth in *Solomon vs A. Salomon & Co. Ltd.* [1897] AC 22 (Exh. A to Haviaras Decl.) (holding that creditors of an insolvent company could not sue the company's shareholders to pay outstanding debts).[9]  *See* Haviaras Decl. ¶ 13; *Bank of Cyprus (Holdings) Ltd. v. Republic of Cyprus* (1985) 3 CLR 1883, 1184-85 (Exh. B to Haviaras Decl.) (applying *Salomon* rule); *Apostolou v. Ioannou* (2012) 1 CLR 604 (Exh. C to Haviaras Decl.) (applying recent English veil-piercing precedent).

Under English (and, thus, Cypriot) veil-piercing law, "ownership and control of a company are not of themselves sufficient to justify piercing the veil." *Ben Hashem v. Ali Shayif*, [2008] EWHC (Fam) 2380, [159].  However, "[u]nlike American law, English case law does not

---

[9]  Cyprus was a British Crown Colony until 1960.  The Courts of Justice Law provides that Cypriot courts shall apply both Cypriot law and English common law to the extent it does not contradict the Cypriot constitution.  *See* Haviaras Decl. ¶¶ 8, 9.

provide an enumerated set of factors that a court can evaluate in deciding whether to lift the corporate veil.'" *Gabriel Capital, LP v. NatWest Fin., Inc.*, 122 F. Supp. 2d 407, 433 n. 13 (S.D.N.Y. 2000) (internal quotation marks omitted).  The history and scope of English veil-piercing law was recently set forth in exhaustive detail in Judge Denise Cote's opinion in *In re Tyson*, 433 B.R. 68 (S.D.N.Y. 2010).  In her opinion, Judge Cote identified a number of key principles relevant here:

*First*, "the fact that a person engages in the carrying on of a business using a duly incorporated, yet seemingly artificial, entity is not sufficient to justify piercing that entity's veil." 433 B.R. at 86 (internal quotation marks omitted).  Instead, "[l]egal formalisms must be respected even at the risk of abiding a seeming injustice." *Id.*  For this reason, veil-piercing is "quite rare" under English law." *Id.; see also Ben Hashem*, [2008] EWHC (Fam) 2380, [160] ("[T]he court cannot pierce the corporate veil . . . merely because it is thought to be necessary in the interests of justice.").

*Second*, "courts may 'pierce the corporate veil only where special circumstances exist indicating that it is a mere façade concealing the true facts.'" *Tyson*, 433 B.R. at 87 (quoting *Woolfson v. Strathclyde Reg'l Council*, [1978] S.C. 90 (H.L.) 96).  "This requirement may be satisfied, in part, by evidence of the defendant's subjective intent to defraud." *Id.*  "[E]vidence of impropriety" is a "necessary" condition to justify veil-piercing, but impropriety on its own is insufficient; the impropriety must be linked to the use of the company structure to avoid or conceal liability. *Id*; *accord Ben Hashem*, [2008] EWHC (Fam) 2380, [161]-[162] ("[T]he court cannot . . . pierce the corporate veil merely because the company is involved in some impropriety. The impropriety must be linked to the use of the company structure to avoid or conceal liability.").

*Third*, a party's "ability to recover . . . on a veil-piercing theory turns on whether" an individual "had already incurred some liability" to the party "at the time he interposed the corporate structure." *Tyson*, 433 B.R. at 88.  In other words, the court is not "entitled to lift the veil as against a company . . . merely because the corporate structure has been used so as to ensure that the legal liability (if any) in respect of particular future activities of the company will fall on" someone else.  14 Halsbury's Laws of England ¶121 (5th ed. 2009).  As Judge Cote explained, the distinction in this principle is one between a defendant using a corporate structure to evade rights of relief others already possess against him and a defendant who uses a corporate structure to evade rights of relief others may possess against him in the future, the latter being "inherent in [English] corporate law." *Tyson*, 433 B.R. at 88.  In other words, to pierce the corporate veil on the theory that a company was set up to evade liabilities, the liabilities at issue must exist at the time of the transaction in question.  *Kensington Int'l Ltd v. Republic of Congo*, [2005] EWHC (QB) 2684, [185], [187] ("[T]ransactions or structures, which have no legal substance, and which are set up with a view to defeating ***existing*** claims of creditors against the entity responsible for setting up those transactions or structures and lying behind them, can, if they are purely a sham and a façade, be treated by the court as lacking validity.") (emphasis added).

*Finally*, Judge Cote noted that there is "no support in English law for the proposition that parties who are legally unrelated to a corporate entity may be held responsible for that entity's liabilities, at least in the absence of specific statutory authorities."  *Tyson*, 433 B.R. at 93.  Finding liability for an individual's use of someone else's "shell" corporation "runs counter to the principles of English law . . . that prohibit piercing the corporate veil on the basis of equity alone."  *Id.*

17

As set forth in the declaration of Andreas Haviaras, Cypriot courts follow these general principles of English common law.  *See* Haviaras Decl. ¶ 9.  The only circumstances in which Cypriot courts have permitted the lifting of a corporate veil have been cases involving tax avoidance or other efforts to avoid government regulation, or where a party was able to establish that the owner of a company used it as a sham and a vehicle to evade existing legal obligations. *See id.*  ¶ 15.  In addition to these common law principles, Section 311 of the Companies Law provides that a receiver, liquidator, or creditor of a company in formal "winding up" or liquidation proceedings may seek to hold an individual director personally liable if, "in the course of winding up a company, it appears that any business of the company has been carried on with the intent to defraud creditors of the company."  *See id*. ¶ 16.  For this section to apply, the company must be in pending liquidation proceedings.  *See id.*

Mr. Varshavsky's Answer does not make any of the factual allegations necessary to plausibly plead his entitlement to veil-piercing under Cypriot law.  Mr. Varshavsky's lone paragraph asserts, without support, that the "borrowers," including, presumably, Ambika and Vennop, were "gate[]" entities through which undefined sums of money "flowed into" unidentified "cloud" entities.  Ans. at 2.  He also alleges that Mr. Leontiev "caused" this money "to be transferred between the various entities he controlled inside the cloud" and "diverted" to other entities "he owned and controlled," which left Ambika and Vennop "insolvent and unable to repay the loaned amounts."  *Id.*  These allegations are unsupported and conclusory and, thus, cannot be credited.   Among the required factual allegations missing from Mr. Varshavsky's deficient pleading are any allegations pertaining to: (1) Mr. Leontiev's legal relationship to Ambika and Vennop; (2) the factual basis for the assertion that Mr. Leontiev "controlled" the entities; (3) the dates on which Ambika and Vennop were founded in relation to the dates of the

loan agreements, promissory notes, and guarantees (which were, in fact, more than two years prior to the date any of the purported obligations were incurred by those entities); (4) any facts showing that Mr. Leontiev "set up" these entities and that he did so with the requisite fraudulent intent; (5) the dates, amounts, and recipients of any transfers of funds into or out of any "cloud" or "gate" entities, including Ambika or Vennop; (6) whether Ambika or Vennop are in pending liquidation proceedings; and (7) any evidence that Mr. Leontiev directed the transfer of any funds from these entities or that he used any of these funds "for his own benefit." *See id.*

Because Mr. Varshavsky has utterly failed to plead the facts necessary to avail himself of the veil-piercing or "alter ego" doctrine under Cypriot law, Mr. Leontiev is entitled to a declaratory judgment that he is not personally liable for the Alleged Loans with regard to Ambika and Vennop.

### C.   Under Russian Law, Mr. Leontiev Is Not Personally Liable for the Debts of Financial Group "Life"

Financial Group "Life" is a closed joint-stock company incorporated under the laws of the Russian Federation.  *See* King Decl., Exh. F.  Mr. Varshavsky has failed to allege any facts about the ownership or corporate structure of Financial Group "Life," although such information is available in Russia's United State Registry of Legal Entities.

Russian corporate law recognizes the principle of limited liability and provides that the shareholders of a legal entity are not liable for the obligations of the entity.  *See* Declaration of Yuri Monastyrsky ("Monastyrsky Decl.") ¶ 3.  The doctrines of veil-piercing and alter ego liability with regard to third party creditors ***do not exist*** in Russian law except where the company is in formal bankruptcy proceedings.  *See id*.[10]

---

[10]   Article 53.1, recently added to the Russian Civil Code, provides the basis for a derivative action by which a solvent legal entity can seek compensation for the wrongdoing of its

*(Cont'd on next page)*

If a company is in formal bankruptcy proceedings, Article 3(3) of the Law on Joint-Stock Companies and Article 10(4) of the Law on Insolvency establish a procedure by which a third party creditor can seek to hold a shareholder or other controlling person liable for the obligations of a company where that company's assets are insufficient to meet its creditors' claims.  *See* Monastyrsky Decl. ¶¶ 3-5.[11]  Article 10(5) of the Law on Insolvency provides that any such claim must be filed and adjudicated as part of the bankruptcy proceedings in order to ensure orderly distribution of the estate's assets.  *See id.* ¶ 6.

Mr. Varshavsky's Answer does not make any allegations as to Mr. Leontiev's legal relationship to Financial Group "Life" and whether Financial Group "Life" is in formal bankruptcy proceedings.  In fact, Financial Group "Life" was dissolved without entering into bankruptcy proceedings in August 2015.[12]  Because a bankruptcy proceeding is a necessary predicate for the application of the extremely limited veil-piercing available under Russian law, Mr. Varshavsky could never bring such a claim against Financial Group "Life," in any forum. For these reasons, Mr. Leontiev is entitled to a declaratory judgment that he is not personally liable for the Alleged Loans with regard to Financial Group "Life."

---

*(Cont'd from previous page)*

shareholders.  Monastyrsky Decl. ¶ 7.  The rights created by Article 53.1 run to the legal entity itself and may not be asserted by third party creditors, who do not have standing to sue shareholders of a solvent entity.  *See id.*

[11]  These provisions are themselves subject to a number of exceptions, including that a shareholder or controlling person is liable only if he acted with prior knowledge that his actions would result in the company's insolvency.  *See* Monastyrsky Decl. ¶ 5.  A shareholder or controlling person is also exempt from liability if he acted reasonably and in good faith in the interests of the corporation.  *See id.*

[12]  Financial Group "Life" noticed its voluntary liquidation on April 1, 2015.  *See* King Decl., Exh. E.  Russia's United Registry of Legal Entities records show that Financial Group "Life" was formally dissolved on August 5, 2015.  *See* King Decl., Exh. F.

**CONCLUSION**

For the reasons set forth above, this Court should grant Mr. Leontiev's motion for

judgment on the pleadings as to the Complaint's first cause of action and declare that Mr.

Leontiev does not owe a debt or obligation to Mr. Varshavsky, or anyone acting in concert or

participation with Mr. Varshavsky, relating to the Alleged Loans.

Dated:   August 3, 2016
         New York, New York

                                        GIBSON, DUNN & CRUTCHER LLP


                                        By: /s/ Robert L. Weigel                    
                                             Robert L. Weigel
                                             Marshall R. King

                                        200 Park Avenue
                                        New York, New York 10166
                                        Telephone: 212.351.4000
                                        Facsimile: 212.351.4035

                                        *Attorneys for Plaintiff Sergey Leontiev*

21