# Exhibit C

Apostolou Marios and another v. Rodoula Ioannou and another (2012) 1 CLR 604          Page 1 of 17

## CYPRUS BAR ASSOCIATION



# CyLaw

(2012) 1 CLR 604

April 3, 2012

[HATZICHAMPIS, PAMPALLIS, CLERIDES, Justices]

*(Appeal no. 20/2010)*
*(Ref. with 21/2010)*

MARIOS APOSTOLOU,

*Appellant - Respondent,*

v.

RODOULA IOANNOU,

*Appellee - Applicant.*

*(Appeal no. 21/2010)*
*(Ref. with 20/2010)*

RODOULA IOANNOU,

*Appellant - Applicant,*

v.

MARIOS APOSTOLOU,

*Appellee - Respondent.*

*(Appeals nos. 20/2010, 21/2010)*

*Family law - Property disputes - Ratification of interim decision by the Family Court which finalized a provisional order - Whether it was necessary to take testimony in regard to valuations of real and movable property, and the precise juxtaposition of detailed information concerning charges on real estate and amount of loans.*

*Family law - Property disputes - What is the extent and scope of the court authority as it reaches an order which is directed directly against assets of a company, which is owned or controlled by one of the spouses - What are the limitations.*

*Family law - Property disputes - Lifting of corporate veil of a company of the spouse - To enable the lifting of a corporate veil, an improper action should be revealed, linked to the use of the corporate structure as virtual (sham) in order to conceal wrongdoing - They are issued only in cases where: (i) the spouse is the owner and the one exercising control of the company, and (ii) no third party conflicting interests exist - It can be accepted in cases where the referred assets of the company consist, for example, by the marital home or other property which is held for purposes other than those associated with ordinary business purposes.*

*Decisions and provisional orders - Urgency - Production of evidence by the Applicant for the actual intention of the defendant to alienate or encumber is not necessary - What counts is the potential effect that the alienation or encumbrance will have, if they occur, to the satisfaction of the court judgment that may be issued.*

The Applicant, following her application before the Family Court, secured a provisional order with which it was prohibited to the Respondent to proceed to specific acts in regard to property he held in the form of real estate, in his capacity as a shareholder or director of companies.

The order also extended to matters relating to the parties' marital home furniture and equipment, and the said order also allowed the Applicant to continue to possess a car.

The Respondent filed an opposition, and with an interim decision, the Family Court made its issued order final, since, for the reasons explained in its decision, it limited the order's scope to some of the assets which the order covered, as it had been issued ex-parte.

In its appeal no. 20/2010, the Respondent challenged said interim decision.

With appeal no. 21/2010, the Appellant-Applicant appealed the same interim decision as erroneous, as to the part with which the aforementioned prohibition against the Respondent was annulled, on certain actions with respect to real estate.

The two appeals were joined.

Appeal no. 20/2010.

Ground of Appeal no. 1.

The first instance Court did not properly examine the fact of the failure to disclose material information, and "did not address the issue at all."

It was decided that:

The Court, inter alia, and quite rightly, pointed out that the allegation on concealment should be specified by the person who raises it, and not be brought as a panacea in all cases. The Court concluded that in view of the annulment of part of the disputed order, it did not identify any concealment of material facts by the Appellee.

There was no error in the approach of the first instance Court.

Given the annulment of the order as to almost all assets in real estate of companies of which the Appellant is a shareholder and director, following a verification by the Court that it was not legally founded to maintain the order concerning said real assets, in force, the whole exercise of the alleged non-disclosure of material information as to the real assets became moot and academic.

Regarding other matters for which the Appellant complained that they were not disclosed, it was not required, within the context of that interim procedure, to take testimony with estimations of the values or real and movable property, the precise juxtaposition of details concerning encumbrance of real assets, loan amounts etc. It was expected that all these would be addressed in the context of the hearing of the main Application.

Ground of Appeal no. 2.

The first instance Court erroneously ruled that urgency of the requested remedy was indicated in the contested case.

It was decided that:

The Appellant challenged, with his appeal, the correctness of the interim decision, by which the previously issued provisional ex-parte order became final, as it was differentiated. In this context, it did not make sense to raise an issue as to whether the element of urgency existed or not.

The element of urgency, in terms of timing, was not the only factor that could positively affect the Court to issue an ex-parte order. Article 9 of Chapter 6 specifically states that the power of the Court is triggered when either the element of urgency or any other special occasion is proven.

This ground of appeal was not founded either.

Ground of Appeal no. 3.

It was wrongly ruled that the third condition of Article 32(1) of the Law on Courts was satisfied, in the sense that

the seized property of the Appellant was sufficient to ensure any decision in favor of the Appellee.

It was decided that:

What should be reminded again was the true nature of the contested interim procedure. With this procedure, no final and substantive rights of the parties were judged, so that testimony from both sides would be evaluated with strict rules of evidence, final findings would be extracted and rights and obligations would be distributed.

For the purposes of the order, as it was finally formed, the actual value of the property was not of particular importance.

Ground of Appeal no. 4.

The alleged delay in the service of the order to the same. The order was issued ex-parte on 10/22/2009, was drafted on 10/26/2009 and was served to him on 11/27/2009.

It was decided that:

The records cited by the Appellant were incorrect. The records could not establish the allegation that the Order was returnable in an unreasonable time.

Ground of Appeal no. 5.

The first instance Court incorrectly and/or in excess of its power or jurisdiction, broadly and vaguely bound property of the Appellant that could not be subject to the proceedings.

It was decided that:

As to bounding the car, the Appellant did not refer to any legal principle according to which the Court could not order to maintain the status quo that existed.

As for the equipment and furnishings of the house, particular attention had to be paid to that beyond the general reference to the order on the furniture and equipment, specific reference was made to the art works that were in said house, as described in a list of an insurance company which the Appellee presented to the Court.

The appeal was dismissed.

Appeal no. 21/2010.

The Appellant argued that the first instance Court wrongly terminated the enforcement of the order it had issued ex-parte, regarding specific real estate assets which were registered in companies whose sole shareholder and director was the Appellee.

It was decided that:

In its first instance interim decision, the Court relied on case law according to which, in property disputes pursuant to Law 232/1991, an actionable right exists only between the spouses, and the Court has no jurisdiction to hear a dispute between a spouse and a company.

A usual case, in which the English courts lift the protection of corporate veil, is where the company is used by the person controlling the company, simply as an artificial medium, a shield to avoid pre-existing obligations.

In this case the company had been established for good cause and conducted businesses for years, and the collapse of the marriage could not, by itself, transform the company into a shell company or a cover.

*The Appeals were dismissed without costs.*

*Referred cases:*

*Kasparis et al v. Andreou (2004) 1 (B) CLR 784,*

*Kyrisavva etc. v. Kyzi (2001) 1(B) CLR 1244,*

*C. Phasarias (Automotive Centre) Limited v. Concrete maker "Leonik" Limited (2001) 1 CLR 785,*

*Andreou v. Kyriakou et al (2002) 1 CLR 896,*

*Philippou v. Philippou (2003) 1 CLR 1343,*

*Green v. Green [1993] F.L.R 326,*

*Nicholas v. Nicholas [1988] F.L.R 285,*

*Mubarak v. Mubarak [2001] 1 F.L.R. 673,*

*Salomon v. Salomon & Co [1897] AC22,*

*Trustor AB v. Smallborne a.o. (No.2) [2001] J 1 W.L.R. 1177,*

*Hashem v. Shayif a.o. [2008] EWHC 2380.*

**Appeals.**

Appeals by the appellants against the decision of the Family Court of Limassol (Justice Konstantinou, Family Law), (application no. 36/09), dated 5/18/2010.

*Al. Koukounis*, for the Appellant, in appeal no. 20/2010, and for the Appellee in appeal no. 21/2010.

*A. Vrachimis* for the Appellee, in appeal no. 20/2010, and for the Appellant in appeal no. 21/2010.

*Cur. adv. vult.*

HATZICHAMPIS, Justice: The unanimous decision of the Court will be given by Justice Clerides.

**CLERIDES, Justice**: In the context of the application for Property Dispute Settlement, the Applicant Rodoula Ioannou, addressed the Family Court ex-parte, and secured, on 10/23/2009, the issuance of a provisional prohibition order,

which prohibited Respondent Marios Apostolou to proceed to specific acts regarding property which he possesses in the form of real estate, in his capacity as a shareholder or director of companies, as to the furnishings and equipment of the parties' marital home, etc., which order allowed the Applicant to continue to possess a car.

After service of the application and the provisional order, the Respondent filed an Opposition against the continuation of the enforcement of the issued order.

Upon a hearing, the Court, with its interim decision dated 5/18/2010, rendered its issued order final, since, for the reasons explained in its decision, it limited its extent as to some of the assets which the order covered, as it had been issued ex-parte. More specifically, the Court reduced the property to half its value, which was in the form shares held by the Respondent in 11 companies and terminated the enforcement of the order regarding the prohibition against the Respondent, as shareholder or director of two Cyprus companies and one company registered in Jersey, to sell, mortgage, etc. specific real estate registered in the name of the companies in Cyprus. The Court also terminated the enforcement of the prohibition against the Respondent, as a shareholder or director of Palatino Developments Ltd., to sell, mortgage, etc. nine real properties in total.

Both litigants, the Applicant and the Respondent, filed appeals against the interim decision.

With appeal no. 20/2010, the Appellant-Respondent argues that the interim decision dated 5/18/2010, which finalized the issued provisional order as limited, was erroneous

With appeal no. 21/2010, the Appellant-Applicant appealed the same interim decision as erroneous, as to the part with which the aforementioned prohibition against the Respondent was annulled, on certain actions with respect to real estate.

The two appeals were joined. We will first deal with appeal no. 20/2010.

Appeal no. 20/2010.

With his appeal, the Appellant raised and promoted, before the Court of Appeal, a total of five grounds of appeal, which we will examine below.

Ground of Appeal (no. 1).

With his Opposition, the Appellant had raised at the first instance an issue, that the Appellee had concealed from the Court, in her application, important and material records which, had they being brought before the Court, would have had an impact on its judgment. As such, the Appellant mentioned the failure of the Appellee to cite evidence of the value and encumbrances with which the real property was burdened, and that the property of the company Palatino Developments Company Ltd has now huge losses due to the economic crisis, while its property had been acquired with loans in excess of €20,000,000. Also that the remaining properties were burdened with too many mortgages for loans of approximately €10,000,000.

Under this ground of appeal, the Appellant complaints that the First Instance Court did not properly examine the fact of the failure to disclose material information, and "did not address the issue at all." Also, that the Court incorrectly correlated that issue only to the assets that were the subject of the canceled part of the order, while the issue of dismissal "concerned and concerns the object of the main Application but also of these proceedings."

We should first of all note that the original argument of the Appellant that the first instance Court "did not address the issue at all" is completely incorrect, unfair and, in any event, contradicts his other complaints that follow, from which it is shown that the Court actually addressed this issue.

In its interim decision the Court, on page 3, explicitly cites the allegations of the Appellant as to the non-disclosure. Subsequently, after the detailed examination of other grounds of the Opposition on the merits, as a result of which it concluded that a large part of the order should be annulled and another part should be limited, the Court, in page 7 of its decision, noted that, in view of its conclusion, the claim for concealment of material facts is limited only to the part of the order that remains to be examined. The Court, inter alia, noted, quite rightly, that the allegation on concealment should be specified by the person who raises it, and not be brought as a panacea in all cases. The Court also concluded that in view of the annulment of part of the disputed order, it did not identify any concealment of material facts by the Appellee.

We do not see any error in the approach of the first instance Court.

First of all, given the annulment of the order as to almost all assets in real estate of companies of which the Appellant is a shareholder and director, following a verification by the Court that it was not legally founded to maintain the order concerning said assets, in force, the whole exercise of the alleged non-disclosure of material records as to said assets, became moot and academic.

Furthermore, the Appellant, who raised the issue, did not provide any evidence which would demonstrate the requisite knowledge on the part of the Appellee for specific records as to securities, loans, mortgages, etc., issues that only accounting departments of companies may have, and to which the Appellant referred in general and with estimations.

The complaint of the Appellant that the specific and alleged, non-disclosed records, were material because they concerned the merits of the main Application, demonstrates misconception as to the framework of the litigation and the parameters within which an interim application should be examined for the issuance of an injunction order. In the context of that interim procedure, it was not required to take testimony with estimations of the values or real and movable property, or a precise juxtaposition of details concerning encumbrance of real estate, loan amounts etc. All these are expected to be addressed in the context of the hearing of the main Application for the settlement of the assets, while the rest are the required elements and the conditions, as well as the degree of proof, in the proceedings for the issuance of interlocutory orders.

The first ground of appeal is dismissed.

Ground of Appeal (no. 2).

Under this ground of appeal, the Appellant brings forth the position that the first instance Court erroneously ruled that the urgency of the requested remedy was demonstrated in the present case.

In an affidavit in support of her application, the Appellee had stated that she feared that the Appellant, if advised of the entry of the Application and understands the nature and extent of her claim, he will move

to alienate the assets in his name, in order to prevent her claiming the property of a very significant value to which she is entitled. The Appellee further referred to an easy way with which the Appellant could alienate movable and immovable property and, for these reasons, she considered that it was very important to unilaterally prevent the possibility of such alienation.

The Court in its interim decision, after referring to relevant case-law which links this issue with demonstrating a good arguable case with visible success chances, proceeded, and after verifying the satisfaction of the three conditions set by Article 32(1) of the Law on Courts, it ruled that it was urgent and reasonable to ensure part of the bound property.

That which has to be noted, at first, is the fact that the Appellant challenged, with the present appeal, the correctness of the interim decision dated 5/18/2010, by which the previously issued provisional ex-parte order became final, as it was differentiated. In this context, it did not make sense to raise an issue as to whether the element of urgency existed or not. Characteristic is the following passage from the decision of the Court of Appeal in the case *Kasparis et al v. Andreou (2004) 1(B) CLR 784*, on page 787:

"The appeal is unfounded. The provisional order which was finally issued by the Court on 5/16/2002, relying on article 32 of the Law on Courts, was not issued ex-parte, that is, without hearing the appellants. The order that was issued ex-parte 1/31/2002 was served after its issuance, together with the application, to the appellants, who filed a written opposition on 2/12/2002, causing the application to be heard and, on 5/16/2002, by decision of the Court, the matter of "urgency" was brought, on the basis of article 9 (1) of the Civil Procedure Law, Chapter 6, as a ground of the Appellant's appeal. After the filing of the opposition to the order of 1/31/2002, the proceedings before the Court were essentially a procedure to issue a provisional order by summons. Therefore, the final decision dated 5/16/2002 could only be appealed on grounds reduced to whether the three conditions for the application of Article 32 of the Law on Courts were met. With the alleged ground of appeal, only the ex-parte issued order dated 1/31/2002 could have been challenged. Not the order dated 5/16/2002."

At any rate, as correctly confirmed, inter alia, in the decision of the Court of Appeal in the case *Kyr. Savvas et al v. Kyzis (2001) 1(B) CLR 1244*, the element

of urgency in terms of timing, and if it is not self-existent, as the element of time, it is not the only factor that can positively affect the Court to issue an ex-parte order. Article 9 of Chapter 6 specifically states that the power of the Court is triggered when either the element of urgency or any other special occasion is proven.

In this case, reasonable circumstances constituted fears which had been expressed by the Appellee, that any service of the application could be the trigger for the alienation of property, in which case her application to maintain the status quo would have been rendered obsolete.

And as it was stated in the decision in the case *C. Phasarias (Automotive Centre) Limited v. Cement maker "Leonik" Limited (2001) 1 CLR 785*, it is not necessary for the Applicant to bring testimony on the real intention of the defendant to alienate or encumber. What counts, is the potential effect that the alienation or encumbrance will have, if they occur, to the satisfaction of the court judgment that may be issued.

We conclude that neither this ground of appeal may be founded.

Ground of Appeal (no. 3).

As the Appellant claims, the first instance Court incorrectly held that the third condition of Article 32(1) of the Law on Courts was satisfied through the submitted application, in the sense that the bound assets of the Appellant were enough to secure any decision in favor of the Appellee. As the Appellant explained in this position in his arguments, "the Court, when it issued the Order, had only the Applicant's decision before them. However, when the Appellant revealed the true image, things changed."

That which the Appellant essentially asserts here, is that while the Appellee did not provide the Court with precise details as to the property intended to be bound, the Appellant, with his own records, managed to demonstrate that the net value of the property was less than the one showed by the Appellee, due to mortgages, loans, etc.

What is needed to be recalled again at this point, is the actual nature of the interim procedure under examination. With this procedure, no final and substantive rights of the parties were judged, so that testimony from both sides would be evaluated with strict rules of evidence,

final findings would be extracted and rights and obligations would be distributed. In this case, with her Application, the Appellee claims the delivery to herself of the part of the increase of the Appellant's property which was acquired during the marriage between the parties, which increase was produced with the contribution of the Appellee, and which the same estimates to 50% or €40,000,000 or any amount that will be found to be the value of her contribution.

As the Appellee's attorney correctly notes, for the purposes of the order, as it was finally formed, the actual value of the property is not of particular importance. Whether 1/2 or 1/3 or 3/4 of that property is bound, that is, the shares or any real property of the Appellant, it has to do with any value of the contribution of the Appellee and not the value of the asset. Something that will certainly be ascertained in the end, in the context of the hearing of the main application.

Therefore, neither does this ground of appeal stand.

Ground of Appeal (no. 4).

The fourth ground of appeal which the Appellant brought refers to the alleged delay of the service of the order to him. The order was issued ex-parte on 10/22/2009, was drafted on 10/26/2009 and was served to him on 11/27/2009.

This ground of appeal cannot be addressed on appeal.

At first instance, it was the sole relevant allegation of the Appellant that was raised as Ground of Opposition (G) that "The Order remained in force and rendered returnable at a time that exceeded the time required under the Law." Explaining this Ground of Opposition, the Appellant, as plaintiff, simply stated that the contested Order was issued on 10/23/2009 and rendered returnable on 12/4/2009, while it was served to him on 11/27/2009.

At first, the records cited by the Appellant are incorrect. The disputed Order was issued ex-parte on 10/23/2009 and rendered returnable on 11/3/2009, as stated in the Order itself. That is, it was rendered returnable about 10 days later, while it was drafted on 10/26/2009, that is, approximately 7 days prior to the date it was rendered returnable.

This information cannot establish the allegation that the Order was rendered returnable in an unreasonable time. And the date on which it was possible for the Order to be serviced to the Appellant, following postponements for this purpose, by no means concerns the Court or its handling, and it cannot have any consequences on the validity of the Order without other evidence.

Ground of Appeal (no. 5).

Under the last ground of appeal, the Appellant raises the issue that the first instance Court incorrectly and/or in excess of its power or jurisdiction, broadly and vaguely bound property of the Appellant that could not be subject to the proceedings.

In explaining this ground of appeal, the Appellant claims that there was no legal capacity or jurisdiction for the Court to order that the car should remain with the Appellee or further to order bounding furniture and equipment within the marital residence, in a general and vague manner.

As to bounding the car, the Appellant did not refer to any legal principle according to which the Court could not order to maintain the status quo that existed, as to an asset which, according to the Appellee, was acquired during the marriage and she was claiming it with her main application.

As for the equipment and furnishings of the house, particular attention had to be paid to that beyond the general reference to the order on the furniture and equipment, specific reference is made to the art works that were in said house, as described in a list of an insurance company which the Appellee presented to the Court. As for the rest, it is understood that within the residence there was furniture and equipment of a high value, property which was expected to remain therein until the resolution of the property disputes due to the Appellant's [sic] claims, and it was not necessary for her to specify or specialize further.

Given the above, no ground of appeal is admitted, and the Appeal should be dismissed.

Appeal no. 21/2010.

The Applicant at first instance also filed an appeal challenging the validity of the interim decision as to one part thereof, in connection with which she raised a ground of appeal.

As the Appellant suggests, the first instance Court wrongly terminated the validity of the order they had issued ex-parte, in regard to the properties that were described in paragraphs C (a)(b)(c) and D of the application. Said properties are registered to companies whose sole shareholder and director is the Appellee.

In its first instance interim decision, the Court invoked the decision of the Appellate Family Court in the case *Andreou v. Kyriakou et al (2002) 1 CLR 896*, as well as *Philippou v. Philippou (2003) 1 CLR 1343*. In its first, it was decided that in property disputes pursuant to Law 232/1991, an actionable right exists only between the spouses, and the Court has no jurisdiction to hear a dispute between a spouse and a company. In the second, it was ruled that since the companies to which the bound properties were registered, were not, and could not be parties to the proceedings, the part of the order that concerned those properties should have been annulled.

In light of the aforementioned case law, the first instance Court ruled that the English decisions to which the Appellee's attorney referred, did not apply in the present case and proceeded to the termination of the enforcement of the order concerning the assets referred in paragraphs C (a) (b) (c) and D of the application.

The English decisions referred to by the attorney of the Appellant, and to which she relied also before the Court of Appeal, were the following: *Green v. Green [1993] F.L.R. 326, Nicholas v. Nicholas [1988] F.L.R. 285, Mubarak v. Mubarak [2001] 1 F.L.R. 673*.

It is the proposal of the Appellant's attorney that on the basis of the aforementioned case law, the Court has the right, within the context of the property dispute, to proceed to the binding, directly or indirectly, of property, in cases such as this one, where the company is under the exclusive control of a spouse and which belongs exclusively to said spouse, without involving third party rights. That is, where the company is simply the alter ego of the litigant.

The study of English case law on the matter demonstrates, therefore, the following:

Typically, and in accordance with the principles set forth in the known case *Salomon v. Salomon & Co [1897] AC22*, every company is a separate legal entity with its own assets and liabilities. Therefore, the directors and shareholders of the company are protected under the principle of "corporate veil." However, a series of decisions addressed the issue of the possibility of judicial intervention in assets belonging to a company, in which a spouse participates as director and/or shareholder, against whom a property claim is raised by the other spouse. In the case of *Green v. Green [1993] 1 F.L.R. 326*, in a property dispute between spouses, the Court held that it could order the sale of property that belonged to a company, in which the husband held 100% of share capital, since it be ironic if the Court was prevented from ordering the sale simply because its registered owner was the company itself, at the time when the husband had effective control over the property through the company, which he fully controlled.

A usual case, in which the English courts lift the protection of corporate veil, is where the company is used by the person controlling the company, simply as an artificial medium, a shield to avoid pre-existing obligations. *(Trustor AB v Smallborne and other (No. 2) [2001] J 1 W.L.R 1177)*.

The extent and scope of the court authority to proceed to the issuance of an order which is directed directly against assets of a company, which is owned or controlled by one of the spouses, was examined in detail in the case *Mubarak v. Mubarak [2001] 2 F.L.R. 673*. The English High Court dismissed a request of the wife to sell the assets of two companies to satisfy an order in favor of her and against her husband for payment of £4,875,000. As it was pointed out, even where the husband admits that the assets of a company can be considered as his own, the Court may lift the corporate veil though, and issue orders that directly or indirectly affect the company's assets, only in cases where: (i) the spouse is the owner and is exercising control on the company, and (ii) there are no third party conflicting interests. Lifting the corporate veil could be acceptable in cases where the referred assets of the company consist, for example, of the marital home or other property which is held for purposes other than those associated with ordinary business purposes. In the same case of *Mubarak*, both companies were operating legitimate commercial enterprises and there were some creditors, therefore the application of the wife was dismissed.

In a more recent English decision in the case *Hashem v. Shayif & another [2008] EWHC 2380*, the English High Court confirmed that in order to enable

the lifting of a corporate veil, an improper action should be revealed, linked to the use of the corporate structure as virtual (sham) in order to conceal wrongdoing, and demonstrating the element of the exclusive control of the company is not itself sufficient. In that case, the wife's claim failed, because, among other things, she failed to show any improper action of the husband related to her claim, concerning the use of the company for the acquisition of assets.

The company had been established for good cause and conducted businesses for years, and the collapse of the marriage could not, by itself, transform the company into a shell company or a cover.

In the light of the aforementioned principles as well, which emanate from English law, on part of which the Appellant relied her appeal, we rule that these could not have helped her case and demonstrate the incorrect part of the judgment at first instance, which concerned the limitation of the order that was issued in connection with the assets of companies.

It is therefore our conclusion that both joined appeals failed and are dismissed.

Therefore, under the circumstances, we do not think it is proper to issue any order for costs.

*The Appeals are dismissed without costs.*

---

cylaw.org: From ΚΙΝΟΠ/CyLii for the Cyprus Bar Association

ΠΑΓΚΥΠΡΙΟΣ ΔΙΚΗΓΟΡΙΚΟΣ ΣΥΛΛΟΓΟΣ

CyLaw | Αναφορικά μ'εμάς | Επικοινωνία



# CyLaw

Έρευνα - Κατάλογος Αποφάσεων - Εμφάνιση Αναφορών (Noteup on) - Αφαίρεση Υπογραμμίσεων

(2012) 1 Α.Α.Δ. 604

3 Απριλίου, 2012

[ΧΑΤΖΗΧΑΜΠΗΣ, ΠΑΜΠΑΛΛΗΣ, ΚΛΗΡΙΔΗΣ, Δ/στές]

(Έφεση Αρ. 20/2010)
(Σχ. με 21/2010)

ΜΑΡΙΟΣ ΑΠΟΣΤΟΛΟΥ,

Εφεσείων-Καθ' ου η αίτηση,

v.

ΡΟΔΟΥΛΑΣ ΙΩΑΝΝΟΥ,

Εφεσίβλητης-Αιτήτριας.

(Έφεση Αρ. 21/2010)
(Σχ. με 20/2010)

ΡΟΔΟΥΛΑ ΙΩΑΝΝΟΥ,

Εφεσείουσα-Αιτήτρια,

v.

ΜΑΡΙΟΥ ΑΠΟΣΤΟΛΟΥ,

*Εφεσιβλήτου-Καθ' ου η αίτηση.*

*(Εφέσεις Αρ. 20/2010, 21/2010)*

*Οικογενειακό Δίκαιο — Περιουσιακές Διαφορές — Επικύρωση ενδιάμεσης απόφασης Οικογενειακού Δικαστηρίου με την οποία οριστικοποιήθηκε προσωρινό διάταγμα — Κατά πόσον ήταν απαραίτητη η λήψη μαρτυρίας σχετικά με εκπτιμήσεις αξιών ακίνητης και κινητής περιουσίας και η επακριβής παράθεση λεπτομερών στοιχείων που αφορούσαν επιβαρύνσεις επί ακινήτων και ύψος δανείων.*

*Οικογενειακό Δίκαιο — Περιουσιακές Διαφορές — Ποια η έκταση και η εμβέλεια της δικαστικής δυνατότητας όπως προβαίνει σε έκδοση διαταγής η οποία να στρέφεται ευθέως εναντίον περιουσιακών στοιχείων εταιρείας, η οποία ανήκει ή ελέγχεται από ένα εκ των συζύγων — Ποιοι περιορισμοί υπάρχουν.*

*Οικογενειακό Δίκαιο — Περιουσιακές Διαφορές — Άρση εταιρικού πέπλου εταιρείας συζύγου — Για να καταστεί δυνατή η άρση του εταιρικού πέπλου θα πρέπει να αποκαλύπτεται κάποια επιλήψιμη ενέργεια που να συνδέεται με χρησιμοποίηση της εταιρικής δομής ως εικονικής (sham) προς απόκρυψη αδικοπραγίας — Εκδίδονται, μόνο στις περιπτώσεις όπου: (i) ο σύζυγος είναι ο ιδιοκτήτης και ο ασκών τον έλεγχο της εταιρείας, και (ii) δεν υπάρχουν συγκρουόμενα συμφέροντα τρίτων προσώπων — Μπορεί να γίνει δεκτή σε περιπτώσεις όπου τα υπό αναφορά περιουσιακά στοιχεία της εταιρείας αποτελούνται, π.χ. από τη συζυγική κατοικία ή άλλη περιουσία η οποία κατέχεται για σκοπούς άλλους από εκείνους οι οποίοι σχετίζονται με συνήθεις επιχειρησιακούς σκοπούς.*

*Αποφάσεις και προσωρινά διατάγματα — Επείγον — Δεν είναι αναγκαία η προσαγωγή μαρτυρίας από τον αιτητή για πραγματική πρόθεση του εναγομένου για αποξένωση ή επιβάρυνση — Εκείνο που μετρά είναι η πιθανή επίδραση που θα έχει η αποξένωση ή η επιβάρυνση, εφόσον γίνουν, στην ικανοποίηση της δικαστικής απόφασης που ενδεχομένως θα εκδοθεί.*

Η αιτήτρια κατόπιν αίτησης της στο Οικογενειακό Δικαστήριο εξασφάλισε προσωρινό διάταγμα με το οποίο απαγορευόταν στον καθ' ου η αίτηση από του να προβεί σε συγκεκριμένες ενέργειες αναφορικά με περιουσία την οποία κατείχε υπό μορφή ακινήτων, υπό την ιδιότητά του ως μετόχου ή διευθυντή εταιρειών. Το διάταγμα

εκτεινόταν και σε ζητήματα σχετικά με την επίπλωση και εξοπλισμό της συζυγικής οικίας των διαδίκων ως επίσης με αυτό, επιτρεπόταν στην αιτήτρια να συνεχίσει να κατέχει ένα αυτοκίνητο.

Ο Καθ' ου η Αίτηση καταχώρησε ένσταση και με ενδιάμεση απόφασή του το Οικογενειακό Δικαστήριο κατέστησε οριστικό το εκδοθέν διάταγμα αφού, για τους λόγους που εξήγησε στην απόφασή του, περιόρισε την έκτασή του ως προς κάποια από τα περιουσιακά στοιχεία τα οποία κάλυπτε το διάταγμα, όπως αυτό είχε εκδοθεί μονομερώς.

Με την έφεση 20/2010 ο καθ'ου η Αίτηση αμφισβήτησε την εν λόγω ενδιάμεση απόφαση.

Με την Έφεση αρ. 21/2010, η εφεσείουσα-αιτήτρια προσέβαλε ως εσφαλμένη την ίδια ενδιάμεση απόφαση ως προς το μέρος της με το οποίο ακυρώθηκε η προαναφερθείσα απαγόρευση εναντίον του καθ' ου η αίτηση για τη διενέργεια ορισμένων πράξεων αναφορικά με ακίνητη περιουσία.

Οι δύο εφέσεις συνεκδικάστηκαν.

Η Έφεση αρ. 20/2010.

Λόγος Έφεσης αρ. 1.

Το πρωτόδικο Δικαστήριο δεν εξέτασε δεόντως το γεγονός της μη αποκάλυψης ουσιωδών στοιχείων και "δεν ασχολήθηκε καθόλου με το θέμα".

Αποφασίστηκε ότι:

Μεταξύ άλλων το Δικαστήριο, και πολύ ορθά, επεσήμανε ότι ο ισχυρισμός περί απόκρυψης θα πρέπει να εξειδικεύεται από εκείνον που τον εγείρει και όχι να προβάλλεται ως πανάκεια σε κάθε περίπτωση. Συμπέρανε δε το Δικαστήριο ότι, ενόψει και της ακύρωσης μέρους του επίδικου διατάγματος, δε διαπίστωνε οποιαδήποτε απόκρυψη ουσιώδους γεγονότος εκ μέρους της εφεσίβλητης.

Δε υπήρχε οποιοδήποτε σφάλμα στην προσέγγιση του πρωτόδικου Δικαστηρίου.

Με δεδομένη την ακύρωση του διατάγματος ως προς το σύνολο σχεδόν των περιουσιακών στοιχείων επί ακίνητης ιδιοκτησίας εταιρειών στις οποίες ο εφεσείων είναι μέτοχος και διευθυντής, κατόπιν διακρίβωσης από το Δικαστήριο ότι νομικά δεν ευσταθούσε διατήρηση σε ισχύ του διατάγματος σε σχέση με αυτά, το όλο εγχείρημα της κατ' ισχυρισμό μη αποκάλυψης ουσιωδών στοιχείων ως προς αυτά κατέστη θέμα ακαδημαϊκό.

Αναφορικά με άλλα ζητήματα για τα οποία ο εφεσείων παραπονείτο ότι δεν αποκαλύφθησαν, στο πλαίσιο της ενδιάμεσης εκείνης διαδικασίας δεν απαιτείτο η λήψη μαρτυρίας με εκτιμήσεις αξιών ακίνητης και κινητής περιουσίας, η επακριβής παράθεση λεπτομερών στοιχείων που αφορούσαν επιβαρύνσεις επί ακινήτων, ύψος δανείων κλπ. Όλα αυτά αναμένετο να απασχολήσουν στο πλαίσιο εκδίκασης της κυρίως Αίτησης.

<u>Λόγος έφεσης αρ. 2.</u>

Λανθασμένα το πρωτόδικο Δικαστήριο έκρινε ότι καταδεικνυόταν στην υπό εξέταση περίπτωση το κατεπείγον της αιτούμενης θεραπείας.

Αποφασίστηκε ότι:

Ο εφεσείων με την έφεσή του προσέβαλλε την ορθότητα της ενδιάμεσης απόφασης με την οποία το προηγουμένως εκδοθέν μονομερώς προσωρινό διάταγμα κατέστη απόλυτο, όπως διαφοροποιήθηκε. Με αυτή την έννοια δε νοείτο όπως εγείρει κατ' έφεση θέμα ως προς την ύπαρξη ή όχι του στοιχείου του κατεπείγοντος.

Το στοιχείο του επείγοντος από πλευράς χρονικής τοποθέτησης, δεν ο μόνος παράγων που μπορεί να επιδράσει θετικά στο Δικαστήριο για την έκδοση μονομερούς διατάγματος. Το Άρθρο 9 του Κεφ. 6 ρητά αναφέρει ότι η εξουσία του Δικαστηρίου ενεργοποιείται όταν αποδειχθεί είτε το στοιχείο του κατεπείγοντος ή οποιαδήποτε άλλη ιδιαίτερη περίσταση.

Ούτε αυτός ο λόγος έφεσης ευσταθούσε.

<u>Λόγος έφεσης αρ. 3.</u>

Εσφαλμένα εκρίθη ότι ικανοποιείτο μέσω της υποβληθείσας αίτησης, η τρίτη προϋπόθεση του Άρθρου 32(1) του περί Δικαστηρίων Νόμου, με την έννοια ότι η

δεσμευθείσα περιουσία του εφεσείοντα ήταν αρκετή για να διασφαλιστεί τυχόν απόφαση υπέρ της εφεσίβλητης.

Αποφασίστηκε ότι:

Εκείνο που έπρεπε να υπομνησθεί ξανά ήταν η πραγματική φύση της υπό εξέτασης ενδιάμεσης διαδικασίας. Με αυτή δεν κρίνονταν τελικά και ουσιαστικά δικαιώματα των διαδίκων έτσι ώστε με αυστηρούς κανόνες απόδειξης να αξιολογείτο η εκατέρωθεν προσκομισθείσα μαρτυρία, να εξάγονταν τελικά ευρήματα και να κατανέμονταν δικαιώματα και υποχρεώσεις.

Για τους σκοπούς του διατάγματος όπως αυτό τελικά διαμορφώθηκε, η πραγματική αξία της περιουσίας δεν ενείχε ιδιαίτερη σημασία.

Λόγος έφεσης αρ. 4.

Η κατ' ισχυρισμό καθυστέρηση της επίδοσης του διατάγματος στον ίδιο. Το διάταγμα εκδόθηκε μονομερώς στις 22.10.2009, συντάχθηκε στις 26.10.2009 και του επιδόθηκε στις 27.11.2009.

Αποφασίστηκε ότι:

Τα στοιχεία τα οποία παρέθεσε ο εφεσείων ήταν ανακριβή. Τα στοιχεία δεν μπορούσαν να στοιχειοθετήσουν τον ισχυρισμό ότι το Διάταγμα κατέστη επιστρεπτέο σε υπέρμετρο χρονικό διάστημα.

Λόγος έφεσης αρ. 5.

Το πρωτόδικο Δικαστήριο εσφαλμένα και/ή καθ' υπέρβαση εξουσίας ή δικαιοδοσίας, δέσμευσε γενικά και αόριστα περιουσία του εφεσείοντα που δεν μπορούσε να αποτελέσει αντικείμενο της διαδικασίας.

Αποφασίστηκε ότι:

Ως προς τη δέσμευση του αυτοκινήτου, ο εφεσείων σε καμιά νομική αρχή παρέπεμψε σύμφωνα με την οποία το Δικαστήριο δεν μπορούσε να διατάξει τη διατήρηση της κατάστασης πραγμάτων (status quo) που υφίστατο.

Αποστόλου Μάριος και άλλη ν. Ροδούλας Ιωάννου και άλλου, (2012) 1 Α.Α.Δ. 604    Page 6 of 17

Ως προς τον εξοπλισμό και επίπλωση της κατοικίας, ιδιαίτερη σημασία έπρεπε να δοθεί στο ότι πέραν της γενικής αναφοράς στο διάταγμα περί επίπλωσης και εξοπλισμού, γινόταν ειδική αναφορά στα έργα τέχνης τα οποία βρίσκονται εντός αυτής, όπως αυτά περιγράφονται σε κατάλογο ασφαλιστικής εταιρείας τον οποίο η εφεσίβλητη είχε παρουσιάσει στο Δικαστήριο.

Η έφεση απορρίφθηκε.

<u>Η Έφεση αρ. 21/2010.</u>

Η εφεσείουσα, υποστήριξε ότι το πρωτόδικο Δικαστήριο εσφαλμένα τερμάτισε την ισχύ του διατάγματος που είχε εκδώσει μονομερώς, αναφορικά συγκεκριμένα ακίνητα τα οποία ήταν εγγεγραμμένα σε εταιρείες των οποίων αποκλειστικός μέτοχος και διευθυντής ήταν ο εφεσίβλητος.

Αποφασίστηκε ότι:

Στην πρωτόδικη ενδιάμεση απόφασή του, το Δικαστήριο επικαλέστηκε νομολογία σύμφωνα με την οποία σε περιουσιακή διαφορά δυνάμει του Νόμου 232/1991, αγώγιμο δικαίωμα υφίσταται μόνο μεταξύ των συζύγων και το Δικαστήριο δεν έχει δικαιοδοσία να επιλαμβάνεται διαφοράς μεταξύ συζύγου και εταιρείας.

Συνήθης περίπτωση κατά την οποία τα Αγγλικά Δικαστήρια αίρουν την προστασία του εταιρικού πέπλου είναι εκεί όπου η εταιρεία χρησιμοποιείται από τον ελέγχοντα την εταιρεία, απλά ως ένα τεχνητό μέσο, μια ασπίδα προς αποφυγή προϋπαρχουσών υποχρεώσεων.

Στην παρούσα υπόθεση η εταιρεία είχε συσταθεί για καλό σκοπό και διεξήγαγε επιχείρηση για χρόνια και η κατάρρευση του γάμου δεν μπορούσε από μόνη της να μετατρέψει την εταιρεία σε εικονική ή προκάλυμμα.

*Οι Εφέσεις απορρίφθηκαν χωρίς έξοδα.*

*Αναφερόμενες Υποθέσεις:*

*Κασπαρή κ.ά. ν. Ανδρέου <u>(2004) 1(Β) Α.Α.Δ. 784,</u>*

*Κυρίσαββα κ.ά. ν. Κύζη (2001) 1(Β) Α.Α.Δ. 1244,*

*C. Phasarias (Automotive Centre) Limited v. Σκυροποιία "Λεωνίκ" Λίμιτεδ (2001) 1 Α.Α.Δ. 785,*

*Ανδρέου ν. Κυριάκου κ.ά. (2002) 1 Α.Α.Δ. 896,*

*Φιλίππου ν. Φιλίππου (2003) 1 Α.Α.Δ. 1343,*

*Green v. Green [1993] F.L.R. 326,*

*Nicholas v. Nicholas [1988] F.L.R. 285,*

*Mubarak v. Mubarak [2001] 1 F.L.R. 673,*

*Salomon v. Salomon & Co [1897] AC22,*

*Trustor AB v. Smallborne a.o. (No.2) [2001] J 1 W.L.R. 1177,*

*Hashem v. Shayif a.o. [2008] EWHC 2380.*

**Εφέσεις.**

Εφέσεις από τους εφεσείοντες εναντίον της απόφασης του Οικογενειακού Δικαστηρίου Λεμεσού (Κωνσταντίνου, Δικ. Οικ. Δικ.), (Αίτηση Αρ. 36/09), ημερομηνίας 18/5/2010.

*Αλ. Κουκούνης,* για τον Εφεσείοντα, στην Έφεση Αρ. 20/2010 και για τον Εφεσίβλητο στην Έφεση Αρ. 21/2010.

*Λ. Βραχίμης,* για την Εφεσίβλητη,στην Έφεση Αρ. 20/2010 και για την Εφεσείουσα, στην Έφεση Αρ. 21/2010.

*Cur. adv. vult.*

ΧΑΤΖΗΧΑΜΠΗΣ, Δ.: Την ομόφωνη απόφαση του Δικαστηρίου θα δώσει ο Κληρίδης, Δ.

**ΚΛΗΡΙΔΗΣ, Δ.:** Στο πλαίσιο αίτησης Ρύθμισης Περιουσιακών Διαφορών, η αιτήτρια, Ροδούλα Ιωάννου, αποτάθηκε μονομερώς στο Οικογενειακό Δικαστήριο Λεμεσού και εξασφάλισε στις 23.10.2009 την έκδοση προσωρινού απαγορευτικού διατάγματος με το

Αποστόλου Μάριος και άλλη ν. Ροδούλας Ιωάννου και άλλου, (2012) 1 Α.Α.Δ. 604       Page 8 of 17

οποίο απαγορευόταν στον καθ' ου η αίτηση Μάριο Αποστόλου από του να προβεί σε συγκεκριμένες ενέργειες αναφορικά με περιουσία την οποία κατέχει υπό μορφή ακινήτων, υπό την ιδιότητά του ως μετόχου ή διευθυντή εταιρειών, ως προς την επίπλωση και εξοπλισμό της συζυγικής οικίας των διαδίκων κλπ. και με το οποίο διάταγμα επιτρεπόταν στην αιτήτρια να συνεχίσει να κατέχει ένα αυτοκίνητο.

Μετά την επίδοση της αίτησης και του προσωρινού διατάγματος, ο καθ' ου η αίτηση καταχώρησε Ένσταση κατά της συνέχισης της ισχύος του εκδοθέντος διατάγματος.

Κατόπιν ακρόασης, το Δικαστήριο, με ενδιάμεση απόφασή του ημερομηνίας 18.5.2010, κατέστησε οριστικό το εκδοθέν διάταγμα αφού, για τους λόγους που εξήγησε στην απόφασή του, περιόρισε την έκτασή του ως προς κάποια από τα περιουσιακά στοιχεία τα οποία κάλυπτε το διάταγμα, όπως αυτό είχε εκδοθεί μονομερώς. Πιο συγκεκριμένα, το Δικαστήριο περιόρισε στο ήμισυ της αξίας της, την περιουσία υπό μορφή μετοχών τις οποίες κατέχει ο καθ' ου η αίτηση σε 11 εταιρείες και τερμάτισε την ισχύ του διατάγματος αναφορικά με την απαγόρευση στον καθ' ου η αίτηση ως μετόχου ή διευθυντή δύο Κυπριακών εταιρειών και μιας εγγεγραμμένης στο Jersey από του να πωλήσει, υποθηκεύσει κλπ. συγκεκριμένα ακίνητη περιουσία που είναι εγγεγραμμένη στο όνομα των εταιρειών στην Κύπρο. Τερμάτισε επίσης την ισχύ της απαγόρευσης στον καθ' ου η αίτηση ως μετόχου ή διευθυντή της εταιρείας Palatino Developments Ltd από του να πωλήσει, υποθηκεύσει κλπ. εννέα συνολικά ακίνητα.

Εναντίον της ενδιάμεσης απόφασης καταχώρησαν εφέσεις και οι δύο διάδικοι, αιτήτρια και καθ' ου η αίτηση.

Με την Έφεση αρ. 20/2010 ο εφεσείων-καθ' ου η αίτηση προσβάλλει ως εσφαλμένη την ενδιάμεση απόφαση ημερομηνίας 18.5.2010, με την οποία οριστικοποιήθηκε το εκδοθέν προσωρινό διάταγμα, όπως περιορίστηκε.

Με την Έφεση αρ. 21/2010, η εφεσείουσα-αιτήτρια προσβάλλει ως εσφαλμένη την ίδια ενδιάμεση απόφαση ως προς το μέρος της με το οποίο ακυρώθηκε η προαναφερθείσα απαγόρευση εναντίον του καθ' ου η αίτηση για τη διενέργεια ορισμένων πράξεων αναφορικά με ακίνητη περιουσία.

Οι δύο εφέσεις συνεκδικάστηκαν. Θα επιληφθούμε πρώτα της Έφεσης αρ. 20/2010.

<u>Η Έφεση αρ. 20/2010.</u>

Αποστόλου Μάριος και άλλη ν. Ροδούλας Ιωάννου και άλλου, (2012) 1 Α.Α.Δ. 604      Page 9 of 17

Με την έφεσή του ο εφεσείων ήγειρε και προώθησε ενώπιον του Εφετείου πέντε συνολικά λόγους έφεσης, τους οποίους θα εξετάσουμε στη συνέχεια.

<u>Λόγος Έφεσης (Αρ. 1).</u>

Με την Ένστασή του, ο εφεσείων είχε εγείρει πρωτόδικα θέμα ότι η εφεσίβλητη στην αίτησή της είχε αποκρύψει από το Δικαστήριο σημαντικά και ουσιώδη στοιχεία τα οποία, αν υπήρχαν ενώπιον του Δικαστηρίου, θα επιδρούσαν στην κρίση του. Ως τέτοια, ο εφεσείων ανέφερε την παράλειψη της εφεσίβλητης να παραθέσει στοιχεία ως προς την αξία και τα εμπράγματα βάρη με τα οποία βαρύνονται τα ακίνητα και ότι η περιουσία της εταιρείας Palatino Developments Ltd έχει τώρα τεράστιες ζημίες λόγω και της οικονομικής κρίσης, η δε περιουσία της είχε αποκτηθεί με δανεισμούς πέραν των €20.000.000. Ότι ακόμα, τα υπόλοιπα ακίνητα βαρύνονται με πάρα πολλές υποθήκες για δανεισμούς ύψους περίπου €10.000.000.

Κάτω από αυτό το λόγο έφεσης, ο εφεσείων παραπονείται ότι το πρωτόδικο Δικαστήριο δεν εξέτασε δεόντως το γεγονός της μη αποκάλυψης ουσιωδών στοιχείων και "δεν ασχολήθηκε καθόλου με το θέμα". Ότι ακόμα, το Δικαστήριο λανθασμένα συσχέτισε το θέμα τούτο μόνο με τα περιουσιακά στοιχεία που ήσαν αντικείμενο του ακυρωθέντος μέρους του διατάγματος, ενώ το θέμα της απόρριψης "αφορούσε και αφορά το αντικείμενο της κυρίως Αίτησης αλλά και της παρούσας διαδικασίας".

Πρέπει κατ' αρχάς να παρατηρήσουμε ότι ο αρχικός ισχυρισμός του εφεσείοντα ότι το πρωτόδικο Δικαστήριο "δεν ασχολήθηκε καθόλου με το θέμα" είναι τελείως εσφαλμένος, άδικος και, εν πάση περιπτώσει, αντιφάσκει με τα άλλα παράπονά του που ακολουθούν από τα οποία διαφαίνεται ότι πράγματι ασχολήθηκε με αυτό το θέμα το Δικαστήριο.

Στην ενδιάμεση απόφασή του, το Δικαστήριο στη σελίδα 3 ρητά παραθέτει τους ισχυρισμούς του εφεσείοντα ως προς τη μη αποκάλυψη. Ακολούθως, μετά την αναλυτική εξέταση άλλων λόγων Ένστασης επί της ουσίας, ως αποτέλεσμα της οποίας κατέληξε στο ότι ένα μεγάλο μέρος του διατάγματος θα έπρεπε να ακυρωθεί και ένα άλλο μέρος να περιοριστεί, το Δικαστήριο στη σελίδα 7 της απόφασής του παρατήρησε ότι, ενόψει της κατάληξής του αυτής, ο ισχυρισμός για απόκρυψη ουσιωδών στοιχείων περιορίζεται στο μέρος του διατάγματος που παραμένει για εξέταση. Επισήμανε ακολούθως το Δικαστήριο, και πολύ ορθά, ότι ο ισχυρισμός περί απόκρυψης θα πρέπει να εξειδικεύεται από εκείνον που το εγείρει και όχι να προβάλλεται ως πανάκεια σε κάθε περίπτωση. Συμπέρανε δε το Δικαστήριο ότι, ενόψει και της ακύρωσης του αναφερθέντος μέρους του επίδικου διατάγματος, δε διαπίστωνε οποιαδήποτε απόκρυψη ουσιώδους γεγονότος εκ μέρους της εφεσίβλητης.

Δε διαπιστώνουμε οποιοδήποτε σφάλμα στην προσέγγιση του πρωτόδικου Δικαστηρίου.

Κατ' αρχάς, με δεδομένη την ακύρωση του διατάγματος ως προς το σύνολο σχεδόν των περιουσιακών στοιχείων επί ακίνητης ιδιοκτησίας εταιρειών στις οποίες ο εφεσείων είναι μέτοχος και διευθυντής, κατόπιν διακρίβωσης από το Δικαστήριο ότι νομικά δεν ευσταθούσε διατήρηση σε ισχύ του διατάγματος σε σχέση με αυτά, το όλο εγχείρημα της κατ' ισχυρισμό μη αποκάλυψης ουσιωδών στοιχείων ως προς αυτά κατέστη θέμα ακαδημαϊκό.

Περαιτέρω, ο εφεσείων, ο οποίος ήγειρε το θέμα, δεν παρέθεσε οποιαδήποτε στοιχεία από τα οποία να καταδεικνυόταν η απαιτούμενη γνώση από πλευράς της εφεσίβλητης των εξειδικευμένων στοιχείων ως προς αξίες, δάνεια, υποθήκες κλπ., θέματα τα οποία μόνο τα λογιστήρια εταιρειών δυνατόν να κατέχουν και στα οποία και ο ίδιος ο εφεσείων με γενικότητα και κατά προσέγγιση αναφέρθηκε.

Το παράπονο του εφεσείοντα ότι τα συγκεκριμένα και κατ' ισχυρισμό μη αποκαλυφθέντα στοιχεία ήσαν ουσιώδη επειδή αφορούσαν την ουσία της κυρίως Αίτησης, καταδεικνύει εσφαλμένη αντίληψη ως προς το πλαίσιο εκδίκασης και τις παραμέτρους εντός των οποίων θα πρέπει να εξετάζεται μια ενδιάμεση αίτηση για έκδοση απαγορευτικού διατάγματος. Στο πλαίσιο της ενδιάμεσης εκείνης διαδικασίας δεν απαιτείτο η λήψη μαρτυρίας με εκτιμήσεις αξιών ακίνητης και κινητής περιουσίας, η επακριβής παράθεση λεπτομερών στοιχείων που αφορούσαν επιβαρύνσεις επί ακινήτων, ύψος δανείων κλπ. Όλα αυτά αναμένεται να απασχολήσουν στο πλαίσιο εκδίκασης της κυρίως Αίτησης ρύθμισης των περιουσιακών στοιχείων, ενώ άλλα είναι τα απαιτούμενα και οι προϋποθέσεις, όπως και ο βαθμός απόδειξης, στις διαδικασίες έκδοσης παρεμπιπτόντων διαταγμάτων.

Ο πρώτος λόγος έφεσης απορρίπτεται.

Λόγος έφεσης (Αρ. 2).

Κάτω από αυτό το λόγο έφεσης, ο εφεσείων προβάλλει τη θέση ότι λανθασμένα το πρωτόδικο Δικαστήριο έκρινε ότι καταδεικνυόταν στην υπό εξέταση περίπτωση το κατεπείγον της αιτούμενης θεραπείας.

Στην ένορκη δήλωση προς υποστήριξη της αίτησής της, η εφεσίβλητη είχε αναφέρει ότι φοβάται ότι ο εφεσείων σε περίπτωση που ενημερωθεί για την καταχώρηση της Αίτησης και αντιληφθεί τη φύση και έκταση της αξίωσής της, θα κινηθεί για να

αποξενώσει τα περιουσιακά στοιχεία που υπάρχουν στο όνομά του, ώστε να την παρεμποδίσει από του να μπορέσει να διεκδικήσει την πολύ σημαντική σε αξία περιουσία στην οποία δικαιούται. Αναφερόταν περαιτέρω η εφεσίβλητη σε εύκολο τρόπο με τον οποίο ο εφεσείων θα μπορούσε να αποξενώσει κινητή και ακίνητη περιουσία και, για αυτούς τους λόγους, θεωρούσε ότι ήταν πολύ σημαντικό να εμποδιστεί μονομερώς το ενδεχόμενο τέτοιας αποξένωσης.

Το Δικαστήριο στην ενδιάμεση απόφασή του, αφού παρέπεμψε σε σχετική νομολογία η οποία συνδέει το θέμα τούτο με την κατάδειξη καλής συζητήσιμης υπόθεσης με ορατές πιθανότητες επιτυχίας, προχώρησε και, αφού διακρίβωσε την ικανοποίηση των τριών προϋποθέσεων που τίθενται από το Άρθρο 32(1) του περί Δικαστηρίων Νόμου, έκρινε ότι ήταν επείγον και εύλογο να διασφαλιστεί μέρος της δεσμευθείσας περιουσίας.

Εκείνο το οποίο θα πρέπει εδώ να επισημανθεί κατ' αρχάς, είναι το γεγονός ότι ο εφεσείων με την παρούσα έφεσή του προσβάλλει την ορθότητα της ενδιάμεσης απόφασης ημερομηνίας 18.5.2010, με την οποία το προηγουμένως εκδοθέν μονομερώς προσωρινό διάταγμα κατέστη απόλυτο, όπως διαφοροποιήθηκε. Με αυτή την έννοια δε νοείται όπως εγείρει κατ' έφεση θέμα ως προς την ύπαρξη ή όχι του στοιχείου του κατεπείγοντος. Χαρακτηριστικό είναι και το ακόλουθο απόσπασμα από την απόφαση του Εφετείου στην υπόθεση **Κασπαρή κ.ά. ν. Ανδρέου (2004) 1(Β) Α.Α.Δ. 784,** στη σελίδα 787:

> "Η έφεση δεν ευσταθεί. Το προσωρινό διάταγμα το οποίο εξέδωσε τελικά το Δικαστήριο, στις 16.5.2002, στηριζόμενο στο Άρθρο 32 του περί Δικαστηρίων Νόμου, δεν το εξέδωσε μονομερώς, χωρίς, δηλαδή, να ακουσθούν οι εφεσείουσες. Το διάταγμα που εκδόθηκε μονομερώς την 31.1.2002 επιδόθηκε μετά την έκδοσή του, μαζί με την αίτηση, στις εφεσείουσες οι οποίες και καταχώρησαν γραπτή ένσταση στις 12.2.2002, με αποτέλεσμα η αίτηση να ακουσθεί και, στις 16.5.2002, με απόφαση του Δικαστηρίου, να προβάλλεται το ζήτημα του "κατεπείγοντος", στη βάση του Άρθρου 9 (1) του περί Πολιτικής Δικονομίας Νόμου, Κεφ. 6, ως λόγος εφέσεως των εφεσειουσών. Μετά την καταχώρηση ένστασης στο διάταγμα της 31.1.2002 η διαδικασία ενώπιον του Δικαστηρίου ήταν, ουσιαστικά, διαδικασία έκδοσης προσωρινού διατάγματος δια κλήσεως. Ως εκ τούτου, η τελική απόφαση της 16.5.2002 μπορούσε να εφεσιβληθεί μόνο για λόγους που ν΄ ανάγονται στο κατά πόσο συνέτρεχαν ή όχι οι τρεις προϋποθέσεις εφαρμογής του Άρθρου 32 του περί Δικαστηρίων Νόμου. Με τον προβαλλόμενο λόγο έφεσης θα μπορούσε να προσβληθεί μόνο το μονομερώς εκδοθέν διάταγμα της 31.1.2002. Όχι το διάταγμα της 16.5.2002."

Εν πάση περιπτώσει, όπως ορθά επιβεβαιώθηκε μεταξύ άλλων και στην απόφαση του Εφετείου στην υπόθεση **Κυρ σαββα κ.ά. ν. Κύζη (2001) 1(Β) Α.Α.Δ. 1244,** το στοιχείο

του επείγοντος από πλευράς χρονικής τοποθέτησης και αν δεν είναι αυθύπαρκτο, όμως το στοιχείο του χρόνου, δεν είναι και ο μόνος παράγων που μπορεί να επιδράσει θετικά στο Δικαστήριο για την έκδοση μονομερούς διατάγματος. Το Άρθρο 9 του Κεφ. 6 ρητά αναφέρει ότι η εξουσία του Δικαστηρίου ενεργοποιείται όταν αποδειχθεί είτε το στοιχείο του κατεπείγοντος ή οποιαδήποτε άλλη ιδιαίτερη περίσταση.

Εδώ, συνιστούσαν ιδιαίτερες περιστάσεις οι εύλογοι φόβοι τους οποίους είχε εκφράσει η εφεσίβλητη ότι τυχόν επίδοση της αίτησης θα μπορούσε να αποτελέσει το έναυσμα για αποξένωση περιουσίας, οπότε και το αίτημά της για διατήρηση της κατάστασης πραγμάτων θα καθίστατο άνευ αντικειμένου.

Όπως δε αναφέρθηκε και στην απόφαση στην υπόθεση **C. Phasarias (Automotive Centre) Limited ν. Σκυροποιία "Λεωνίκ" Λίμιτεδ** _(2001) 1 Α.Α.Δ. 785_, δεν είναι αναγκαία η προσαγωγή μαρτυρίας από τον αιτητή για πραγματική πρόθεση του εναγομένου για αποξένωση ή επιβάρυνση. Εκείνο που μετρά είναι η πιθανή επίδραση που θα έχει η αποξένωση ή η επιβάρυνση, εφόσον γίνουν, στην ικανοποίηση της δικαστικής απόφασης που ενδεχομένως θα εκδοθεί.

Καταλήγουμε ότι ούτε αυτός ο λόγος έφεσης μπορεί να ευσταθήσει.

Λόγος έφεσης (Αρ. 3).

Όπως υποστηρίζει ο εφεσείων, το πρωτόδικο Δικαστήριο εσφαλμένα έκρινε ότι ικανοποιείτο μέσω της υποβληθείσας αίτησης, η τρίτη προϋπόθεση του Άρθρου 32(1) του περί Δικαστηρίων Νόμου, με την έννοια ότι η δεσμευθείσα περιουσία του εφεσείοντα ήταν αρκετή για να διασφαλιστεί τυχόν απόφαση υπέρ της εφεσίβλητης. Όπως ανάπτυξε αυτή του τη θέση ο εφεσείων στο περίγραμμά του, "Το Δικαστήριο όταν εξέδωσε το Διάταγμα είχε μπροστά του μόνο τις θέσεις της Αιτήτριας. Όταν όμως ο Εφεσείων αποκάλυψε την πραγματική εικόνα τα πράγματα άλλαξαν."

Εκείνο το οποίο ουσιαστικά ισχυρίζεται εδώ ο εφεσείων είναι ότι, ενώ η εφεσίβλητη δεν παρέσχε στο Δικαστήριο ακριβή και λεπτομερή στοιχεία ως προς την επιδιωκόμενη προς δέσμευση περιουσία, ο εφεσείων με τα δικά του στοιχεία κατάφερε να αποδείξει ότι η καθαρή αξία της περιουσίας ήταν μικρότερη από αυτή που παρουσίαζε η εφεσίβλητη, λόγω υποθηκών, δανείων, κλπ.

Εκείνο το οποίο πρέπει ξανά εδώ να υπενθυμιστεί είναι η πραγματική φύση της υπό εξέτασης ενδιάμεσης διαδικασίας. Με αυτή δεν κρίνονται τελικά και ουσιαστικά δικαιώματα των διαδίκων έτσι ώστε με αυστηρούς κανόνες απόδειξης να αξιολογηθεί η

εκατέρωθεν προσκομισθείσα μαρτυρία, να εξαχθούν τελικά ευρήματα και να κατανεμηθούν δικαιώματα και υποχρεώσεις. Εδώ, με την κυρίως Αίτησή της, η εφεσίβλητη διεκδικεί την απόδοση στην ίδια του μέρους εκείνου της αύξησης της περιουσίας του εφεσείοντα, η οποία αποκτήθηκε μετά το γάμο των διαδίκων, και η οποία αύξηση προέρχεται από τη συμβολή της εφεσείουσας, την οποία η ίδια υπολογίζει σε 50% ή €40.000.000 ή οποιοδήποτε άλλο ποσό βρεθεί ότι αποτελεί την αξία της συνεισφοράς της.

Όπως δε ορθά επισημαίνει και ο συνήγορος της εφεσίβλητης, για τους σκοπούς του διατάγματος όπως αυτό τελικά διαμορφώθηκε, η πραγματική αξία της περιουσίας δεν ενέχει ιδιαίτερη σημασία. Το κατά πόσο θα έπρεπε να δεσμευθεί το 1/2 ή το 1/3 ή τα 3/4 της περιουσίας εκείνης, δηλαδή των μετοχών του εφεσείοντα ή κάποιου ακινήτου του, αυτό έχει να κάνει με την τυχόν αξία της συνεισφοράς της εφεσείουσας και όχι με την αξία του περιουσιακού στοιχείου. Κάτι που ασφαλώς θα διακριβωθεί στο τέλος, στο πλαίσιο εκδίκασης της κυρίως αίτησης.

Επομένως, ούτε αυτός ο λόγος έφεσης ευσταθεί.

<u>Λόγος έφεσης (Αρ. 4).</u>

Ο τέταρτος λόγος έφεσης τον οποίο προέβαλε ο εφεσείων, αναφέρεται στην κατ' ισχυρισμό καθυστέρηση της επίδοσης του διατάγματος στον ίδιο. Το διάταγμα εκδόθηκε μονομερώς στις 22.10.2009, συντάχθηκε στις 26.10.2009 και του επιδόθηκε στις 27.11.2009.

Αυτός ο λόγος έφεσης δεν μπορεί να απασχολήσει κατ' έφεση.

Πρωτόδικα ήταν ο μόνος σχετικός ισχυρισμός του εφεσείοντα ο οποίος ηγέρθηκε ως Λόγος Ένστασης (Ζ) ότι, "Το Διάταγμα διατηρήθηκε σε ισχύ και ορίστηκε επιστρεπτέο σε χρόνο που υπερέβαινε τον αναγκαίο χρόνο που προβλέπει ο Νόμος". Επεξηγώντας δε αυτό το Λόγο Ένστασης, ο εφεσείων ως ομνύων απλά ανάφερε ότι το επίδικο Διάταγμα εκδόθηκε στις 23.10.2009 και ορίστηκε επιστρεπτέο στις 4.12.2009, ενώ του επιδόθηκε στις 27.11.2009.

Κατ' αρχάς, τα στοιχεία τα οποία παραθέτει ο εφεσείων είναι ανακριβή. Το επίδικο Διάταγμα εκδόθηκε μονομερώς στις 23.10.2009 και ορίστηκε επιστρεπτέο στις 3.11.2009, όπως αναφέρεται στο ίδιο το Διάταγμα. Ορίστηκε δηλαδή επιστρεπτέο μετά 10 περίπου ημέρες, ενώ η σύνταξή του έγινε στις 26.10.2009, δηλαδή 7 περίπου μέρες πριν την ημερομηνία που ορίστηκε ως επιστρεπτέο.

Αυτά τα στοιχεία δεν μπορούν να στοιχειοθετήσουν τον ισχυρισμό ότι το Διάταγμα κατέστη επιστρεπτέο σε υπέρμετρο χρονικό διάστημα. Η δε ημερομηνία κατά την οποία το Διάταγμα κατέστη δυνατό να επιδοθεί στον εφεσείοντα, κατόπιν αναβολών προς αυτό το σκοπό, καθόλου δεν αφορά το Δικαστήριο ή τους χειρισμούς του και καμιά επίπτωση δεν μπορεί να έχει, χωρίς οποιαδήποτε άλλη μαρτυρία, επί της εγκυρότητας του Διατάγματος.

Λόγος έφεσης (Αρ. 5).

Κάτω από τον τελευταίο τούτο λόγο έφεσης, ο εφεσείων εγείρει θέμα ότι το πρωτόδικο Δικαστήριο εσφαλμένα και/ή καθ' υπέρβαση εξουσίας ή δικαιοδοσίας, δέσμευσε γενικά και αόριστα περιουσία του εφεσείοντα που δεν μπορούσε να αποτελέσει αντικείμενο της διαδικασίας.

Αναπτύσσοντας αυτό το λόγο έφεσης, ο εφεσείων ισχυρίζεται ότι δεν υπήρχε νομική δυνατότητα ή δικαιοδοσία να διατάξει το Δικαστήριο όπως η κατοχή αυτοκινήτου παραμείνει στην εφεσίβλητη και, ούτε περαιτέρω να διατάξει όπως δεσμευθούν επίπλωση και εξοπλισμός εντός της συζυγικής κατοικίας, με τρόπο γενικό και αόριστο.

Ως προς τη δέσμευση του αυτοκινήτου, ο εφεσείων σε καμιά νομική αρχή παρέπεμψε σύμφωνα με την οποία το Δικαστήριο δεν μπορεί να διατάξει τη διατήρηση της κατάστασης πραγμάτων (status quo) που υφίστατο, ως προς ένα περιουσιακό στοιχείο το οποίο, σύμφωνα με την εφεσίβλητη, αποκτήθηκε κατά την έγγαμη συμβίωση και στην κυρίως αίτηση το διεκδικούσε.

Ως προς τον εξοπλισμό και επίπλωση της κατοικίας, ιδιαίτερη σημασία πρέπει να δοθεί στο ότι πέραν της γενικής αναφοράς στο διάταγμα περί επίπλωσης και εξοπλισμού, γίνεται ειδική αναφορά στα έργα τέχνης τα οποία βρίσκονται εντός αυτής, όπως αυτά περιγράφονται σε κατάλογο ασφαλιστικής εταιρείας τον οποίο η εφεσίβλητη είχε παρουσιάσει στο Δικαστήριο. Ως προς τα λοιπά, είναι αντιληπτό ότι εντός της κατοικίας βρίσκετο επίπλωση και εξοπλισμός αξίας, περιουσία η οποία αναμενόταν όπως παραμείνει εντός αυτής μέχρι την επίλυση της περιουσιακής διαφοράς λόγω των διεκδικήσεων της εφεσείουσας, και δεν ήταν αναγκαίο όπως αυτή προβεί σε περαιτέρω συγκεκριμενοποίηση ή εξειδίκευση.

Λόγω των ανωτέρω, κανένας λόγος έφεσης δε γίνεται δεκτός και η Έφεση θα πρέπει να απορριφθεί.

Η Έφεση αρ. 21/2010.

Αποστόλου Μάριος και άλλη ν. Ροδούλας Ιωάννου και άλλου, (2012) 1 Α.Α.Δ. 604    Page 15 of 17

Η αιτήτρια στην πρωτόδικη διαδικασία, καταχώρησε επίσης έφεση, προσβάλλουσα την ορθότητα της ενδιάμεσης απόφασης ως προς ένα μέρος της, σε σχέση με το οποίο ήγειρε ένα λόγο έφεσης.

Όπως εισηγείται η εφεσείουσα, το πρωτόδικο Δικαστήριο εσφαλμένα τερμάτισε την ισχύ του διατάγματος που είχε εκδώσει μονομερώς, αναφορικά με τα ακίνητα που περιγράφονταν στις παρα. Γ (α)(β)(γ) και Δ της αίτησης. Τα εν λόγω ακίνητα είναι εγγεγραμμένα σε εταιρείες των οποίων αποκλειστικός μέτοχος και διευθυντής είναι ο εφεσίβλητος.

Στην πρωτόδικη ενδιάμεση απόφασή του, το Δικαστήριο επικαλέστηκε την απόφαση του Δευτεροβάθμιου Οικογενειακού Δικαστηρίου στην υπόθεση *Ανδρέου ν. Κυριάκου κ.ά. (2002) 1 Α.Α.Δ. 896*, καθώς επίσης και την *Φιλίππου ν. Φιλίππου (2003) 1 Α.Α.Δ. 1343*. Στην πρώτη αποφασίστηκε ότι σε περιουσιακή διαφορά δυνάμει του Νόμου 232/1991, αγώγιμο δικαίωμα υφίσταται μόνο μεταξύ των συζύγων και το Δικαστήριο δεν έχει δικαιοδοσία να επιλαμβάνεται διαφοράς μεταξύ συζύγου και εταιρείας. Στη δεύτερη, κρίθηκε ότι αφού οι εταιρείες στις οποίες ήσαν εγγεγραμμένα τα δεσμευθέντα ακίνητα δεν ήσαν και ούτε μπορούσαν να είναι διάδικοι, το μέρος του διατάγματος που αφορούσε εκείνα τα ακίνητα θα έπρεπε να ακυρωθεί.

Με γνώμονα την πιο πάνω νομολογία, το πρωτόδικο Δικαστήριο αποφάνθηκε ότι Αγγλικές αποφάσεις στις οποίες είχε παραπέμψει ο συνήγορος του εφεσίβλητου δεν είχαν εφαρμογή στην εξεταζόμενη περίπτωση και προχώρησε στον τερματισμό της ισχύος του διατάγματος σε σχέση με τα περιουσιακά στοιχεία που αναφέρονταν στις παρα. Γ(α)(β)(γ) και Δ της αίτησης.

Οι Αγγλικές αποφάσεις στις οποίες παρέπεμψε ο συνήγορος της εφεσείουσας και στις οποίες στηρίχθηκε και ενώπιον του Εφετείου, ήσαν οι ακόλουθες: *Green v. Green [1993] F.L.R. 326, Nicholas v. Nicholas [1988] F.L.R. 285, Mubarak v. Mubarak [2001] 1 F.L.R. 673.*

Είναι η εισήγηση του συνηγόρου της εφεσείουσας ότι με βάση την πιο πάνω νομολογία, το Δικαστήριο έχει το δικαίωμα στο πλαίσιο περιουσιακής διαφοράς, να προχωρήσει σε δέσμευση άμεσα ή έμμεσα, περιουσίας, σε περιπτώσεις όπως εδώ, όπου η εταιρεία τελεί υπό τον αποκλειστικό έλεγχο συζύγου και η οποία ανήκει αποκλειστικά στον ίδιο, χωρίς να εμπλέκονται δικαιώματα τρίτων προσώπων. Όπου δηλαδή, η εταιρεία είναι απλά το *alter ego* του διαδίκου.

Η μελέτη της Αγγλικής νομολογίας επί του θέματος τούτου καταδεικνύει τα ακόλουθα:

Αποστόλου Μάριος και άλλη ν. Ροδούλας Ιωάννου και άλλου, (2012) 1 Α.Α.Δ. 604    Page 16 of 17

Κατά κανόνα, και σύμφωνα με τις αρχές που είχαν τεθεί στη γνωστή υπόθεση *Salomon v. Salomon & Co [1897] AC22* κάθε εταιρεία είναι ξεχωριστό νομικό πρόσωπο με δικό της ενεργητικό και παθητικό. Επομένως, οι διευθυντές και οι μέτοχοι της εταιρείας τυγχάνουν προστασίας δυνάμει της αρχής του "εταιρικού πέπλου" (corporate veil). Μια σειρά όμως αποφάσεων ασχολήθηκε με το θέμα της δυνατότητας δικαστικής παρέμβασης σε περιουσιακά στοιχεία που ανήκουν σε εταιρεία στην οποία συμμετέχει ως διευθυντής και/ή μέτοχος σύζυγος εναντίον του οποίου εγείρεται περιουσιακή διεκδίκηση από τον έτερο των συζύγων. Στην υπόθεση *Green v. Green [1993] 1 F.L.R. 326*, σε περιουσιακή διαφορά μεταξύ συζύγων, το Δικαστήριο έκρινε ότι θα μπορούσε να διαταχθεί η πώληση ακινήτου που ανήκε σε εταιρεία στην οποία ο σύζυγος κατείχε το 100% του μετοχικού κεφαλαίου, αφού θα συνιστούσε ειρωνεία αν εμποδιζόταν το Δικαστήριο από του να διατάξει την πώληση απλά και μόνο επειδή εγγεγραμμένος ιδιοκτήτης ήταν η εταιρεία καθ' ην στιγμή ο σύζυγος είχε αποτελεσματικό έλεγχο επί του ακινήτου, μέσω της εταιρείας την οποία ήλεγχε πλήρως.

Συνήθης περίπτωση κατά την οποία τα Αγγλικά Δικαστήρια αίρουν την προστασία του εταιρικού πέπλου είναι εκεί όπου η εταιρεία χρησιμοποιείται από τον ελέγχοντα την εταιρεία, απλά ως ένα τεχνητό μέσο, μια ασπίδα προς αποφυγή προϋπαρχουσών υποχρεώσεων. (*Trustor AB v. Smallborne and other (No.2) [2001] J 1 W.L.R. 1177*).

Η έκταση και η εμβέλεια της δικαστικής δυνατότητας όπως προβαίνει σε έκδοση διαταγής η οποία στρέφεται ευθέως εναντίον περιουσιακών στοιχείων εταιρείας, η οποία ανήκει ή ελέγχεται από ένα των συζύγων, εξετάστηκε σε λεπτομέρεια στην υπόθεση *Mubarak v. Mubarak [2001] 2 F.L.R. 673*. Το Αγγλικό High Court απέρριψε αίτημα της συζύγου για πώληση περιουσιακών στοιχείων δύο εταιρειών προς ικανοποίηση διαταγής υπέρ της και εναντίον του συζύγου για πληρωμή ποσού £4.875.000. Όπως τονίστηκε, ακόμα και εκεί όπου ο σύζυγος παραδέχετο ότι τα περιουσιακά στοιχεία μιας εταιρείας μπορούν να θεωρηθούν ως δικά του, εν τούτοις το Δικαστήριο μπορεί να άρει το εταιρικό πέπλο και να εκδώσει διατάγματα που άμεσα ή έμμεσα επηρεάζουν την περιουσία της εταιρείας, μόνο στις περιπτώσεις όπου: (i) ο σύζυγος είναι ο ιδιοκτήτης και ο ασκών τον έλεγχο της εταιρείας, και (ii) δεν υπάρχουν συγκρουόμενα συμφέροντα τρίτων προσώπων. Η άρση του εταιρικού πέπλου θα μπορούσε να γίνει δεκτή σε περιπτώσεις όπου τα υπό αναφορά περιουσιακά στοιχεία της εταιρείας αποτελούνται, για παράδειγμα, από τη συζυγική κατοικία ή άλλη περιουσία η οποία κατέχεται για σκοπούς άλλους από εκείνους οι οποίοι σχετίζονται με συνήθεις επιχειρησιακούς σκοπούς. Στην ίδια την υπόθεση *Mubarak* οι δύο εταιρείες ήσαν καλή τη πίστη λειτουργούσες εμπορικές επιχειρήσεις και υπήρχαν κάποιοι πιστωτές, οπότε η αίτηση της συζύγου απορρίφθηκε.

Σε πιο πρόσφατη Αγγλική απόφαση στην υπόθεση *Hashem v. Shayif & another [2008] EWHC 2380*, το Αγγλικό High Court επιβεβαίωσε ότι για να καταστεί δυνατή η

άρση του εταιρικού πέπλου θα πρέπει να αποκαλύπτεται κάποια επιλήψιμη ενέργεια που να συνδέεται με χρησιμοποίηση της εταιρικής δομής ως εικονικής (sham) προς απόκρυψη αδικοπραγίας και δεν είναι αρκετή από μόνη της η κατάδειξη του στοιχείου του αποκλειστικού ελέγχου της εταιρείας. Στην υπόθεση εκείνη, η απαίτηση της συζύγου απέτυχε καθότι, μεταξύ άλλων, η ίδια απέτυχε να καταδείξει οποιαδήποτε σχετική με την απαίτησή της επιλήψιμη ενέργεια του συζύγου σε χρησιμοποίηση της εταιρείας προς κτήση περιουσίας.

Η εταιρεία είχε συσταθεί για καλό σκοπό και διεξήγαγε επιχείρηση για χρόνια και η κατάρρευση του γάμου δεν μπορούσε από μόνη της να μετατρέψει την εταιρεία σε εικονική ή προκάλυμμα.

Υπό το φως και των ως άνω αρχών οι οποίες εκπηγάζουν από την Αγγλική νομολογία σε μέρος της οποίας στήριξε το λόγο έφεσής της η εφεσείουσα, κρίνουμε ότι αυτές δεν θα μπορούσαν να υποβοηθήσουν τη θέση της και να καταδείξουν το εσφαλμένο του μέρους της πρωτόδικης απόφασης που αφορούσε στον περιορισμό του εκδοθέντος διατάγματος σε σχέση με τα περιουσιακά στοιχεία εταιρειών.

Είναι λοιπόν η κατάληξή μας ότι και οι δύο συνεκδικασθείσες Εφέσεις αποτυγχάνουν και απορρίπτονται.

Υπό τις περιστάσεις δε, δε θεωρούμε ορθό όπως εκδώσουμε οποιαδήποτε διαταγή εξόδων.

*Οι Εφέσεις απορρίπτονται χωρίς έξοδα.*

cylaw.org: Από το ΚΙΝΟΠ/CyLii για τον Παγκύπριο Δικηγορικό Σύλλογο



translations@geotext.com
wwww.geotext.com

STATE OF NEW YORK      )
                       )      ss
                       )
COUNTY OF NEW YORK     )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true
and accurate translation from Greek into English of the attached Appeal no. 20/2010 and Appeal
no. 21/2010.

Jeff Cureton, Senior Managing Editor
Geotext Translations, Inc.

Sworn to and subscribed before me

this 27th day of July, 20 16.

HOA WIN LY
Notary Public, State of New York
No. 01LY6323702
Qualified in New York County
Term Expires April 27, 2019

New York
t: +1.212.631.7432

London
t: +44.20.7553.4100

Washington, D.C.
t: +1.202.828.1267

Paris
t: +33.1.42.68.51.47

Chicago
t: +1.312.242.3756

Stockholm
t: +46.8.463.11.87

Houston
t: +1.713.353.3909

Frankfurt
t: +49.69.7593.8434

San Francisco
t: +1.415.576.9500

Hong Kong
t: +852.2159.9143