```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                      :
SERGEY LEONTIEV,                                      :
                                                      :
                 Plaintiff,                           :
         -against-                                    :   No. 16-cv-03595 (JSR)
                                                      :
ALEXANDER VARSHAVSKY                                  :
                                                      :
                 Defendant.                           :
-----------------------------------------------------------------x
```

## EXPERT REPORT OF MR PAVLOS ARISTODEMOU

### A. Qualifications and Experience

1. I am a lawyer based in Cyprus and managing partner of Aristodemou Loizides Yiolitis LLC which is the trading entity in Cyprus of Harney Westwood & Riegles LLP (*Harneys*).

2. I have obtained an LLB degree from Oxford Brookes University in 1999 and an LLM degree (in Banking & Financial Law) from Boston University in 2000.

3. In 2001 I have been called to the Cyprus Bar and practising law in Cyprus since then.

4. I started as a lawyer with the law firm of Michael Kyprianou & Co for the period between 2001 - 2005 and in 2006 I have founded along with the other two named partners the law firm Aristodemou Loizides Yiolitis LLC which has then merged with Harneys.

5. I deal extensively with corporate, banking and finance matters as well as dispute resolutions mostly as a back office lawyer in complex matters. For example I am currently hired by the government of a sovereign country to deal with Cypriot law matters in international arbitration proceedings with claims over US$ 4 Billion. I also provide expert testimonies on Cypriot law in foreign proceedings.

1

6. In the past 6 years I have been recognised by international directories such as Chambers and Partners, Legal 500, Who is Who in Banking law and Best Lawyers as a leading corporate and finance lawyer in Cyprus.

7. I attach as Appendix A a non-exhaustive list of transactions in which I have been personally involved and for which I was given the permission to disclose the particulars of, and for many of which we had to carefully consider the points raised in the opinions expressed herein.

## B. Instructions

8. I have been asked by counsel of Mr Alexander Varshavsky, Defendant in the above proceedings before the Southern District Court of New York, to render a Cypriot law opinion on the circumstances under which a company's corporate veil can be lifted so than an individual can be held personally liable for the debts of the company, and in particular to answer the specific questions set out below.

9. For the purpose of rendering this opinion, I have performed my own independent research and I confirm my genuine belief in the opinions expressed herein.

## C. Cypriot Legal System and Cypriot Company Law

10. I consider necessary to briefly set out the way in which the legal system in Cyprus operates so as to illustrate how the Cypriot courts would analyse and decide cases of this kind.

11. By virtue of section 29(1) of the Courts of Justice Law No. 14/1960 (the *Courts of Justice Law*) and the 5th amendment of the Constitution by Law No.127(1)/2006[1], all Cypriot courts apply:

   i. European Union law;

   ii. the Constitution of the Republic of Cyprus and the laws pursuant to it. The Companies Law, Cap.113 (the *Companies Law*) deals with company law and is to a large extent a reflection of the old English Companies Act 1948.

   iii. the laws which have been retained by virtue of Article 188 of the Constitution;

---

[1] Following the accession of the Republic of Cyprus to the European Union in 2004, the Constitution was amended so that European law has supremacy over the Constitution and national legislation.

iv. the principles of Common Law and Equity (to the extent that they do not contradict the Constitution). Given that Cyprus is a common law jurisdiction, in the absence of Cypriot case law, the Cypriot courts look into English cases which, though not binding, *are of great persuasive authority as illustrating the common law* (*Antonis Mouzouris and another v. Xylophagou Plantations Ltd* (1977) 1 CLR 287).

v. the English laws which were applicable in Cyprus before 1960 to the extent that they have not been superseded and do not contradict the Constitution.

**D. What are the general legal principles applicable under Cypriot law by which a company's shareholder, parent company or controlling party can be held liable for the company's debts?**

**Lifting the corporate veil**

12. In the absence of EU and national legislation, the matter is regulated by common law principles pursuant to section 29 of the Courts of Justice Law.

13. The Cypriot courts adopted the principle established in the landmark case of *Salomon v Salomon & Co* [1897] AC 22 that a company has its own legal personality, meaning that it is a legal entity distinct from its shareholders, directors, parent or subsidiary companies (and by extension, a controlling party) and it is not in law the agent or trustee of any of them.

14. In certain situations the Cypriot courts can deviate from the Salomon principle by lifting the corporate veil, that is to ignore or set aside the separate legal personality of a company and fix liability on its shareholders, parent company or controlling party (as the case may be).

15. The main exception to the Salomon principle recognised by case law is where the company in question was used as a means for illegality or fraud (*Tameio Pleonazontos Prosopikou v. Panayiotas Onisiforou* (1989) 1E CLR 504), or has been used by its controller either for an unlawful or improper (*Multi Klima Maliotis Engineering Ltd v. The Republic of Cyprus*, joint actions 483/97 and 484/97, 18/02/2012). For example, in the case of *Sofoulla Ioannou and others v. Polly-Frocks Ltd* (2000) 1A 398, the Cypriot Supreme Court reversed the first instance decision and lifted the corporate veil where a company was incorporated, and took over the assets and operations of another company with the same shareholders, so as to avoid paying off its judgment creditors.

16. In *Apostolou Marios and other v. Rodoula Ioannou and other*, (2012) 1 CLR 608, the Cypriot Supreme Court following the case of *Trustor AB v. Smallbone (No2)* [2001] J1 W.L.R. 1177 emphasised that the corporate veil is lifted where the company is used by its controller/ alter ego merely as a vehicle, or a means to avoid pre-existing obligations.

17. It is noted that for the corporate veil to be lifted, both elements of impropriety and control must be present. In *Apostolou* the Supreme Court, in adopting the case of *Hashem v. Shayif & another* [2008] EWHC 2380 (Fam) held that the corporate veil can be lifted in cases where the wrongdoer controlled the company, which he used as a façade or device to cover up his own wrongdoing; the element of control will not by itself suffice.

18. Further, a company can be a façade even though it was not originally incorporated with any deceptive intent. The question is whether it is being used as a façade at the time of the relevant transaction (*Hashem*).

19. In the recent English case *Prest v Petrodel Resources Ltd* [2013] UKSC 31 the Supreme Court held that the corporate veil can be lifted when a person is under an existing legal obligation or liability or subject to an existing legal restriction which he deliberately evades or whose enforcement he deliberately frustrates by interposing a company under his control. The court may then lift the corporate veil solely for the purpose of depriving the company or its controller of the advantage which they would otherwise have obtained by the company's separate legal personality. If there is another legal remedy, the corporate veil will not be lifted.

20. In delivering the leading judgment in *Prest*, Lord Sumption held that there are two principles at stake: the concealment principle and the evasion principle. The concealment principle does not involve lifting the corporate veil as it is linked to cases where a company is used to hide the identity of the real actors. The evasion principle does involve piercing the corporate veil as it is linked to cases where a person in control of a company is subject to a legal right and puts a company between himself and the legal right, so that the corporate personality of the company will defeat that right or frustrate its enforcement. Having said that, the Supreme Court held that the underlying policy is that *'fraud unravels everything'*, quoting Denning LJ in *Lazarus Estates Ltd v Beasley* [1956] 1 QB 702, 712:

4

*"No court in this land will allow a person to keep an advantage which he has obtained by fraud. No judgment of a court, no order of a Minister, can be allowed to stand if it has been obtained by fraud. Fraud unravels everything. The court is careful not to find fraud unless it is distinctly pleaded and proved; but once it is proved, it vitiates judgments, contracts and all transactions whatsoever..."*

21. As at the date of this opinion, the case of *Prest* has not been applied nor discussed in Cyprus, however, it is of great persuasive authority.

22. Whether or not a court will lift the corporate veil under Cypriot law depends on the facts of each case as these are proved by the evidence presented to the court. If it proved that Mr Sergey Leontiev committed a fraud by incurring debt on the companies' name and transferring away the proceeds, then the corporate veil can be lifted. In page 17 of the Plaintiff's memorandum of law in support of motion for judgment on the pleadings as to the Plaintiff's first cause of action, the Plaintiff contends that the court is not entitled to lift the corporate veil as against a company merely because the corporate structure has been used to limit legal liability in respect of future activities. The position is however different if a wrongdoer is hiding behind the veil of incorporation so as to limit personal liability for future business activities in the presence of specific planned impropriety linked to the company structure, in which case the corporate veil may be lifted.

**Provisions under the Companies Law**

23. The Companies Law provides for mechanisms under which a shareholder/ parent company may be liable for the company's debts.

24. By virtue of section 32 of the Companies Law a member of a public limited company may lose the privilege of limited liability where the number of members is reduced below the legal minimum (i.e. 7 members) and the company carries on business for more than six months while the number is so reduced, with such member being cognisant of this fact. In this case the member is severally liable for the company's debts arising during that time.

25. Further, section 311 of the Companies Law imposes personal responsibility (without limitation of liability for all or any of the debts of the company) on any persons who, in the course of winding up it appears that were knowingly parties to the carrying on of the business with intent to defraud creditors. For the purpose of this section 'fraud' means *'actual dishonesty involving,*

*according to current notions of fair trading among commercial men, real moral blame'* (*Re Patrick & Lyon Ltd.* [1933] Ch. 786, 790).

**E. Do the examples listed in paragraph 15 of the Declaration of Andreas Haviaras describe the full extent of circumstances under which Cypriot law lifts the corporate veil?**

26. Paragraph 15 of the Declaration of Andreas Haviaras provides individual examples where the corporate veil was lifted. However, it is not an exhaustive list and does not describe the full extent of circumstances under which Cypriot law lifts the corporate veil with the most important being the manipulation of the corporate form as a device to avoid or conceal liability. In this respect it is noted that point (a) of paragraph 15 of the Declaration of Andreas Haviaras namely, the lifting of the corporate veil where the company is a sham so as to hide a wrongdoing, is not confined only to family disputes.

27. For an analysis of the principles under which the corporate veil can be lifted, please see paragraphs 7 – 15 above. In summary, the principles under which the corporate veil can be lifted are as follows (*Hashem* as approved in the recent case of Prest and *VTB Capital plc v Nutritek International Corp and others* [2013] UKSC 5):

   i. Ownership and control of a company are not of themselves sufficient to justify lifting the corporate veil. Control may be a necessary but it is not a sufficient condition.
   ii. The corporate veil can be lifted only if there is some impropriety, noting that the impropriety must be linked to the use of the company structure to avoid or conceal liability.
   iii. It is necessary to demonstrate both control of the company by the wrongdoer and impropriety, that is, misuse of the company by him as a device or façade to conceal his wrongdoing. In this connection, the motive of the wrongdoer may be highly relevant.
   iv. The court cannot lift the corporate veil, even where there is no unconnected third party involved, merely because it is thought to be necessary in the interests of justice.
   v. A company can be a façade even though it was not originally incorporated with any deceptive intent. The question is whether it is being used as a façade at the time of the relevant transaction. The court will lift the corporate veil only so far as is necessary to provide a remedy for the particular wrong which those controlling the company have done.

6

F. Under Cypriot law, is it possible to pierce the corporate veil and/or impose alter ego liability in the absence of formal liquidation proceedings?

28. The corporate veil of a company can be lifted and/or alter ego liability can be imposed in the absence of formal liquidation proceedings save where section 311 of Cap.113 (explained above) is relied upon.

G. Conclusion

29. In view of the above, if, on the basis of the evidence before it, the Southern District Court of New York is satisfied that the Cypriot companies were being used as a sham/ façade to conceal the wrongdoing of Mr Sergey Leontiev, being the fraudulent securing of funds which he later caused to be transferred to other entities purportedly leaving the borrowers insolvent, then the corporate veil can be lifted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of April, 2016.

Pavlos Aristodemou

**Appendix A**

## Non-exhaustive list of transactions

1. Acted as counsel to the European Bank of Reconstruction and Development ("EBRD") in more than 15 secured finance transactions in 2015.

2. Advised ING on Cypriot law matters in a financing given to Empik Media & Fashion Group (the EM&F Group). The deal involved a consortium of banks with ING as the cooperation agent and the security agent, as well as with Raiffeisen Bank Polska, RBS, RBS Polska, BNP Paribas, BZ WBK, PZU FIZ AN BIS2 and Pekao. The EM&F Group has a number of subsidiaries in Cyprus where a number of collaterals have been established to secure the terms of the financing arrangement.

3. Advised the world's largest independent provider of global maritime services on the restructuring of certain Cypriot entities. The restructuring of V Group's Cypriot entities in November 2011 was pursuant to an indirect acquisition of V Group Limited by its senior management and OMERS Private Equity via a newly formed acquisition vehicle incorporated in England.

4. Acted as Cypriot joint legal advisors for V.Ships Group and Royal Bank of Canada in a London-led refinancing of the group. V. Ships is one of the world's largest ship management companies operating in the commercial shipping, cruise, energy and defence sectors.

5. Advised as to matters of Cypriot law ING Bank N.V. and Unicredit Bank Austria AG and to counsel CMS Cameron McKenna in connection with an amendment and restatement agreement relating to a USD 100 million corporate and acquisition financing to the leading Ukrainian agribusiness Kernel Holding. Kernel Holding is listed on the Warsaw stock exchange and is the largest vertically-integrated agro-industrial company in Ukraine, the largest producer and exporter of bottled sunflower oil, and one of the country's largest grain exporters.

6. Acted as legal advisor for ERSTE GROUP BANK AG in connection with a euro 37,000,000 senior term and revolving facility provided to La Fantana S.R.L. The La Fântâna Group is the leading bottler and distributor of spring water for offices in Romania and Serbia.

7. Recently acted as Cyprus counsel to UBS AG and Credit Suisse AG in connection with an amendment to a facility agreement dated 19 April 2013 given to Crispian Investments Limited ("Crispian") as borrower. Crispian is a holder of shares in Norilsk Nickel. Norilsk Nickel is the world's leading producer of nickel and palladium and one of the world's top producers of platinum and copper. Also acted as legal advisor in the original deal back in 2013.

8. Advised Landesbank Baden-Württemberg ("LBBW") in connection with a EUR 30,500,000 loan agreement entered into by Krasova Limited (part of the Grand City Properties group) as borrower and LBBW as lender in connection with a refinancing for the purchase of an office building in München-Dornach, Germany. The Grand City Properties group is the leading specialist in buying, re-developing, optimizing and repositioning real estate in Germany.

9. Advised Credit Suisse in connection with a $100 million secured syndicated loan facility given to Exillon Energy Plc, an independent oil producer with assets in two oil-rich regions in northern Russia. The loan replaces a $50 million loan raised from the same lender in September 2010.

10. Advised Sberbank CIB as to matters of Cyprus law, with regards to the financing of the "Vremena Goda" residential complex in the amount of RUB 6.25 bln for five years.

11. Acted as Cyprus legal adviser to VTB Capital PLC in relation to the sale of White Gardens, a class A office center in Moscow, to Millhouse from international developer AIG/Lincoln, and Coalco Development in the amount of approximatelyUS$750 million making it the second- largest deal recorded on the Moscow real estate market.

12. Advised Bank Zachodni WBK S.A. and Alior Bank S.A. in connection with a PLN 400,000,000 multi-currency revolving facility agreement dated 24 January 2014 given to P4 Sp. Z o.o for the refinancing of existing financing arrangements of the Play Group (PLAY).

13. Advised BNP Paribas (Suisse) SA and ING Bank N.V. as to matters of Cyprus law in a US$250 million financing given to Carbo One Limited ("Carbo") secured by various security documents.

14. Advised Sberbank of Moscow in relation to a loan given to Capital Partners for the refinancing of the Metropolis shopping centre in Moscow. This is believed to be the largest financing in the Russian real estate market in the past two years.

15. Acted as Cyprus counsel to Jefferies being the Joint Global Co-Ordinators for the issue of $370 million in Senior Secured Notes due 2019 with a coupon of 10% by Avanti Communications Group PLC ("Avanti"), a satellite data communications company guaranteed by a number of companies including of two Cypriot entities, being subsidiaries of Avanti. Avanti sells satellite data communications services to telecoms companies which use them to supply enterprise, institutional and consumer users. The transaction documentation, amongst others, included Cypriot law governed pledge agreements and debentures.

16. Acted as Cypriot counsel to Goldman Sachs International, as sole initial purchaser, in the $400 million offering of Senior Secured Notes due 2019 by ContourGlobal Power Holdings S.A., a finance subsidiary of the parent ContourGlobal L.P. The notes were secured by share pledges of certain existing and future subsidiaries of ContourGlobal L.P. Also acted as Cypriot counsel to Goldman Sachs Bank USA, as lead arranger and bookrunner and lender, in a $200 million senior secured bridge term loan facility to ContourGlobal Power Holdings S.A., which closed on March 31, 2014. Part of the proceeds of the secured notes offering was used to repay the bridge loan facility.

17. Recently acted for the underwriters of US$800 million senior secured notes issued by Far East Capital Limited S.A., a subsidiary of the FESCO Group (Far-Eastern Shipping Company plc) (FESCO) and its consolidated subsidiaries.

18. Acted as legal advisor for Anoa Capital S.A. as sole bookrunner, KNG Securities LLP as a co-manager and Prudential Trustee Company Limited as trustee, for the issue of senior secured convertible bonds €100,000,000 4 per cent due 2019. The issuer of the bonds was Primecity Investment Plc., a real estate company that specialises in hotel investments in Germany.