UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                  :

SERGEY LEONTIEV,                       :

                Plaintiff,           :

              - v. -                :       Case No. 1:16-cv-03595 (JSR)

ALEXANDER VARSHAVSKY,      :

              Defendant.       :

----------------------------------------------------------------- X

**DECLARATION OF SVETLANA VOLODINA
WITH CERTIFIED ENGLISH TRANSLATION**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
SERGEY LEONTIEV,                                            :
:
Plaintiff,                          :
:
- v. -                               :          Case No. 1:16-cv-03595 (JSR)
:
ALEXANDER VARSHAVSKY,                                       :
:
Defendant.                          :
:
------------------------------------------------------------X

## DECLARATION OF TRANSLATOR

MIKHAIL A. SITNIKOV hereby declares as follows:

1.      I am fluent in the Russian and English languages.  I have been translating documents for 21 years and am competent to translate documents between Russian and English.

2.      Ms. Svetlana Volodina's declaration in the Russian language is attached hereto as Exhibit A.

3.      An English language translation of Ms. Svetlana Volodina's declaration is attached hereto as Exhibit B.

4.      The English and Russian versions of Ms. Volodina's declaration (Exhibits A and B) are true and accurate translations of one another to the best of my knowledge and belief.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 25 day of August 2016 in        Moscow, Russia

Mikhail A. Sitnikov

**EXHIBIT A**

**Russian Original**

Federal chamber of lawyers
of the Russian Federation



Федеральная палата адвокатов
Российской Федерации

Я, Володина Светлана, заявляю под страхом наказания за дачу ложных
показаний следующее:

<u>Образование и опыт работы</u>

1. Я являюсь практикующим юристом в России с 1985 года. В 1985 году я
   окончила Всесоюзный юридический заочный институт (с 1993 г. по 2012 г. –
   Московская государственная юридическая академия, с 2012 г. – Московский
   государственный юридический институт имени О.Е. Кутафина). В 2002 году
   я получила степень доктора юридических наук в Московской
   государственной юридической академии. Я являюсь членом Адвокатской
   палаты Московской области.

2. В 1985 году я начала практиковать в качестве адвоката, занимаюсь
   юридической практикой до настоящего времени. В течение многих лет
   являюсь членом квалификационной комиссии, сначала Московской
   областной коллегии адвокатов, а после 2002 года – Адвокатской палаты
   Московской области. В настоящее время являюсь вице-президентом
   Федеральной палаты адвокатов Российской Федерации, занимаюсь
   вопросами повышения квалификации адвокатов страны. Принимала участие
   в создании первой в РФ кафедры адвокатуры в Московской государственной
   юридической академии. Более 15 лет являюсь заместителем заведующего
   этой кафедрой. Преподавала студентам гражданское право, адвокатуру,
   юридическую риторику. Имею большой и разнообразный опыт
   представления интересов клиентов в многочисленных уголовных делах и
   судебных разбирательствах по корпоративным, гражданским и семейным
   спорам.

<u>Регулирование российским законодательством вопросов ответственности
по обязательствам юридических лиц</u>

(A) По общему правилу акционеры и акционерные общества не отвечают
    по обязательствам друг друга. Однако российским законодательством и
    судебной практикой предусмотрены в качестве исключений концепции,

аналогичные доктринам «снятия корпоративной вуали» и «*alter ego* ответственности».

3. Российское гражданское и корпоративное законодательство устанавливает следующее общее правило: акционеры не отвечают по обязательствам акционерного общества и несут риск убытков, связанных с его деятельностью, в пределах стоимости принадлежащих им акций; общество также не отвечает по обязательствам акционеров (статьи 2 и 3 Федерального закона «Об акционерных обществах» от 26.12.1995 № 208-ФЗ, статья 56 Гражданского кодекса РФ).

4. Вместе с тем, российское право предусматривает ряд исключений – концепций, аналогичных доктринам «снятия корпоративной вуали» и «*alter ego* ответственности»:

- основное общество может быть привлечено к солидарной ответственности с дочерним обществом по сделкам, заключенным дочерним обществом во исполнение указаний или с согласия основного хозяйственного общества (ст. 67.3 Гражданского кодекса РФ);

- лицо, имеющее фактическую возможность определять действия юридического лица, может быть привлечено к ответственности за убытки, причиненные по его вине юридическому лицу (ст. 53.1 Гражданского кодекса РФ);

- контролирующее лицо может быть привлечено к субсидиарной ответственности по долгам контролируемой компании перед кредиторами в случае, если должник признан несостоятельным (банкротом) вследствие действий и (или) бездействия контролирующих должника лиц (ст. 10 Федерального закона от 26.10.2002 № 127-ФЗ «О несостоятельности (банкротстве)» далее – «Закон о банкротстве»);

- лицо, которое недобросовестно использует конструкцию юридического лица намеренно с целью избежать ответственности и скрыть имущество от взыскания по требованиям кредиторов, может быть привлечено к ответственности в соответствии с положениями п. 4 ст. 1 и п. 1 ст. 10 Гражданского кодекса РФ.

(В) **Привлечение контролирующего лица к субсидиарной ответственности в рамках процедуры банкротства является одной из признаваемых российским правом концепций, которые являются аналогами «снятия корпоративной вуали» и «*alter ego* ответственности»; вместе с тем существуют иные концепции, применяемые к иным вопросам (например, в отношении ответственности за убытки).**

5.  В соответствии со ст. 67.3 Гражданского кодекса РФ хозяйственное общество признается дочерним, если другое (основное) хозяйственное общество в силу преобладающего участия в его уставном капитале, либо в соответствии с заключенным между ними договором, либо иным образом имеет возможность определять решения, принимаемые таким обществом. Основное общество несет солидарную ответственность с дочерним обществом по сделкам, заключенным последним во исполнение указаний или с согласия основного хозяйственного общества. В случае если не были соблюдены корпоративные процедуры одобрения сделки, и основное общество дало указание или согласие на совершение данной сделки (например, если основное общество без соблюдения надлежащей процедуры одобрения дает указание или согласие на совершение сделки генеральному директору дочернего общества в форме электронного письма), существуют основания для привлечения основного общества к солидарной ответственности вместе с дочерним в отношении такой сделки.

6.  В соответствии со ст. 53.1 Гражданского кодекса РФ лицо, имеющее фактическую возможность определять действия юридического лица, несет ответственность за убытки, причиненные по его вине юридическому лицу. В случае совместного причинения убытков такие лица обязаны возместить убытки солидарно. Однако рассматриваемый иск может быть подан исключительно акционерами или участниками юридического лица или самим юридическим лицом, а убытки присуждаются юридическому лицу, которое их понесло.

7.  Схожее средство защиты предусмотрено п. 1 ст. 10 Закона о банкротстве в рамках процедуры банкротства для участников/учредителей должника, а также для конкурсного управляющего и конкурсных кредиторов. Кредиторы могут требовать возмещение убытков, причиненных должнику его учредителями/участниками или его органами управления / членами его

органов управления, данные убытки подлежат уплате должнику, включаются в конкурсную массу и распределяются среди конкурсных кредиторов.

8. Помимо вышеуказанных концепций российские суды также могут применять п. 4 ст. 1 («Никто не вправе извлекать преимущество из своего незаконного или недобросовестного поведения») и п. 1 ст. 10 («Не допускаются осуществление гражданских прав исключительно с намерением причинить вред другому лицу, действия в обход закона с противоправной целью, а также иное заведомо недобросовестное осуществление гражданских прав (злоупотребление правом)») Гражданского кодекса РФ в качестве оснований для применения доктрины «снятия корпоративной вуали» к лицу, которое недобросовестно использует конструкцию юридического лица намеренно с целью избежать ответственности и сокрыть имущество от взыскания по требованиям кредиторов.

9. На данный момент российские суды понимают концепцию «снятия корпоративной вуали» довольно широко и часто используют ее для привлечения к ответственности контролирующего лица за убытки, причиненные его недобросовестными действиями третьим лицам или для целей оспаривания сделок, заключенных юридическим лицом под влиянием такого контролирующего лица, действующего недобросовестно. При вынесении данных решений суды ссылаются на п. 4 ст. 1 и п. 1 ст. 10 Гражданского кодекса РФ[1] (при этом в некоторых решениях суды ссылались на иные нормы права).

10. Наиболее известным делом, связанным со «снятием корпоративной вуали» в российской судебной практике, является «дело Сенаторова»[2], в ходе которого российские суды использовали концепцию «обратного снятия корпоративной вуали», т.е. привлекли к ответственности за долги Сенаторова подконтрольные ему юридические лица. Сенаторов фактически

---

[1] Решение арбитражного суда Краснодарского края от 6 августа 2014 г. по делу № А32-1966/2014, Постановление 13 арбитражного апелляционного суда от 29 мая 2012 г. по делу № А33-18291/2011

[2] Апелляционное Определение Московского городского суда от 2 августа 2012 г. по делу N 11-16173, Определение Верховного Суда от 30 мая 2013 г. № 5-КГ13-61

незаконно и недобросовестно скрывал от взыскания кредиторов имущество путём передачи его в собственность полностью подконтрольных ему юридических лиц, а затем ссылался на общее правило, в соответствии с которым юридические лица не несут ответственность по долгам учредителей (акционеров). Насколько мне известно, интересы Сенаторова в данном деле представляла юридическая фирма «Монастырский, Зюба, Степанов и партнеры».

11. В 2013 году были приняты поправки в Закон о банкротстве, и для целей проведения процедуры банкротства было нормативно определено понятие «контролирующее должника лицо». В соответствии со ст. 2 Закона о банкротстве, контролирующим лицом является лицо, имеющее либо имевшее в течение менее чем два года до принятия арбитражным судом заявления о признании должника банкротом право давать обязательные для исполнения должником указания или возможность иным образом определять действия должника, в том числе путем принуждения руководителя или членов органов управления должника либо оказания определяющего влияния на руководителя или членов органов управления должника иным образом (в частности, контролирующим должника лицом могут быть признаны члены ликвидационной комиссии, лицо, которое в силу полномочия, основанного на доверенности, нормативном правовом акте, специального полномочия могло совершать сделки от имени должника, лицо, которое имело право распоряжаться пятьюдесятью и более процентами голосующих акций акционерного общества, руководитель должника). Соответственно, круг лиц, которые могут быть признаны контролирующими лицами должника, не ограничен формальными признаками, в качестве таковых могут быть признаны не только лица, имеющие контрольный пакет акций, но и иные лица, в зависимости от фактических обстоятельств.

12. В соответствии с п. 4 ст. 10 Закона о банкротстве, контролирующее должника лицо может быть привлечено к субсидиарной ответственности по долгам акционерного общества, если банкротство должника явилось результатом его действия или бездействия. При этом презюмируется связь банкротства с действиями контролирующего лица, если вред имущественным правам кредиторов причинен в результате совершения этим

лицом или в пользу этого лица либо одобрения этим лицом одной или нескольких сделок должника. Если ущерб причинен вследствие действий и (или) бездействия нескольких контролирующих должника лиц, то такие лица отвечают солидарно. Указанным законом установлено, что контролирующее лицо может быть освобождено от субсидиарной ответственности перед кредиторами, если докажет, что отсутствует его вина в признании должника банкротом.

13. В соответствии с положениями Закона о банкротстве требования о привлечении контролирующего лица должника к субсидиарной ответственности перед кредиторами рассматриваются арбитражным судом в деле о банкротстве должника. Такое заявление может быть подано конкурсным управляющим, а в определенных случаях также конкурсным кредитором, представителем работников должника, работником, бывшим работником должника или уполномоченным государственным органом. Установлено, что заявление о привлечении контролирующего должника лица к субсидиарной ответственности не может быть подано после завершения конкурсного производства.

(C) **Ликвидация юридического лица может быть «отменена», а само юридическое лицо - «восстановлено» в случае, если информация о какой-либо задолженности юридического лица не была включена в ликвидационный баланс или процедура ликвидации была нарушена иным существенным образом. После этого в отношении такого юридического лица может быть начата процедура банкротства в случае, если имущества юридического лица будет недостаточно для удовлетворения всех требований кредиторов. В ходе такой процедуры банкротства контролирующее лицо может быть привлечено к субсидиарной ответственности.**

14. Гражданское законодательство не содержит нормы о возможности привлечения контролирующего лица акционерного общества к субсидиарной ответственности по его обязательствам перед кредиторами в ходе ликвидации юридического лица без проведения процедуры банкротства. Субсидиарная ответственность устанавливается на случай недостаточности имущества должника для удовлетворения требований его кредиторов, но если у ликвидируемого акционерного общества возникает

такая недостаточность имущества, его ликвидация вне процедуры банкротства невозможна. В силу прямого указания в п. 4 ст. 63 Гражданского кодекса РФ и ст. 224 Закона о банкротстве в случае недостаточности имущества ликвидируемого юридического лица для удовлетворения требований кредиторов или при наличии признаков банкротства юридического лица ликвидационная комиссия обязана обратиться в арбитражный суд с заявлением о банкротстве юридического лица. Если недостаточность имущества была выявлена после принятия решения о ликвидации юридического лица и до создания ликвидационной комиссии/назначения ликвидатора заявление о признании должника банкротом должно быть подано в арбитражный суд учредителем/участником должника или руководителем должника.

15. Российское законодательство возлагает на ликвидатора (ликвидационную комиссию) обязанность действовать разумно и добросовестно, как в интересах ликвидируемого юридического лица, так и в интересах его кредиторов. Ликвидатор обязан опубликовать в определенных средствах массовой информации сообщение о ликвидации юридического лица, о порядке и сроке заявления требований его кредиторами, который не может быть менее 2 месяцев. Он обязан принимать меры по выявлению кредиторов и получению дебиторской задолженности, а также уведомлять именно в письменной форме кредиторов о ликвидации юридического лица. После окончания срока предъявления требований кредиторами ликвидатор обязан составить промежуточный ликвидационный баланс, со сведениями о составе имущества ликвидируемого юридического лица, перечне требований, предъявленных кредиторами, результатах их рассмотрения, а также о перечне требований, удовлетворенных вступившим в законную силу решением суда, независимо от того, были ли такие требования приняты ликвидационной комиссией. О составлении промежуточного ликвидационного баланса ликвидатор обязан уведомить регистрирующий орган (налоговую службу).

16. После завершения расчетов с кредиторами по признанным им требованиям ликвидатор обязан составить ликвидационный баланс и обратиться к регистрирующий орган (налоговую службу) с заявлением о регистрации прекращения юридического лица. В таком заявлении он обязан подтвердить,

что им соблюден установленный федеральным законом порядок ликвидации юридического лица, и что расчеты с его кредиторами завершены. Ликвидация юридического лица считается завершенной, а юридическое лицо - прекратившим свою деятельность, после внесения об этом записи в Единый государственный реестр юридических лиц (далее – «ЕГРЮЛ»), информацию, о чем регистрирующий орган публикует для всеобщего сведения.

17. Таким образом, при добросовестном выполнении ликвидатором своих обязанностей, вытекающих из нормативного регулирования процесса добровольной ликвидации акционерного общества, не может возникнуть ситуация, когда сведения об акционерном обществе исключены из реестра вне процедуры банкротства, а имущества общества не хватило для удовлетворения требований кредиторов. Соответственно, проведённая с нарушениями закона процедура ликвидации, при которой отдельные кредиторы были лишены возможности заявить свои требования к акционерному обществу и контролирующим его лицам, не является по российскому праву основанием «необратимого» прекращения прав требований таких кредиторов. В таком случае кредиторам предоставляется право требовать «возобновления» процедуры ликвидации, в рамках которой такие кредиторы снова смогут реализовать свои требования к акционерному обществу как должнику. При недостаточности имущества акционерного общества законодательством предусмотрен порядок инициирования процедуры его банкротства и возможность требовать привлечения контролирующих его лиц к субсидиарной ответственности.

18. В соответствии с положениями Федерального закона от 06.12.2011 № 402-ФЗ «О бухгалтерском учете» юридическое лицо как экономический субъект обязано вести бухгалтерский учет непрерывно с даты государственной регистрации до даты прекращения деятельности в результате реорганизации или ликвидации. Каждый факт хозяйственной жизни подлежит оформлению первичным учетным документом. Данные первичных учетных документов подлежат своевременной регистрации и накоплению в регистрах бухгалтерского учета. На основании данных регистров бухгалтерского учета формируется бухгалтерская (финансовая) отчетность.

19. Российское гражданское законодательство предусматривает возможность использования векселя юридического лица для оформления заемных обязательств (так называемые финансовые векселя), равно как и возможность использования векселя для оформления обязательства оплатить полученные товары, работы или услуги (так называемые товарные векселя).

20. Заимствования, оформленные векселями, подлежат в обязательном порядке отражению в бухгалтерском учете юридического лица. Для коммерческих организаций-векселедателей данная информация подлежит отражению – на счетах 66 «Расчеты по краткосрочным кредитам и займам», если обязательство сроком до 1 года, и 67 «Расчеты по долгосрочным кредитам и займам», если обязательство сроком более 1 года. Учет должен обеспечивать надлежащую идентификацию первого векселедержателя, а в случае получения информации об осуществлённых индоссаментах – о текущем векселедержателе.

21. После принятия акционерами решения о добровольной ликвидации акционерного общества ликвидатор обязан не только опубликовать сведения об этом в определённом средстве массовой информации, но и известить кредиторов в определенной форме – письменно. Невыполнение этой обязанности признается арбитражными судами существенным нарушением процедуры добровольной ликвидации.

22. Также существенным нарушением процедуры ликвидации юридического суда арбитражными судами признается представление в регистрирующий орган промежуточного ликвидационного баланса и ликвидационного баланса, содержащего недостоверные сведения о действительном финансовом положении юридического лица, в частности, не содержащего сведения о существующих обязательствах перед кредиторами. В 2011 году Президиум Высшего Арбитражного Суда РФ сформулировал правовую позицию, в соответствии с которой при ликвидации юридического лица заявление о государственной регистрации, а также ликвидационный баланс, на основании которых формируется соответствующая часть ЕГРЮЛ, являющегося федеральным информационным ресурсом, должны содержать достоверную информацию, и что недопустимо внесение в ликвидационные балансы явно недостоверных сведений - составление балансов без учета

обязательств ликвидируемого лица, о наличии которых было доподлинно известно[3].

23. Также Президиумом Высшего Арбитражного Суда РФ в 2013 году была сформулирована правовая позиция, согласно которой допущенные при проведении процедуры ликвидации нарушения могут привести к признанию действий (бездействия) ликвидатора незаконными и восстановлению ликвидированного юридического лица путем внесения в единый государственный реестр юридических лиц записи о признании недействительной предыдущей записи о прекращении юридического лица в связи с ликвидацией.  Такого рода требования могут быть заявлены как участниками юридического лица, так и его кредиторами, сведения о которых в нарушение требований законодательства не были внесены ликвидатором в промежуточный ликвидационный и ликвидационный балансы[4].

24. Требования об обжаловании действий ликвидатора, заявленные в том числе и после внесения в ЕГРЮЛ записи о прекращении юридического лица в связи с ликвидацией, относятся к специальной подведомственности арбитражных судов. При этом сам факт ликвидации юридического лица не изменяет подведомственности таких споров.

25. После удовлетворения требования о признании недействительной записи в ЕГРЮЛ о прекращении юридического лица в связи с ликвидацией юридическое лицо признается существующим как не завершившее процедуру ликвидации. И в связи с наличием требований кредиторов, для удовлетворения которых не имеется имущества, продолжение его ликвидации возможно только путем возбуждения процедуры банкротства. Как отмечалось выше при наличии соответствующих оснований возможно заявление требований о привлечении контролирующих лиц должника к субсидиарной ответственности.

26. Помимо специальных норм Закона о Банкротстве о субсидиарной ответственности контролирующих лиц должника Гражданский кодекс РФ содержит и общие нормы об ответственности вследствие причинения вреда. Нарушением процедуры ликвидации юридического лица кредитору могут быть причинены убытки, возмещение которых возможно по правилам статьи

---

[3] Постановление Президиума ВАС от 13 октября 2011 г. №7075/2011
[4] Постановление Президиума ВАС от 15 января 2013 г. № 11925/2012

15 и главы 59 Гражданского кодекса РФ. Так, в связи с недобросовестными действиями ликвидатора, являющегося единственным участником и руководителем должника, при ликвидации юридического лица без процедуры банкротства судебным актом на него был возложен долг ликвидированного юридического лица перед оспаривавшим такую ликвидацию кредитором. Решение суда первой инстанции было поддержано вышестоящими судами, в том числе коллегией по гражданским делам Верховного Суда РФ[5].

Я заявляю под страхом наказания за дачу ложных показаний, установленного законодательством Соединенных Штатов Америки, что вышеизложенные утверждения являются верными и корректными.

Подписано 25 августа 2016 г. в г. Москве, Россия

_____

С.И. Володина

*Подпись Володиной С.И. подтверждаю кривошеев*

---

[5] Определение Верховного Суда от 2 июля 2013 № 18-КГ13-59

**EXHIBIT B**

**English Translation**

[On the letterhead of the Federal Chamber of Lawyers of the Russian Federation]

I, Svetlana I. Volodina, declare under penalty of perjury the following:

## Education and Work Experience

1.  I have been a practicing lawyer in Russia since 1985. In 1985 I graduated from the All-Union Correspondence Institute of Law (*Vsesoyuznyi Juridicheskiy Zaochny Institut*, which from 1993 to 2012 was called the Moscow State Academy of Law, and since 2012 became Kutafin Moscow State Law University). In 2002 I received the degree of Doctor of Law from the Moscow State Academy of Law. I am a member of the Moscow Region Bar Association.

2.  In 1985 I began to practice as a lawyer, and I have continued to practice to this date. For many years I have been a member of the examinations board, first of the Moscow Regional Collegium of Lawyers, and after 2002 of the Moscow Regional Chamber of Lawyers. I am currently Vice President of the Federal Chamber of Lawyers of the Russian Federation, and I handle matters involving the continuing education of lawyers in Russia. I participated in the creation of the first advocacy department in the Russian Federation at Moscow State Law University. I have been deputy head of that department for over 15 years. I have taught students civil law, the practice of law, and oral advocacy. I have broad and extensive experience of representing clients in numerous criminal cases and in corporate, civil and family disputes.

## The Russian Law Regulation of Liability for a Legal Entity's Obligations

**(A) As a general rule, shareholders and joint stock companies are not liable for one another's debts. However, the Russian legislation and court practice provide for certain exceptions—concepts that are similar to the "corporate veil-piercing" and "*alter ego* liability" doctrines.**

3.  Russian civil and corporate law sets forth the following general rule: shareholders ordinarily are not liable for the obligations of a joint stock company whose shares they hold, but bear the risk of losses related to a company's activity up to the value of the shares belonging to them; a company is also not liable for the obligations of its shareholders (Articles 2 and 3 of Federal Law No. 208-FZ on Joint Stock Companies dated December 26, 1995, and Article 56 of the Civil Code of the Russian Federation).

4. However, Russian law provides for a number of exceptions—concepts similar to "corporate veil-piercing" and "*alter ego* liability" doctrines:

- a parent company may be held jointly and severally liable for transactions entered into by its subsidiary upon the instructions or consent of such parent company (Article 67.3 of the Civil Code of the Russian Federation);

- a person that has a *de facto* opportunity to determine the actions of a legal entity may be held liable for damages incurred by that legal entity which were caused by such person (Article 53.1 of the Civil Code of the Russian Federation);

- a controlling person may be held secondarily liable to a third party creditor for debts of the controlled company if such company became insolvent (bankrupt) as a result of the actions or omissions of the controlling person (Article 10 of Federal Law No. 127-FZ on Bankruptcy dated October 27, 2010, hereinafter the "Bankruptcy Law");

- a person who intentionally uses a legal entity in bad faith for the purpose of avoiding personal liability and concealing property from collection under creditors' demands may be held liable in accordance with the provisions of Article 1.4 and Article 10.1 of the Civil Code of the Russian Federation.

**(B) Secondary liability of a controlling person in bankruptcy proceedings is one of the concepts similar to "corporate veil-piercing" and "*alter ego* liability" recognized by Russian law; there are also other concepts related to different matters (such as liability for damages).**

5. In accordance with Article 67.3 of the Civil Code of the Russian Federation, a legal entity is considered a subsidiary if another legal entity is a majority shareholder of such legal entity or is a party to an agreement or other arrangement pursuant to which it can determine the decisions of such legal entity. Such parent company is jointly and severally liable for transactions entered into by its subsidiary upon its instructions or consent. If corporate approval procedures were not complied with in relation to a transaction and a parent company provided instructions or consent to conclude such transaction (e.g., if the parent company failed to comply with the appropriate approval procedure but instead gave instructions or consent via email to the general

2

director of its subsidiary to conclude a transaction), this provides a basis for imposing joint and several liability on such parent company with respect to such transaction.

6. In accordance with new Article 53.1 of the Civil Code of the Russian Federation a person that has a *de facto* opportunity to direct a company's activities may be held liable for damages caused by its deliberate actions. If damages are caused by joint actions, the entities are deemed jointly and severally liable. However, such claims may be filed only by shareholders/participants or the legal entity itself, and damages are awarded to the legal entity that suffered them.

7. A remedy similar to the one described above is available in bankruptcy proceedings for the founders/participants of a debtor, and also for the receiver and bankruptcy creditors in accordance with Article 10.1 of the Bankruptcy Law. Creditors may claim damages caused to a debtor by its founders/participants or management from these persons, but these damages are paid to the debtor and are included in the bankruptcy assets and distributed among the bankruptcy creditors.

8. In addition to the concepts described above, the Russian courts can apply Article 1.4 ("No person shall benefit from illegal or bad faith behavior") and Article 10.1 ("Exercise of rights with the sole intention of causing harm to another person, evasion of the law for unlawful purposes and the deliberate exercise of rights in bad faith (abuse of rights) are prohibited") of the Civil Code of the Russian Federation as grounds for "corporate veil-piercing" in respect of a person who intentionally uses a legal entity in bad faith for the purpose of avoiding personal liability and concealing property from collection under creditors' demands.

9. Currently, the Russian courts interpret the doctrine of "corporate veil-piercing" fairly broadly and often invoke it in order to impose liability to third parties on a controlling person for damages caused by its actions in bad faith or to challenge transactions concluded by the company under the influence of such controlling person who acted in bad faith. When rendering such decisions the courts usually refer to Articles 1.4

and 10.1 of the Civil Code of the Russian Federation[1] (however, in some cases the courts have relied on other provisions).

10. There is also a landmark case for "corporate veil-piercing" in Russian court practice: the Senatorov case,[2] where in the course of proceedings against Mr. Senatorov the Russian courts applied "reverse corporate veil-piercing", i.e. imposed liability on the companies beneficially owned by Mr. Senatorov for his debts. In fact Mr. Senatorov illegally and in bad faith concealed his property from collection by creditors by transferring it to the controlled legal entities and then referred to the general rule that legal entities are not liable for their founders' / shareholders' debts. As far as I am aware, Mr. Senatorov was represented in this case by the law firm "Monastyrsky, Zyuba, Stepanov and Partners".

11. Amendments to the Bankruptcy Law were introduced in 2013 and the legal definition of the concept of a "controlling person" was added for the purposes of conducting bankruptcy proceedings. Pursuant to Article 2 of the Bankruptcy Law the controlling person is one who has or had, within a period of less than two years before the *arbitrazh* [commercial] court issued a notice declaring a debtor bankrupt, the right to give instructions that were binding on the debtor, or the opportunity to otherwise determine the actions of the debtor, including by compelling the CEO or the members of the debtor's governing bodies or otherwise exerting a determining influence on the CEO or members of the debtor's governing bodies (this may, among other things, be an entity controlling a debtor; the members of a liquidation committee; a person who, by virtue of the authority vested by a power of attorney, a regulation, or special authorization could have performed transactions on behalf of the debtor; a person/entity that had the right to dispose of fifty percent or more of the voting shares of a joint stock company; the CEO of the debtor). Accordingly, the set of entities that may be deemed controlling persons of the debtor is not restricted by formal criteria,

---

[1] See, e.g., Judgment of the *Arbitrazh* Court of Krasnodar Region in Case No. A32-1966/2014 dated August 6, 2014, Ruling of the Third *Arbitrazh* Court of Appeal in Case No. A33-18291/2011 dated May 29, 2012.

[2] Ruling on Appeal of the Moscow City Court in Case No. 11-16173 dated August 2, 2012, Ruling of the Supreme Court No. 5-КГ13-61 dated May 30, 2013.

and not only entities holding a controlling block of shares, but also other entities, depending on the actual circumstances, may be deemed as such.

12. Article 10.4 of the Bankruptcy Law provides that a controlling person of a debtor may be held secondarily liable for its debts, if the debtor's bankruptcy was the result of the controlling person's action or inaction. At the same time, a link is presumed between the bankruptcy and the actions of the controlling person, if harm to the property rights of creditors was caused as a result of the implementation by or for the benefit of the controlling person, or the approval by the controlling person, of one or more transactions of the debtor. If harm is caused through the actions and/or inaction of several entities controlling the debtor, then those entities are jointly and severally liable. This law prescribes that a controlling person may be released from secondary liability to creditors if it can prove that it is not guilty of the debtor's bankruptcy.

13. Under the Bankruptcy Law, claims for holding a debtor's controlling person secondarily liable to creditors are heard by an *arbitrazh* [commercial] court in the course of debtor's bankruptcy proceedings. Such an application may be filed by a receiver, and in certain cases also by a bankruptcy creditor, a representative of debtor's employees, an employee or a former employee of the debtor, or an authorized state agency. An application to hold a controlling person secondarily liable cannot be filed after completion of bankruptcy proceedings.

(C) **Liquidation of a company can be 'cancelled' and such company can be 'restored' if any debt of such company was not included in the liquidation balance or the liquidation procedure was otherwise materially breached. After that bankruptcy proceedings with respect to such company can be initiated if its assets are not sufficient to satisfy all creditors` claims. In such bankruptcy proceedings secondary liability can be imposed on a controlling person.**

14. Russian civil law contains no standards concerning the ability to hold the controlling person of a legal entity secondarily liable for its obligations to creditors during the liquidation of a legal entity without bankruptcy proceedings. Secondary liability arises in the event that a debtor has insufficient property to satisfy the claims of its creditors, but if the legal entity being liquidated encounters such an insufficiency of property, it cannot be liquidated without bankruptcy proceedings. Article 63 of the

Civil Code of the Russian Federation and Article 224 of the Bankruptcy Law expressly provide that, in the event that a liquidated legal entity has insufficient property to satisfy creditors' claims, or where there are signs of bankruptcy of a legal entity, the liquidation committee must file a declaration of bankruptcy of the legal entity with an *arbitrazh* [commercial] court. If insufficiency of property was discovered after the decision on liquidation was adopted, but before the liquidation commission/sole liquidator was appointed – bankruptcy claim should be filed by a participant/shareholder or managing person of the debtor.

15. The Russian legislation imposes on the liquidator (liquidation committee) the obligation to act in a reasonable manner and in good faith in the interests of both the legal entity being liquidated and its creditors. The liquidator must publish in certain mass media an announcement of the liquidation of the legal entity, and of the procedures and deadline for filing claims by its creditors, which may not exceed two months. The liquidator must take measures to find creditors and obtain accounts receivable, and to notify – specifically in writing – the creditors of the liquidation of the legal entity. After the deadline for creditors to present claims has passed, the liquidator must compile an interim liquidation balance sheet, with information on the property assets of the legal entity being liquidated, a list of the claims presented by creditors, the results of the hearing of those claims, and also a list of the claims satisfied by the effective decision of the court, regardless of whether these claims were accepted by the liquidation committee. The liquidator must notify the registering body (tax service) when the interim liquidation balance sheet has been compiled.

16. After completing settlements with creditors on acknowledged claims, the liquidator is required to prepare a liquidation balance sheet and file an application with the registering agency (tax service) to register the termination of the legal entity. In this application, the liquidator is required to confirm that he or she has followed the procedure set by federal law for the liquidation of a legal entity and that the settlements with its creditors have been completed. The liquidation of the legal entity is considered complete and the legal entity ceases to exist when the record of liquidation is entered in the Unified State Registry of Legal Entities (hereinafter –

"USRLE"). The registering agency publishes a notice on this information to the public.

17. Thus, if the liquidator exercises good faith in performing its duties arising from the legal regulation of the process of voluntary liquidation of a joint stock company, the situation cannot arise in which the record of the joint stock company is deleted from the register outside the bankruptcy proceedings yet the company's assets are insufficient to satisfy the claims of creditors. Therefore, a liquidation procedure which was carried out with violations of law and during which certain creditors were not able to assert their claims to a joint stock company and its controlling persons is not recognized by Russian law as an "irreversible" termination of the rights (claims) of such creditors. In such case creditors have the right to demand "restoring" the liquidation procedure, during which they could realize their claims to a joint stock company as debtor. The Russian legislation sets forth the procedure for the initiation of bankruptcy proceedings of a joint stock company and the possibility of holding its controlling persons secondarily liable if a joint stock company's property is not sufficient to satisfy all creditors` claims.

18. In accordance with the provisions of Federal Law No. 402-FZ on Accounting dated December 6, 2011, a legal entity as an economic entity is required to keep accounting records continuously from the date of official registration until the date of termination through reorganization or liquidation. Each fact of its business life must be recorded in a primary accounting record. The data in primary accounting records must be promptly entered and kept in the accounting ledgers. Accounting (financial) statements are prepared on the basis of the data in these accounting ledgers.

19. Russian civil law allows legal entities to use promissory notes to formalize loan obligations (so-called financial notes), just as they can use promissory notes to formalize obligations to pay for goods, work, and services received (so-called commodity notes).

20. Borrowing formalized in promissory notes must be reflected in the accounting records of the legal entity. For commercial organizations that give promissory notes, such information is recorded in account 66 "Payments on short-term credits and loans," if the obligation is for a term of up to one year, and account 67 "Payments on

long-term credits and loans," if the term of the obligation is more than one year. The record must properly identify the first note holder and, if the company is aware of any endorsements, the current note holder.

21. After the shareholders adopt the decision to liquidate a joint stock company voluntarily, the liquidator is required not only to publish notice of this in a particular publication, but also to notify creditors in a specific form in writing. The *arbitrazh* [commercial] courts consider the failure to perform this duty to be a material violation of the voluntary liquidation procedure.

22. Filing an interim liquidation balance sheet or a liquidation balance sheet with the registering agency containing inaccurate information on the actual financial condition of the legal entity, including omission of information on existing obligations to creditors, is also recognized by the *arbitrazh* [commercial] courts as a material violation of the procedure for liquidation of a legal entity. In 2011, the Presidium of the Higher *Arbitrazh* Court of the Russian Federation – expressed the legal position that, in the liquidation of a legal entity, the application for official registration and the liquidation balance sheet, which form the basis for creating the corresponding portion of the USRLE, which is a federal information resource, must contain accurate information and that it is impermissible to enter clearly inaccurate information in liquidation balance sheets or to prepare balance sheets that do not reflect the reliably known obligations of the legal entity.[3]

23. The Presidium of the Higher *Arbitrazh* Court of the Russian Federation also expressed the legal position in 2013 that violations committed in the liquidation procedure could result in a finding that the actions or omission of the liquidator are illegal and in the restoration of the liquidated legal entity, by entering in the USRLE a record invalidating the prior record of termination of the legal entity through liquidation. Such claims may be asserted either by the shareholders of the legal entity or by its creditors that contrary to the legal requirements were not listed by the liquidator in the interim liquidation and liquidation balance sheets.[4]

---

[3] Ruling of the Presidium of the Higher *Arbitrazh* Court No. 7075/2011 date October 13, 2011

[4] Ruling of the Presidium of the Higher *Arbitrazh* Court No. 11925/2012 date January 15, 2013

24. Claims appealing the actions of a liquidator, including claims asserted after the record of the liquidation of the legal entity are entered in the USRLE are under the special jurisdiction of the *arbitrazh* [commercial] courts. The liquidation of the legal entity does not change the jurisdiction of such disputes.

25. If a claim seeking to invalidate a record in the USRLE on the liquidation of a legal entity is granted, the legal entity is deemed to exist by virtue of not having completed the liquidation procedure. And because there are claims of creditors for which there are no assets to satisfy, the liquidation procedure can be continued only by commencing bankruptcy proceedings. As indicated above, if there are grounds to do so, as part of these proceedings claims may be asserted to impose secondary liability on the controlling persons of the debtor.

26. In addition to the special provisions on secondary liability of persons that control a debtor, the Civil Code of the Russian Federation contains general provisions on liability for causing harm. In accordance with Article 15 and Chapter 59 of the Civil Code of the Russian Federation a controlling person can be held liable for losses caused through unlawful liquidation. For example, in the liquidation of a legal entity without bankruptcy proceedings, a court found that a liquidator who was the sole shareholder and CEO of the debtor acted in bad faith and ordered him to pay the debt of the liquidated legal entity to a creditor that disputed the liquidation. The decision of the trial court was affirmed by the higher courts, including the panel of judges for civil cases of the Supreme Court.[5]

I declare under penalty of perjury under the laws of the United States of America that the statements made above are true and correct.

Executed this 25 day of August 2016 in         Moscow, Russia

Vice President of the Federal Chamber

of Lawyers of the Russian Federation                    [*signature*] Svetlana I. Volodina

[*seal*] *I confirm the signature of Svetlana I. Volodina. Krivashova* [*signature*]

---

[5] Ruling of the Supreme Court No. 18-RU13-59 dated July 2, 2013