UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
SERGEY LEONTIEV, :
:
:
Plaintiff, :
:
:
-against- : No. 16-cv-03595 (JSR)
:
: **ORAL ARGUMENT REQUESTED**
ALEXANDER VARSHAVSKY, :
:
Defendant. :
:
:
------------------------------------------------------------------x

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S FIRST CAUSE OF ACTION**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Sergey Leontiev*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.    Mr. Varshavsky Bears the Burdens of Pleading and Proof ............................................ 2

II.   Mr. Varshavsky Has No Rights Under the Alleged Loans ........................................... 4

III.  Mr. Varshavsky's Amended Answer Does Not Plead Alter Ego Liability Under Cyprus or Russian Law ................................................................................................... 7

    A.    Mr. Leontiev Cannot Be Liable Under Cyprus Law Which Governs As To Ambika and Vennop .................................................................................................. 7

    B.    Mr. Leontiev Cannot Be Liable Under Russian Law Which Governs As To Financial Group "Life" ............................................................................................. 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adjmi v. DLT Entm't Ltd.*,
   97 F. Supp. 3d 512 (S.D.N.Y. 2015)..................................................................................3

*Chevron Corp. v. Salazar*,
   No. 11-cv-3718 (LAK), 2011 WL 3628843 (S.D.N.Y. Aug. 17, 2011)...........................2, 3, 4

*Cortland St. Recovery Corp. v. Hellas Telecommc'ns*,
   790 F.3d 411 (2d Cir. 2015)...............................................................................................5

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
   228 F.R.D. 508 (S.D.N.Y. 2005) .......................................................................................3

*Effie Film, LLC v. Murphy*,
   932 F. Supp. 2d 538 (S.D.N.Y. 2013)................................................................................3

*Hansberry v. Lee*,
   311 U.S. 32 (1940)..............................................................................................................6

*Hillside Metro Assocs., LLC v. JP Morgan Chase Bank, N.A.*,
   No. 10-cv-1772 (JG), 2011 WL 5008368 (E.D.N.Y. Oct. 20, 2011) ..........................5

*India.Com, Inc. v. Dalal*,
   412 F.3d 315 (2d Cir. 2005)...............................................................................................5

*Jonas v. Estate of Leven*,
   116 F. Supp. 3d 314 (S.D.N.Y. 2015)................................................................................9

*Matsushita Elec. Indus. Co. v. Epstein*,
   516 U.S. 367 (1996)...........................................................................................................7

*Messner Vetere Berger McNamee Schmetterer Euro RSCG v. Aegis Grp.*,
   93 N.Y.2d 229 (1999) ......................................................................................................10

*Murray v. Miner*,
   74 F.3d 402 (2d Cir. 1996).................................................................................................3

*Nat'l Commc'ns Ass'n Inc. v. AT&T Corp.*,
   238 F.3d 124 (2d Cir. 2001)..............................................................................................2

*Schoeps v. Museum of Modern Art*,
   594 F. Supp. 2d 461 (S.D.N.Y. 2009)............................................................................2, 4

*Taylor v. Sturgell*,
   553 U.S. 880 (2008)...........................................................................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Tyson*,
  433 B.R. 68 (S.D.N.Y. 2010) ...................................................................................................7

*Walton v. Hadley*,
  No. 13-cv-7907 (ER), 2014 WL 3585525 (S.D.N.Y. July 10, 2014) ...................................3, 4

**Rules**

Fed. R. Civ. Proc. 12(c) ..............................................................................................................3, 4

Fed. R. Civ. Proc. 65(d) ...................................................................................................................6

Plaintiff Sergey Leontiev ("Plaintiff" or "Mr. Leontiev") respectfully submits this reply memorandum of law in further support of his motion for judgment on the pleadings on the Complaint's first cause of action.[1]

## PRELIMINARY STATEMENT

Alexander Varshavsky admits in his amended Answer that he "requested" that Mr. Leontiev pay him $83 million. Ans. at 3 (¶ 3), 4 (¶ 7). When pressed as to the source of the supposed $83 million obligation, Mr. Varshavsky produced notes and loan agreements purporting to show that three individuals (Igor Renich, Diana Karapetyan, and Karen Avagumyan) and a corporation (Avilon Automobile Group) loaned money to two Cyprus companies (Ambika Investments Limited and Vennop Trading Limited) and one Russian company (Financial Group "Life"). The vast majority of this debt was guaranteed by Probusinessbank—a bank that was seized by the Russian state despite receiving two clean audit opinions from ZAO Deloitte & Touche CIS. Compl. ¶ 20.

Mr. Varshavsky effectively admits that he has no personal right to collect any of the debts purportedly owed to Avilon, Mr. Renich, Ms. Karapetyan, or Mr. Avagumyan. Instead, Mr. Varshavsky coyly asserts that "certain" individuals asked Mr. Varshavsky "to negotiate for repayment" of the funds. Ans. at 13 (¶ 8). Mr. Varshavsky does not allege that he had authority to negotiate on behalf of all (or any) of the individuals named above—let alone the right to personally collect the $83 million allegedly owed. Nor does he assert that Avilon assigned its

---

[1] All references to "Compl. ¶ _" are to the Complaint filed on May 13, 2016 (Dkt. 1), and undefined capitalized terms have the meanings given in the Complaint. All references to "Ans." are to the Amended Answer filed on August 26, 2016 (Dkt. 27). All references to "Opening Br." are to Plaintiff's Memorandum of Law in Support of Motion for Judgment on the Pleadings (Dkt. 23). All references to "Opp. Br." are to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings (Dkt. 28).

claim to him.  The law is clear:  the purported authority to "negotiate" on behalf of a party to a contract does not create rights under that contract.  Mr. Varshavsky needs no discovery to assert any entitlement he could conceivably have to collect $83 million.  No such basis is alleged.  Accordingly, Mr. Leontiev is entitled to judgment on the pleadings on this ground alone.

A second independent basis for granting Mr. Leontiev's motion is Mr. Varshavsky's failure to allege any facts under which Mr. Leontiev could be held responsible for the debts of Ambika, Vennop, or Financial Group "Life."  Mr. Varshavsky alleges that Mr. Leontiev owns or controls these and other companies and that there were transactions among these entities.  Even if taken as true, there is nothing improper about exercising control over entities or engaging in transactions between them.  Under applicable Cyprus and Russian law, Mr. Varshavsky's vague and general allegations are inadequate to warrant piercing the corporate veil.

## ARGUMENT

### I.   Mr. Varshavsky Bears the Burdens of Pleading and Proof

"In an action for declaratory judgment, the burden of proof rests on the party who would bear it if the action were brought in due course as a claim for non-declaratory relief."  *Schoeps v. Museum of Modern Art*, 594 F. Supp. 2d 461, 463 (S.D.N.Y. 2009) (Rakoff, J.); *see also Chevron Corp. v. Salazar*, No. 11-cv-3718 (LAK), 2011 WL 3628843 at *7 (S.D.N.Y. Aug. 17, 2011) ("The party asserting a right (Party A) against another has whatever burdens that it would have if it sued for coercive relief notwithstanding that it is a defendant in an action for a declaration by another party (Party B) that Party A has no such right.").  "The general rule is that the party that asserts the affirmative of an issue has the burden of proving the facts essential to its claim."  *Nat'l Commc'ns Ass'n Inc. v. AT&T Corp.,* 238 F.3d 124, 131 (2d Cir. 2001).

"[N]othing concerning the pleading, proof and trial of the issue in respect of which a declaration is sought changes because that issue arises in the context of a declaratory judgment

action." *Chevron*, 2011 WL 3628843 at *7; *see also Effie Film, LLC v. Murphy*, 932 F. Supp. 2d 538, 553 (S.D.N.Y. 2013) (plaintiff seeking declaratory judgment of non-infringement is entitled to judgment on the pleadings if it "would be entitled to judgment on the pleadings in any copyright infringement action brought against it by [defendant]"). When deciding this motion, "inconsistencies between the allegations in the pleadings [should] be resolved in favor of the non-moving party," but the Court "need not accept legal conclusions or characterizations contained [the non-movant's] pleading." *Adjmi v. DLT Entm't Ltd.*, 97 F. Supp. 3d 512, 516 (S.D.N.Y. 2015).

Here, Mr. Varshavsky fails to allege any facts that would allow him *personally* to pursue claims on behalf of the supposed lenders on the notes or loan agreements. Nor does Mr. Varshavsky plead facts sufficient to establish that numerous corporate entities should be disregarded. Veil-piercing is a narrow exception to the doctrine of limited liability for corporate entities and courts routinely caution that it should be permitted only under "extraordinary circumstances." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). Accordingly, the "party seeking application of the doctrine must come forward with factual allegations" to justify it. *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005).

Mr. Varshavsky ignores these procedural requirements, asserting that he has no burden to plead *any* facts to support his veil-piercing claim. *Walton v. Hadley*, cited by Mr. Varshavsky, does not stand for the proposition that a defendant in a declaratory judgment action need not plead any facts in order to defeat a Rule 12(c) motion. No. 13-cv-7907 (ER), 2014 WL 3585525 (S.D.N.Y. July 10, 2014). In *Walton,* the court dismissed the defendant's counterclaim that he owned a sculpture in question, with leave to replead, and also held that it would be "premature" to grant plaintiff's request for a declaratory judgment at that time. *Id.* at *6. The court noted that

3

"[j]udgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Id.* at *5 (quotation marks and citation omitted).

*Walton* has never been cited by another court for the supposed proposition that a defendant always wins a Rule 12(c) motion in a declaratory judgment action even if the defendant has pleaded no facts sufficient to state a claim or defense—nor has it been cited for any other proposition. Mr. Varshavsky ignores the fact that a declaratory judgment action is simply a procedural device in which the normal "plaintiff" and "defendant" designations are flipped, but the burdens remain on the party who would have them if the claim were being pursued in a non-declaratory judgment context. *Schoeps*, 594 F. Supp. 2d at 463-64; *Chevron*, 2011 WL 3628843 at *7. Here, the party with the burden is Mr. Varshavsky.

Mr. Leontiev was forced to bring this action because Mr. Varshavsky insisted that he had a legal right to collect $83 million, and harassed Mr. Leontiev for months, with threats of criminal prosecution and being linked to terrorism financing if he refused to pay. Mr. Varshavsky now admits that he cannot substantiate his position, claiming to need further discovery. But based on the allegations of the pleadings, Mr. Varshavsky has no claim against Mr. Leontiev and judgment on the pleadings is appropriate.

## II.     Mr. Varshavsky Has No Rights Under the Alleged Loans

Mr. Varshavsky's admission that he has not "provided documentation of his authority to personally collect any monies owed" under the Alleged Loans, combined with his failure to allege that such documentation exists, entitles Mr. Leontiev to judgment on the pleadings. Ans. at 3-4 (¶ 6). Yet, instead of conceding that Mr. Leontiev is entitled to judgment on this ground, Mr. Varshavsky makes the irrelevant assertion that he has "authority to negotiate for and obtain

4

repayment of the debts on behalf of Avilon and certain other lenders." Opp. Br. at 11.  The "certain other lenders" are not identified. *Id.*  This proclamation fails to endow Mr. Varshasky with enforceable rights under the Alleged Loans and, thus, he has no legal right to payment from Mr. Leontiev.

Mr. Varshavsky's Amended Answer, as well as his opposition brief, simply ignores this Circuit's well-established case law:  an individual has the right to enforce the terms of an agreement ***only*** if he is a party, a third-party beneficiary, or an assignee of the property interest in that claim.  See *Hillside Metro Assocs., LLC v. JP Morgan Chase Bank, N.A.*, No. 10-cv-1772 (JG), 2011 WL 5008368, at *7 (E.D.N.Y. Oct. 20, 2011); *India.Com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005).  The Second Circuit has explicitly held that "a purported assignee of a claim must plead a proprietary interest in that claim, and not simply the ability to pursue the claim on behalf of another" in order to pursue legal relief.  *Cortland St. Recovery Corp. v. Hellas Telecommc'ns*, 790 F.3d 411, 420 (2d Cir. 2015); *see also* Opening Br. at 8-10.

Mr. Varshavsky does not even bother to address this dispositive law in his opposition brief.  Instead, Mr. Varshavsky states that he has (or had) the authority to "negotiate" on behalf of certain unnamed lenders—conspicuously refusing to specify which, if any, of the three individuals named as payees on the promissory notes at issue here, identified in Appendix A to the Complaint, he is referring to.[2] Ans. at 13 (¶ 8) (alleging that "friends and acquaintances . . . loaned funds to entities owned and/or controlled by Mr. Leontiev" and "certain of those individuals asked Mr. Varshavsky to negotiate for repayment of the loaned funds").  Even if Mr.

---

[2] As the Court knows from a recent discovery dispute, Mr. Varshavsky has now taken the position that he does not "control" two of those payees, Mr. Renich and Ms. Karapetyan, for purposes of discovery, even though he sought to collect tens of millions of dollars from Mr. Leontiev based on promissory notes in their names.  *See* Compl. ¶ 32; Ans. at 7 (¶ 32).

5

Varshavsky had named the individuals who authorized him to "negotiate," this authority would not confer cognizable contractual rights under the Alleged Loans. Nor does Mr. Varshavsky's position as president of Avilon entitle him to enforce Avilon's contracts in his personal capacity. Mr. Varshavsky cites no case law—none exists—stating that a corporate officer has personal rights under that company's contracts.

Faced with this reality, Mr. Varshavsky resorts to mischaracterizing the relief sought by Mr. Leontiev. Mr. Leontiev has asked for a declaration that Mr. Leontiev does not owe a debt or obligation to Mr. Varshavsky, or anyone acting in concert or participation with Mr. Varshavsky, relating to the Alleged Loans." Compl. at 12 (¶ 1); Opening Br. at 21. Mr. Varshavsky feverishly suggests that this amounts to an "attempt to obtain an adjudication of nonliability to third parties based solely on a claim of nonliability to Mr. Varshavsky in his personal capacity." Opp. Br. at 12. Not so. Mr. Leontiev's Complaint and his motion both seek judgment on two independent grounds—the first is that Mr. Varshavsky lacks any rights under the Alleged Loans (Compl. ¶¶ 6-7, 33), and the second is that Mr. Leontiev cannot be personally liable under Cyprus and Russian corporate law (Compl. ¶¶ 12, 35).

The preclusive effect of the Court's judgment, of course, will depend on the nature of the ruling and what is actually and necessarily decided in issuing the judgment. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). If the Court grants Mr. Leontiev's requested permanent injunction precluding Mr. Varshavsky from attempting to collect the $83 million as part of its judgment, Federal Rule of Civil Procedure 65(d) will determine the parties bound by that order. To avoid any ambiguity, Mr. Leontiev is only asking this Court to adjudicate the dispute between **the parties before the Court**. By definition, the *res judicata* effect of a judgment upon any particular person can be determined only in a subsequent proceeding. *See Hansberry v. Lee*, 311

6

U.S. 32, 40 (1940); *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 396 (1996) (Ginsburg, J., concurring in part and dissenting in part) ("A court conducting an action cannot predetermine the res judicata effect of the judgment; that effect can be tested only in a subsequent action.").

### III. Mr. Varshavsky's Amended Answer Does Not Plead Alter Ego Liability Under Cyprus or Russian Law

#### A. Mr. Leontiev Cannot Be Liable Under Cyprus Law Which Governs As To Ambika and Vennop

Mr. Varshavsky barely acknowledges the extraordinarily high standard for veil-piercing under Cyprus law (which follows English law). *See* Opening Br. at 15-19. Instead, Mr. Varshavsky argues that "the law of Cyprus allows piercing the corporate veil if the corporate entity is used by a controlling person as a means of illegality or fraud, for an unlawful or improper purpose, or to evade a debt." Opp. Br. at 13. This over-generalized statement misses what Judge Cote, in her far more thorough explanation of English veil-piercing law, called "the key distinction in English law": the difference "between using the corporate form to evade or conceal existing legal obligations or wrongs" and "using it to insulate oneself from future or contingent liabilities." *In re Tyson*, 433 B.R. 68, 94 (S.D.N.Y. 2010). Under English law, veil-piercing is only available if "there is a legal right against the person in control of [a company] which exists independently of the company's involvement, and a company is interposed so that the separate legal personality of the company will defeat the right or frustrate its enforcement." *Prest v. Petrodel Resources Ltd.* [2013] UKSC 31, ¶ 28 (Lord Sumption). In other words, *Prest* (which is cited extensively by Mr. Varshavsky's Cyprus law expert) provides that veil-piercing is justified only "when a person is under an *existing* legal obligation or liability or subject to an *existing* legal restriction which he deliberately evades or whose enforcement he deliberately frustrates by *interposing* a company under his control." *Id.* ¶ 35 (emphasis added). As the English Supreme Court explained in another recent case, veil-piercing cannot be justified to

7

attribute liability to a company's controller or ultimate beneficial owner under an agreement entered into by the company in the absence of evidence that the parties seeking to pierce the veil intended to contract with the individual, or that he intended to contract with them. *VTB Capital plc v. Nutritek Int'l Corp.*, [2013] UKSC 5, ¶¶ 136-40 (Lord Neuberger).

Here, Mr. Varshavsky does not allege any facts that would satisfy these requirements. *First*, he does not allege that any of the lenders believed they were transacting directly with Mr. Leontiev in his personal capacity. Rather, he alleges that the loans—the vast majority of which were guaranteed by Probusinessbank—were made because of the "high rate of return" that was offered by Probusinessbank employees, and that the funds were raised "*for entities* that Mr. Leontiev owned and/or controlled." Ans. at 12-13 (¶¶ 5-7) (emphasis added). Mr. Varshavsky even admits that he never met or spoke with Mr. Leontiev prior to August 2015. *See id.* at 7 (¶ 28). *Second*, Mr. Varshavsky does not allege that Mr. Leontiev "interposed" the corporate entities to evade any *existing* personal obligations to creditors. Instead, Mr. Varshavsky admits that the purported creditors knowingly loaned money to *these* corporate entities, and that any purported wrongdoing occurred thereafter. And while Mr. Varshavsky now challenges the manner in which the borrowed funds were used, the loan agreements and promissory notes at issue did not restrict the borrowers' use of funds, and Mr. Varshavsky alleges no misrepresentations by anyone—much less by Mr. Leontiev—about how the funds would be used.[3] While full of bluster, Mr. Varshavsky's new allegations fail to meet the elements of

---

[3] Even if there had been misrepresentations made in connection with the loans, that still would not support veil-piercing under English, and thus Cyprus, law. Rather, as Lord Neuberger explained in *VTB*, "if VTB establishes that it was induced to enter into the agreements by the fraudulent statements which [the controlling person] is alleged to have made, then [he] will be liable to compensate VTB," on a theory of fraudulent inducement. While "[t]he measure of damages may be different . . . that is not a particularly attractive reason for extending the principle [of veil-piercing] in a new and unprincipled way." [2013] UKSC 5, ¶ 146.

8

Cyprus veil-piercing law, which applies to the loans made to Ambika and Vennop. *See Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 330 (S.D.N.Y. 2015).

### B. Mr. Leontiev Cannot Be Liable Under Russian Law Which Governs As To Financial Group "Life"

As set forth in Mr. Leontiev's opening brief, Russian corporate law does not recognize veil-piercing or alter ego liability to third party creditors except where a company is in formal bankruptcy proceedings. *See* Opening Br. at 19; Monastyrsky Decl. ¶ 3-4. Because Financial Group "Life" was voluntarily liquidated without entering into formal bankruptcy proceedings, Mr. Leontiev cannot be held liable for its debts as a matter of law.

In response, Mr. Varshavsky contends that veil-piercing should be available in the present case because, hypothetically, the voluntary liquidation of Financial Group "Life" can be reopened and claims analogous to veil-piercing may be asserted against Mr. Leontiev pursuant to the Law on Insolvency. *See* Opp. Br. at 14. Specifically, Mr. Varshavsky alleges that "[i]n August 2015 . . . Mr. Leontiev caused Financial Group 'Life' to be put into voluntary liquidation without repaying the borrowed funds and without giving advance notice to creditors[.]" Ans. at 19-20 (¶ 22). As an initial matter, this allegation is disproven by facts that are already in the record—in fact, Financial Group "Life" properly noticed its voluntary liquidation on ***April 1, 2015*** in the State Registration Bulletin. *See* King Decl., Exh. E (Dkt. 24-8); King Reply Decl., Exh. 1. Mr. Varshavsky does not allege that any of the noteholders identified in Appendix A to the Complaint failed to receive notice of the liquidation, or that any creditor has taken any steps to re-open the liquidation of Financial Group "Life." Rank speculation about what might happen in the future does not state a claim that Mr. Varshavsky can collect from Mr. Leontiev on debts supposedly owed by Financial Group "Life" to Mr. Avagumyan or Mr. Renich. In any event, any claims brought under the Russian Law on Insolvency must be filed and adjudicated as part of

9

a company's bankruptcy proceedings.  Thus, even if the liquidation was reopened, and even if a bankruptcy was then commenced, any claims brought against Mr. Leontiev under the Law on Insolvency could not be litigated in a foreign court.  Monastyrsky Reply Decl. ¶¶ 7, 10.

Alternatively, Mr. Varshavsky and his Russian law expert contend that "Russian courts interpret the doctrine of 'corporate veil piercing' fairly broadly and often invoke it in order to impose liability to third parties on a controlling person[.]" Opp. Br. at 15; Volodina Decl. ¶ 9. As explained in the Reply Declaration of Yury Monastyrsky, the cases on which Ms. Volodina relies have nothing to do with veil-piercing and cannot be credited.  These irrelevant cases include an action seeking to invalidate an assignment of a contract where the controlling shareholder was not even named as a defendant, as well as a case finding liability arising under a personal guaranty.  Monastyrsky Reply Decl. ¶ 6.  Mr. Varshavsky's reliance on these inapposite cases is misplaced.[4]

## CONCLUSION

For the foregoing reasons, Mr. Leontiev respectfully requests that this Court grant his motion for judgment on the pleadings as to the Complaint's first cause of action, and award such relief as it deems appropriate.

---

[4] Although he does not address them in his brief, Mr. Varshavsky's Amended Answer also adds allegations pertaining to Mr. Leontiev's purported "acknowledgment" of the Alleged Loans and a purported "partial repayment" of a loan to Avilon. Ans. at 20-21 (¶¶ 25-27). These allegations are insufficient on this motion. At best, Mr. Varshavsky alleges that Mr. Leontiev offered orally to pay an unspecified debt "over the course of three years," but Mr. Varshavsky does not allege that this compromise proposal was accepted or that any agreement was reached. *Id.* at 21 (¶ 26). This allegation could not survive the Statute of Frauds. Nor does the alleged payment of $17 million satisfy the partial performance exception to the Statute of Frauds, which applies only if "unequivocally referable" to a particular agreement. *See Messner Vetere Berger McNamee Schmetterer Euro RSCG v. Aegis Grp.*, 93 N.Y.2d 229, 235 (1999). Mr. Varshavsky alleges that the $17 million repaid a 2005 loan from Avilon to Ambika that is not at issue in this lawsuit.

Dated: September 7, 2016
       New York, New York

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Robert L. Weigel
    Robert L. Weigel
    Marshall R. King

200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Sergey Leontiev*