G9L5leoA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

SERGEY LEONTIEV,

                    Plaintiff,                    New York, N.Y.

             v.                                   16 CIV. 3595 (JSR)

ALEXANDER VARSHAVSKY,

                    Defendant.

------------------------------x

                                                  September 21, 2016
                                                  4:10 p.m.

Before:

                         HON. JED S. RAKOFF,

                                                  District Judge Judge


                              APPEARANCES

GIBSON, DUNN & CRUTCHER, LLP
        Attorneys for Plaintiff
BY:  MARSHALL R. KING
        ROBERT L. WEIGEL
        ESTER MUKDUKHAYEVA

DEBEVOISE & PLIMPTON, LLP
        Attorneys for Defendant
BY:  SEAN HECKERWILLIAM H. TAFT

G9L5leoA

1          (In open court)

2          MR. WEIGEL:  Robert Weigel, Marshall King, and Esther,

3   Murdukhayeva for the plaintiff.

4          THE COURT:  Good afternoon.

5          MR. WEIGEL:  Good afternoon, your Honor.

6          MR. HECKER:  Good afternoon, your Honor.  Sean Hecker

7   and William Taft for the defendant Mr. Varshavsky.

8          THE COURT:  Good afternoon.

9          We have several matters to take up and because of

10  other commitments we need to do so quite expeditiously.  The

11  first is the plaintiff's motion for judgment on the pleadings.

12  I have allotted each side for argument on that motion 15

13  minutes, plaintiff has reserved five from its 15 for rebuttal.

14          Let me hear from plaintiff's counsel first.

15          MR. WEIGEL:  Thank you, your Honor.

16          This is a declaratory judgment action which, as your

17  Honor knows, really does nothing to change who has the burden

18  of proof.  It is merely a procedural device and, as Judge

19  Kaplan said, nothing concerning the pleading, the proof and the

20  trial of the action changes because of a declaratory judgment

21  action.

22          THE COURT:  What case, if any, adopts your view that

23  in a declaratory judgment proceeding the defendant is held to

24  the standards of *Iqbal* and *Twombly*?

25          MR. WEIGEL:  Your Honor, there are no cases that we

G9L5leoA

1    have found that specifically deal with that issue but there are

2    cases and the FE case we cite is where case where much of the

3    judgment and pleadings was decided in favor of the plaintiff

4    after Judge Griesa reviewed the things that the Second Circuit

5    has said you can review, namely the pleadings, the documents

6    attached to the pleadings, the admissions and any sort of

7    publicly available documents I think that are in support.

8              THE COURT:  I think that sounds like a different issue

9    to me.

10             I think that Judge Ramos really has it right when he

11   addressed, in the case that is and is close to me on point as

12   any I have seen which is Walton v. Hadley, 2014 WestLaw

13   3585525, Southern District of New York 2014, which he held

14   there was a title dispute brought on by declaratory judgment,

15   it was a very common form of declaratory judgment, and he held

16   that to adopt your view would be to allow one party to bring a

17   declaratory judgment before the matter was fully investigated

18   and then obtain a favorable declaration of ownership based

19   solely on the counterparties' in fact to adequately state an

20   affirmative claim in its favor.

21             It is one thing for a party in an answer and

22   declaratory judgment to raise a material dispute which has

23   clearly happened here that will have to be resolved by summary

24   judgment or trial.  It is quite another thing to say you now

25   have to turn around, even though you have just been hauled into

G9L5leoA

1    court by the plaintiff, and be able to set forth with the

2    specificity demanded by *Twombly* a full-fledged claim against

3    plaintiff.  That sounds to me like an invitation to a form of

4    ambush.

5              So, that prong of your motion is denied.

6              MR. WEIGEL:  May I address that for just a second,

7    your Honor?

8              THE COURT:  Of course.  You can use your 15 minutes

9    all you want.  If you want to use it on something where my mind

10   is made up, that's fine.  Please, do.

11             MR. WEIGEL:  I'm not sure I understand what prong of

12   my motion you said was denied so if perhaps you can tell me

13   that I might decide to use my time more wisely.

14             THE COURT:  You also have raised whether the pleadings

15   foreclose the possibility that Varshavsky has standing to

16   collect the debts in his personal capacity.  That, and whether

17   the pleadings foreclose the possibility that Leontiev cannot be

18   held personally liable, those are issues that arise from the

19   respective pleadings that are not matters of *Iqbal* or *Twombly*.

20             MR. WEIGEL:  Thank you, your Honor.  I now understand

21   your ruling.

22             I agree that Judge Ramos did not decide in that case

23   that you can never have a motion for judgment on the pleadings

24   if you are the plaintiff in the declaratory judgment action and

25   Mr. Varshavsky, it is entirely within his own knowledge, he

G9L5leoA

1    doesn't need any discovery to know who he represents and

2    whether he has had any assignment of any claim.

3    Mr. Varshavsky -- we said in paragraph 4 of our Complaint,

4    Mr. Leontiev owes Mr. Varshavsky nothing, a simple statement.

5    That is denied by Mr. Varshavsky yet nowhere in his answer or

6    his amended answer does he allege any authority by which he has

7    been assigned the claims and that's what the Second Circuit

8    held in the Cortlandt Street case.  It is not particularly, I

9    think, contested -- in fact, I don't think they contest it at

10   all in their papers -- that they have to be able to allege --

11   Mr. Varshavsky has to allege that he has some proprietary

12   interest in these claims.

13          The notes in question were given to a gentleman

14   Mr. Renich, Mr. Avagumyan, Mr. Diana Karapetyan, and a company

15   called Avalon.  Mr. Varshavsky, nowhere in any of his pleadings

16   says I have been assigned those claims, I own those claims, and

17   I have a right to --

18          THE COURT:  Just so we are clear, at what point or

19   period are you requesting, among other things, a declaration

20   that your client does not owe a debt to "anyone acting in

21   concert or participation with Mr. Varshavsky?"  Is that still

22   what you're seeking or are you only seeking on this, what I am

23   calling prong of your motion, a declaration that he doesn't owe

24   anything personally to Mr. Varshavsky?

25          MR. WEIGEL:  We are seeking a declaration that the

G9L5leoA

1   individual before the Court, Mr. Varshavsky, is not owed

2   anything by Mr. Leontiev.  Your Honor could decide this on

3   several different grounds and some of those grounds might be

4   applicable to other parties, as the Supreme Court said, justice

5   Ginsburg said --

6           THE COURT:  I'm not really understanding.

7           Are you asking for a -- I will put it to you again.

8   Are you asking for a declaration which you, at one point in

9   your papers indicated you were, that your client -- I'm

10  sorry -- that your client does not owe a debt to "anyone acting

11  in concert or participation with Mr. Varshavsky."

12          MR. WEIGEL:  Right now, your Honor, we are asking just

13  for the first part of that, that we are asking for a

14  declaration that Mr. Leontiev owes nothing to Mr. Varshavsky

15  personally.

16          THE COURT:  Okay.  That's what I wanted to know.

17          So, that, I think, is an open question.  I haven't

18  made up my mind on that.  Since I know you are short on time,

19  did you want to say anything about this ego veil-piercing issue

20  under Cypriot law?

21          MR. WEIGEL:  Yes, I did, your Honor.

22          As the declaration of the expert shows, and I think it

23  is quite clear from the other sources as well, that Cypriot law

24  follows English law.  It is an English colony and it adopted

25  English law.

G9L5leoA

1          Judge Cote did a very thorough --

2          THE COURT:  You take your life in your hands if you

3     want to call them an English colony, but I understand what you

4     mean.

5          MR. WEIGEL:  I think until the '60s they had some

6     place in the commonwealth.  I wouldn't --

7          THE COURT:  Anyway, go ahead.

8          MR. WEIGEL:  Judge Cote did a very extensive analysis

9     of English law and although, as we all know, veil piercing is

10    very uncommon and strictly construed in the United States, it

11    is even rarer in England.  And what Judge Cote said and after

12    analyzing it very clearly is that the distinction in England is

13    between somebody interposing a corporation between themselves

14    and a liability that they already have.  And the examples that

15    were cited were an individual who had a non-compete with his

16    employer who sets up a company to compete with his employer and

17    the Court said, no, you can't do that, you can't do that, we

18    will pierce that veil.  But here --

19         THE COURT:  You have one more minute.

20         MR. WEIGEL:  Here you have a company call Ambika, it

21    was created in 2006, it lent money to a company called --

22    borrowed money from a company called Avalon in 2008.  There is

23    no assertion it didn't perform on that loan and pay interest or

24    whatever for that whole period of time.  There is no assertion

25    that Mr. Leontiev was -- undertook a personal obligation to pay

G9L5leoA

1    that money back when it was borrowed.  The documents don't

2    suggest it, they've offered no fact from 2008 that would in any

3    way suggest that Mr. Leontiev was liable.  Under English law we

4    are talking -- it is perfectly acceptable to set up a

5    corporation to insulate yourself from future liabilities and

6    they are -- it is very rare and I think the analysis that Judge

7    Cote set forth, it's quite clear that they have not come close

8    to meeting what is necessary to allege to pierce a veil under

9    English law and therefore under Cypress law.

10           THE COURT:  Thank you very much.  Let me hear from

11   defense counsel.

12           MR. HECKER:  Well, first, I just want the record to be

13   clear that what happened today is the first time that they've

14   made clear that their summary judgment motion is directed only

15   toward trying to get a judgment on something that is

16   undisputed.  It is not even alleged that our client attempted

17   to collect, in his personal capacity, on the loan.  He is the

18   president of Avalon which they've acknowledged is the

19   noteholder.

20           THE COURT:  So, I don't see why you feel put upon by

21   the fact that they've now made a concession favorable to you.

22   Do you want them to withdraw their concession?

23           MR. HECKER:  I don't, your Honor, but we have spilled

24   a lot of ink on this issue.

25           THE COURT:  Oh, life is very tough.

G9L5leoA

1          So, here is the state of play.  Number one, *Iqbal* and

2    *Twombly* do not apply to the answer.

3          Two, they are not seeking at this point any

4    declaration that the plaintiff is liable to the defendant

5    Varshavsky in plaintiff's personal capacity, right?  Do I have

6    that right?  I always get these Russian names backwards but I

7    think that's right.  Everything else is fair game so why don't

8    you talk about the things that are still fair game.

9          MR. HECKER:  Okay.

10          I think we agree that Judge Cote covered the English

11    law and ultimately the Cypress law issue comprehensively, but I

12    don't think the take away is as cabined a view of veil piercing

13    under Cypriot law as plaintiff advanced and this is really

14    important.  It is largely a matter of applying the principle

15    that no one should be allowed to profit from his own fraud by

16    using entities he controls, and the temporal issue about when

17    the debt existed or didn't exist isn't the Court issue.  It may

18    be that in some cases it has been a situation where someone has

19    created the company and interposed the company after the debt

20    exists but this is a situation where if we looked at our

21    amended complaint, we certainly agree with the Court's ruling

22    that *Iqbal* and Twombly don't apply with an affirmative defense

23    in this context, but if you look at the allegations we now made

24    in our amended complaint, we are alleging that this is a

25    fraudulent scheme from the outset and the fact that the

G9L5leoA

1    plaintiff had the foresight to create the series of shell

2    companies in order to ensure that he could siphon off funds

3    from the shells using nominees that he put in place.  He

4    doesn't get out from under veil piercing because he interposed

5    some of these companies at the beginning of the scheme.

6              This is an allegation of a systematic fraud through a

7    series of entities that plaintiff controls and to this day

8    controls, where he siphoned off funds, made the borrowing

9    entities insolvent, and has access and control of the funds

10   now.  And the notion that because he set this scheme up from

11   the beginning gets you out of veil piercing under Cypress law,

12   that is not what the law says.  And I would have the Court look

13   not just at Judge Cote's decision but at the decision that

14   plaintiff's expert relies on Apostolou v. Ioannou which is

15   attached as Exhibit C to the report of Mr. Havarias.  What that

16   case says is the usual case for veil piercing and not the only

17   case but the usual case is where the company is used by the

18   person controlling the company simply as an artificial medium,

19   a shield to avoid pre-existing obligations.

20             In that case and in Judge Cote's case they both cite

21   the Trustor v. Smallbone case, that's in Judge Cote's decision,

22   that's 43 Bankruptcy Reporter at 87, and it is cited in the

23   Apostolou case as well.  And there the Court pieced the veil

24   where a corporate officer misappropriated money from a

25   corporation by transferring into a shell company that he

G9L5leoA

```
 1      controlled and then used the shell company's money for his own
 2      benefit, and the Court there held that the individual could be
 3      held liable for the debts of the shell company though the facts
 4      made clear didn't have the pre-existing debt when he
 5      transferred the money.
 6              So, this thing about the timing driving everything is
 7      just wrong.  Just wrong.  The law in England and in Cypress is
 8      not that narrowly cabined and what we have alleged here is a
 9      full-fledged fraud and the judgment they're seeking ultimately,
10      although now it is just against our client or at least on this
11      motion just against our client, would preclude bringing the
12      case in any court on a veil piercing theory or a fraud theory,
13      a straight fraud theory.  But what we have alleged is more than
14      sufficient to establish fraud by Mr. Leontiev even if he didn't
15      veil pierce.  It is a scheme to defraud.
16              So, I think the notion of foreclosing veil piercing
17      before we have an opportunity to have any discovery on the
18      facts around his concoction of this scheme seems premature.  I
19      don't think that the law is clear enough to be able to
20      foreclose discovery on those issues.
21              THE COURT:  All right.
22              Let me hear rebuttal from plaintiff's counsel.
23              MR. WEIGEL:  Well, your Honor, we are gratified that
24      it is undisputed that they do not contend that Mr. Varshavsky
25      is owed anything by Mr. Leontiev.  That was not the case in
```

G9L5leoA

1    their answer or in their amended answer which denied paragraph

2    4 of the complaint which says Mr. Leontiev owes Mr. Varshavsky

3    nothing.

4              We did say in our reply papers:  To avoid any

5    ambiguity, Mr. Leontiev is only asking this Court to adjudicate

6    the dispute between the parties before the Court and if there

7    was any ambiguity in that I apologize but I was trying to make

8    clear there that we were just claiming against Mr. Varshavsky

9    here.

10             In terms of their interpretation of English law, I

11   would just direct the Court to the In Re: Tyson case that Judge

12   Cote decided where she makes it quite plain that commentators

13   also regard the distinction between existing legal duty and

14   potential future liability as fundamental to understanding

15   English veil-piercing law.  The High Court stated the corporate

16   structure could legitimately be used to limit the legal

17   liability in respect of particular future activities while

18   transactions of no legal substance and which are set up with a

19   view to defeating existing claims of creditors can if they are

20   purely a sham and a facade be treated by the Court as lacking

21   validity.

22             So, the distinction is between existing claims, the

23   Smallbone case is a perfectly fine example.  Somebody took

24   money out of a company they weren't supposed to and they

25   transferred it to a company called Smallbone and in that case

G9L5leoA

1    the Court said the veil of Smallbone could be pierced.

2              Here that was always with, in terms of Avalon anyway,

3    with Ambika.  They knew who they were contracting with.  As

4    Judge Cote said, one of the reasons for this harsh rule in

5    English law is that you can contract around it.  And they did.

6    They got themselves a bank guarantee -- not Mr. Varshavsky but

7    Avalon got itself a bank guarantee for the loans in advance to

8    Ambika and that's in the document.

9              They have a way to contract around it.  They're

10   unhappy now I guess because they were getting 14 percent

11   interest and they were taking a risk and the bank failed.  We

12   don't know how much Avalon is going to recover from that but

13   they don't have a claim for veil piercing under English law.

14   This was a company that was created in 2006 and existed for 10

15   years up to this point and it was not a sham, it existed, they

16   have not -- it was not interposed between any liability of

17   Mr. Leontiev which they've never alleged, and Avalon.

18   Mr. Leontiev didn't borrow money from Avalon, they don't allege

19   he did.  It wasn't his obligation, it was Ambika's obligation.

20   And what English law says is you can set up a corporation to do

21   that and therefore I would submit that since we all agree Judge

22   Cote's analysis is right, if one looks at that, I believe that

23   there is no possibility that they can prove up that the veil of

24   Ambika should be pierced.

25              Thank you, your Honor.

G9L5leoA

1           THE COURT:  Thank you very much.  I will give defense

2       counsel, since you took very little of your time, if you wanted

3       one or two minutes in surrebuttal, you can have it.  You don't

4       have to use it but if you want it, you can.

5           MR. HECKER:  I would simply say this:  If the Court

6       reviews our amended answer and the allegations we have made,

7       plaintiff has just made a series of assertions that are not

8       admitted in the pleadings.  We do not admit that Ambika was

9       properly constituted to conduct only lawful business.  We don't

10      accept that the parties understood that Mr. Leontiev would use

11      his control of Ambika to siphon off funds to other shell

12      companies that he controlled.  There are a number of entities

13      whose veil could be pierced here and we haven't even had

14      discovery yet so we don't accept the allegations.  On this

15      motion my understanding is that the facts have to be viewed in

16      the light most favorable to us and on this issue we just don't

17      think the factual records exists to find a finding of veil

18      piercing and I think we need discovery to establish that.

19          THE COURT:  I will reserve but I will get you a bottom

20      line ruling on all aspects of this motion by no later than

21      Friday of this week, to be followed by an opinion in due

22      course.

23          Now, there were some discovery issues, let me just

24      find my notes on that.  First, plaintiff is refusing to produce

25      certain categories of documents as irrelevant under plaintiff's

G9L5leoA

1  understanding of Cypress veil-piercing law.  These are

2  documents relating to all "cloud entities beyond the name

3  borrower's Ambika and Vennop."  The second document is reading

4  to Leontiev's ownership or control of cloud entities Wonder

5  Works Investments, Ltd. and Wonder Heart Assets, Ltd, and

6  transactions they had with other cloud entities.  And third,

7  documents necessary to show Leontiev's receipt/continued

8  control of the borrowed funds.

9          Assuming that this is unaffected by any ruling I make

10 on Friday but just on the present state of the record, it is

11 not clear to me -- let me say I don't fully yet understand the

12 document for not producing them assuming the matter goes

13 forward.

14         MR. KING:  Well, your Honor, Marshall King on behalf

15 of plaintiff.

16         If you listen to Mr. Hecker's theory, Mr. Hecker's

17 theory is -- today's theory, anyway, is that the borrowers were

18 rendered insolvent by something that occurred after the money

19 was lent.  If they were rendered -- we are willing to produce

20 documents about the transactions engaged in by the borrowers.

21 To the extent that money was transferred to company B, it is

22 the transfer to company B that's going to give rise to any

23 argument for piercing the corporate veil if he is right about

24 his theory and for the reasons Mr. Weigel said.  We don't think

25 he is right about that being a viable theory but if it is

G9L5leoA

transferred to company B, that's the wrong.  It doesn't matter

whether company B transferred to company C, company D to

company E to company F, to Mr. Leontiev, to some other company,

to Wonder Works.  He is taking discovery about all of this when

the relevant issue is really right there at the beginning.

This is about loans that were made to two Cypress companies and

a Russian company.  Period, full stop.  So, if there is

wrong-doing --

THE COURT:  That same objection -- I am glad you

reminded me, also -- there was an objection to a request for

Leontiev's trading activities and, again, I think your position

was you would produce it with respect to trading activities

concerning the borrowed funds.

MR. KING:  Absolutely.

THE COURT:  But not otherwise.

MR. KING:  Absolutely, your Honor.  Yes, exactly.  You

have got it.  It is just this is seeking all sorts of business

activities, ownership interests, investments, transactions that

don't concern the borrowers.  This is about the borrowers.

THE COURT:  Let me go to defense counsel.

Let's take the second part first.  You asked for

discovery of all of his trading activities?  Isn't that

overbroad on its face?

MR. HECKER:  Your Honor, our concern is that the

monies were siphoned out of these entities into this cloud that

G9L5leoA

was set up precisely to obscure the flow of funds, and where

those funds are now, our position is, that Mr. Leontiev

controls those funds now, the monies that were loaned to

Mr. Leontiev.  And I think to have an Order that prevents us

from following the funds from Ambika out would effectively

allow him to succeed in preventing us from finding out where he

stole the money; where he siphoned it off and where it is now.

        We made allegations in the amended complaint that his

business partner showed us trading records that purported to

be --

        THE COURT:  You are going to be taking his deposition

and maybe other depositions of people with knowledge but

certainly his deposition so you are going to be asking where

the funds went, right?

        MR. HECKER:  We certainly are, but we would like to --

        THE COURT:  At that point he is going to say either to

X or to Y I don't remember.  If he says I don't remember, then

of course you will get everything.  If he says X or Y then you

will get X or Y.  Why would you need, in advance, all of his

trading activities?

        MR. HECKER:  I think the concern we have is that we

will need to continue coming back to the Court after getting

one set of --

        THE COURT:  Well, it will be my pleasure.

        I just think that -- I have seen this so many times it

G9L5leoA

is a familiar problem.  Naturally you don't know exactly what

position he is going to take on a particular question that

might be well put so you are saying, well, give me the world

now because who knows what position he will take.  But, a much

more sensible way of doing it is take his deposition, we will

give you a specific answer.  If he doesn't then he does so at

his peril because I will give you everything.  If he gives you

a specific answer, then you demand those documents and then you

can apply to the Court if you think there is a need for a

further deposition on that, about that, you can apply for that.

And when it comes to party depositions I suppose the

third-party depositions, I am very open to additional

deposition hours to deal with things have only emerged as a

result of the first deposition.

         So, I think that's a more efficient way to proceed and

I think that that may well apply to your other dispute, the

first dispute as well.

         MR. HECKER:  Respectfully, on that issue?

         THE COURT:  Yes.

         MR. HECKER:  I disagree.

         We are alleging a scheme to set up these shell

companies as part of a plan from the outset to siphon off money

from the borrowers and to render them unreachable and I think

we are entitled to discovery on how he set up those companies,

who was involved.  We have made allegations that suggests the

G9L5leoA

```
1    same trust companies were involve and the same nominees were

2    used but I think with are entitled to establish that.  If this

3    case goes to trial, we would want to put that in front of the

4    jury so they understand what Mr. Leontiev had done to render

5    insolvent the borrowers of the monies.

6         THE COURT:  I only have my notes, I don't have the

7    document requests in front of me, but I thought you wanted all

8    documents broadly defined relating to all cloud entities beyond

9    the named borrowers Ambika and Vennop.  So, that's not just

10   asking for how they were set up and who controls them, it is

11   asking for everything.

12        MR. HECKER:  So, perhaps we could tailor the request.

13   We have listed the cloud entities in the amended answer and

14   what we would like, of course, is documents to help us

15   understand how they were set up, what their purpose was, the

16   monies that went in and out in their relationship to Ambika and

17   Mr. Leontiev.  I think we are entitled to explore that in

18   understanding the scheme that we have alleged.

19        THE COURT:  I think you are entitled to something in

20   that area.  I don't think you are entitled to everything you

21   have requested.  As part of that same order that I will issue

22   on Friday I will narrow the request appropriately but I already

23   have narrowed the other dispute we just talked about for now.

24   The only trading activities that the plaintiff needs to produce

25   are the trading activities concerning the borrowed funds but
```

G9L5leoA

1   this is totally without prejudice to the further request that I

2   indicated you could make after the deposition.

3           MR. HECKER:  Thank you, Judge.

4           THE COURT:  Now, the final dispute is regarding the

5   interrogatories.  Now, I have to start out with a grammatical

6   point which this Court is particularly good at.  These are very

7   poorly drafted.  Let's look at interrogatory no. 1 which is on

8   page 4 of the interrogatories and it says:  Identify all

9   persons with knowledge or information concerning the concerning

10  the facts.

11          That, I think, is fairly described as gibberish.

12  There are many other examples, I will just give you one other.

13  In the interrogatory no. 2:  Identify all persons with

14  knowledge or information concerning any communications between

15  you and any of defendant, Avagumyan or Avalon Automotive Group,

16  New York Motors Moscow, or any of their employees.

17          First of all, I assume you mean defendants.

18          MR. HECKER:  There is only one defendant.

19          THE COURT:  Then I don't understand how it could be

20  any of.  You can't have it either way unless you didn't want a

21  comma after defendant.

22          MR. TAFT:  The defendant is defined --

23          THE COURT:  The point is -- I am sure you can

24  straighten out these ambiguities but it is your job in drafting

25  these interrogatories to use unambiguous language.  And,

G9L5leoA

1    believe me, there are other examples if you go through it.

2            Now, I am not sure -- this is not the main point

3    raised by plaintiff but we will get to their point in a

4    minute -- I'm not sure 33.3(a) permits you to break down, by

5    category, the persons with knowledge as opposed to simply

6    saying we want a list of all the persons who have knowledge of

7    the allegations in the complaint.  I have seen it both ways.  I

8    am not aware of any meaningful case law on that but it seems to

9    me by breaking it down the way you have you create -- you

10   create a potential for ambush.  So, let me ask, for example,

11   supposing they responded to your interrogatories by saying that

12   Mr. X has knowledge of categories 1, 2, 5, and 7, and you get

13   to his deposition and, lo and behold, in his answer to a

14   question he says something about category 6.  I am just picking

15   those numbers at random.  Is it your position that his

16   testimony you had at deposition would be inadmissible on no. 6

17   because he was not identified as someone in category 6 but only

18   in categories 1, 5, 7, and 8 or something like that?  That is

19   just a recipe for, at best, endless litigation before the Court

20   and, at worst, ambush.  So, I am not sure you are entitled to

21   any of these interrogatories.

22           Now, with respect to the one that they specifically

23   complain about which is no. 19:  Identify the custodian and

24   location of all documents whether or not in your possession,

25   custody or control -- so, you are positing omniscience on their

G9L5leoA

 1    part -- that concern the items specified in interrogatories 1

 2    through 18 and provide a general description of those

 3    documents.

 4           Again, I think this is not what is contemplated by

 5    local Rule 33.3(a).  The Judges of the Southern District, when

 6    they propounded that rule, were trying to deal with the

 7    practice that was then common and is still common in other less

 8    careful districts of hundreds of interrogatories, all

 9    propounded and requiring a laborious laborer, almost all of

10    which was simply repetitious of what you would be getting in

11    depositions and document requests.  And the feeling in the

12    Southern District is basically what you need to know up front

13    is who are the people that have knowledge of the case and where

14    are the relevant documents located so that as a practical

15    matter you can know who you need to depose and you, if you

16    don't get all the documents you want from your adversary, you

17    will know what third-party you need to go look to to get those

18    documents.  That was the idea.  And this is not, I think,

19    consistent with that idea.

20           So, is there anything you wanted to say before I

21    strike the interrogatories in their entirety?

22           MR. HECKER:  Your Honor, I think what we would like is

23    an opportunity to look at them again, reformulate them, and try

24    to address the issues the Court has raised.

25           THE COURT:  That sounds to me like a good idea.

G9L5leoA

1          So I will, without prejudice, strike the present

2     interrogatories but give you a week to propound further

3     interrogatories.

4          MR. HECKER:  Thank you, Judge.

5          THE COURT:  Anything else we need to take up today?

6          MR. HECKER:  Just one issue on the protective order.

7          We have submitted, as Court requested, a copy of the

8     protective order that excludes the language that we proposed to

9     give us an out.

10          THE COURT:  Yes, I signed that.

11          MR. HECKER:  Okay.

12          THE COURT:  And that was without prejudice to raising

13     that issue.  I just didn't think I needed to reach that issue

14     until it became more ripe, so to speak.

15          MR. HECKER:  And I am only anticipating a possibility,

16     I just want to get some guidance from the Court.

17          THE COURT:  Yes.

18          MR. HECKER:  If, for example, we were to get from law

19     enforcement that included a request that we not disclose the

20     existence of the subpoena, could we come to the Court ex parte

21     and attempt to get the permission under the protective order

22     that we would need to get the information without notifying the

23     other side?

24          That is sort of the concern we have.

25          THE COURT:  So, which governmental entities would you

G9L5leoA

have in mind?  If it was a U.S. governmental entity I would

expect them to come me and they could come to me ex parte.  I

don't see that I would need to have either of the parties come

to me.

        If it is a foreign entity, then you could come to me

ex parte or they could come to me ex parte but with some

indication of how I could communicate directly with the foreign

entity because there the party is making the request and they,

after questioning by the Court, I may grant their request or

deny it.  But I want to be able to talk to them either

literally if it is a U.S. government entity, or through some

communication in writing if it is a foreign entity.

        MR. HECKER:  Okay.  Understood, Judge.

        THE COURT:  Very good.

        Anything else?  Very good.  Thanks so much.

                            o0o