UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SERGEY LEONTIEV,                    :

      Plaintiff,                   :      16 Civ. 3595

      -v-                          :      MEMORANDUM

ALEXANDER VARSHAVSKY,

      Defendant.                   :
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/5/16

JED S. RAKOFF, U.S.D.J.

     By "bottom-line" order dated September 22, 2016, this Court
denied plaintiff's motion for judgment on the pleadings on his
claim for a declaratory judgment, his sole remaining cause of
action. See Order dated Sept. 22, 2016, ECF No. 41. This
Memorandum explains the reasons for that ruling.

     The background of this case is set forth in the Court's
Memorandum dated September 1, 2016, familiarity with which is
here presumed. See Memorandum dated Sept. 1, 2016, ECF No. 31 at
3-6. Briefly, plaintiff Sergey Leontiev alleges that defendant
Alexander Varshavsky has demanded payment for a debt that
plaintiff denies owing. On August 3, 2016, Leontiev moved for
judgment on the pleadings on his declaratory judgment claim,
which sought a declaration that he owes no debt or obligation to
Varshavsky "or anyone acting in concert or participation" with
him in connection with certain loans. See Complaint ("Compl."),
ECF No. 1, ¶¶ 41-45; Plaintiff's Memorandum of Law in Support of

1

Motion for Judgment on the Pleadings ("Pltf. Mem."), ECF No. 23.
On August 26, 2016, Varshavsky filed opposition papers and, with
the Court's permission, an amended answer to the complaint. See
Defendant's Memorandum of Law in Opposition to Plaintiff's
Motion for Judgment on the Pleadings ("Def. Mem."), ECF No. 28;
Amended Answer ("Ans."), ECF No. 27. On September 7, 2016
Leontiev filed reply papers. See Plaintiff's Reply Memorandum of
Law in Support of Motion for Judgment on the Pleadings ("Pltf.
Reply"), ECF No. 32. The parties filed supplemental papers
addressing a factual development on September 13, 16, and 20.
See ECF Nos. 35, 38-39. On September 21, 2016, the Court held
oral argument on Leontiev's motion. See Transcript dated Sept.
21, 2016, ECF No. 42. At oral argument, Leontiev narrowed the
scope of the requested relief to a declaration that he does not
owe a debt to Varshavsky alone. Id. at 5-6.

    "Judgment on the pleadings is appropriate where material
facts are undisputed and where a judgment on the merits is
possible merely by considering the contents of the pleadings."
Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir.
1988). In reviewing a motion for judgment on the pleadings,
courts consider "the complaint, the answer, any written
documents attached to them, and any matter of which the court
can take judicial notice for the factual background of the
case," L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d

Cir. 2011), and "accept as true the non-movant's allegations and draw all reasonable inferences in the non-movant's favor," Melodrama Pub., LLC v. Santiago, No. 12-cv-7830, 2013 WL 1700929, at *1 (S.D.N.Y. Apr. 11, 2013). As the following summary of allegations makes clear, much remains in dispute.

In August 2015, defendant Varshavsky began requesting that plaintiff Leontiev "make payment of a debt." Ans. II. ¶ 3; Compl. ¶ 3. The exact amount demanded is disputed, but plaintiff claims that most recently Varshavsky sought $83 million. Compl. ¶¶ 7, 11; Ans. II. ¶¶ 7, 11. In January 2016, acting through counsel, Varshavsky provided Leontiev with copies of various debt instruments purportedly evidencing Leontiev's debt. Compl. ¶ 32; Ans. II. ¶ 32. The instruments comprise 29 promissory notes issued by Financial Group "Life" ("FG Life") and Vennop Trading Limited ("Vennop"), as payors, to Karen Avagumyan, Igor Renich, and Diana Karapetyan, as payees; two loan agreements between Avilon Automobile Group or its predecessor-in-interest ("Avilon"), as lenders, to Ambika Investments Limited ("Ambika"), as borrower; and five expired loan guarantees issued by Probusinessbank. Compl. ¶¶ 32(a)-(c); Ans. II. ¶¶ 32(a)-(c).

Varshavsky is not named in any of the instruments, see Compl. ¶¶ 6, 33; Ans. II. ¶¶ 6, 33, and he appears to allege that his collection efforts were on behalf of the named lenders. Specifically, Varshavsky serves as the president of the

corporate lender, Avilon, and accordingly had authority to seek
repayment on its behalf. Ans. III. ¶¶ 6, 8. Varshavsky's
relationship to Avagumyan, Renich, and Karapetyan, the
individual lenders, is less clear. Varshavsky alleges that he
"referred and introduced other friends and acquaintances to
[Leontiev's business partner] Mr. Zheleznyak, some of whom
similarly loaned funds to entities owned and/or controlled by
Mr. Leontiev. When these loans . . . ultimately were not repaid,
certain of those individuals asked Mr. Varshavsky to negotiate
for repayment of the loaned funds on their behalf[.]" Ans. III.
¶ 8. Varshavsky does not expressly allege that these "certain
. . . individuals" include Avagumyan, Renich, and Karapetyan.

     Like Varshavsky, Leontiev is not named in any of the debt
instruments. Compl. ¶¶ 5, 33; Ans. II. ¶¶ 5, 33. But, according
to Varshavsky, Leontiev controls the borrowers, directed them to
raise money from outside lenders by offering to borrow at high
interest rates, and secretly syphoned off and pocketed the cash.
Ans. III. ¶¶ 3-8. Varshavsky claims that the borrowed funds were
initially deposited in accounts with Probusinessbank, which
Leontiev ran until it was seized by Russian authorities in
August 2015. Compl. ¶ 22; Ans. II. ¶ 22, III. ¶ 9. Thereafter,
Leontiev transferred the funds "among a complex network of other
shell entities [that he] also owned and/or controlled." Ans.
III. ¶ 9. Varshavsky claims that Leontiev refers to these

4

entities collectively as the "cloud," because they obscure the flow of funds. Id.

Varshavsky alleges that Leontiev conceals his ownership and control of the cloud entities using a variety of devices. According to Varshavsky, some "cloud" entities are incorporated under the names of straw individuals and directed by individuals acting on Leontiev's behalf. Ans. III. ¶¶ 10-11. Some "cloud" entities are registered to the same names and addresses; many are parties to various loans and assignment agreements between and among each other that allegedly have no real business purposes. Ans. III. ¶¶ 15-17. Moreover, despite having few or no genuine employees or directors, some cloud entities have allegedly engaged in billions of dollars in transactions with other cloud entities. Ans. III. ¶ 17.

The ultimate disposition of the borrowed funds is unclear, but Varshavsky generally alleges that Leontiev transferred the funds from Ambika, Vennop, and FG Life into other cloud entities, rendering these borrower entities insolvent. Ans. III. ¶ 20. The three borrowers have not repaid their loans and have no funds with which to do so. Ans. III. ¶¶ 21-22. Varshavsky alleges that Leontiev continues to control the remaining outstanding funds. Ans. III. ¶ 28.

Against this background, Leontiev first argues that he is entitled to judgment on the pleading because Varshavsky's Answer

– which did not bring any counterclaims – did not state a plausible claim to relief in the putative debt collection action. Leontiev seeks to test Varshavsky's answer by the plausibility standard of Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), because the parties in a declaratory judgment action bear their "natural" burdens of proof at summary judgment and trial, notwithstanding their formal party designations, see Schoeps v. Museum of Modern Art, 594 F. Supp. 2d 461, 463-64 (S.D.N.Y. 2009), and Varshavsky is the natural plaintiff in the incipient debt collection action. In effect, Leontiev asks the Court to treat his motion for judgment on the pleadings as a motion to dismiss the incipient debt collection action, and to "dismiss" that action for failing to state a claim.

The Court hereby confirms its ruling from the bench that the pleading standards articulated in Iqbal and Twombly do not apply to Varshavsky's Answer. See Transcript dated Sept. 21, 2016, at 3-4. Leontiev is correct that at later stages of this case, the parties will bear their natural burdens of proof, and so Varshavsky will indeed have to prove up the alleged loans, his right to enforce them, and Leontiev's personal liability. See Schoeps, 594 F. Supp. 2d at 463-64. But it does not follow that a defensive pleading must be measured by the standards governing offensive pleadings.

6

Indeed, it is well-established that an answer need not allege any facts at all, even if the answer asserts affirmative defenses. See Tardif v. City of New York, 302 F.R.D. 31, 36 (S.D.N.Y. 2014) (citing Fed. R. Civ. P. 8(c)). Accordingly, numerous courts have refused to apply Iqbal and Twombly either to an answer's denials or its assertions of affirmative defenses. See Sibley v. Choice Hotels Int'l, Inc., 304 F.R.D. 125, 132-33 & n.5 (E.D.N.Y. 2015) (collecting cases). Thus, in general, it is perfectly acceptable for an answer to simply deny the complaint's factual allegations and set forth a list of affirmative defenses. Leontiev does not explain why these well-established principles should be suspended for declaratory judgment defendants, and no court has suggested they are.

Indeed, the one case cited to the Court that is in a similar posture explains why Leontiev's argument is flawed. In Walton v. Hadley, both parties claimed the proceeds of a sculpture that had been sold at auction. See No. 13-cv-7907, 2014 WL 3585525 (S.D.N.Y. July 10, 2014). Plaintiff moved for judgment on the pleadings on her declaratory judgment claim seeking to establish her right to the proceeds, and at the same time moved to dismiss defendant's counterclaim seeking to establish his right to the proceeds. Id. *1. The court dismissed the counterclaim as implausible but denied the motion for judgment on the pleadings, because its finding that the

7

counterclaim was inadequately alleged was "not equivalent to a
finding that Defendant's claim is conclusively <u>foreclosed</u> as a
matter of law." <u>Id.</u> at *4-5 (emphasis in original). <u>Walton</u>
continued:

> To hold otherwise would be to allow one party to a title
> dispute to bring a declaratory judgment action before the
> matter has been fully investigated and then obtain a
> favorable declaration of ownership based solely on the
> counterparty's inability to adequately state an affirmative
> claim in its favor. Granted, as the party contesting
> ownership, Defendant will bear the burden of proof at
> trial, just as he would have had he brought suit against
> Plaintiff in the ordinary course. Plaintiff cannot,
> however, elect to bring a declaratory judgment action and
> then deprive Defendant of the opportunity to try to meet
> his burden at the appropriate time.

<u>Id.</u> at *5 (emphasis, citations, and footnotes omitted). This
reasoning applies fully here.

That leaves the question of what standard to apply to
Leontiev's motion. As <u>Walton</u> explains, "[t]he only
question . . . in determining whether Plaintiff is entitled to a
declaratory judgment at this stage in the proceedings[] is
whether Defendant's admissions . . . resolve the dispute as a
matter of law." <u>See</u> <u>id.</u>; <u>see also</u> <u>Effie Film, LLC v. Murphy</u>, 932
F. Supp. 2d 538, 552-53 (S.D.N.Y. 2013) (holding, in a
declaratory judgment action, that plaintiff "may prevail on its
Rule 12(c) motion only if the pleadings establish that there can
be no set of facts to support an action for copyright
infringement by [defendant] against [plaintiff] as a would-be

defendant" (emphasis omitted)), aff'd, 564 F. App'x 631 (2d Cir.
2014) (summary order). Thus, to prevail on the pleadings,
Leontiev had to show that the pleadings foreclosed the
possibility that he could be personally liable on the alleged
loans to Varshavsky. This he has failed to do.

In particular, the pleadings leave open a major dispute
about whether Leontiev may be held personally liable under veil-
piercing law. They also leave open a question about whether
Varshavsky may personally enforce the loans.

Leontiev first argues that he cannot be personally liable
on the alleged loans because it is undisputed that he is not a
named borrower, and because no facts are alleged that would
allow Varshavsky to pierce the corporate veils of the named
borrowers. The Court rejects this contention, based on the veil-
piercing doctrines of Cyprus and Russia, under whose laws the
named borrowers are organized. See Fletcher v. Atex, Inc., 68
F.3d 1451, 1456 (2d Cir. 1995) ("[U]nder New York choice of law
principles, the law of the state of incorporation determines
when the corporate form will be disregarded and liability will
be imposed on shareholders." (internal quotation marks and
alterations omitted)); see also Jonas v. Estate of Leven, 116 F.
Supp. 3d 314, 330 (S.D.N.Y. 2015) (applying Panama veil-piercing
law to Panama corporation).

The pleadings allow for the possibility that Leontiev could be personally liable for the loans allegedly made to Ambika and Vennop, which are both organized under the laws of Cyprus. See Exhs. G and H to Declaration of Marshall R. King in Support of Plaintiff's Motion for Judgment on the Pleadings ("King Decl."), ECF No. 24. While there is limited direct authority on this point, Cypriot courts generally follow English law, and English decisions have "great persuasive authority." See Declaration of Andreas Haviaras in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pltf. Cypriot Law Report"), ECF No. 25, ¶ 11; Expert Report of Mr. Pavlos Aristodemou ("Def. Cypriot Law Report"), ECF No. 29, ¶ 11(iv).

In this regard, both parties argue that a recent decision of the Supreme Court of the United Kingdom, namely, Prest v. Petrodel Resources Ltd. [2013] UKSC 34, should apply to this case. Def. Cypriot Law Report ¶¶ 19-22; Pltf. Reply at 7-8. As Prest explains, under the "concealment" branch of English veil-piercing law, "receipt by a company will count as receipt by the shareholder if the company received it as his agent or nominee, but not if it received it in its own right." See [2013] UKSC 34, ¶ 32 (judgment of Lord Sumption). Thus, "the interposition of a company or perhaps several companies so as to conceal the identity of the real actors will not deter the courts from

identifying them, assuming that their identity is legally relevant." Id. ¶ 28.

To determine whether an entity's funds will be treated as an individual's funds under this standard, courts examine the individual's ownership and control of the entity, "the circumstances and the source of the receipt" of the funds, and "the nature of the [controlled] company's other transactions." See id. ¶ 32. For example, one court found an individual liable for funds that he improperly caused plaintiff to pay to an entity that acted on his instructions, "had no independent business, third party directors, creditors or shareholders," and was controlled by a trust for which he was a beneficiary. See Trustor AB v. Smallbone [2001] 1 WLR 1177, ¶¶ 15, 24-25.

In addition, under Cyprus law, veil-piercing generally requires some level of misconduct connected to the corporate form. See Ex. C to Pltf. Cyprus Law Report at 16-17, Marios Apostolou v. Rodoula Ioannou, (2012) CLR 1 604 ("[I]n order to enable the lifting of a corporate veil, an improper action should be revealed, linked to the use of the corporate structure as virtual (sham) in order to conceal wrongdoing[.]").

Here, Varshavsky alleges – and the Court is required to accept as true for purposes of the instant motion - that Leontiev controlled Ambika and Vennop, hid his control through intermediaries and other devices, used them as vehicles for

11

receiving money from outside lenders, and wrongly diverted the borrowed funds for his own private use, leaving the borrowers insolvent. Ans. III. ¶¶ 9-13, 17-18, 20-22. Those allegations, if supported by facts, may well satisfy the concealment theory, such that the funds nominally in the entities' names would be treated as Leontiev's personal funds. There are, of course, allegations suggesting that veil-piercing would not be appropriate. For example, the transactions in this case have some hallmarks of legitimacy not present in Trustor, such as the fact that they were papered as loans between arm's-length parties. Compl. ¶¶ 32(a)-(b); Ans. II. ¶¶ 32(a)-(b); Ans. III ¶ 6. The point is, far from resolving the facts in Leontiev's favor, the pleadings make clear that there remains a serious dispute over whether he may be personally liable for the alleged loans to Ambika and Vennop.[1]

---

[1] With this resolution, the Court declines to reach Leontiev's argument under the "evasion" branch of English veil-piercing law, which allows veil-piercing where an individual tries to avoid an existing personal obligation by "interposing" an entity between himself and the obligation. See Prest [2013] UKSC 34, ¶¶ 28, 35. Leontiev argues that he cannot be held personally liable for the alleged loans because they were never in his name, and so he did not "interpose" Ambika and Vennop between himself and the debts to avoid repaying. Although this argument has some force, it is Leontiev's burden to show that he could not be personally liable under any set of facts, see Effie Film, 932 F. Supp. 2d at 552-53, and the pleadings allow for the possibility that Leontiev is liable under a concealment theory.

The pleadings likewise did not rule out the possibility that Leontiev could be held personally liable for the loans allegedly made to FG Life, which is organized under the laws of Russia. See Ex. F to King Decl. Specifically, although the parties' Russian law briefing was considerably thinner than their Cypriot law briefing, there appear to be at least three potentially viable veil-piercing theories under which Leontiev could be liable for FG Life's loans. Cf. JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 295 F. Supp. 2d 366, 382 (S.D.N.Y. 2003) (denying motion to dismiss based on Russian statute of limitations where both the applicable statute and the underlying facts were disputed).

First, under Article 10 of the Insolvency Law, in certain circumstances, an individual who causes an entity he controls to enter bankruptcy can be held personally liable for its debts. See Declaration of Yuri Monastyrsky in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pltf. Russian Law Report"), ECF No. 26, ¶ 5; Declaration of Svetlana Volodina with Certified English Translation ("Def. Russian Law Report"), ECF No. 30, ¶ 12. A presumption that the controller caused the insolvency arises when he approves "transactions at an undervalue, fraudulent conveyances and/or voidable preferences." See Pltf. Russian Law Report ¶ 5; Def. Russian Law Report ¶ 12. Varshavsky's allegations that Leontiev deliberately drained the

13

borrowed funds out of FG Life and rendered it insolvent fit comfortably within this theory.

Leontiev argues that the Article 10 route is inapplicable because FG Life is not currently in a formal insolvency proceeding, as would be required to recover under this theory. See Second Declaration of Yury Monastyrsky in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pltf. Russian Law Reply"), ECF No. 34, ¶¶ 7, 10. The Court is not persuaded. Although FG Life was apparently liquidated in mid-2015, which would have made a formal bankruptcy proceeding impossible, the liquidation was reversed while the instant motion was being briefed. See Letter from Varshavsky dated Sept. 13, 2016, ECF No. 35, at 1. The pleadings therefore do not foreclose the possibility that FG Life will enter insolvency. Indeed, this recent change in FG Life's legal status, combined with Varshavsky's allegations that Leontiev drained it of cash, suggest that a bankruptcy may well be imminent.[2]

Second, Russia's highest court recently held that an individual may be personally liable to creditors for bad-faith

---

[2] Moreover, in this posture, it makes no difference that Article 10 claims may only be brought in Russian bankruptcy proceedings. See Pltf. Russian Law Reply ¶¶ 7, 10. It is Leontiev's burden to show that there is "no set of facts" under which he might be liable, and the possibility that he could be liable in an insolvency proceeding, even if only in Russia, requires denying the motion. See Effie Film, 932 F. Supp. 2d at 552–53.

liquidation of a company he controls. See Def. Russian Law
Report ¶ 26 (citing Ruling of the Supreme Court No. 18-RU13-59
dated July 2, 2013); Pltf. Russian Law Reply ¶ 8. The parties
did not submit Ruling No. 18-RU13-59 in translation, but it
appears that it differs from the instant case in at least one
respect. There, the controlling shareholder was the wrongful
liquidator, whereas here, there are no allegations that Leontiev
was FG Life's liquidator (and nothing to suggest he will be if
the liquidation is re-opened). Given the limited briefing on
this issue, whether that distinction matters is unclear. It
suffices to say that on the present record, Leontiev's personal
liability under a wrongful liquidation theory has not been ruled
out.

     Third, the parties appear to agree that Russian courts, on
at least some rare occasions, permit veil-piercing under general
equitable principles embodied in the Civil Code of the Russian
Federation. See Def. Russian Law Report ¶ 8 (citing Article 1.4
("No person shall benefit from illegal or bad faith
behavior[.]") and Article 10.1 ("Exercise of rights with the
sole intention of causing harm to another person, evasion of the
law for unlawful purposes and the deliberate exercise of rights
in bad faith (abuse of rights) are prohibited[.]")). While
Leontiev protests that veil-piercing under these articles is
against "overwhelming court practice," see Pltf. Russian Law

Reply ¶ 5, that phrasing suggests that it is not unheard of and may be permissible on a certain set of facts. Just what these circumstances may be remains unclear, but it is enough to deny the motion that Leontiev failed to show that there was no set of facts under which he could be personally liable for FG Life's debt under general equitable principles.

Turning to the next main dispute, Leontiev argues that he is entitled to judgment on the pleadings because Varshavsky supposedly has no rights under the loans and therefore cannot enforce them in court.[3] Leontiev identifies three circumstances in which an individual can enforce a loan contract: (i) as a named party; (ii) as a third-party beneficiary; and (iii) as an assignee of the lender's rights. See, e.g., Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l., 790 F.3d 411, 418 (2d Cir. 2015); Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, N.A., No. 10-cv-1772, 2011 WL 5008368, at *7 (E.D.N.Y. Oct. 20, 2011). Leontiev points out that it is undisputed that

---

[3] This argument is inconsistent with the relief Leontiev sought in his complaint: a declaration that he did not owe a debt to Varshavsky "or anyone acting in concert or participation" with him. Compl. ¶ 44. Whether Varshavsky has no rights under the alleged loans may well affect whether he can personally collect the loaned funds, but has no bearing on whether any of his associates – which includes at least one of the named lenders, Avilon - can collect. Recognizing that disconnect, Leontiev, at oral argument, narrowed the scope of the requested relief to a declaration that he does not owe a debt to Varshavsky alone. See Transcript dated Sept. 21, 2016, at 5-6. As explained below, that concession does not save the instant motion.

Varshavsky is not a named party or third-party beneficiary, and that Varshavsky does not allege that he was an assignee. So stated, the flaw in this argument is apparent. As explained above, Varshavsky need not have alleged any facts at all, and as long as the pleadings did not foreclose the possibility that Varshavsky was an assignee or otherwise capable of enforcing the loans, then the motion would fail.

Concededly, this argument has been made closer by Varshavsky's litigation tactics. Simply stated, Varshavsky does not appear to believe that he is personally owed the loaned funds. The clearest sign is that, despite having had ample opportunities – two answers, half a dozen written submissions, and two oral arguments - Varshavsky has never alleged or represented that he seeks to collect in his personal capacity. On top of that, while he need not have made any factual allegations in his Answer, see Tardif, 302 F.R.D. at 36, the allegations he chose to make suggest that his collection attempts were on behalf of his company, Avilon, as well as on behalf of "certain" of the individual lenders. See Ans. III. ¶ 8. The readiest inference from these tactics is that Varshavsky only seeks to collect in a representative capacity, but has avoided saying as much to keep Leontiev embroiled in the present suit.

Nonetheless, because Varshavsky's exact position is somewhat unclear, the Court has considered the matter de novo and concludes that the pleadings do not foreclose the possibility that Varshavsky can enforce the loans in his personal capacity, such as through assignments. See Order dated Sept. 23, 2016, at 1. The closest the pleadings come to the question of Varshavsky's capacity to enforce the loans is an allegation (which Varshavsky admits) that, as of the date the complaint was filed, Varshavsky had not provided documentation of his authority to collect the loans. See Compl. ¶ 6; Ans. II. ¶ 6. Of course, this does not foreclose the possibility that such documents exist and are forthcoming. And while Varshavsky did not emphasize a personal capacity theory in his papers, he did argue that the pleadings left open the possibility that he was seeking to collect in his personal capacity. See Def. Mem. at 11-12. Thus, although the Court doubts whether Varshavsky will pursue this theory at later stages of this case, its technical availability is enough to deny Leontiev's motion.

In sum, for the foregoing reasons, the Court, in its September 22, 2016 Order, denied plaintiff's motion for judgment on the pleadings as to plaintiff's first (and only remaining) cause of action.

Dated:    New York, NY
          December 4, 2016                   _____
                                             JED S. RAKOFF, U.S.D.J.

18