UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                  :
SERGEY LEONTIEV,                                                  :
                                                                  :
                         Plaintiff,                               :
                                                                  :
         -against-                                                : No. 16-cv-03595 (JSR)
                                                                  :
ALEXANDER VARSHAVSKY,                                             :
                                                                  :
                         Defendant.                               :
                                                                  :
------------------------------------------------------------------x

## DECLARATION OF YURI MONASTYRSKY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, YURI MONASTYRSKY, declare under penalty of perjury as follows:

**Background and Experience**

1.      I have practiced law in Russia since 1990.  In 1990, I graduated from the Moscow State Institute of International Relations.  In 1999, I received a doctorate degree in juridical sciences from the Russian Academy of Sciences' Institute of State and Law.  I am a member of the Moscow Bar.

2.      In January 1991, I founded my law firm, Monastyrsky, Zyuba, Stepanov & Partners ("MZS & Partners").  MZS & Partners is rated as a top firm by Chambers & Partners and Legal 500.  My practice focuses on Russian and cross-border mergers & acquisitions, intellectual property, arbitration and litigation, and insolvency proceedings.

**Russian Principles of Limited Corporate Liability**

3.      As a general matter, Russian corporate law recognizes the principle of limited liability and provides that the shareholders of a legal entity are not liable for the obligations of the entity.  Pursuant to Article 56(2) of the Civil Code of the Russian Federation, "*a founder

*(participant) of a legal entity ... is not liable for the obligations of the legal entity and the legal entity is not liable for the obligations of its founder (participant) ... except in cases provided for by this Code or other [federal] law.*" The principles of veil-piercing or alter ego liability do not generally exist under Russian law.

4.  As is specified in Article 56(2) of the Civil Code, there are certain limited instances, expressly provided by statute, in which a controlling shareholder of a legal entity may be held personally liable for the obligations of the controlled legal entity. The only ground on which a controlling shareholder may be liable to the creditors of a controlled legal entity is in the course of bankruptcy proceedings with respect to such an entity. Such liability is not triggered by non-bankruptcy liquidation proceedings. These principles are set forth in Article 3(3) of Federal Law No. 208-FZ "On Joint-Stock Companies" (the "Joint-Stock Company Law"). In other words, except in the context of a bankruptcy proceeding under Russian law, the controlling shareholder of a corporate entity is never liable to the creditors of a controlled legal entity.

5.  Pursuant to Article 64(5.1) of the Civil Code of the Russian Federation, claims which have not been recognized by the liquidation commission of a legal entity are deemed terminated upon the completion of the liquidation of the debtor entity if the creditors have not previously filed a lawsuit in relation to such claims. By its nature, secondary liability of a participant may not be imposed in relation to an obligation which was extinguished by operation of law.

6.  The closed joint-stock company ZAO "Financial Group Life" was voluntarily liquidated on August 5, 2015 and was registered as terminated by the Inter-district Inspectorate No. 46 of the Federal Tax Service for the City of Moscow (Inspectorate No. 46). Subsequently, on September 2, 2016 the Moscow City Directorate of the Federal Tax Service (Directorate)

reversed Inspectorate No. 46's decision to register the liquidation of ZAO "Financial Group Life" and the company was re-instated in the companies' registry.  However, on December 26, 2016, the Federal Tax Service reversed the decision of the Directorate to re-instate ZAO "Financial Group Life," leaving in effect the original decision of Inspectorate No. 46 on the termination of ZAO "Financial Group Life".  (A copy of the Federal Tax Service decision is attached as Exhibit 1.)  ZAO "Financial Group Life" is thus currently listed in the companies' registry as terminated on August 5, 2015.  (A copy of an excerpt from the companies' registry as of January 24, 2017 is attached as Exhibit 2.)  Accordingly, at present, any obligations of ZAO "Financial Group Life" that were not recognized by its liquidator have been extinguished and there can be no secondary liability of the company's participants.

7. Russian law may also impose tort liability if through bad faith actions of the liquidator the creditors of the liquidated entity have suffered losses. Such liability, however, may be imposed on the controlling shareholder only if such shareholder also acted as the liquidator and the above bad faith actions are imputed to the shareholder in his or her capacity as the liquidator.  (See Supreme Court Ruling dated July 2, 2013 No. 18-KG13-59, where the sole shareholder and the CEO of an entity acted as the liquidator and was held secondarily liable for the liquidated entity's debts.)

8. The grounds for imposing liability on the shareholders of a legal entity in the context of a formal bankruptcy proceeding are contained in various sections of Federal Law No. 127-FZ "On Insolvency (Bankruptcy)" (the "Insolvency Law").  Article 10(4) of the Insolvency Law provides that a "controlling person" (defined as a person who has or has had, over the period of three years preceding the bankruptcy filing, the right to give mandatory instructions to the debtor or otherwise direct its actions) who causes the entity's bankruptcy as a result of his

action or inaction may be held secondarily liable for that entity's debts.  The Insolvency Law establishes a rebuttable presumption that the bankruptcy is caused by the controlling person's action or inaction if such person entered into, approved or was a third party beneficiary under a transaction (or a series of transactions) of the debtor that meet the criteria of a voidable transaction under the Insolvency Law.  Such transactions include transactions at an undervalue, fraudulent conveyances and/or voidable preferences.  A controlling person is exempt from liability under Article 10(4) if the bankruptcy occurred through no fault of the controlling person or if the controlling person acted reasonably and in good faith in the interests of the debtor.

9. In applying the provisions of Russian law imposing secondary liability on the controlling persons of a legal entity, the plaintiff must prove each of the three elements of such liability: (i) the fault of the controlling person, (ii) bad faith or unreasonableness in the controlling person's actions or inaction, and (iii) causation between such actions (or inaction) and the bankruptcy of the legal entity.  Failure to prove any of the above elements constitutes grounds for denying a claim for secondary liability.  This high burden of proof explains why, without a rebuttable presumption of causation which may occur under limited circumstances (inapplicable in relation to ZAO "Financial Group Life"), Russian courts very rarely impose secondary liability.

10. Pursuant to the joint Resolution No. 6 of the Plenum of the Supreme Court of the Russian Federation and Resolution No. 8 of the Plenum of the Supreme Arbitrazh Court of the Russian Federation dated July 1, 1996, "On certain issues related to the application of Part 1 of the Civil Code of the Russian Federation," when adjudicating disputes involving the issue of secondary liability of the founders (participants) of, or of other persons who have the means of giving mandatory instructions to or otherwise directing the actions of, a legal entity which has

been declared bankrupt, the court must take into account the fact that such persons may be found secondarily liable solely in those circumstances where insolvency (bankruptcy) of a legal entity was caused by their directions or other actions.

11. Russian courts have stated that "[i]t follows from the above statutory provisions that the necessary pre-requisites for secondary liability of a founder, participant or other persons who have the right to give mandatory instructions to the debtor or otherwise direct its actions include causation between the use of the defendant of his rights and/or authority in relation to the debtor and the debtor's actions which caused its insolvency (bankruptcy), as well as the defendant's fault in the debtor's bankruptcy … When filing a petition for secondary liability with the [bankruptcy] court the petitioner must prove that the defendant – through his actions – brought the debtor to bankruptcy." (Resolution No. F09-9701/14 dated February 5, 2015 of the Arbitrazh Court for the Urals Judicial District in Case No. A60-22079/2014.)

12. In its Review of the court practice No. 2 (2016), the Supreme Court of the Russian Federation stated that "*[f]rom a systemic construction of section 3 of Article 56 of the Civil Code of the Russian Federation (hereinafter – CC RF), section 3 of Article 3 of the Federal Law No. 14-FZ dated February 8, 1998 "On Limited Liability Companies" and section 4 of Article 10 of the Federal Law No. 127-FZ dated October 26, 2002 "On Insolvency (Bankruptcy)" it follows that causation between the use by a participant [of a legal entity] of his rights and (or) powers in relation to the controlled business entity and the aggregate of the legally consequential actions of the controlled entity which resulted in such entity's insolvency (bankruptcy) is a necessary prerequisite for imposing a secondary liability on a participant [of such entity] … Secondary liability of a participant may be imposed when as a result of his actions the debtor not only suffers [financial] harm but is rendered bankrupt, i.e., a person who*

5

*is incapable of satisfying the creditors' claims and perform public duties as a result of a substantial decrease of its assets under the influence of the controlling person.*"

13. Article 10(5) of the *Insolvency* Law provides that any such claim must be filed and adjudicated as part of the bankruptcy proceedings in order to ensure orderly distribution of the estate's assets in accordance with the statutory seniorities of creditor claims and the principle of *pro rata* distribution. Any recoveries on a claim for secondary liability must go to the debtor's estate and may not be claimed by or made available to individual creditors outside the bankruptcy proceedings.

14. Claims may not be filed after the completion of the bankruptcy proceedings. The Russian court practice indicates that failure by a creditor to seek recourse for secondary liability against a controlling person of a debtor through bankruptcy proceedings after the claim was discharged through the debtor's liquidation constitutes grounds for denying a claim for secondary liability against the controlling person pursuant to Article 10 of the Insolvency Law (e.g., Resolution No. F09-9701/14 dated February 5, 2015 of the Arbitrazh Court for the Urals Judicial District in Case No. A60-22079/2014). The only example of a case in which a Russian court permitted a creditor to file a claim after the conclusion of bankruptcy proceedings involved allegations by the creditor that his claim was wrongfully denied during the bankruptcy proceeding.

15. Russian court practice is abundant with judgments holding that a court (other than the court that handled the insolvency case of the primary obligor) that would otherwise have personal jurisdiction over a defendant would lack the subject matter jurisdiction to adjudicate a claim for secondary liability on the basis of Article 10 of the Law on Insolvency and that the court that handled the insolvency of the primary obligor has the exclusive jurisdiction to

adjudicate a claim for secondary liability against a controlling person of the primary obligor (e.g., Resolution dated February 17, 2015, of the Arbitrazh Court for the North-Western Judicial District in Case No. A21-6517/2014).

16.     Pursuant to paragraph 10 of Article 10 (4) of the Law on Insolvency, "the amount of secondary liability of the controlling person of the debtor is equal to the aggregate amount of creditors' claims included in the registry of creditors' claims and claims lodged [with the liquidator] after the closing of the registry of creditors' claims and creditors under current payments which have not been discharged as a result of the insufficiency of the [estate] assets." Therefore, any pre-petition claims which have not been filed with the liquidator as part of the liquidation proceedings may not give rise to secondary liability of the controlling person in subsequent bankruptcy proceedings.

17.     That is consistent with the nature of secondary liability. Pursuant to Article 399 of the Civil Code, *"[p]rior to making a claim against a person who in accordance with laws, regulations or the terms of an obligation bears liability in addition to the liability of another person who is the primary obligor (secondary liability), the creditor must make a claim against the primary obligor. If the primary obligor has refused to satisfy the claim of the creditor or the creditor has not received a response to the claim within a reasonable time such claim may be made against the person who bears secondary liability*." In Resolution No. 4664/07 dated October 9, 2007, the Presidium of the Supreme Arbitrazh Court of the Russian Federation stated that the necessary elements of secondary liability include: (i) a refusal by the primary obligor to satisfy a creditor's claim or failure by the primary obligor to respond to the creditor's claim within a reasonable time, (ii) filing of a lawsuit against the primary obligor, (iii) insufficiency of monetary assets at the disposal of the primary obligor, and (iv) presentment of the claim to the

liquidation commission of the primary obligor prior to the completion of its liquidation.  While Resolution No. 4664/07 dealt with a case of the secondary liability of a non-profit institution, the necessary elements of secondary liability set out by the Supreme Arbitrazh Court should apply mutatis mutandis to for-profit business enterprises such as joint-stock companies.

18.  An argument has been made that Articles 1(4) and 10(1) of the Civil Code of the Russian Federation set forth general equitable grounds that can be relied upon for the purpose of piercing the corporate veil of a legal entity. This argument, however, is not supported by Russian law or court practice.

19.  Pursuant to Article 1(4) of the Civil Code, "no [person shall] benefit from unlawful or bad faith behavior."  Article 10(1) prohibits "the carrying out of one's civil law rights with the exclusive intent to cause harm to another person, any actions evading the law with an unlawful purpose as well as any other exercise of civil law rights deliberately carried out in bad faith (an abuse of right)."  The remedies for an abuse of right are set forth in Article 10(2), which provides that "a court may deny enforcement of a right which is being abused as well as apply other remedies set forth by statute."  The Civil Code and other Russian statutes provide the following potential remedies for the aggrieved party: (i) denying enforcement of the right which is being abused, (ii) damages caused by the actions of the abusive party, or (iii) other remedies expressly provided for by a statute (e.g., if the occurrence of a condition precedent was prevented through bad faith actions of a party interested in the non-occurrence of such condition precedent, the condition is deemed to have occurred, Art. 157(3) of the Civil Code).  Piercing the corporate veil is not one of the remedies expressly provided for by a statute.  There is only one court decision that I am aware of where the court makes reference, in dictum, to Articles 1(4) and 10(1) of the Civil Code as a stand-alone ground for piercing the corporate veil and imposing

liability on the shareholder for the obligations of a legal entity. The decision was rendered by the 13th Appellate Arbitrazh Court on May 29, 2012, in case number A33-18291/2011. One should be cautioned, however, against drawing any general inferences from this decision, for several reasons. First, court decisions have no binding effect in the Russian legal system. The persuasive authority of a decision depends on the level at which such decision is rendered (the appellate level is only second from the bottom in the hierarchy of the court system and its decisions are far less persuasive than decisions of the cassation division and the decisions of the Supreme Court). Second, the reference to veil piercing was not the grounds for the decision but was merely mentioned in what, in the structure of a U.S. court decision, would be referred to as dictum. Third, the factual circumstances of the case lend but a very limited frame of reference for shareholder liability more broadly: the defendant in that case – who was the sole shareholder and beneficiary of a legal entity that had perpetual tenancy rights over a bathhouse - through his actions deliberately confused the plaintiff as to the identity of the obligor for water supplies by the municipality by executing invoices and various water pipe inspection reports in his personal capacity (rather than as a representative of the legal entity) and by paying invoiced amounts in his personal capacity from his personal bank account. The court referred to Article 10(1) of the Civil Code, not as a basis for imposing liability on the controlling shareholder, but as a basis for a negative inference in relation to the confusion as to the identity of the proper primary obligor. There was no contract between the bathhouse and the municipality, so the court made a negative inference holding the defendant to be the proper obligor on the basis of the course of dealings between the defendant and the municipality. The court did not, therefore, impose on the controlling person liability that was originally owed by the legal entity. ("*On the basis of the aforementioned [facts], the trial court came to the proper conclusion that the defendant had*

9

*created a situation of legal uncertainty as to the identity of the person liable under the obligations ... On the basis of the above, and taking into account Article 10 of the Civil Code, the trial court in this case appropriately imposed liability for the payment of debt.*")

20. The only basis for shareholder liability in a non-bankruptcy scenario is set forth in Article 53.1 of the Civil Code, which provides the equivalent of a shareholder derivative action. Liability under Article 53.1 runs to the legal entity itself, and not to its creditors, who do not have standing to sue the shareholders.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26 day of January, 2017 in Moscow, Russian Federation.

_____
Yuri Monastyrsky

10