# EXHIBIT 61

**SURETY AGREEMENT**

Moscow                                                                                                      December 1, 2015

**BETWEEN:**

(1)      **Zheleznyak Alexander Dmitrievich,** a citizen of the Russian Federation, sex: male, _____ date of birth, place of birth _____, passport series _____, issued by _____, section code _____, registered address: _____ (**Surety**); and

(2)      **Avagumyan Kamo Kimovich,** a citizen of the Russian Federation, sex: male, March 13, 1961 date of birth, place of birth: city of Lyubertsy, Moscow Region, Passport series 45 06 500340, issued by the Directorate of the Federal Migration Service for the City of Moscow on 7/24/2009, registered address: ul. Alabyana, Bldg. 3, Apartment 111, Moscow, Russia (**Client**).

**1. Subject of the agreement**

1.1.      The Surety is fully liable to the Client for discharging obligations of Vennop Trading LTD, address 17 Gr. Xenopoulou, Limassol, Cyprus, 3106 (hereinafter called "the Debtor") for promissory notes issued on the terms indicated below in the table (hereinafter called "Promissory Notes"):

| No. | Document | Series, number | Date of issue | Principal debt | | Percent (annual) | Due date |
|---|---|---|---|---|---|---|---|
| | | | | USD | EUR | | |
| 1 | Ordinary promissory note | Jul No. 001962 | 7/13/2015 | 500,000 | | 10 | 7/13/2016 |
| 2 | Ordinary promissory note | Jun No. 001954 | 6/29/2015 | 2,000,000 | | 10 | 6/29/2016 |
| 3 | Ordinary promissory note | Jun No. 001953 | 6/22/2015 | 1,500,000 | | 10 | 6/22/2016 |
| 4 | Ordinary promissory note | Apr No. 002000 | 4/16/2015 | | 700,000 | 10 | 4/18/2016 |

**2. Rights and duties of the parties**

2.1. The Surety undertakes, on the first written claim of the Client (hereinafter "Claim"), according to the terms of the Promissory Note, within 5 (Five) days from the date of receipt of the Claim, to discharge the Debtor's obligations under the Promissory Note in the amount indicated in the Claim sent by the Client. Furthermore, the Surety does not have the right to demand from the Client, and the Client shall not provide, the Surety proof of violation by the Debtor of its obligations under the Promissory Note. The claim is sent to the address indicated in the preamble of this agreement, by mail, via courier, against signed receipt by the Party-addressee.

The date of discharge of the Surety's obligations to the Client under the Promissory Note will be the date of actual receipt of money in the Client's accounts indicated in the Claim sent.

2.2. The Surety undertakes within 5 (Five) days of changing its bank details (address, passport) to inform the Client in writing about the changes that have occurred, and also for the first claim of the Client (on the date indicated in such a claim) to provide all the requested documentation for analysis of the Surety's solvency.

2.3. Repayment of obligations is done in the following sequence: Client costs for achieving settlement under this Agreement, arrears of interest, due interest, overdue principal debt, maturing principal debt, Client expenses associated with execution of the Promissory Note, commissions, Client expenses associated with execution of the Promissory Note, commissions [sic], forfeitures (fines, penalties) on the Promissory Note.

The Client has the right unilaterally to change the sequence of discharging the Surety's obligations under the Agreement, with subsequent notification of the Surety about this.

2.4. The Client has the right unilaterally at its own discretion to decrease the amount of forfeitures provided by this Agreement

1

and/or establish a period of time during which the forfeiture is not collected, with subsequent corresponding notification of the Surety about this.

### 3. Liability under the Agreement

3.1. The Surety shall be liable to the Client, jointly with the Debtor and other sureties, in the amount indicated in paragraph 1.1 herein for the Debtor's discharge of its obligations under the Promissory Note.

3.2. Discharge by the Surety, on the Client's claim, of one or several obligations does not release the Surety from discharging the remaining obligations under the Promissory Note.

3.3. In the event of failure by the Surety to perform paragraph 2.1 herein, the Surety shall pay the Client a penalty at the rate of 0.5 (zero and 5/10) percent annually, calculated on the amount of the unfulfilled Claim for each day of delay in its fulfillment.

### 4. Representations and warranties

4.1. The Surety hereby represents and warrants that at the time of entering into this Agreement the Surety is not married; does not have a marital contract; is familiar with all terms of the Promissory Notes and has received copies of all Promissory Notes indicated in the table in paragraph 1.1. herein; undertakes to inform the Client about entering into a marital contract during the validity period of this Agreement; undertakes to inform the Client about a change or cancellation of a marital contract no later than 14 (Fourteen) calendar days from the time of the change/cancellation of the marital contract.

### 5. Jurisdiction and dispute resolution procedure

5.1. The Agreement has been drawn up and is subject to interpretation in accordance with current legislation of the Russian Federation.

5.2. Disputes and disagreements on which the Parties have not reached an agreement shall be subject to review in the manner prescribed by law in the Presnenskiy District Court of the city of Moscow.

### 6. Term of the agreement

6.1. The Agreement comes into effect on the date indicated above in this Agreement and shall remain effective until actual fulfillment of the secured obligation.

6.2. This Agreement shall remain in force in the event of the transfer (by virtue of the law) of the rights and duties under the Promissory Note to the Debtor's legal successor(s).

### 7. Miscellaneous conditions

7.1. Refusal to execute the Agreement in connection with the Debtor's failure to discharge any of the obligations to the Surety, as well as unilateral refusal to discharge obligations under the Agreement, shall not be permitted.

7.2. All amendments and addenda to the Agreement are valid if they are drawn up in writing and signed by the Parties.

7.3. In all other matters not specified by the Agreement, the Parties shall be governed by current legislation of the Russian Federation.

### 8. Signatures of the Parties

SIGNED                                               SIGNED

A.D. Zheleznyak                                      K.K. Avagumyan

_____                               _____

2

## ДОГОВОР ПОРУЧИТЕЛЬСТВА

г. Москва                                                     «01» декабря 2015 года

**МЕЖДУ:**

(1)     **Железняком Александром Дмитриевичем**, гражданином Российской Федерации, пол: мужской, _____ года рождения, место рождения: _____, паспорт серия _____, выдан _____, код подразделения _____, зарегистрированный по адресу: _____ **(Поручитель)**; и

(2)     **Авагумян Камо Кимович** - гражданином Российской Федерации, пол: мужской, 13.03.1961 года рождения, место рождения: город Люберцы Московской области, паспорт серия 45 06 500340, выдан УФМС по г. Москве 24/07/2009 г., зарегистрированный по адресу: Россия, город Москва, ул. Алабяна, дом 3, квартира 111 **(Клиент)**.

### 1. Предмет договора

1.1. Поручитель в полном объеме отвечает перед Клиентом за исполнение обязательств Веннοп Трейдинг ЛТД, адрес местонахождения 3106, Лимассол, Кипр, Гр. Ксенопулу, 17 (далее – «Должник») по простым векселям, выданных на условиях указанных ниже в таблице (далее именуемые – Векселя):

| п/н | Документ | Серия, номер | Дата выдачи | Основной долг | | Процент (годовых) | Срок оплаты |
|-----|----------|--------------|-------------|---------------|--------------|-------------------|-------------|
| | | | | сумма $ | сумма Euro | | |
| 1 | Вексель простой | ил № 001962 | 13.07.2015 | 500 000 | | 10 | 13.07.2016 |
| 2 | Вексель простой | ин № 001954 | 29.06.2015 | 2 000 000 | | 10 | 29.06.2016 |
| 3 | Вексель простой | ин № 001953 | 22.06.2015 | 1 500 000 | | 10 | 22.06.2016 |
| 4 | Вексель простой | ап № 002000 | 16.04.2015 | | 700 000 | 10 | 18.04.2016 |

### 2. Права и обязанности сторон

2.1. Поручитель обязуется по первому письменному требованию Клиента (далее «Требование») согласно условиям Векселя в течение 5 (Пяти) дней с даты получения Требования исполнить обязательства Должника по Векселю в объеме, указанном в направленном Клиентом Требовании. При этом Поручитель не вправе требовать от Клиента, а Клиент не обязан представлять Поручителю доказательства нарушения Должником своих обязательств по Векселю. Требование, направляется по адресу, указанному в преамбуле настоящего договора, по почте, через курьера, под расписку в получении Стороны-адресата.

Датой исполнения обязательств Поручителя перед Клиентом по Векселю будет являться дата фактического поступления денежных средств на счета Клиента, указанные в направленном Требовании.

2.2. Поручитель обязуется в течение 5 (Пяти) дней с даты изменения его реквизитов (адрес, паспорт) письменно информировать Клиента о произошедших изменениях, а также по первому требованию Клиента (в срок, указанный в таком требовании) предоставлять всю запрашиваемую документацию для анализа платежеспособности Поручителя.

2.3. Погашение обязательств производится в следующей очередности: издержки Клиента по получению исполнения по настоящему Договору, просроченных процентов, срочных процентов, просроченного основного долга, срочного основного долга, расходов Клиента, связанных с исполнением Векселя, комиссий, расходов Клиента, связанных с исполнением Векселя, комиссий, неустойки (пени, штрафов) по Векселю.

Клиент вправе в одностороннем порядке изменить очередность исполнения обязательств Поручителя по Договору, в последующем уведомив об этом Поручителя.

2.4. Клиент вправе в одностороннем порядке по своему усмотрению уменьшать размер

Confidential

AVPE0006126

предусмотренных настоящим Договором неустоек и/или устанавливать период времени, в течение которого неустойка не взимается, с последующим соответствующим уведомлением об этом Поручителя.

### 3.   Ответственность по договору

3.1. Поручитель обязуется отвечать в указанном в п.1.1 настоящего Договора объеме перед Клиентом солидарно с Должником и другими поручителями за исполнение Должником своих обязательств по Векселю.

3.2. Исполнение Поручителем по требованию Клиента одного или нескольких обязательств не освобождает Поручителя от исполнения остальных обязательств по Векселю.

3.3. В случае неисполнения Поручителем п. 2.1. настоящего Договора, Поручитель обязан уплатить Клиенту пени по ставке 0,5 (Ноль 5/10) процента годовых, начисляемых на сумму неисполненного Требования за каждый день просрочки его исполнения.

### 4.   Заявления и заверения

4.1. Настоящим Поручитель заверяет и гарантирует, что на момент заключения настоящего Договора Поручитель: не состоит в браке; не имеет брачного договора; ознакомлен со всеми условиями Векселей и получил на руки копии всех векселей, указанных в таблице пункта 1.1. настоящего Договора; обязуется информировать Клиент о заключении в период действия настоящего Договора брачного договора; обязуется информировать Клиент об изменении или расторжении брачного договора не позднее 14 (Четырнадцати) календарных дней с момента изменения/расторжения брачного договора.

### 5.   Юрисдикция и порядок разрешения споров

5.1. Договор составлен и подлежит толкованию в соответствии с действующим законодательством Российской Федерации.

5.2. Споры и разногласия, по которым Стороны не достигли договоренности, подлежат рассмотрению в установленном законом порядке в Пресненском районном суде г. Москвы.

### 6.   Срок действия договора

6.1. Договор вступает в силу с даты указанной выше в настоящем договоре и действует до фактического исполнения обеспечиваемого обязательства.

6.2. Настоящий Договор сохраняет силу в случае перехода (в силу закона) прав и обязанностей по Векселю к правопреемнику(ам) Должника.

### 7.   Дополнительные условия

7.1. Не допускается отказ от исполнения Договора в связи с невыполнением Должником каких-либо обязательств перед Поручителем, а также односторонний отказ от исполнения обязательств по Договору.

7.2. Все изменения и дополнения к Договору действительны, если они оформлены в письменном виде и подписаны Сторонами.

7.3. Во всем остальном, что не предусмотрено Договором, Стороны руководствуются действующим законодательством Российской Федерации.

### 8.   Подписи Сторон

ПОДПИСАНО                                          ПОДПИСАНО

Железняк А. Д.                                      Авагумян К. К.

_____                                  _____

2

Confidential



translations@geotext.com
wwww.geotext.com

STATE OF NEW YORK       )
                                        )
                                        ) ss
COUNTY OF NEW YORK    )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Russian into English of the attached document with Bates Nos.

AVPE0006126–AVPE0006127.

Jeff Cureton, Senior Managing Editor
Geotext Translations, Inc.

Sworn to and subscribed before me

this 25ᵗʰ day of January, 20 17 .

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2017

New York
t: +1.212.631.7432

Washington, D.C.
t: +1.202.828.1267

Chicago
t: +1.312.242.3756

Houston
t: +1.713.353.3909

San Francisco
t: +1.415.576.9500

London
t: +44.20.7553.4100

Paris
t: +33.1.42.68.51.47

Stockholm
t: +46.8.463.11.87

Frankfurt
t: +49.69.7593.8434

Hong Kong
t: +852.2159.9143