UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X
                                :

SERGEY LEONTIEV,                    :

             Plaintiff,       :

     - v. -                 :    Case No. 1:16-cv-03595 (JSR)

ALEXANDER VARSHAVSKY,    :

           Defendant.    :

----------------------------------------------------------------- X

## <u>DECLARATION OF RICHARD MILLETT Q.C.</u>

I, RICHARD LESTER MILLETT Q.C., declare as follows:

## <u>EXPERIENCE AND QUALIFICATIONS</u>

1.  I am a barrister of the Bar of England and Wales and Queen's Counsel, practising at Essex Court Chambers, 24 Lincoln's Inn Fields, London, England, and a Deputy Judge of the High Court of England and Wales, Chancery Division.

2.  I received my bachelor's degree from Trinity Hall, Cambridge University. I then trained at the Inns of Court School of Law, and was called to the Bar in July 1985. I have practised at Essex Court Chambers since 1990.

3.  In 2000, I was appointed by the UK Attorney-General to the Treasury Counsel "A" Panel, a group of barristers retained to advise and represent Her Majesty's Government.

4.  In 2003, I was awarded the rank of Queen's Counsel, or Q.C., a mark of achievement held by about ten percent of barristers in private practice.

5. In 2010, I was appointed a Civil Recorder (a part-time judge), with a Chancery specialization. In 2013, I was appointed a Deputy High Court Judge of the Chancery Division, and since then I have sat in the High Court, where I hear matters of business and companies law, among others.

6. I sit regularly as an arbitrator, particularly at the International Chamber of Commerce and the London Court of International Arbitration.

7. I am ranked in the 2016 *Legal 500* and *Chambers UK Bar* guides for banking, commercial litigation, arbitration, chancery commercial and offshore work. I have appeared in courts at every level in the English legal system, including the Court of Appeal and the Supreme Court (and formerly in the House of Lords). I am a member of the Chancery Bar Association and the Commercial Bar Association and of numerous committees of each.

8. I am the co-author with Geraldine Andrews Q.C. (now The Hon. Mrs Justice Andrews) of the Law of Guarantees (7th Edition, 2015). I am the editor of Halsbury's Laws of England, 5th edition, Vol. 20 (2004) on Guarantee and Indemnity and Atkin's Court Forms, Guarantee and Indemnity (2015).

9. I was elected a Bencher of Lincoln's Inn in November 2013. Benchers are the governors of the Inns of Court, the professional associations for all barristers in England and Wales, which provide supervisory, disciplinary, and other functions.

## LEGAL OPINION

### Introduction

10. I am asked to provide a general summary of two points of English law:

    (i)    The distinction between guarantees and indemnities; and

    (ii)    The extent to which oral indemnities, as opposed to oral guarantees, are enforceable under English law

11. I have not been asked to apply English law to any specific factual question.  My opinions are entirely my own and drawn from my own work in this area set out in Andrews and Millett, The Law of Guarantees, 7th edition, 2015 ("Andrews and Millett"), which I co-author (as I have since the first edition in 1992) with Geraldine Andrews, DBE, now a judge of the English High Court.  To the extent that my summary of the law set out in this Declaration is incomplete then I incorporate by reference my views set out in that publication, save where corrected by any subsequent court decision (of which I am not aware).

## Question 1: The distinction between guarantees and indemnities

### (a) Guarantees

### (i)   Generally

12. In Wardens and Commonalty of the Mystery of Mercers of the City of London v New Hampshire Insurance Company (1991) 3 J.I.B.F.L. 144, Phillips J cited with approval the following definition of a guarantee which is given in Halsbury's Laws of England (5th edition, 2008, at para 1013):

> "A guarantee is an accessory contract by which the promisor undertakes to be answerable to the promisee for the debt, default or miscarriage of another person[1], whose primary liability to the promisee must exist or be contemplated."

13. The most recent authoritative definition is to be found in Vossloh AG v Alpha Trains (UK) Ltd [2010] EWHC 2443 (Ch); [2011] 2 All E.R. (Comm) 307, Sir William Blackburne gave the following succinct definition at [23]:

> "A contract of guarantee, in the true sense, is a contract whereby the surety (the guarantor) promises the creditor to be responsible for the due performance by the principal of his existing or future obligations to the creditor if the principal fails to perform them or any of them."

14. Sir William Blackburne went on to say this (at [24]):

> "An essential distinguishing feature of a true contract of guarantee—but not its only one—is that the liability of the surety (i.e. the guarantor) is always

---

[1] These words come from the Statute of Frauds 1677, s. 4, cited in full below.

> ancillary, or secondary, to that of the principal, who remains primarily liable to the creditor. There is no liability on the guarantor unless and until the principal has failed to perform his obligation. The guarantor is generally only liable to the same extent that the principal is liable to the creditor."

*(ii)    Guarantee always only creates secondary liability*

15. The main essential distinguishing feature of a contract of guarantee is that the liability of the guarantor is always ancillary, or secondary, to that of the principal, who remains primarily liable to the creditor. There is no liability on the guarantor unless and until the principal has failed to perform his obligations. In <u>Lakeman v Mountstephen</u> (1874) L.R. 7 H.L. 17, Lord Selborne put the matter succinctly at page 24:

> "There can be no suretyship unless there be a principal debtor, who of course may be constituted in the course of the transaction by matters ex post facto and need not be so at the time, but until there is a principal debtor there can be no suretyship. Nor can a man guarantee anybody else's debt unless there is a debt of some other person to be guaranteed."

This view of the law was followed in <u>Vossloh AG v Alpha Trains (UK) Ltd</u> (supra) at [24] (see above).

16. As the author of <u>Courtney, Contractual Indemnities</u> (2014) puts it at para 9-12, in a passage I would gratefully adopt:

> "At a theoretical level, the distinction lies in the essential concern of each promise. A guarantee is, fundamentally, concerned with responsibility for the debtor's performance of a legal obligation to the creditor. For that reason the guarantor's obligation is, in general, dependent upon the obligation of the debtor. The central concern of an indemnity is not, strictly, the debtor's performance or non-performance of a legal obligation. It is the loss to the creditor that results from the debtor's failure to perform in the transaction. Such non-performance (whether or not it amounts to a default) is simply an activating event like any other specified in the scope of an indemnity. It is one of the elements that demarcates recoverable losses from other losses. From that perspective it can be seen that the promise of indemnity does not depend on any legally effective obligation of the debtor."

17. It follows from the secondary nature of the obligation that the guarantor is generally only liable to the same extent that the principal is liable to the creditor, and that there

is usually no liability on the part of the guarantor if the underlying obligation is void or unenforceable, or if that obligation ceases to exist. This is known as "the principle of co-extensiveness". There are, however, a number of established exceptions to the principle of co-extensiveness under which the guarantor may find himself liable to the creditor, notwithstanding the unenforceability of the principal obligation. See Andrews & Millett Ch. 6, at 6-18 to 6-26.

18. It also follows that where the surety agrees to assume obligations which are materially different from those assumed or to be assumed by the principal obligor, or are to be performed in a different way or according to a different timescale, the agreement simply cannot be one of guarantee.  That is because the essential requirement of co-extensiveness is absent.  In such circumstances the surety is an indemnitor, assuming primary obligations as a principal obligor.  The co-extensiveness principle requires that, as a general rule, the surety's liability is no greater and no less than that of the principal, in terms of amount, time for payment and the conditions under which the principal is liable.  Co-extensiveness is, as I have said above, one of the essential characteristics of a guarantee which distinguishes it from an indemnity: see Andrews and Millett para 6.002; Courtney, Contractual Indemnities (2014) paras 9.12; 9.17. Accordingly, where the liability of a promisor under an agreement exceeds that of the primary debtor, in that, for example, he may be liable when the primary debtor is not, or for an amount for which he is not, then the agreement is not a guarantee, and the promisor undertakes primary liability himself. In such circumstances the contract in question can only be viewed as an indemnity: see Moschi v Lep Air Services [1973] AC 331.

19. A contract under which the liability of the principal debtor is extinguished or replaced by the liability of some other person cannot be a contract of guarantee. In Re International Life Assurance Society and Hercules Insurance Co Ex p. Blood (1870) L.R. 9 Eq. 316, the holder of a policy of life assurance was informed that the insurer had been dissolved, and had transferred its business and assets to the H Company. He was offered either a new policy or an indorsement of the old policy by the H Company "guaranteeing its due fulfilment". He chose the latter. It was held by the Vice-Chancellor that the indorsement constituted a novation and not a contract of

guarantee, as it was obvious from the context of the transaction that there was no intention that the original insurer should remain liable on the policy.  See also the decision of the Court of Appeal in <u>Meritz Fire & Marine Insurance Co Ltd v Jan de Nul NV</u> [2011] EWCA Civ 827.

*(iii)    The creditor must be a party*

20. In order to be a guarantee, it is essential that the creditor should be a party to a contract under which it is created, because he is the person to whom the guarantor makes the promise to be answerable for the debt, default or miscarriage of the principal. Any contract of suretyship to which the creditor is not a party must be a contract of indemnity and not of guarantee.

*(iv)    A guarantee is required to be in writing*

21. A third distinguishing characteristic of a contract of guarantee is that, unlike a contract of indemnity, the essential elements of the agreement are required by s.4 of the Statute of Frauds 1677 to be made or recorded in writing and signed by the guarantor or by someone with his authority. This is because the statute applies to contracts under which the surety assumes a secondary rather than a primary liability. This is not so much a distinguishing feature as a reason why the distinction between a guarantee and an indemnity must clearly be drawn – s. 4 of the Statute of Frauds applies to the former but not the latter.

22. However, not all guarantees properly so called fall within the ambit of the Statute of Frauds 1677. Further, the absence of a written agreement or memorandum is not necessarily fatal to the enforcement of a guarantee, and does not affect the underlying validity of the contract. Therefore, although the need for writing is often described as an essential characteristic of a guarantee, it is more accurate to describe it as a normal prerequisite to enforcement.  I return to this topic later in this opinion.

*(b) <u>**Indemnities**</u>*

23. As Lord Goff put it in <u>Firma C-Trade SA v Newcastle Protection and Indemnity Association (The Fanti) (No 2)</u> [1991] 2 AC 1, at page 35:

> "a promise of indemnity is simply a promise to hold the indemnified person harmless against a specified loss or expense."

24. An indemnity, in its widest sense, comprises an obligation imposed by operation of law or by contract on one person to make good a loss suffered by another. Thus most contracts of insurance and all contracts of guarantee fall within the broad definition.

25. Under a contract of indemnity as distinct from a contract of guarantee, a primary liability falls upon the indemnitor, and that liability is wholly independent of any liability which may arise as between the principal obligor and the creditor (unless the indemnitor undertakes a joint liability with the principal obligor). Of course, it is usually implicit in such an arrangement that, as between the principal obligor and the indemnitor, the principal obligor is to be primarily liable, so that if the surety has to pay first, he has a right of recourse against the principal. Indeed when two parties are primarily liable to the creditor they may enter into an express agreement that, as between themselves, one is to be treated as surety. For an example of a case in which it was held that there was no such right of recourse in the absence of an express agreement, see <u>Berghoff Trading v Swinbrook Developments</u> [2009] 2 Lloyd's Rep. 233, discussed in <u>Ch.10, para.10-006</u>. See also <u>Vossloh AG v Alpha Trains</u> (supra) at [25].

26. The key point of distinction is that an indemnity is not a promise to answer for the debt, default or miscarriage of another, but is a primary and independent obligation. As I have explained at paragraph 18 above, if the surety has assumed wider or different obligations from those assumed by the principal obligor such that his liability is not co-extensive, he is not a guarantor. The effect of that distinction is that the principle of co-extensiveness and the requirements of s.4 of the Statute of Frauds 1677 do not apply to contracts of indemnity. I return to this issue in more detail under Question 2. It suffices to say at this point that an indemnity not only effectively shifts the burden of the principal obligor's insolvency onto the indemnitor, but also potentially safeguards the creditor against

the possibility that his underlying transaction with the principal obligor is void or otherwise unenforceable: see <u>Vossloh AG v Alpha Trains</u> at [25].

27. The question whether a particular contract happens to be a guarantee or an indemnity, and whether the normal incidents of a contract of that class have been modified, is a matter of construction in each case, and is often very difficult to resolve. A contract of suretyship which contains a provision preserving liability in circumstances in which a guarantor would otherwise be discharged (such as the granting of time to the principal obligor or a material variation of the underlying contract without the surety's consent) will usually be construed as a guarantee, because such a provision would be unnecessary if the contract was an indemnity. However, the point can be (and often is) argued both ways, and such "anti-release" provisions can, depending on the particular language of the contract in question, be argued to be the sign that the parties intended the surety to remain bound come what may, and thus to be an indemnitor and not a guarantor, as happened (by virtue of a closely analogous provision) in <u>Clement v Clement</u> (1996) 71 P&CR (D) 10, in which the contract contained a provision to the effect that the surety is to be liable in circumstances in which the principal obligor has ceased to be liable, e.g. on the release of the principal debtor by the creditor.  The English court construed the document as an indemnity.

## **Question 2: The extent to which oral indemnities, as opposed to oral guarantees, are enforceable under English law**

28. The short answer to this question is that because an indemnity is not a promise to "answer for the debt, default or miscarriages of another person" within the meaning of section 4 of the Statute of Frauds 1677, there is no requirement that an indemnity be contracted for in writing or be evidenced in writing.  However, this short answer requires some explanation of the section and its application. That is because it overlaps with the answer to Question 1.  What follows is a selection of some of the more pertinent principles, but I would refer the reader to the detailed explanation of the law on s.4 of the Statute of Frauds in Chapter 3 of <u>Andrews and Millett.</u>

29. The <u>Statute of Frauds 1677 s.4</u> provides that:

> "[N]o action shall be brought … whereby to charge the defendant
> upon any special promise to answer for the debt, default or
> miscarriages of another person … unless the agreement upon which
> such action shall be brought or some memorandum or note thereof
> shall be in writing and signed by the party to be charged therewith
> or some other person thereunto by him lawfully authorised."

30. A "special promise" is an express, rather than an implied promise arising by operation of law: Gray v Hill (1826) Ry & M 420.

31. So far as concerns the phrase "debt, default or miscarriage", each of these words has a distinct legal meaning; together they would appear to cover any form of legal liability. A "debt" is a past contractual liability: Castling v Aubert (1802) 2 East 325 at 330–331 per Lord Ellenborough CJ. A "default", however, is probably wide enough to encompass a future liability including a non-contractual liability: see Kirkham v Marter (1819) 2 B. & Ald. 613. Even if "default" is not that wide, the word "miscarriage" would appear to encompass any other form of civil liability (Kirkham v Marter per Abbott CJ at 616). Accordingly, an agreement between S and C that if D does not pay compensation to C for a tort committed by D, S will make payment of that compensation, prima facie falls within the terms of the statute. On the other hand, an agreement by a surety to answer for the non-performance by the principal of his obligations to another will not be a guarantee if on its true construction, his liability arises even if the non-performance is not a breach of contract: see e.g. Northwood Development Co Ltd v Aegon Insurance Co (UK) Ltd (1994) 10 Const. L.J. 157, where the underlying contract terminated automatically upon the principal (a contractor) going into liquidation, and his continuing non-performance which triggered the obligation to pay was therefore not a breach.  This echoes the point I have already made, that in order to be a guarantor (and thus within section 4) the surety's liability must be secondary, co-extensive with the liability of the principal obligor.

32. As to the phrase "another person", although the words "debt default or miscarriages of another person" are wide enough to cover all types of contract of suretyship (indemnities also involve one person becoming responsible for the debts of another) it was established from a very early date that the section only applies where there is some person other than the surety who is primarily liable to the creditor, i.e. where it

is a guarantee in the true sense: <u>Birkmyr v Darnell</u> (1805) 1 Salk 27.  It does not apply to a contract where the surety assumes a primary liability, or to a contract where the promise is made to anyone other than "the person to whom another is already or is to become answerable": see <u>Harburg India Rubber Comb Co v Martin</u> [1902] 1 KB 778, at 784, Vaughn-Williams LJ. It will apply both to a guarantee and to a binding agreement to give a guarantee: see <u>The Anemone</u> [1987] 1 Ll Rep 546.

33. The statute does not apply to a contract under which, on true analysis, the surety is promising to pay his own debt and not the debt of another. Examples of such contracts include an agreement to pay a sum by way of compromise of a claim made against the promisor and third parties (even though the promisor may have had a good defence to the claim against him) (<u>Orrell v Coppock</u> (1856) 2 Jur NS 1244); a promise to be answerable for payments due from the promisor's own agent (for whose default he would be vicariously liable) (<u>Masters v Marriot</u> (1693) 3 Lev 363); a promise to pay money owed by the promisor to the promisee in satisfaction of the promisee's indebtedness to a third party (<u>Andrews v Smith</u> (1835) 2 Cr M & R 627); a promise to be answerable for a debt only to the extent of the promisor's own indebtedness to the creditor (Ardern v Rowney (1805) 5 Esp 254); and a promise by a judgment debtor to allow the judgment creditor to hold the judgment as security for the indebtedness to the creditor of a third party (<u>Macrory v Scott</u> (1850) 5 Ex 907).

34. The statute is therefore the origin of the distinction between contracts of guarantee and contracts of indemnity, the latter falling outside s.4, the former often, but not necessarily, falling within it.  This then takes us full circle back to Question 1, which is as to the distinction between contracts of guarantee and contracts of indemnity.  As Courtney points out at para 9-14 of <u>Courtney, Contractual Indemnities</u>, the need to draw a distinction between a guarantee and an indemnity has very often been driven the question of whether s.4 applies or not, since an indemnity (which is not the promise to answer for the debt etc of another) will not fall within the scope of the section.  However, as I have already said (at [22] above), that is not to say that all guarantees are necessarily within the statute.

35. The distinction between a contract of guarantee and a contract of indemnity has often led to a fine line being drawn by the court.  In <u>Yeoman Credit v Latter</u> [1961] 1 WLR

828, the efforts at distinction was criticised (at page 835) by Holroyd Pearce LJ as "hair-splitting" such as to "bring the law into hatred, ridicule and contempt." Nonetheless, the point of distinction remains alive and well today and it is not an easy one (see <u>Courtney</u>, para 9-10). A comparison of two cases illustrates the difficulty which may be caused by the subtlety of the distinction.  In <u>Guild & Co v Conrad</u> [1894] 2 Q.B. 885, S orally promised C that if C would accept certain bills of exchange from a firm in which S's son was a partner, he, S, would provide C with funds to meet the bills. It was held that the contract was an indemnity and enforceable, because the contract was not a contract to pay if the son's business did not pay, but a contract to pay in any event.

36. On the other hand, in <u>Harburg India Rubber Comb Co v Martin</u> (supra), S was a director of a company who made an oral promise at a meeting of its creditors that he would indorse bills to the creditors for the amount of the company's debt. The court held that this was a promise to pay a debt for which the company remained primarily liable, and his oral promise was therefore unenforceable.

37. A simple test to see whether the surety's liability is original or contingent is to ask whether he would be liable irrespective of whether the principal is liable or has made default. If the answer to that question is yes, then the liability is original and the contract falls outside s.4 of the Statute of Frauds.

38. It is a question of fact in each case whether the arrangement is one under which the surety's liability is original or collateral, and this means that the court will consider each case on its particular circumstances, and the language which was used by the parties at the time, though indicative of the nature of the bargain, will not necessarily be conclusive: <u>Simpson v Penton</u> (1834) 2 Cr. & M. 430. In <u>Van Der Merwe v IIG Capital LLC</u> [2008] 2 Lloyd's Rep. 187, Waller LJ stated at [20] that "even minor variations in language plus a different context can produce different results". For this reason, the numerous decisions in past cases are of limited usefulness in determining on which side of the line a particular agreement will fall.

39. Not all contracts of guarantee properly so called fall within s.4.  In brief, contracts outside the scope of s.4 include (i) promises to the principal obligor or his co-obligor

(ii) guarantees of debts owed to a partnership (iii) promises made to third parties, (iv) novation of contracts (v) joint liabilities and (vi) cases where the liability contracted for by the surety is not co-extensive with that of the principal obligor (i.e. to pay even if the principal obligor is not liable to do so).

40. My opinion has not covered the topic of what constitutes a written agreement, or memorandum or note, and what constitutes signature.  The principles on that subject are complex and too lengthy to set out here.  I would refer to <u>Andrews and Millett</u>, Chapter 3, at paras 3-20 to 3-24 for the detail.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _9_ day of February, 2017 in London, England

RICHARD MILLETT Q.C.

12