UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
SERGEY LEONTIEV,

          Plaintiff,

    - v. -

ALEXANDER VARSHAVSKY,

          Defendant.
---------------------------------------------------------------- X

Case No. 1:16-cv-03595 (JSR)

**SUPPLEMENTAL DECLARATION OF SVETLANA VOLODINA**

**(1 OF 2)**

Federal Chamber of Lawyers of the Russian Federation



Федеральная палата адвокатов Российской Федерации

Я, Володина Светлана, утверждаю, под страхом наказания за дачу ложных показаний, следующее:

**Образование и опыт работы:**

1. Я являюсь практикующим юристом в России с 1985 года. В 1985 году я окончила Всесоюзный юридический заочный институт. В 2002 году я получила степень доктора юридических наук в Московской Государственной Юридической Академии. Я являюсь членом Адвокатской палаты Московской области.

2. В 1985 году я начала практиковать в качестве адвоката, занимаюсь юридической практикой до настоящего времени. В течение многих лет являюсь членом квалификационной комиссии, сначала Московской областной коллегии адвокатов, а после 2002 года – Адвокатской палаты Московской области. В настоящее время являюсь вице-президентом Федеральной палаты адвокатов Российской Федерации, занимаюсь вопросами повышения квалификации адвокатов страны. Принимала участие в создании первой в РФ кафедры адвокатуры в Московской Государственной Юридической академии. Более 15 лет являюсь заместителем заведующего этой кафедрой. Преподавала студентам гражданское право, адвокатуру, юридическую риторику. Имею разнообразную практику рассмотрения как уголовных дел, так и корпоративных, гражданских и семейных споров.

**Статус ЗАО «Финансовая группа Лайф»**

3. На настоящий момент ЗАО «Финансовая Группа Лайф» не прекращено, а является существующей организацией - «находится в стадии ликвидации», как указано в выписке из ЕГРЮЛ от 03.02.2017. Последней в ЕГРЮЛ сделана запись 2177746787315 от 27.01.2017 «внесение в единый государственный реестр юридических лиц сведений о признании внесенной в отношении юридического лица записи недействительной на основании решения вышестоящего налогового органа» со ссылкой на Акт Решение по жалобе 12-34/007181 от 20.01.2017.

4. После отмены записи о прекращении ЗАО «Финансовая группа Лайф» в связи с ликвидацией это юридическое лицо возобновило свое существование. Восстановлены в связи с этим и полномочия Салтыкова А.Г. в качестве его ликвидатора. Поскольку процедура ликвидации была нарушена, известные кредиторы не были письменно

43, Sivtzev Vrazhek Lane, Moscow, 119002
Phone: +7 (495) 787-28-35, fax: +7 (495) 787-28-36
e-mail: adupalata@mail.ru
http://www.adupalata.ru
119002, г. Москва, пер. Сивцев Вражек, 43
тел.: +7 (495) 787-28-35, т./ф.: +7 (495) 787-28-36

1

уведомлены, кредиторам необходимо заявить свои требования в письменном виде ликвидатору. В случае их признания ликвидатором в связи с недостаточностью имущества для их удовлетворения ликвидатор обязан будет обратиться в арбитражный суд с заявлением о признании организации банкротом.

5. В случае отказа ликвидатора во включении требований в реестр требований кредиторов ЗАО «Финансовая группа Лайф» кредитор под угрозой прекращения заявленных им требований должен обратиться в арбитражный суд с жалобой на действия ликвидатора. При этом необходимо учитывать норму части 2 статьи 7 Федерального закона от 26.10.2002 № 127-ФЗ «О несостоятельности (банкротстве)» о том, что право на обращение в арбитражный суд возникает у конкурсного кредитора с даты вступления в законную силу решения суда, арбитражного суда или судебного акта о выдаче исполнительных листов на принудительное исполнение решений третейского суда о взыскании с должника денежных средств. Это означает, что право на обращение с заявлением о банкротстве может возникнуть из судебного акта о признании незаконным отказа ликвидатора признать требования кредитора.

**<u>Снятие корпоративной вуали</u>**

6. Принцип «снятия корпоративной вуали» на настоящий момент не включен в российское законодательство, хотя он и упомянут в п. 3.9. Концепции развития гражданского законодательства Российской Федерации, одобренной Советом при Президенте РФ по кодификации и совершенствованию гражданского законодательства 07.10.2009. Однако судами Российской Федерации признается существование такого принципа, и использовался в ряде судебных актов, в том числе вынесенные высшей судебной инстанцией по рассмотрению экономических споров (Президиумом Высшего Арбитражного Суда РФ, в настоящее время ликвидирован в связи с передачей его функций Верховному Суду РФ).

7. Во всех случаях, когда стороны указанных дел просили применить принцип «снятия корпоративной вуали», они указывали на: действия субъектов, созданных «в целях обхода законодательства Российской Федерации о банковском контроле»; злоупотребление заявителем правом; возможность применения этого принципа только к частноправовым отношениям, а не к публично-правовым отношениям; злонамеренное соглашение, обман, злоупотребление правом; сомнения в том, что действия руководителя в интересах компании осуществлялись добросовестно и разумно при наличии конфликта интересов; то, что не предпринимались меры к выявлению кредиторов; то, что кредитор не был поставлен в известность о предстоящей ликвидации; то, что ответчик является фактическим и действительным собственником (бенефициаром) имущества, на которое истец просил обратить взыскание; несоблюдение обязанности действовать добросовестно в ситуации с потенциальным конфликтом интересов; злоупотребление ответчиком конструкцией юридического лица, использование дочерних обществ для вывода активов в свою пользу; недобросовестность учредителей ответчика и третьих лиц, использовании схем ухода реальных владельцев бизнеса от ответственности по их обязательствам.

2

8. Наиболее известным является Постановление Президиума Высшего Арбитражного Суда РФ от 24.04.2012 № 16404/11. Но ссылки на эту концепцию использовались также при вынесении Определения Высшего Арбитражного Суда РФ от 23.12.2013 № ВАС-16126/13, Постановлений Федерального арбитражного суда Западно-Сибирского округа от 06.06.2012 № Ф04-7094/11 по делу № А70-7811/2011, Федерального арбитражного суда Северо-Западного округа от 20.02.2013 № Ф07-8364/12 по делу № А56-38334/2011, Федерального арбитражного суда Дальневосточного округа от 12.08.2013 № Ф03-3534/13 по делу № А73-15127/2012, Федерального арбитражного суда Восточно-Сибирского округа от 17.09.2013 № Ф02-3522/13 по делу № А19-11062/2011, постановлений Третьего арбитражного апелляционного суда от 29.05.2012 № 03АП-1178/12, Тринадцатого арбитражного апелляционного суда от 17.06.2014 по делу № А56-55593/2008, решений Арбитражного суда Новосибирской области от 05.11.2014 по делу № А45-12142/2014 и Арбитражного суда Красноярского края от 16.12.2014 по делу № А33-3867/2014.

**"Забалансные оффшорные компании банка"**

9. Термин «Забалансные компании» не используется в документах, регламентирующих деятельность кредитных организаций в Российской Федерации.

10. ЦБ РФ утверждено Положение от 20.07.2007 № 307-П «О порядке ведения учета и представления информации об аффилированных лицах кредитных организаций», в целях соблюдения требований которого банки предоставляют отчетность по форме 0409051 «Список аффилированных лиц» и по форме 0409052 «Список аффилированных лиц, принадлежащих к группе лиц, к которой принадлежит кредитная организация». В этих документах используются критерии аффилированности лиц, установленные статьей п. 1 9 Федерального закона от 26.07.2006 № 135-ФЗ «О защите конкуренции»:

*Группой лиц признается совокупность физических лиц и (или) юридических лиц, соответствующих одному или нескольким признакам из следующих признаков:*
  1. *хозяйственное общество (товарищество, хозяйственное партнерство) и физическое лицо или юридическое лицо, если такое физическое лицо или такое юридическое лицо имеет в силу своего участия в этом хозяйственном обществе (товариществе, хозяйственном партнерстве) либо в соответствии с полномочиями, полученными, в том числе на основании письменного соглашения, от других лиц, более чем пятьдесят процентов общего количества голосов, приходящихся на голосующие акции (доли) в уставном (складочном) капитале этого хозяйственного общества (товарищества, хозяйственного партнерства);*
  2. *юридическое лицо и осуществляющие функции единоличного исполнительного органа этого юридического лица физическое лицо или юридическое лицо;*
  3. *хозяйственное общество (товарищество, хозяйственное партнерство) и физическое лицо или юридическое лицо, если такое физическое лицо или такое юридическое лицо на основании учредительных документов этого хозяйственного общества (товарищества, хозяйственного партнерства) или заключенного с этим хозяйственным обществом (товариществом,*

43, Sivtzev Vrazhek Lane, Moscow, 119002                    Phone: +7 495 787-28-35, fax: +7 495 787-28-36

хозяйственным партнерством) договора вправе давать этому хозяйственному обществу (товариществу, хозяйственному партнерству) обязательные для исполнения указания;

4. юридические лица, в которых более чем пятьдесят процентов количественного состава коллегиального исполнительного органа и (или) совета директоров (наблюдательного совета, совета фонда) составляют одни и те же физические лица;

5. хозяйственное общество (хозяйственное партнерство) и физическое лицо или юридическое лицо, если по предложению такого физического лица или такого юридического лица назначен или избран единоличный исполнительный орган этого хозяйственного общества (хозяйственного партнерства);

6. хозяйственное общество и физическое лицо или юридическое лицо, если по предложению такого физического лица или такого юридического лица избрано более чем пятьдесят процентов количественного состава коллегиального исполнительного органа либо совета директоров (наблюдательного совета) этого хозяйственного общества;

7. физическое лицо, его супруг, родители (в том числе усыновители), дети (в том числе усыновленные), полнородные и неполнородные братья и сестры;

8. лица, каждое из которых по какому-либо из указанных в пунктах 1 - 7 настоящей части признаку входит в группу с одним и тем же лицом, а также другие лица, входящие с любым из таких лиц в группу по какому-либо из указанных в пунктах 1 - 7 настоящей части признаку;

9. хозяйственное общество (товарищество, хозяйственное партнерство), физические лица и (или) юридические лица, которые по какому-либо из указанных в пунктах 1 - 8 настоящей части признаков входят в группу лиц, если такие лица в силу своего совместного участия в этом хозяйственном обществе (товариществе, хозяйственном партнерстве) или в соответствии с полномочиями, полученными от других лиц, имеют более чем пятьдесят процентов общего количества голосов, приходящихся на голосующие акции (доли) в уставном (складочном) капитале этого хозяйственного общества (товарищества, хозяйственного партнерства)).

11. Кроме того, в законодательстве о банковской деятельности используются понятия «банковская группа» и «банковский холдинг» (статья 4 Федерального закона от 02.12.1990 № 395-I «О банках и банковской деятельности»).

12. До 01.01.2014 Банковской группой признавалось не являющееся юридическим лицом объединение кредитных организаций, в котором одна (головная) кредитная организация оказывает прямо или косвенно (через третье лицо) существенное влияние на решения, принимаемые органами управления другой (других) кредитной организации (кредитных организаций). Федеральным законом от 02.07.2013 № 146-Ф установлено, что с 01.01.2014 членами банковской группы могут быть не только кредитные организации, но головной организацией группы должна быть организация кредитная.

13. Банковским холдингом признавалось не являющееся юридическим лицом объединение юридических лиц с участием кредитной организации (кредитных организаций), в котором юридическое лицо, не являющееся кредитной организацией (головная организация банковского холдинга), имеет возможность прямо или косвенно (через третье лицо) оказывать существенное влияние на решения, принимаемые органами управления кредитной организации (кредитных организаций). Федеральным законом от 02.07.2013 № 146-Ф установлено, что с 01.01.2014 в состав банковского холдинга могут входить и иные (некредитные) организации, находящиеся под контролем либо значительным влиянием головной организации банковского холдинга или входящие в банковские группы кредитных организаций - участников банковского холдинга, при условии, что доля банковской деятельности, определенная на основе методики Банка России, в деятельности банковского холдинга составляет не менее 40 процентов (кроме того была установлена возможность создания управляющей компании банковского холдинга). Доля банковской деятельности в деятельности банковского холдинга определяется на основе методики, установленной Банком России. Такая методика была определена Указанием Банка России от 25.10.2013 № 3086-У «О методике определения величины активов и доходов кредитных организаций - участников банковского холдинга и банковского холдинга».

14. До 01.01.2014 под существенным влиянием понималась возможность определять решения, принимаемые органами управления юридического лица, условия ведения им предпринимательской деятельности по причине участия в его уставном капитале и (или) в соответствии с условиями договора, заключаемого между юридическими лицами, входящими в состав банковской группы и (или) в состав банковского холдинга, назначать единоличный исполнительный орган и (или) более половины состава коллегиального исполнительного органа юридического лица, а также возможность определять избрание более половины состава совета директоров (наблюдательного совета) юридического лица. С 01.01.2014 контроль и значительное влияние для определения участников банковской группы (банковского холдинга) и составления отчетности определяются в соответствии с Международными стандартами финансовой отчетности (МСФО), признанными на территории Российской Федерации (IAS 28).

15. При этом закон требует, чтобы Головная кредитная организация банковской группы / головная организация банковского холдинга уведомляли об образовании банковской группы / банковского холдинга Банк России в установленном им порядке.

16. Такой порядок был установлен Положением Банка России от 19.09.2002 № 197-П «О порядке представления информации о банковских холдингах», он предусматривал направление в Банк России (Департамент лицензирования деятельности и финансового оздоровления кредитных организаций) первого Списка участников банковского холдинга (в настоящее время действует Указание Банка России от 9 сентября 2015 г. N 3780-У «О порядке уведомления Банка России об образовании банковского холдинга, о создании управляющей компании банковского холдинга и предоставленных ей полномочиях»).

5

17. Головные кредитные организации банковских групп кроме собственной бухгалтерской отчетности готовят и сдают также консолидированную бухгалтерскую отчетность группы. В 2008-2012 году порядок составления и представления консолидированной отчетности был установлен Положением Банка России от 30.07.2002 № 191-П «О консолидированной отчетности». Позже было принято Указание Банка России от 03.12.2012 № 2923-У «О раскрытии и представлении головными кредитными организациями банковских групп консолидированной финансовой отчетности» (в настоящее время действуют Положение Банка России от 11.03.2015 № 462-П «О порядке составления отчетности, необходимой для осуществления надзора за кредитными организациями на консолидированной основе, а также иной информации о деятельности банковских групп» и Указание Банка России от 09.09.2015 № 3777-У «О составлении и представлении в Банк России отчетности и иной информации о рисках банковского холдинга»).

18. Планом счетов бухгалтерского учета в кредитных организациях предусмотрена Глава В «Внебалансовые счета». В ней в свою очередь предусмотрены Раздел 2 «Неоплаченный уставный капитал кредитных организаций», Раздел 3 «Ценные бумаги» (для отражения неразмещенных ценных бумаг, бланков ценных бумаг, выкупленных до срока погашения и предъявленных для погашения собственных ценных бумаг, ценных бумаг, полученных для продажи на комиссионных началах или для хранения и т.п.), раздел 4 «Расчетные операции и документы», Раздел 5 «Кредитные и лизинговые операции, условные обязательства и условные требования». Но на балансовых и на внебалансовых счетах банка подлежат отражению операции, совершенные непосредственно самим банком. Какие-либо основания отражать операции иных организаций, пусть даже и аффилированных с банком, на счетах банков, в том числе и внебалансовых, нормативных регулированием бухгалтерского учета в кредитных организациях на территории Российской Федерации не предусмотрены.

19. Единственным исключением можно считать содержащееся в российском законодательстве (ст. 182 ГК РФ) положение о том, что сделка, совершенная одним лицом (представителем) от имени другого лица (представляемого) <u>в силу полномочия, основанного на доверенности, указании закона либо акте уполномоченного на то государственного органа или органа местного самоуправления,</u> непосредственно создает, изменяет и прекращает гражданские права и обязанности представляемого. При этом установлен запрет (часть 4 статьи 182 ГК РФ) на совершение через представителя сделки, которая по своему характеру может быть совершена только лично, а равно других сделок, указанных в законе.

20. Согласно этому в балансе банка могут быть отражены сделки, совершенные от его имени его представителями. Однако необходимо учитывать, что по российскому законодательству правоспособность банков ограничена.

21. Статьей 5 Федерального закона от 02.12.1990 № 395-I установлен перечень банковских операций, т.е. операций, которые могут совершаться только организациями, имеющими банковскую лицензию. К ним относятся:
    1) привлечение денежных средств физических и юридических лиц во вклады (до востребования и на определенный срок);
    2) размещение указанных в пункте 1 части первой настоящей статьи привлеченных средств от своего имени и за свой счет;
    3) открытие и ведение банковских счетов физических и юридических лиц;
    4) осуществление переводов денежных средств по поручению физических и юридических лиц, в том числе банков-корреспондентов, по их банковским счетам;
    5) инкассация денежных средств, векселей, платежных и расчетных документов и кассовое обслуживание физических и юридических лиц;
    6) купля-продажа иностранной валюты в наличной и безналичной формах;
    7) привлечение во вклады и размещение драгоценных металлов;
    8) выдача банковских гарантий;
    9) осуществление переводов денежных средств без открытия банковских счетов, в том числе электронных денежных средств (за исключением почтовых переводов).

22. В силу ст. 834 ГК по договору банковского вклада (депозита) одна сторона (банк), принявшая поступившую от другой стороны (вкладчика) или поступившую для нее денежную сумму (вклад), обязуется возвратить сумму вклада и выплатить проценты на нее на условиях и в порядке, предусмотренных договором. Согласно ч. 1 ст. 835 ГК право на привлечение денежных средств во вклады имеют банки, которым такое право предоставлено в соответствии с разрешением (лицензией), выданным в порядке, установленном в соответствии с законом. Привлекаемые банками средства имеют специальный правовой режим – вклад (депозит).

23. Переданные во вклад средства не становятся собственностью банка (в отличие от средств, переданных по договору займа – статья 807 ГК РФ). В силу положений части 2 статьи 835 ГК РФ заключение с организацией договора вклада лицом, не имеющим банковской лицензии на такую операцию, является нарушением порядка, установленного законом или принятыми в соответствии с ним банковскими правилами, и влечет недействительность такого договора (в силу указания статьи 168 ГК РФ).

24. Статьей 5 Федерального закона от 02.12.1990 № 395-I установлено разрешение кредитным организациям помимо вышеперечисленных банковских операций осуществлять следующие сделки:
    1) выдачу поручительств за третьих лиц, предусматривающих исполнение обязательств в денежной форме;
    2) приобретение права требования от третьих лиц исполнения обязательств в денежной форме;

7

3) доверительное управление денежными средствами и иным имуществом по договору с физическими и юридическими лицами;

4) осуществление операций с драгоценными металлами и драгоценными камнями в соответствии с законодательством Российской Федерации;

5) предоставление в аренду физическим и юридическим лицам специальных помещений или находящихся в них сейфов для хранения документов и ценностей;

6) лизинговые операции;

7) оказание консультационных и информационных услуг.

25. Соответственно, от имени банка банковские операции могут совершаться только тем представителем, который сам имеет банковскую лицензию. В соответствии с российским законодательством иностранные организации не могут получить банковскую лицензию (возможно получение такой лицензий созданной на территории РФ дочерней организацией).

26. Необходимо отметить, что ЦБ РФ принимает разного рода меры к обеспечению прозрачности деятельности банковской системы. В этой связи операции с участием организаций, расположенных в оффшорных зонах, привлекают особое внимание со стороны банковского надзора.

27. Федеральным законом от 24.11.2014 № 376-ФЗ «О внесении изменений в части первую и вторую Налогового кодекса Российской Федерации (в части налогообложения прибыли контролируемых иностранных компаний и доходов иностранных организаций)» в законодательство были введены понятия «контролируемой иностранной компании» и «контролирующего лица» такой компании, установлен порядок учета прибыли контролируемой иностранной компании при налогообложении налогоплательщика-контролирующего лица. Однако эти положения налогового законодательства не установили никаких оснований для признания деятельности оффшорных компаний, пусть даже и созданных сотрудниками банка и находящихся под их контролем, в качестве деятельности, порождающей гражданско-правовые обязательства самого банка перед контрагентами оффшорных компаний.

28. С учетом изложенного **утверждение, что «забалансовые офшорные компании» могли действовать при привлечении денежных средств от имени банка, противоречит императивным положениям российского законодательства.**

Я заявляю, под страхом наказания за дачу ложных показаний, установленного законодательством Соединенных Штатов Америки, что вышеизложенные утверждения являются верными и корректными.

Подписано 10 февраля 2017 года, в г. Москва

С. И. Володина

8