UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                :

SERGEY LEONTIEV,                          :

                       Plaintiff,               :

               - v. -                             :     Case No. 1:16-cv-03595 (JSR)

ALEXANDER VARSHAVSKY,        :

                   Defendant.            :

---------------------------------------------------------------- X


## SUPPLEMENTAL DECLARATION OF SVETLANA VOLODINA


### (2 OF 2)

**Federal Chamber of Lawyers of the Russian Federation**



I, Svetlana Volodina, swear the following under pain of penalty for perjury:

**<u>Education and Work Experience:</u>**

1. I have been a practicing lawyer in Russia since 1985. In 1985 I graduated from the All-USSR Correspondence Institute of Law. In 2002 I earned the degree of Doctor of Legal Sciences at the Moscow State Legal Academy. I am a member of the Moscow Regional Chamber of Lawyers.

2. In 1985 I began practicing as a lawyer, and I have continued to practice the law until the present time. For many years I have been a member of the Examination Board, first of the Moscow Regional Bar Association, and since 2002 of the Moscow Regional Chamber of Lawyers. I am currently the Vice President of the Federal Chamber of Lawyers of the Russian Federation, and I am responsible for issues concerning the professional development of lawyers in the country. I participated in the creation of the first faculty of advocacy in the Russian Federation at the Moscow State Legal Academy. For over 15 years I have been the Assistant Chair of that faculty. I have taught students civil law, advocacy and legal rhetoric. I have a diverse experience of handling both criminal cases and corporate, civil and family disputes.

   **Status of Financial Group "Life" CJSC**
3. At present, Financial Group "Life" CJSC has not been terminated; it exists as an entity which is "in the process of liquidation," as stated in the USRLE report of 2/3/2017. The most recent entry made in the USRLE was entry 2177746787315 of 1/27/2017: "entry of information in the Unified State Registry of Legal Entities on the invalidation of an entry made in respect of a legal entity on the basis of a decision of a parent tax agency" with reference to the Decision on Complaint 12-34/007181 of 1/20/2017.

4. After the record, which terminated Financial Group "Life" CJSC due to its liquidation, was canceled, this legal entity resumed its existence. Consequently, the authority of A. G. Saltykov as its liquidator was also restored. Since the liquidation procedure was disrupted, known creditors were not notified in writing, and creditors must declare their

1

claims to the liquidator in writing. If the liquidator recognizes them, due to the insufficiency of property to grant them, the liquidator will have to file a petition with an arbitration court to recognize the entity as bankrupt.

5. If the liquidator refuses to include the claims in the registry of Financial Group "Life" CJSC creditor claims, the creditor whose claims are at risk of termination must file a complaint with the arbitration court to challenge the liquidator's actions. In doing so the provisions of Article 7, Part 2 of Federal Law 127-FZ of 10/26/2002, "On Insolvency or Bankruptcy" should be taken into account, that is, the pre-bankruptcy creditor is entitled to file a petition with an arbitration court following the effective date of the arbitral award or the court decision on the issue of writs of execution to enforce the arbitral award with respect to the debtor. This means that the right to bringing a bankruptcy claim may arise from a court decision on overruling the liquidator's refusal to recognize a creditor's claim.

**Lifting the corporate veil**

6. The principle of "lifting the corporate veil" is not currently included in Russian law, although it is mentioned in Paragraph 3.9 of the Concept of Development of the Russian Federation Civil Law approved by the RF President's Council on Codification and Improvement of Civil Law of 10/7/2009. However, the courts of Russian Federation recognize the existence of this principle, and they have used it in several court decisions, including some rendered by the Supreme Court in resolving economic disputes (the RF Supreme Arbitration Court Presidium, which is now dissolved because its functions were assigned to the RF Supreme Court).

7. In all instances when the parties to the stated cases have requested that the principle of "lifting the corporate veil" be applied, they have pointed to: the actions of entities formed "for purposes of evading Russian Federation banking supervision laws"; the abuse of a right by an applicant; the ability to apply that principle only to private law relationships, and not to public law relationships; an ill-intentioned agreement, fraud, or abuse of a right; doubts as to whether the actions of an executive on behalf of a company were carried out sensibly and in good faith, given a conflict of interest; the fact that no steps were taken to identify creditors; the fact that a creditor was not informed of an impending liquidation; the fact that a defendant is in fact also the beneficial owner (beneficiary) of a property on which a claimant has petitioned for collection; non-observance of the obligation to act in good faith in situations involving potential conflicts of interest; a defendant's abuse of the framework of a legal entity, [and] the use of affiliates to withdraw assets for its own benefit; bad faith on the part of the founders of the defendant and third parties, and/or use of schemes by beneficiary owners of the business to evade responsibility for their obligations.

43, Sivtzev Vrazhek Lane, Moscow, 119002   Phone: +7 495 787-28-35, fax: +7 495 787-28-36

8. The best known is the RF Supreme Arbitration Court Resolution 16404/11 of 4/24/2012. But references to this concept have also been used in the rendering of the RF Supreme Arbitration Court Ruling VAS-16126/13 of 12/23/2013, the Federal Arbitration Court for the West Siberian District Resolution No. F04-7094/11 of 6/6/2012, Case No. A70-7811/2011, the Federal Arbitration Court for the Far Eastern District No. F03-3534/13 of 8/12/2013 in case No. A73-15127/2012, the Federal Arbitration Court for the Far Eastern District Resolution F03-3534/13 of 8/12/2013, Case No. A73-15127/2012, the Federal Arbitration Court for East Siberian District Resolution F02-3522/13 of 9/17/2013, Case No. A19-11062/2011, the Third Arbitration Appellate Court Resolution 03AP-1178/12 of 5/29/2012, the Thirteenth Arbitration Appellate Court Resolution of 6/17/2014, Case No. A56-55593/2008, the Novosibirsk Regional Arbitration Court Decision of 11/5/2014, Case No. A45-12142/2014, and the Krasnoyarsk Regional Arbitration Court Decision of 12/16/2014, Case No. A33-3867/2014.

**"Off-Balance-Sheet Offshore Companies of the Bank"**

9. The term "off-balance-sheet companies" is not used in the documents that govern the activities of lending institutions in the Russian Federation.

10. The RF Central Bank approved Regulation No. 307-P dated 7/20/2007 "On the Procedure for Keeping Records and Providing Information on Affiliates of Lending Institutions" and in order to comply with it the banks provide reports according to Form 0409051 "List of Affiliates" and Form 0409052 "List of Affiliates Belonging to the Group of Persons to which the Lending Institution Belongs." These documents use the criteria for affiliation defined by Article 9 (clause 1) of the Federal Law No. 135-FZ dated 7/26/2006 "On the Protection of Competition"

*A group of persons is defined as a set of individuals and/or legal entities having one or more of the following attributes:*

*1) a company (ordinary partnership, corporate partnership) and an individual or a legal entity, if such individual or legal entity, based on its participation in such company (ordinary partnership, corporate partnership) or pursuant to the authority received, including on the basis of a written agreement, from other persons, holds more than fifty percent of the total number of votes attached to the voting shares (interests) in the share (pooled) capital of such company (ordinary partnership, corporate partnership);*

*2) a legal entity and an individual or legal entity performing the functions of the one-member executive body of such legal entity;*

*3) a company (ordinary partnership, corporate partnership) and an individual or a legal entity, if such individual or legal entity, on the basis of the constituent documents of such company (ordinary partnership, corporate partnership) or agreement entered into with*

*such company (ordinary partnership, corporate partnership), is entitled to give such company (ordinary partnership, corporate partnership) mandatory instructions;*

*4) legal entities in which more than fifty percent of the quantitative makeup of the collective executive body and/or board of directors (supervisory board, foundation board) consists of the same individuals;*

*5) a company (ordinary partnership, corporate partnership) and an individual or a legal entity, if a one-member executive body of such company (ordinary partnership, corporate partnership) is appointed or elected based on a nomination by such individual or such legal entity;*

*6) a company and an individual or a legal entity, if more than fifty percent of the quantitative makeup of the collective executive body or the board of directors (supervisory board) of such company based on a proposal by such individual or such legal entity;*

*7) an individual, his spouse, parents (including adoptive parents), children (including adopted children), full siblings and half-siblings;*

*8) persons among whom each one, based on an attribute listed in paragraphs 1-7 of this section, belongs to a group with the same person, as well as other persons that belong with any of such persons to a group based on an attribute listed in paragraphs 1-7 of this section;*

*9) a company (ordinary partnership, corporate partnership), individuals and/or legal entities that, based on an attribute listed in paragraphs 1-8 of this section, belong to a group of persons if such persons, based on their joint participation in such company (ordinary partnership, corporate partnership) or pursuant to the authority received from other persons, hold more than fifty percent of the total number of votes attached to the voting shares (interests) in the share (pooled) capital of such company (ordinary partnership, corporate partnership))*

11. In addition, the laws on banking activities use the concepts of "banking group" and "bank holding company" (Article 4 of the Federal Law No. 395-I dated 12/2/1990 "On Banks and Banking Activities").

12. Prior to 1/1/2014 a banking group was defined as an association of lending institutions that is not a legal entity, in which one (head) lending institution has a direct or indirect (through a third party) significant influence on the decisions adopted by the governing bodies of another (other) lending institution(s). The Federal Law No. 146-F[Z] dated 7/2/2013 specified that as of 1/1/2014 members of a banking group need not be only lending institutions, but a lending institution must be the head entity of the group.

4

13. A bank holding company was defined as an association of legal entities that is not a legal entity, including a lending institution (lending institutions), in which a legal entity that is not a lending institution (the head entity of the bank holding company) has a direct or indirect (through a third party) significant influence on the decisions adopted by the governing bodies of the lending institution(s). The Federal Law No. 146-F dated 7/2/2013 specified that as of 1/1/2014 a bank holding company may include other (non-lending) entities that are controlled or significantly influenced by the head entity of the bank holding company or that belong to the banking groups of the lending institutions that are members of the bank holding company, provided that the share of banking activities, calculated on the basis of the Bank of Russia's methodology, in the activities of the bank holding company is at least 40 percent (in addition, the possibility of establishing a management company for the bank holding company was provided for). The share of banking activities in the activities of the bank holding company was calculated on the basis of the methodology prescribed by the Bank of Russia. This methodology was determined by the Bank of Russia Ordinance No. 3086-U dated 10/25/2013 "On the Methodology for Determining the Amount of Assets and Income of Lending Institutions that are Members of a Bank Holding Company and of a Bank Holding Company."

14. Prior to 1/1/2014 significant influence was defined as the ability to determine the decisions adopted by the governing bodies of a legal entity and the terms of its conduct of business activities based on an interest in its share capital and/or pursuant to the terms and conditions of the agreement entered into between the legal entities belonging to a banking group and/or a bank holding company and to appoint the one-member executive body and/or more than half of the members of the collective executive body of the legal entity, as well as the ability to determine the election of more than half of the members of the board of directors (supervisory board) of the legal entity. As of 1/1/2014 control and significant influence for determining the members of a banking group (bank holding company) and preparing reports have been defined in accordance with the International Financial Reporting Standards (IFRS) recognized in the Russian Federation (IAS 28).

15. In addition, the law requires that the head lending institution of a banking group/head lending institution of a bank holding company inform the Bank of Russia, according to the procedure it has prescribed, of the formation of a banking group/bank holding company.

16. This procedure was prescribed by Regulation No. 197-P dated 9/19/2002 "On the Procedure for Providing Information on Bank Holding Companies." It specified that the first List of Members of a Bank Holding Company be sent to the Bank of Russia (Department of Licensing of Activities and Financial Rehabilitation of Lending Institutions) (the regulation currently in force is the Bank of Russia Ordinance No. 3780-U dated September 9, 2015 "On the Procedure for Notifying the Bank of Russia of the Formation of a Bank Holding Company, the Establishment of a Management Company for a Bank Holding Company and the Authority Granted to It").

43, Sivtsev Vrazhek Lane, Moscow, 119002   Phone: +7 495 787-28-35, fax: +7 495 787-28-36

17. The head lending institutions of banking groups, in addition to their own financial statements, prepare and deliver the group's consolidated financial statements. From 2008 to 2012 the procedure for preparing and providing consolidated statements was prescribed by the Bank of Russia Ordinance No. 191-P dated 7/30/2002 "On Consolidated Financial Statements." Later the Bank of Russia Ordinance No. 2923-U dated 12/3/2012 was adopted, "On the Disclosure and Provision by the Head Lending Institutions of Banking Groups of Consolidated Financial Statements" (the regulations currently in force are the Bank of Russia Ordinance No. 462-P dated 3/11/2015 "On the Procedure for Preparing the Financial Statements Required for Oversight of Lending Institutions on a Consolidated Basis and Other Information on the Activities of Banking Groups" and the Bank of Russia Ordinance No. 3777-U dated 9/9/2015 "On the Preparation and Provision to the Bank of Russia of Financial Statements and Other Information on the Risks of a Bank Holding Company").

18. The chart of bookkeeping accounts at lending institutions includes Chapter C "Off-Balance-Sheet Accounts." It, in turn, includes Section 2 "Unpaid Share Capital of Lending Institutions"; Section 3 "Securities" (for recording unissued securities, forms for securities, treasury shares repurchased before the maturity date and presented for redemption, securities received for sale on a commission basis or for safekeeping, etc.); Section 4 "Settlement Transactions and Documents"; Section 5 "Credit and Leasing Transactions, Contingent Liabilities and Contingent Claims." But a bank's balance-sheet and off-balance-sheet accounts must record transactions executed directly by the bank itself. Accounting regulations for lending institutions in the Russian Federation provide no grounds for recording the transactions of other entities, even those affiliated with the bank, in the accounts of banks, including off-balance-sheet accounts.

19. The only exception is the provision in the Russian law (Article 182 of the RF Civil Code) that a transaction executed by one person (the representative) on behalf of another person (the principal) <u>pursuant to authority granted by a power of attorney, a provision of the law or an act by a state body or local government body so empowered</u> directly creates, alters and terminates the civil rights and obligations of the principal. In addition, a prohibition was imposed (Article 182(4) of the RF Civil Code) on the execution through a representative of a transaction that by its nature can only be executed in person, as well as other transactions specified in the law.

20. Accordingly, a bank's balance sheet may record transactions executed on its behalf by its representatives. It must be borne in mind, however, that under the Russian law the legal capacity of banks is limited.

21. Article 5 of the Federal Law No. 395-I of 12/2/1990 provides a list of banking operations, i.e. operations that may be conducted only by entities that have a banking license. They are as follows:
    1) the attracting of funds of individuals and legal entities into deposit accounts (demand and term accounts);
    2) the investment of the funds specified in clause 1 of part one of this article on its own behalf and at its own expense;
    3) the opening and maintenance of bank accounts of individuals and legal entities;
    4) transfers of funds at the request of individuals, including correspondent bank, for their bank accounts;
    5) the collection of funds, promissory notes, payment and settlement orders and teller services for individuals and legal entities;
    6) the purchase and sale of foreign currency in cash and noncash form;
    7) the attracting into deposit accounts and investment of precious metals;
    8) the issuance of bank guarantees;
    9) transfers of funds without the opening of bank accounts, including electronic funds (except postal transfers).

22. Pursuant to Article 834 of the Civil Code, under a bank deposit agreement one party (the bank), which has accepted a sum of money (a deposit) from the other party (the depositor) or that has been received for said party, must return the amount of the deposit and pay interest on it on terms and conditions and according to the procedure defined by the agreement. According to Article 835(1) of the Civil Code, the right to attract funds into deposit accounts is held by banks to which such a right is granted under a permit (license) issued according to the procedure prescribed by law. The funds attracted by banks have a special legal regime – a deposit.

23. The deposited funds do not become the bank's property (unlike funds transferred under a loan agreement – Article 807 of the RF Civil Code). Pursuant to the provisions of Article 835(2) of the RF Civil Code, the execution with an entity of a deposit agreement by a person that does not have a banking license for such a transaction is a violation of the procedure prescribed by law or by the banking rules adopted in accordance therewith, and shall invalidate such an agreement (pursuant to the provision of Article 168 of the RF Civil Code).

24. Article 5 of the Federal Law No. 395-I dated 12/2/1990 authorizes lending institutions, in addition to the aforementioned banking operations, to execute the following transactions:
    1) the issuance of suretyships for third parties that provide for the fulfillment of monetary obligations;
    2) the purchase of a claim for fulfillment of monetary obligations by third parties;

3) fiduciary management of funds and other assets under an agreement with individuals and legal entities;
4) operations involving precious metals and precious gemstones in accordance with Russian Federation law;
5) the leasing out to individuals and legal entities of special facilities or safes therein for the safekeeping of documents and valuables;
6) leasing operations;
7) consulting and reference services.

25. Accordingly, banking operations may be conducted on behalf of a bank only by a representative that has a banking license itself. Under the Russian law foreign entities may not receive a banking license (a subsidiary established in the Russian Federation may receive such a license).

26. It must be noted that the RF Central Bank takes various kinds of measures to ensure that the activities of the banking system are transparent. In this regard, operations involving entities located in offshore zones attract particular attention from bank regulators.

27. The Federal Law No. 376-FZ dated 11/24/2014 "On Amendments to Parts One and Two of the Russian Federation Tax Code (In Regard to Taxation of the Profits of Controlled Foreign Companies and the Income of Foreign Entities)" introduced into the law the concepts of "controlled foreign company" and the "controlling person" of such a company and prescribed the procedure for recording the profits of a controlled foreign company in relation to the taxation of the controlling person who is a taxpayer. These provisions of the tax law, however, did not prescribe any grounds for determining that the activities of offshore companies, even those established by bank employees and controlled by them, are activities giving rise to civil-law obligations on the part of the bank to counterparties of the offshore companies.

28. In view of the foregoing, **the assertion that "off-balance-sheet offshore companies" could operate while attracting funds on behalf of the bank is inconsistent with the mandatory provisions of the Russian law.**

I swear, under the pain of penalty for perjury prescribed by the laws of the United States of America, that the above statements are true and correct.

Signed February 10, 2017, in the city of Moscow

[signature]
S.I. Volodina

8

43, Sivtzev Vrazhek Lane, Moscow, 119002     Phone: +7 495 787-28-35, fax: +7 495 787-28-36



translations@geotext.com
www.geotext.com

STATE OF NEW YORK   )
                    )
                    )  ss
                    )
COUNTY OF NEW YORK  )

### CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Russian into English of Ms. Svetlana Volodina's declaration, dated February 10, 2017.

Kristen Duffy, Senior Managing Editor
Geotext Translations, Inc.

Sworn to and subscribed before me

this  10  day of  Februa , 20  17 .

JEFFREY AARON CURETON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CU6169789
Qualified in New York County
My Commission Expires September 23, 2019

New York           Washington, D.C.     Chicago            Houston            San Francisco
t: +1.212.631.7432 t: +1.202.828.1267   t: +1.312.242.3756 t: +1.713.353.3909 t: +1.415.576.9500

London             Paris                Stockholm          Frankfurt          Hong Kong
t: +44.20.7553.4100 t: +33.1.42.68.51.47 t: +46.8.463.11.87 t: +49.69.7593.8434 t: +852.2159.9143