# EXHIBIT 7

# REDACTED CONTENT FILED UNDER SEAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

_____

Sergey Leontiev,                        )

                                        )

            Plaintiff,                   )

                                        )

            v.                           )          No. 16 Civ. 03595 (JSR)

                                        )

Alexander Varshavsky,                   )

                                        )

            Defendant.                   )

                                        )

_____        )

Expert Rebuttal Report of John E. Rollins

RSM US LLP

New York, NY

January 4, 2017

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

# Table of Contents

I.   Introduction ............................................................................................................................4

   A.   Background and Scope of Work ........................................................................................4

   B.   Expert's Qualifications .....................................................................................................4

   C.   Materials Considered ........................................................................................................5

   D.   Organization of Report .....................................................................................................6

II.   Summary of Opinions .............................................................................................................6

III.   Background.............................................................................................................................7

   A.   Understanding of the Nature of the Dispute ....................................................................7

   B.   Parties and Other Relevant Entities .................................................................................8

     1.   Sergey Leontiev ..........................................................................................................8

     2.   Probusinessbank..........................................................................................................9

     3.   Ambika.........................................................................................................................9

     4.   Wonderworks .............................................................................................................10

     5.   Alexander Varshavsky ...............................................................................................10

   C.   Laurence Report .............................................................................................................10

     1.   ██████████████████████████████████████████████████

     2.   ██████████████████████████████████████████████████

     3.   Interest Paid on 2008 and 2011 Avilon Loans ..........................................................11

IV.   Evaluation of Laurence Report ...........................................................................................11

   A.   Generally Applicable Critiques of Mr. Laurence's Methodology ..................................11

     1.   Mr. Laurence's analysis is fundamentally flawed and based on incomplete information ........................11

     2.   Mr. Laurence fails to define "commercially reasonable terms," rendering his opinions indefinite and unreliable ........................12

     3.   Mr. Laurence fails to consider the broader context of the transactions at hand ......................13

   B.   ████████████████████████████████████████████████████

     1.   ████████████████████████████████████████████████████

     2.   ████████████████████████████████████████████████████

     3.   ████████████████████████████████████████████████████

     4.   ████████████████████████████████████████████████████

     5.   ████████████████████████████████████████████████████

   C.   ████████████████████████████████████████████████████

     1.   ████████████████████████████████████████████████████

     2.   ████████████████████████████████████████████████████

     3.   ████████████████████████████████████████████████████

     4.   ████████████████████████████████████████████████████

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

5. ██████████████████████████████████████████

D.   2008 and 2011 Avilon Loans.................................................................................27

1.   Mr. Laurence fails to address principal and accrued interest still owed on the 2008 and 2011 Avilon Loans ..............................................................................................27

V.   Conclusions ..............................................................................................................27

VI.  Expert's Declaration .................................................................................................28

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

# I.   INTRODUCTION

## A.  *Background and Scope of Work*

- My name is John E. Rollins, CPE, CAMS, MAFF, ASA, and I am the Northeast Region Leader of the Litigation Consulting and Dispute Advisory practice at RSM US LLP ("RSM"). I have been retained by Debevoise & Plimpton LLP ("Debevoise" or "Counsel"), acting on behalf of and for the benefit of Mr. Alexander Varshavsky and Avilon Automotive Group ("Avilon"), to provide expert and consulting services in the above-captioned matter.

- I have been asked by Counsel to review and analyze Charles W. Laurence's expert report dated December 16, 2016 (the "Laurence Report") and address his opinions expressed therein.

## B.  *Expert's Qualifications*

- I have over 15 years of combined business advisory and financial analysis experience with extensive involvement in matters involving forensic investigations, cross-border disputes, and breach of contract claims, economic damages and business valuations. I have been retained by clients to render expert consulting services in the context of a variety of matters including those involving performing and leading investigations into allegations of financial fraud. I have presented findings to boards of directors, company owners, in-house and external counsel and special committees of boards of directors.

- My educational background includes Bachelor of Science degrees in Linguistics and Psychology, with a minor in business, from Georgetown University and a Masters of Business Administration specializing in Quantitative Finance and Economics from the Leonard N. Stern School of Business at New York University. I am a Certified Fraud Examiner (CFE) with the Association of Certified Fraud Examiners, a Certified Anti-Money Laundering Specialist (CAMS) with the Association of Certified Anti-Money Laundering Specialists, a Master Analyst in Financial Forensics (MAFF) with the National Association of Certified Valuation Analysts and a senior member of the American Society of Appraisers (ASA).

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

■ I joined RSM McGladrey, Inc., a predecessor firm to RSM, in 2011. RSM is the leading provider of audit, tax and consulting services focused on the middle market, with more than 8,000 people in 86 cities nationwide. It is a licensed CPA firm and the U.S. member of RSM International, a global network of independent audit, tax and consulting firms with more than 37,000 people in over 110 countries.

■ Prior to joining RSM, I held senior consultant positions at LECG, LLC, one of the leading global providers of litigation consulting and expert testimony services. Prior to joining LECG, I held analyst positions at Thomson Financial Research.

■ I have presented on topics related to forensic accounting and litigation consulting at conferences and seminars with the Institute of Internal Auditors, the New York State Bar Association, the American Bankers Association, the American Bar Association, and other venues, including law firms in connection with Continuing Legal Education events and at in-house training events within the consulting practices in which I have been employed.

■ My Curriculum Vitae is included in **Appendix A**. I received assistance from professional staff at RSM working under my direct supervision. My billing rate in this matter is $640 per hour. No part of RSM's fees or reimbursement of expenses are contingent upon the outcome of this case or the opinions expressed herein.

## C. *Materials Considered*

■ In preparation to the issuance of this report, I reviewed certain documents provided to me by Debevoise. See **Appendix B** for a list of materials I considered. I reserve the right to amend or supplement this report and/or the opinions expressed herein, including to account for additional information that comes to my attention subsequent to the date of this report.

■ If the occasion arises in which I am asked to testify for this matter, I anticipate using selected materials considered in connection with the preparation of this report, including those materials listed in the appendices and exhibits attached to this report and any additional charts or enhanced graphics of the materials I have considered illustrating the concepts presented in this report.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

### D. *Organization of Report*

 I have organized the remainder of this report as follows: Section II contains a summary of my opinions. Section III contains a general discussion of the background of this matter, including my understanding of the nature of the dispute, a summary of the parties involved along with other relevant entities and a summary of the primary issues addressed in the Laurence Report. Section IV contains my evaluation of the Laurence Report including a discussion of the explanations and analysis Mr. Laurence provides to support his conclusions. Finally, Sections V and VI contain my conclusions and expert declaration.

## II.   SUMMARY OF OPINIONS

- ▪ Mr. Laurence does not provide any useful information regarding the outstanding principal and accrued interest owed by Ambika to Avilon.

6

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

## III.   BACKGROUND

### A.  *Understanding of the Nature of the Dispute*

 According to the Complaint dated May 13, 2016, Plaintiff Sergey Leontiev alleges that Defendant Alexander Varshavsky has demanded the repayment of certain loans for which Mr. Leontiev asserts he is not personally liable.[1] The loans in dispute in this matter include a $19.9 million loan from CJSC "New York Motors-Moscow" to Ambika in 2008 (the "2008 Avilon Loan") and a $6.625 million loan from JSC "Avilon AG" ("Avilon," the successor to CJSC "New York Motors-Moscow") to Ambika in 2011 (the "2011 Avilon Loan").[2] It is my understanding that Mr. Varshavsky serves as President of Avilon.[3]

According to the Amended Answer dated August 26, 2016, Ambika is an entity that is under the ultimate control of Mr. Leontiev.[4] Following the disbursements of the loan proceeds to Ambika, the borrowed funds allegedly "were transferred among a complex network of other shell entities also owned and/or controlled by Mr. Leontiev;" these entities are referred to as the "cloud" in the Amended Answer.[5] Eventually, Ambika was left "insolvent and unable to repay the borrowed funds…" including the principal plus accrued interest owed on the 2008 and 2011 Avilon Loans.[6]

---

[1] Complaint, *Sergey Leontiev (Plaintiff) v. Alexander Varshavsky (Defendant)*, No. 1:16-cv-03595 (JSR) (S.D.N.Y.), dated May 13, 2016 ("Complaint"), p. 2.
[2] Amended Answer, *Sergey Leontiev (Plaintiff) v. Alexander Varshavsky (Defendant)*, No. 1:16-cv-03595 (JSR) (S.D.N.Y.), dated August 26, 2016 ("Amended Answer"), p. 13; SL0000030-2; SL0000046-8; conversations with counsel.
[3] Amended Answer, p. 13.
[4] Amended Answer, pp. 12-14.
[5] Amended Answer, p. 13.
[6] Amended Answer, p. 19.
[7]



### B. Parties and Other Relevant Entities

### 1. Sergey Leontiev

 Sergey Leontiev is a Russian businessman who has lived in the United States since August of 2015.[10] In 2015, he left Russia after the Russian Central Bank revoked the license of Probusinessbank, the commercial bank that Mr. Leontiev had started in 1993 with his colleague, Alexander Zheleznyak.[11]

 According to the Amended Answer, in addition to his association with Probusinessbank, Mr. Leontiev allegedly controls, or has controlled, multiple entities, including, but not limited to the following entities:

---

8
9
[10] Complaint, pp. 1, 5.
[11] Complaint, pp. 1, 5.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

**Table 1. List of Entities Allegedly Associated with Sergey Leontiev and Locations of Incorporation[12]**

| Entity Name | Location |
| --- | --- |
| Ambika | Cyprus |
| Biovilac Limited | Cyprus |
| Clervaux Investments Limited | British Virgin Islands |
| Dunning | British Virgin Islands |
| Financial Group "Life" | Russian Federation |
| Finbay | British Virgin Islands |
| Greater Divide Limited | British Virgin Islands |
| Greenex | Marshall Islands |
| OOO "Vega" | Russian Federation |
| Trigor Trading Limited | British Virgin Islands |
| Valkera Investments Limited | Cyprus |
| Vennop Trading Limited | Cyprus |
| Vermenda | Cyprus |
| Wonderheart Assets Limited | Nevis (Formerly British Virgin Islands) |
| Wonderworks | Cyprus |

Source: Amended Answer, pp. 14-17.

## 2. Probusinessbank

■ Probusinessbank was founded in 1993 by Mr. Leontiev and his colleague, Mr. Zheleznyak.[13] By August 2015, it was the 51st largest bank in Russia by assets before it was shut down by Russia's central bank.[14] Probusinessbank had apparently failed to meet minimum capital requirements, with its liabilities exceeding its assets by at least 67 billion rubles ($1.04 billion).[15]

## 3. Ambika

■ Ambika is a Cyprus entity and allegedly "served as a 'gate' through which funds were brought into the network before then being transferred between and among the other Cloud Entities" controlled by Mr. Leontiev.[16]

---

[12] Amended Answer, pp. 14-17.
[13] Complaint, p. 5.
[14] "UPDATE 3-Russian banking woes mount as c. bank pulls Probusinessbank licence," Reuters, August 12, 2015.
[15] "UPDATE 3-Russian banking woes mount as c. bank pulls Probusinessbank licence," Reuters, August 12, 2015.
[16] Amended Answer, pp. 14-15.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

### 4.  Wonderworks

 Wonderworks is a Cyprus entity which allegedly "was involved in various transfers of funds between and among the Cloud Entities, including transfers from the borrowers in this dispute, including Ambika."[17] It was incorporated in Cyprus on June 20, 2011.[18] The sole shareholder of Wonderworks is Wonderheart Assets Limited, and both entities allegedly are, or were, owned and/or controlled by Mr. Leontiev.[19]

### 5.  Alexander Varshavsky

Alexander Varshavsky is a Russian-born United States citizen who serves as the president of Avilon.[20]

### C.  Laurence Report



  ▪  The amount of interest paid by Ambika on the 2008 and 2011 Avilon Loans.

**1.**



---

[17] Amended Answer, p. 17.
[18] SL0006026.
[19] Amended Answer, p. 17.
[20] Complaint, p. 1; Amended Answer, pp. 3, 13.
[21]
[22]

10

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



**2.** █████████████████

███

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

### 3. Interest Paid on 2008 and 2011 Avilon Loans

███ Finally, with respect to the 2008 and 2011 Avilon Loans, Mr. Laurence opined that
the interest paid to-date by Ambika to Avilon on the loans totals $17.95 million.[24] He
did not address what amounts remain outstanding on these loans as of the date of the
Laurence Report.

## IV. EVALUATION OF LAURENCE REPORT

### A. *Generally Applicable Critiques of Mr. Laurence's Methodology*

#### 1. Mr. Laurence's analysis is fundamentally flawed and based on incomplete information

███ Mr. Laurence's analysis is inherently unreliable because it is based on incomplete
information. In several instances, Mr. Laurence cites source documents that have
pages upon pages of information marked "Redacted - Non-Responsive." In fact, some

---

[23] ████████████████████████████
[24] Laurence Report, p. 2.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

pages are almost completely redacted.[25] These include various bank statements and other bank account records included in Exhibit 5 to the Laurence Report. Without such information, it is impossible to fully assess whether or not Mr. Laurence's analysis depicts the information accurately and completely.

 Mr. Laurence either did not consider or, without explanation, decided not to use, audited financial statements for Wonderworks, Vermenda and Ambika, despite the fact that the transactions he was analyzing would have been reflected in the results reported in those financial statements. As I explain later in this report, I received copies of Wonderworks' financial reports and audited financial statements for the years ending December 31, 2011 through 2015 *in non-redacted form*. Such documents contain important information about the financial condition of Wonderworks, which, in my opinion, should have been considered by Mr. Laurence in his analysis of the Wonderworks Loans.

**2. Mr. Laurence fails to define "commercially reasonable terms," rendering his opinions indefinite and unreliable**

---

[25] See for example pages SL0023617-20 of Exhibit 5 to the Laurence Report in which information apart from column headers is marked as redacted and SL0023621-30 of Exhibit 5, in which all information is redacted.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

### 3.   Mr. Laurence fails to consider the broader context of the transactions at hand

▮ Mr. Laurence's report and opinions fail to take into consideration the nature of the relationships between the parties involved in the transactions and how those relationships might affect the pricing of the transactions or his conclusions regarding their terms. For instance, it has been alleged that the parties involved in both the forward purchase transactions and the Wonderworks Loans were connected.[26] According to the Amended Answer, these entities were allegedly shell companies involved in Mr. Leontiev's "cloud," and were incorporated and registered under the names of various straw men intended to conceal Mr. Leontiev's involvement with them.[27] Additionally, according to the Amended Answer, the shell companies were allegedly managed by a group of directors who were appointed by Trident Trust group and who acted under the direction and control of Mr. Leontiev.[28]

▮ Despite this, Mr. Laurence has not addressed whether these entities were connected or independent third parties. In my opinion, such information would be relevant to a discussion regarding whether or not the transactions appear to have been entered into on "commercially reasonable terms."

*B.* ▮

**1.** ▮



---

[26] I reviewed annual reports and audited financial statements for Ambika, Probusinessbank, Vermenda and Wonderworks. In those statements, the entities do not disclose any of the other entities listed in Table 1 above as related parties.
[27] Amended Answer, pp. 13-17.
[28] Amended Answer, p. 14.
[29] ▮

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



**2.**



14

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



34
35
36

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



**3.**

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



**4.**

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

**5.** 



18

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016





CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



*C.* ████████████

   **1.** ██████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016





21

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



**2.**

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



**3.**

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



**4.**

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



**5.**

71
72

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



### D.  2008 and 2011 Avilon Loans

#### 1.  Mr. Laurence fails to address principal and accrued interest still owed on the 2008 and 2011 Avilon Loans

In his report, Mr. Laurence provides an opinion that interest payments on the loans from Avilon to Ambika amount to $17.95 million.[73] Mr. Laurence does not indicate that he recalculated the actual amount of interest due but rather simply identified and summed what appear to be reported interest payments from Ambika's bank statements at Probusinessbank.[74]

However, because he addresses only past interest payments, Mr. Laurence fails to provide any useful information on the current accrued interest due on the loans or the status of the principal balances now due.

## V.  CONCLUSIONS



---

[73] Laurence Report, p. 2.
[74] Laurence Report, pp. 6-7.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



- Mr. Laurence does not provide any useful information regarding the outstanding principal and accrued interest owed by Ambika to Avilon.

## VI.   EXPERT'S DECLARATION

69. The assumptions upon which my opinions are based are not, in my opinion, unreasonable or unlikely assumptions.

70. The opinions and conclusions stated in this report are my own and are expressed with a reasonable degree of professional certainty. I do not offer any legal or tax opinions regarding any of the issues described in this report.

**Submitted on January 4, 2017 by:**



John E. Rollins

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

**Exhibit 1**



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

**Exhibit 1**



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

**Exhibit 1**



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016



APPENDIX A

**CURRICULUM VITAE OF**

**JOHN E. ROLLINS**

RSM US LLP

Northeast Region Leader

Litigation Consulting and Dispute Advisory Practice

1185 Avenue of the Americas, Sixth Floor

New York, New York 10036

Office: +1 212 372 1298

E Mail: john.rollins@rsmus.com

**Summary of Experience**

John Rollins is a director with RSM US LLP and serves as the firm's practice leader for the Litigation Consulting and Dispute Advisory practice in the Northeast region. With over 15 years of experience, Mr. Rollins specializes in applying accounting, finance and economic analyses to assist his clients in solving complex business matters. He has deep expertise in the following areas: fraud investigations, lost business profits, economic damages, fraud-related losses, business valuation, and cross-border litigation. Mr. Rollins has worked extensively on issues involving banks, broker/dealers, and private equity firms as well as energy, telecommunications, life sciences, and consumer products companies. He has led teams of investigators working on several large global investigations, including matters involving the Foreign Corrupt Practices Act (FCPA) and Bank Secrecy Act (BSA).

Prior to joining RSM in 2011, Mr. Rollins held senior consultant positions at LECG LLC, a global provider of litigation consulting and expert testimony services. Prior to that, Mr. Rollins worked in private industry as a financial analyst.

**Education**

The Leonard N. Stern School of Business
New York University
M.B.A., Quantitative Finance, Finance and Economics

Georgetown College
Georgetown University
B.S., Linguistics, Psychology and Business

**Professional Affiliations and Credentials**

- Accredited Senior Appraiser (ASA) – Business Valuation
- Certified Fraud Examiner (CFE)
- Certified Anti-Money Laundering Specialist (CAMS)
- Master Analyst in Financial Forensics (MAFF)
- American Society of Appraisers
  - Secretary – New York City Chapter
- Association of Certified Fraud Examiners
- Association of Certified Anti-Money Laundering Specialists

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

- Association of Insolvency & Restructuring Advisors
- American Bankruptcy Institute
- National Association of Certified Valuation Analysts
- American Economic Association

**Recent Publications (past 10 years)**

- *RSM Litigation Review Quarterly Newsletter, Co-creator and Co-editor*
  RSM US LLP (2014 to present)
- *Workplace fraud: Categories, threats and key steps to reduce risk*
  RSM US LLP, November 2016
- *2016 Global Corruption Law Survey*
  RSM US LLP, June 2016
- *Financial Firms Can't Ignore the Foreign Corrupt Practices Act*
  Institutional Investor Magazine, September 2015 (quoted)
- *Public Pension Returns Inflated by Bogus Private Equity Returns: Study*
  International Business Times, January 2015 (quoted)
- *OECD Bribery Report Client Alert*
  RSM US LLP, December 2014
- *US4ICA Component Auditor Training Program: U.S. Foreign Corrupt Practices Act, U.S. Standards for International Component Auditors*
  RSM International, October 2014
- *Addressing Financial Fraud in the PE Industry*
  Association for Corporate Growth, Middle Market Growth Newsletter, September 2014
- *Waking Up to Financial Fraud in Private Equity*
  PEI Alternative Insight, Secondaries Investor, June 2014 (quoted)
- *Global Corruption Law Compliance Preparedness*
  PitchBook Newsletter, Private Equity Edition, August 2013
- *2013 Global Corruption Law Survey*
  Institute for Internal Auditors Research Foundation, May 2013
- *2012 Private Equity Survey: Creating Value; Spurring Growth*
  PitchBook (Contributor), May 2012

**Recent Speaking Engagements (past 10 years)**

- December 2016: The Knowledge Group
  *Calculating Damages in Misappropriation of Trade Secrets Matters*
- June 2016: Consumer Products CFO Roundtable (NY)
  *Risk Management for Third-Party Relationships*
- November 2014: ABA/ABA Money Laundering Enforcement Conference
  *Can I Get a Witness? Effective Use of Experts*
- March 2013: Institute of Internal Auditors – Carolinas District Conference
  *Foreign Corrupt Practices Act*
- November 2012: New York State Bar Association
  *Financial Accounting Due Diligence and Use of Accounting Terms in Legal Documents*

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

**Expert Testimony Experience (past 4 years)**

- *U.S.A. v. Prevezon Holdings Ltd., et al,* No. 13 Civ. 6326 (WHP), U.S. District Court, Southern District of New York, 2015

- *Affymetrix, Inc. v. Enzo Biochem, Inc., et al*, Civil Case No. 1:03-cv-08907-RJS, U.S. District Court, Southern District of New York, 2014

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

**Appendix B**
**List of Documents Considered in the Rollins Report**

"UPDATE 3-Russian banking woes mount as c. bank pulls Probusinessbank licence," Reuters, August 12, 2015.
Ambika Investments Limited Report and Financial Statements, December 31, 2009
Ambika Investments Limited Report and Financial Statements, December 31, 2010
Ambika Investments Limited Report and Financial Statements, December 31, 2011
Ambika Investments Limited Report and Financial Statements, December 31, 2012
Ambika Investments Limited Report and Financial Statements, December 31, 2013
Amended Answer, *Sergey Leontiev (Plaintiff) v. Alexander Varshavsky (Defendant)*, No. 1:16-cv-03595 (JSR) (S.D.N.Y.), dated August 26, 2016
Avilon Group, "About Us," http://avilon-group.ru/en/about/, (last accessed January 2, 2017).
AVP0001994-9
Complaint, *Sergey Leontiev (Plaintiff) v. Alexander Varshavsky (Defendant)*, No. 1:16-cv-03595 (JSR) (S.D.N.Y.), dated May 13, 2016
Expert Report of Charles W. Laurence, FCA, December 16, 2016, along with attached Appendices and Exhibits.
Ford's Biggest Dealer is in Moscow," Anna Smolchenko, Automotive News Europe, April 16, 2007.
THRA00000819-918
THRA00000716-818
SL0000030-39
SL0000042-64
SL0000902-22
SL0001195-6
SL0001198-201
SL0001210-324
SL0001327-431
SL0001582
SL0002121-45
SL0003419-49
SL0003479-95
SL0003519-689
SL0003709-27
SL0003753-925
SL0004066-88
SL0004365-70
SL0004504-23
SL0004532-6
SL0004545-69
SL0004574-83
SL0004588-602
SL0005251-5
SL0006026
SL0007591-4
SL0007597-8
SL0009643-62
SL0009789-09
SL0012102-25
SL0013695-710
SL0015667-71
SL0015680-4
SL0015693-7
SL0015706-10

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016

**Appendix B**
**List of Documents Considered in the Rollins Report**

SL0017554-62
SL0017696-700
SL0017805-19
SL0017844-54
SL0023460-8
SL0023529-612
SL0023616-65
SL0023697-729
SL0032654-83
SL0033029-66
SL0033148-76
SL0035104-41
SL0035694-7
Wonderworks Investments Limited, Report and Financial Statement 31 December 2012 (Non-Redacted version)
Wonderworks Investments Limited, Report and Financial Statement 31 December 2013 (Non-Redacted version)
Wonderworks Investments Limited, Report and Financial Statement 31 December 2014 (Non-Redacted version)
Wonderworks Investments Limited, Report and Financial Statement 31 December 2015 (Non-Redacted version)
Wonderworks Investments Limited, Report and Financial Statements, Period from 20 June 2011 to 31 December 2011 (Non-Redacted version)

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER ENTERED SEPTEMBER 21, 2016