UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

SERGEY LEONTIEV,

               Plaintiff,

     -against-

ALEXANDER VARSHAVSKY,

               Defendant.

---------------------------------------------------------------------x

No. 16-cv-03595 (JSR)

**ORAL ARGUMENT REQUESTED**

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Sergey Leontiev*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT .............................................................................................................................3

I.      It Is Undisputed That Mr. Varshavsky Has No Rights Under the Alleged Loans...............3

II.     Mr. Leontiev Is Not Personally Liable for the Alleged Loans ............................................4

        A.      Mr. Leontiev Is Not Liable for Any Debts of Ambika or Vennop Under Cypriot
                Law ..................................................................................................................... 5

        B.      Mr. Leontiev is Not Liable for Any Debts of ZAO FG Life Under Russian Law.. 8

III.    Mr. Leontiev Has Not Assumed or Accepted Responsibility for the Alleged Loans..........9

CONCLUSION........................................................................................................................10

# TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. Robinson*,
   10 Civ. 7118 (SAS), 2011 WL 5022819 (S.D.N.Y. Oct. 19, 2011) ......................................10

*Arag-A Ltd. v. Republic of Argentina*,
   178 F. Supp. 3d 192 (S.D.N.Y. 2016).......................................................................................10

*Bols Distilleries BV v. Superior Yacht Services Ltd.*
   [2006] UKPC 45 ........................................................................................................................10

*Cheverny Consulting Ltd. v. Whitehead Mann Ltd.*
   [2006] EWCA Civ. 1303 ...........................................................................................................10

*Computech Intern., Inc. v. Compaq Comput. Corp.*,
   02 Civ. 2628 (RWS), 2002 WL 31398933 (S.D.N.Y. Oct. 24, 2002)....................................10

*Hansberry v. Lee*,
   311 U.S. 32 (1940).......................................................................................................................4

*Lockheed Martin Corp. v. Retail Holdings, N.V.*,
   639 F.3d 63 (2d Cir. 2011)...........................................................................................................5

*Matsushita Elec. Indus. Co., Ltd. v. Epstein*,
   516 U.S. 367 (1996).....................................................................................................................4

*In re Tyson*,
   433 B.R. 68 (S.D.N.Y. 2010).......................................................................................................8

*Vision Entm't Worldwide LLC v. Mary Jane Prods., Inc.*,
   13 Civ. 4215 (AT), 2014 WL 5369776 (S.D.N.Y. Oct. 17, 2014) ...........................................6

**Other Authorities**

Chitty on Contracts, 32nd Ed., 2015 ..............................................................................................10

**Rules**

Fed. R. Civ. P. 8(b) ...........................................................................................................................1

Fed. R. Evid. 408 ..............................................................................................................................9

Plaintiff Sergey Leontiev ("Plaintiff" or "Mr. Leontiev") respectfully submits this memorandum of law in further support of his motion for summary judgment.[1]

## PRELIMINARY STATEMENT

This case involves high interest rate loans made by lenders other than Defendant Alexander Varshavsky to off-balance-sheet companies operated by Probusinessbank ("PRBB" or the "Bank"). These lenders chose to earn a high rate of return by investing in the capital of PRBB instead of merely depositing the money with the Bank. The loans were guaranteed by PRBB only. Despite having received millions of dollars in interest for bearing the risk of investing in this manner, Mr. Varshavsky sought to make Mr. Leontiev, PRBB's President, pay the Bank's obligations when the Bank failed. This lawsuit was brought to establish that Mr. Varshavsky has no right to force Mr. Leontiev to pay the debts of PRBB and others.

After repeatedly asserting his intention to prove Mr. Leontiev's personal liability to repay the loans in question, eight days before the close of discovery, Mr. Varshavsky admitted at his deposition that the following statement, contained in paragraph 4 of the Complaint, is true: "Mr. Leontiev owes Mr. Varshavsky nothing." SOF ¶ 278. Mr. Varshavsky fails to explain why he denied that very statement in both his Answer and his Amended Answer, yet admitted it was true when questioned under oath. Leaving aside Mr. Varshavsky's failure to comply with his obligations under Federal Rule of Civil Procedure 8(b), Mr. Varshavsky now freely concedes

---

[1] Capitalized terms used but not defined herein have the meanings set forth in Plaintiff's opening brief ("Pl. Br."). All references to "DSOF" are to Defendant Alexander Varshavsky's Response to Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, dated February 10, 2017 (Dkt. 57). All references to "Opp." are to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, dated February 10, 2017 (Dkt. 56). All references to "Pl. Resp." are to Plaintiff's Response to Defendant's Statement of Additional Facts Pursuant to Local Civil Rule 56.1(b), dated February 17, 2017.

that he has no claim against Mr. Leontiev.  *See* Opp. at 25 ("Leontiev is entitled to a final order of declaratory judgment that Leontiev is not liable to Varshavsky in his personal capacity . . . .").

Mr. Varshavsky used this Court's process to serve burdensome document requests even though Mr. Varshavsky knew he had no claim.  Mr. Varshavsky took numerous depositions on subjects unrelated to this case.  And Mr. Varshavsky represented in multiple telephone calls to the Court that broad categories of documents were relevant and proportional to the needs of this case without ever disclosing that, no matter what the documents said, he would never have a claim against Mr. Leontiev.  Mr. Varshavsky's campaign was a tactic designed to harass Mr. Leontiev and obtain information for use outside of these proceedings.  Had Mr. Varshavsky responded honestly to the Complaint, this Court could have resolved this matter on the pleadings, as his admission would have "foreclose[d] the possibility that Varshavsky was an assignee or otherwise capable of enforcing the loans."  Dkt. 46 ("MJOP Order") at 17.

Not only was Mr. Varshavsky's discovery campaign wasteful, but it was also futile.  Mr. Varshavsky can no longer hide behind vague assertions to claim that Mr. Leontiev is somehow personally liable for loans that Mr. Leontiev did not negotiate, receive, or guarantee.  Mr. Varshavsky must now present evidence sufficient to raise a triable issue of fact.  He has not and cannot.  Recognizing that he lacks evidence to support his prior assertions of Mr. Leontiev's liability, Mr. Varshavsky has made the tactical decision to concede his lack of a claim and beseech this Court "to enter a narrow order."  Opp. at 2.  The hypocrisy of Mr. Varshavsky's request for a "narrow order" plainly demonstrates his bad faith in seeking such broad-ranging discovery in the first place.  Having sought and obtained extensive financial discovery on the pretext that it was necessary to establish Mr. Leontiev's liability for loans entered into by Ambika, ZAO FG Life and Vennop, Mr. Varshavsky now prays for a "narrow order," hoping the

Court does not address his inability to support his previous assertions with any evidence.

The evidence is clear that neither Mr. Varshavsky, nor the Avagumyans, nor any of their company's employees, ever communicated with Mr. Leontiev before PRBB was seized in 2015. Although Mr. Varshavsky goes to great lengths to avoid mentioning the actual details of the written loan agreements, promissory notes, and guarantees at issue (the "Alleged Loans"), those investments were negotiated with and serviced by employees of PRBB, which was the sole guarantor. Mr. Varshavsky has failed to introduce evidence that Mr. Leontiev, the President of PRBB, can be held personally liable for the obligations of the Bank or the borrowers.

This Court held that the burden of proof rests on Mr. Varshavsky "to prove up the alleged loans, his right to enforce them, and Leontiev's personal liability." MJOP Order at 6. Mr. Varshavsky concedes that he has no right to enforce the loans, and he has failed to introduce sufficient evidence of a triable issue of fact as to Mr. Leontiev's personal liability.

## ARGUMENT

### I.      It Is Undisputed That Mr. Varshavsky Has No Rights Under the Alleged Loans

It is now undisputed that Mr. Varshavsky has no rights under the Alleged Loans and, therefore, Mr. Leontiev is entitled to a declaration that he does not owe Mr. Varshavsky any money. Mr. Varshavsky himself admits that "[t]here are no material facts in dispute with respect to that issue," and concedes that "if the Court is inclined to enter a narrow order to that effect, Varshavsky would have no objection and this case would be over." Opp. at 2.

While Mr. Varshavsky asserts that this issue "was never in dispute," Opp. at 12, his assertion is belied by his intentional denial of this fact for months, presumably as a "tactic[] . . . to keep Leontiev embroiled in the present suit," MJOP Order at 17; *see, e.g.*, Ans. at 2, 11 ("Defendant looks forward to litigating this case . . . and proving Plaintiff's personal liability."). In both his Answer and his Amended Answer, Mr. Varshavsky denied the truth of the first

sentence of paragraph 4 of the Complaint—"Mr. Leontiev owes Mr. Varshavsky nothing." SOF ¶ 278. It was not until the final days of discovery, when asked at his deposition whether the same exact sentence was true, that Mr. Varshavsky admitted, indeed, it was. SOF ¶ 278.

Mr. Varshavsky's attempt to explain away the timing of his concession is disingenuous. He claims that the allegation that "Mr. Leontiev owes Mr. Varshavsky nothing" was "conclusory and indefinite," and that the allegation was "broader" than asserting that nothing was owed under the Alleged Loans. Opp. at 12 n.4. Yet Mr. Varshavsky had no trouble admitting the same statement at his deposition, SOF ¶ 278, and he offers no explanation for why this allegation was true when he was deposed but not when he filed his Answers.

Mr. Varshavsky's argument that Mr. Leontiev is improperly seeking relief against non-parties is a red herring. Mr. Leontiev seeks relief only against Mr. Varshavsky. The effect of this Court's judgment on any non-parties will be determined by the court presiding over the next lawsuit. *See Hansberry v. Lee*, 311 U.S. 32, 40 (1940); *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 395–96 (1996) (Ginsburg, J., concurring in part and dissenting in part).

The parties are in agreement that Mr. Leontiev owes nothing to Mr. Varshavsky under the Alleged Loans and therefore summary judgment in favor of Mr. Leontiev is appropriate.

## II. Mr. Leontiev Is Not Personally Liable for the Alleged Loans

Mr. Varshavsky's belated admission that Mr. Leontiev has no liability to him personally should not preclude the Court from granting summary judgment on the alternative ground that Mr. Leontiev has no personal liability for the Alleged Loans. In his Amended Answer, Mr. Varshavsky claimed that he would prove that Mr. Leontiev "caused" the borrowers on the Alleged Loans to "transfer the borrowed funds to other entities that he also owns and/or controls," and that Mr. Leontiev "currently controls and uses the borrowed funds for his own benefit." Ans. at 11 ¶ 3. Mr. Varshavsky has proven none of this. There is no evidence to

establish Mr. Leontiev's supposed personal responsibility for the Alleged Loans.

**A.    Mr. Leontiev Is Not Liable for Any Debts of Ambika or Vennop Under Cypriot Law**

Mr. Varshavsky cannot meet the high standard for piercing the veil of Ambika or Vennop under Cypriot law, *see* Pl. Br. at 14–16, based on his unsupported allegations.  Insofar as Vennop is concerned, Mr. Varshavsky does not even try to identify any relevant evidence.  Opp. at 21–22.  With respect to Ambika, Mr. Varshavsky fails to present evidence that any of the "concealment" doctrine factors weigh in favor of piercing the corporate veil here:

*(1) Individual's Ownership and Control of the Entity*.  The undisputed evidence is that Mr. Leontiev was not involved in and did not direct Ambika's business dealings.  SOF ¶¶ 33–46.  None of Mr. Varshavsky's witnesses testified that they had any contact with Mr. Leontiev in connection with the loans to Ambika.  PRBB managers, led by Ms. Vyulkova, set up and managed off-balance-sheet entities like Ambika.  SOF ¶¶ 33–44.  Mr. Varshavsky attempts to imbue Mr. Leontiev with personal responsibility by claiming that PRBB employees "ultimately reported to him."  Opp. at 15.  But this abstract generality fails to establish that Mr. Leontiev exercised any control over the operation of Ambika (or any other off-balance-sheet entity).[2]

*(2) Circumstances and the Source of the Receipt of Funds*.  Mr. Varshavsky barely acknowledges that the Avilon AG loans were documented by written agreements making Ambika the obligor, and PRBB the guarantor of repayment.  It is a basic tenet of contract law that the terms of a contract govern the responsibilities and rights of the parties thereto.  *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011).  The documentation for

---

[2]  Mr. Varshavsky makes much of the limited role of Mr. Shcheglyaev as Ambika's beneficial owner, Opp. at 16, but omits the fact that Mr. Shcheglyaev did not become the beneficial owner of Ambika until August 2015, long after the Avilon AG investments were made.  Pl. Resp. ¶ 59.  This evidence is thus wholly irrelevant.

the Avilon AG loans is clear:  Mr. Leontiev is not a party to these agreements, and he did not guarantee them.  SOF ¶¶ 58, 64, 97, 101.

Disregarding these undisputed facts, Mr. Varshavsky claims that Mr. Leontiev is the "real actor" behind Ambika because "Zheleznyak represented that Leontiev would hold the funds through his companies and manage trades using the loaned funds to ensure high rates of return." Opp. at 16.  The only evidence of the supposed statements—which are inadmissible hearsay—is the self-serving testimony of Messrs. Varshavsky and Avagumyan.  DSOF ¶¶ 10–11 & 18.  This testimony is explicitly disputed by Mr. Zheleznyak.  *See* Pl. Resp. ¶¶ 6, 11, 18.  Even if the testimony about Mr. Zheleznyak's out-of-court statements were admissible, Mr. Zheleznyak's statements could not bind Mr. Leontiev under U.S. law, as there is no evidence that Mr. Leontiev took any actions or made any statements to Mr. Varshavsky, or others at Avilon AG, indicating that Mr. Zheleznyak was authorized to act as Mr. Leontiev's personal representative.  *Vision Entm't Worldwide LLC v. Mary Jane Prods., Inc.*, 13 Civ. 4215 (AT), 2014 WL 5369776, at *3 (S.D.N.Y. Oct. 17, 2014) ("Apparent authority is created by words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction.").  Mr. Varshavsky fails to address this law in his opposition papers.  Furthermore, under Russian law, Mr. Zheleznyak's oral statements would not impose a legally binding obligation on Mr. Zheleznyak, let alone on Mr. Leontiev, with respect to Ambika's debts.  *See* Reply Decl. of Yuri Monastyrsky ("Monastyrsky Reply Decl.") ¶¶ 6–8.

The only statements cited by Mr. Varshavsky that were actually made *by Mr. Leontiev* are inadmissible, after-the-fact statements made during unsuccessful settlement efforts.[3]  Mr.

---

[3]  Mr. Varshavsky suggests that statements from the London meeting can be offered for a purpose other than establishing Mr. Leontiev's liability, but never identifies what that other purpose might be.  *See* Opp. at 17 n.7.

Varshavsky insists that the August 2015 London meeting was not about settlement, Opp. at 17 n.7, but then concedes that "settlement discussions were ongoing in late 2015," DSOF ¶ 174. There plainly was a disagreement about whether Mr. Leontiev had an obligation to any of the alleged lenders, *see* SOF ¶ 252, underscoring that these were, in fact, "settlement discussions."

The evidence unequivocally shows that Avilon AG employees negotiated the loans directly with PRBB employees and had no interaction with Mr. Leontiev at any time during the nearly seven years that these loans were in existence before PRBB's license was revoked.  SOF ¶¶ 47–132, 134, 137, 220, 248.  There is no admissible evidence suggesting that Mr. Leontiev, in his personal capacity, was the "real actor" behind the loans from Avilon AG to Ambika.

*(3) Nature of the Controlled Company's Other Transactions*.  Mr. Varshavsky claims that "Ambika had no independent operations" or business purpose, Opp. at 16–17, but ignores that Ambika was owed $83 million of subordinated debt by PRBB at the time of its seizure, *see* SOF ¶ 223.  The fact that Ambika suffered losses does not justify piercing its corporate veil.[4]  Mr. Varshavsky's assertion that Ambika's financial status was not disclosed to Avilon AG, *see* Opp. at 18, is not really surprising; Mr. Varshavsky testified that, at the time the loans were negotiated, he never requested or cared to review such information and so it was not a factor in his decision to extend loans to Ambika.  Pl. Resp. ¶ 104.

Mr. Varshavsky further alleges that "Mr. Leontiev used Ambika's corporate form to engage in and conceal misconduct," but the transactions that he discusses in support of this

---

[4]  Mr. Varshavsky's argument about Ambika's losses is oversimplified.  With respect to the forward transactions that Mr. Varshavsky criticizes, *see* Opp. at 6, 18–19, Ambika and Wonderworks agreed to numerous trades, some of which resulted in gains to Ambika and others in gains to Wonderworks. SOF ¶ 226.  Mr. Varshavsky offers no expert opinion that Ambika's transactions with Wonderworks were not at market prices or that they were in any way improper.  Moreover, Mr. Varshavsky offers no basis for piercing Wonderworks' separate corporate veil to reach Mr. Leontiev.

flawed claim have nothing to do with Ambika, Opp. at 20, and there is no evidence of any impropriety in these transactions or any involvement by Mr. Leontiev.  Mr. Varshavsky asserts that Ambika, under Mr. Leontiev's control, "appears to have provided Wonderworks with its initial capital," Opp. at 20, but lending money is not a basis to pierce a corporate veil, and the single statement suggesting that Ambika loaned money to Wonderworks is simply mistaken, Pl. Resp. ¶ 41.  Wonderworks did receive loans from other entities, but the evidence is uncontroverted that Wonderworks repaid these loans in full.  SOF ¶ 16.

(4) Whether There was Misconduct Connected to the Corporate Form.  Mr. Varshavsky has presented no evidence that Mr. Leontiev engaged in any activity, let alone misconduct, connected to the use of Ambika's *structure*—as distinct from Ambika's *activities*, *see In re Tyson*, 433 B.R. 68, 87 (S.D.N.Y. 2010)—for the purpose of avoiding or concealing liability.[5]

## B.    Mr. Leontiev is Not Liable for Any Debts of ZAO FG Life Under Russian Law

There is no admissible evidence that would establish Mr. Leontiev's personal liability for ZAO FG Life's alleged debt under Russian law:  the record is devoid of any evidence of any actions by Mr. Leontiev related to ZAO FG Life.  Indeed, there is no evidence in the record of any transactions by ZAO FG Life (other than the issuance of the notes and its eventual liquidation, which in and of themselves cannot establish personal liability for Mr. Leontiev).

Mr. Varshavsky's argument rests entirely on the fact that Mr. Leontiev was the majority owner of a company, OOO Alivikt ("Alivikt"), that itself owned ZAO FG Life.  Opp. at 22–23. There is no evidence that Mr. Leontiev operated, controlled, or even was aware of the day-to-day

---

[5]  Mr. Varshavsky's half-hearted argument under Cypriot statutory law, *see* Opp. at 22, is based on pure conjecture, since neither Ambika nor Vennop have been liquidated, and, thus, veil-piercing is not justified under this theory.

operations of ZAO FG Life.  There is no evidence that Mr. Leontiev was aware that ZAO FG

Life issued the promissory notes in dispute.  And there is no evidence that Mr. Leontiev

participated in, caused, or even was aware of ZAO FG Life's liquidation.  There is no basis

under Russian law to pierce the corporate veil and hold Mr. Leontiev liable as a controlling

shareholder.  Monastyrsky Decl. ¶¶ 7, 18–19; *see also* Monastyrsky Reply Decl. ¶¶ 3–5.

Nor can it avail Mr. Varshavsky to say that ZAO FG Life may be taken into bankruptcy

merely because its liquidation has apparently been reopened once again.  *See* Opp. at 23.  Even if

that speculative event comes to pass, there is no evidence that Mr. Leontiev *caused* that

bankruptcy, as is required under Russian law for the imposition of secondary liability.  *See*

Monastyrsky Decl. ¶¶ 8–12.  Moreover, only ZAO FG Life's estate would be entitled to any

recovery resulting from a determination of secondary liability in any such speculative

bankruptcy, and not Mr. Varshavsky or any alleged creditor he purportedly represents.  *Id*. ¶ 13.

Put simply, Russian law does not permit the imposition of shareholder liability on Mr. Leontiev,

as "[t]he principle of 'lifting the corporate veil' is not currently included in Russian law."

Volodina Supp. Decl. ¶ 6.  No Russian court has ever applied that principle to impose

shareholder liability under circumstances like those at issue here.  *See generally* Monastyrsky

Decl.; *see also* Monastyrsky Reply Decl. ¶¶ 3–5.

### III.    Mr. Leontiev Has Not Assumed or Accepted Responsibility for the Alleged Loans

Mr. Varshavsky's argument that Mr. Leontiev accepted responsibility for the Alleged

Loans at the London meeting is based on the flawed premise that an agreement was reached

during those discussions.  Not only is the London meeting inadmissible as a settlement

communication under Federal Rule of Evidence 408 but, as Mr. Varshavsky himself testified, he

and Mr. Leontiev "did not reach the agreement" during the London meeting.  SOF ¶ 253.

Whether New York or English law applies, an agreement requires offer, acceptance, an

intention to be bound, and an agreement on all essential terms.[6]  While Mr. Leontiev offered various settlement proposals to Mr. Varshavsky, Mr. Varshavsky never accepted any of them.  *See* SOF ¶ 253.  Mr. Leontiev likewise made clear that no agreement would be concluded until the parties' lawyers got involved and formally finalized the terms.  Pl. Resp. ¶ 164.[7] Moreover, the fact that the payment schedule, among other key terms, was never agreed upon precludes a finding that all material terms of the alleged contract were concluded.  Pl. Resp. ¶¶ 164, 166; *see also Allen v. Robinson*, 10 Civ. 7118 (SAS), 2011 WL 5022819, at *5 (S.D.N.Y. Oct. 19, 2011); *Bols Distilleries BV v. Superior Yacht Services Ltd.* [2006] UKPC 45 at [35] (finding that where there are fundamental matters that remain to be resolved, an alleged agreement cannot be regarded as a binding contract between the parties).[8]

## CONCLUSION

For the reasons set forth above, this Court should grant Mr. Leontiev's motion for summary judgment and declare that Mr. Leontiev is not personally liable for and does not owe a debt or obligation to Mr. Varshavsky relating to the Alleged Loans.

---

[6]  *See, e.g.*, *Arag-A Ltd. v. Republic of Argentina*, 178 F. Supp. 3d 192, 198 (S.D.N.Y. 2016) (New York law); *see also* Chitty on Contracts, 32nd Ed., 2015 at 2-001 (English law).

[7]  *See Computech Intern., Inc. v. Compaq Comput. Corp.*, 02 Civ. 2628 (RWS), 2002 WL 31398933, at *2 (S.D.N.Y. Oct. 24, 2002) (endorsing the proposition that "[t]here is a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents" (internal quotation marks and citations omitted)); *Cheverny Consulting Ltd. v. Whitehead Mann Ltd.* [2006] EWCA Civ. 1303 at [45] ("[Where] solicitors are involved on both sides, formal written agreements are to be produced and arrangements made for their execution the normal inference will be that the parties are not bound unless and until both of them sign the agreement.").

[8]  Mr. Varshavsky's attempt to characterize the London discussions as creating a contract of indemnity is unsupported because (a) no agreement was reached at the London meeting, and (b) the unresolved issue of a payment schedule (which is what Mr. Varshavsky contends altered the existing obligation, *see* Opp. at 25) means that any agreement would have been a contract of guarantee, not an indemnity.

Dated:   February 17, 2017
         New York, New York

GIBSON, DUNN & CRUTCHER LLP

By:
         Robert L. Weigel
         Marshall R. King
         Alison L. Wollin

200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Sergey Leontiev*