UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                             :
SERGEY LEONTIEV,                :
                             :
            Plaintiff,       :     NO. 16-CV-03595 (JSR)
                             :
        -against-          :     **ORAL ARGUMENT REQUESTED**
                             :
ALEXANDER VARSHAVSKY,    :     **CONFIDENTIAL – FILED UNDER SEAL**
                             :
          Defendant.      :
                             :
------------------------------------------------------ x

**PLAINTIFF SERGEY LEONTIEV'S RESPONSE TO DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

       Pursuant to Local Civil Rule 56.1 of the Local Civil Rules of the Southern District of New York, Plaintiff Sergey Leontiev ("Mr. Leontiev" or "Plaintiff") respectfully submits this response to the Rule 56.1 Statement of Additional Material Facts filed by Defendant Alexander Varshavsky ("Mr. Varshavsky" or "Defendant") in support of his opposition to Plaintiff's Motion for Summary Judgment.

**General Responses and Objections to Defendant's**
**Rule 56.1 Statement of Additional Material Facts**

       1.     Mr. Leontiev objects to Defendant's Rule 56.1 Statement of Additional Material Facts to the extent that the statements within are compound and complex, and not short and concise statements of fact, and thus fail to comply with Local Civil Rule 56.1(b).

       2.     Mr. Leontiev objects to Defendant's Rule 56.1 Statement of Additional Material Facts to the extent that the statements contained within it are not objective statements of material facts, but rather are argumentative statements that ignore or mischaracterize elements of the record.

       3.     Mr. Leontiev objects to Defendant's Rule 56.1 Statement of Additional

Material Facts to the extent that the statements contained within it are improper assertions of law or mixed assertions of law and fact that are inappropriate for a Rule 56.1 statement.

4.    Mr. Leontiev expressly reserves the right to object, here and in the future, to any and all of Defendant's statements as misleading, distorted, taken out of context in light of the full record, irrelevant, inadmissible, or immaterial to the disposition of the case.

5.    Mr. Leontiev's admission or disputation of any of Defendant's statements should not be deemed an acknowledgment that any such fact is material, relevant, or admissible at trial, or that additional facts are not needed to place such statement in its proper context.

6.    To the extent Mr. Leontiev admits or disputes any individual statement, he expressly does so only for purposes of this Motion.

7.    Mr. Leontiev's responses are not intended as an exhaustive statement of all facts that Mr. Leontiev would adduce if this matter were to proceed to trial.  Nor are these responses intended as an exhaustive statement of all issues relevant to the case.  Mr. Leontiev expressly reserves the right to adduce additional facts in the future, including but not limited to in any pre-trial order, in other pre-trial submissions, and at trial.

8.    In addition to the statements contained in Mr. Leontiev's responses to Defendant's Rule 56.1 Statement of Additional Material Facts below, Mr. Leontiev incorporates by reference all facts contained in Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, dated January 27, 2017.[1]

---

[1] "Pl. SOF" refers to Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, dated January 27, 2017.  "Def. ASF" refers to Defendant's Rule 56.1 Statement of Additional Material Facts, dated February 10, 2017.  "Pl. Ex." refers to the Exhibits attached to the Declaration of Robert Weigel, dated January 27, 2017.  "Def. Ex." refers to the Exhibits attached to the Declaration of Sean Hecker, dated February 10, 2017, and filed on February 11, 2017, some of which were supplemented by the Supplemental Hecker Declaration dated February 14, 2017.  "King Decl. Ex." refers to the Exhibits attached to the

**Specific Responses and Objections to Defendant's
Rule 56.1 Statement of Additional Material Facts**

A.    **Leontiev's and Zheleznyak's Ownership in Probusinessbank and ZAO
Financial Group Life**

1 █████████████████████████████████████████████████████████████

**RESPONSE:**  Disputed in part. ████████████████████████████

████████████████████████████████████████████████████ during

certain time periods.  The cited evidence does not establish the ████████████

█████████████████████████████████████.  Mr. Leontiev objects

to the evidence cited at Def. Ex. 14 at 122:15-17 (Leontiev Tr.) as not supporting the statement.

2.   ████████████████████████████████████████████████

Pl. Ex.
3 (SL0001210, Probusinessbank Group: Consolidated Financial Statements for the Year Ended 31
December 2014) at SL0001227 (showing Alivikt with a 51.20% ownership of PRBB as of
December 31, 2014, and Leontiev and Zheleznyak as ultimate shareholders of 40.15% and 11.05%
of PRBB, respectively).

**RESPONSE:**  Disputed as mischaracterizing the cited evidence.  The cited

evidence shows that Alivikt Holdings Limited held a 51.20% ownership share of PRBB as of

December 31, 2014.  Pl. Ex. 3 at SL0001227 (2014 PRBB Financial Statements).  Defendant has

offered no evidence to establish the relationship between ███████████████████

████.

3.    Leontiev and Zheleznyak were two of the ultimate shareholders of
Probusinessbank ("PRBB"), ████████████████████  Pl. Ex. 3 (SL0001210, Probusinessbank Group:
Consolidated Financial Statements for the Year Ended 31 December 2014) at SL0001227; Def.

Declaration of Marshall King, dated February 17, 2017.  "Leontiev Decl." refers to the
Declaration of Sergey Leontiev, dated January 26, 2017.  "Zheleznyak Decl." refers to the
Declaration of Alexander Zheleznyak, dated February 16, 2017.  Capitalized terms used but
not defined herein have the meaning set forth in Pl. SOF.

Ex. 14 at 79:12-16, 132:24-133:4 (Leontiev Tr.); Def. Ex. 15 at 57:2-58:14 (Zheleznyak Tr.).

**RESPONSE:**  Disputed in part.  Mr. Leontiev does not dispute that he and

Mr. Zheleznyak were two of the ultimate shareholders of PRBB ███████████████████

███████████████████████████  The cited evidence shows that Alivikt Holdings

Limited held a 51.20% ownership share of PRBB as of December 31, 2014.  Pl. Ex. 3 at

SL0001227 (2014 PRBB Financial Statements).  Defendant has offered no evidence to establish

███████████████████████████████████████

        4.     ZAO Financial Group Life ("FGL") was solely owned by Alivikt. ██████
████████████████████████████████████████████████████████
██████████████████████  Def. Ex. 14 at 106:24-107:22; 109:15-19, 346:10-12
(Leontiev Tr.).

**RESPONSE:**  Disputed as unsupported by the cited evidence.  The cited evidence

does not establish that ZAO Financial Group Life ("ZAO FG Life") was "solely" owned by OOO

Alivikt, nor does it establish the time period during which OOO Alivikt purportedly owned ZAO

FG Life.

        5.     Leontiev told Varshavsky that he and Zheleznyak were business partners.
Def. Ex. 14 at 68:13-21; 69:16-70:24 (Leontiev Tr.); Def. Ex. 22 at 3:18, 12:13-14, 19:10, 31:2- 5,
48:11 (London Tr.).

**RESPONSE:**  Disputed.  The cited evidence does not support the statement that

Mr. Leontiev told Mr. Varshavsky that he and Mr. Zheleznyak were "business partners."  The

term "business partner" does not appear in any of the cited evidence.  Mr. Leontiev testified that

he and Mr. Zheleznyak were both shareholders of PRBB but were not "partners" as he understood

the term.  Def. Ex. 14 at 63:19-25, 66:9-17 (Leontiev Tr.).  To the extent Mr. Leontiev described

Mr. Zheleznyak as his "partner" in statements made to Mr. Varshavsky, he explained that he used

the term "partner" to mean "that we are friends."  Def. Ex. 14 at 68:3-5, 69:12-15 (Leontiev Tr.).

The statement is also unsupported by the cited evidence to the extent that it relies on representations made during an August 2015 meeting to describe Mr. Leontiev's and Mr. Zheleznyak's relationship at any other point in time.  The statement is not supported by the evidence cited at Def. Ex. 22 at 31:2-5 (London Tr.) because the cited evidence is a statement made by Ekaterina Malygina, and not by Mr. Leontiev.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the admission of any evidence of statements made during the London meeting because they are "statement[s] made during compromise negotiations about the claim" which are not "admissible on behalf of any party . . . to prove . . . the validity or amount of a disputed claim."  Fed. R. Evid. 408.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

6.     Zheleznyak represented to Varshavsky and Kamo Avagumyan, when soliciting loans from them, that the money would be controlled by him and his partner, Leontiev. Def. Ex. 13 at 155:24-156:11 (Varshavsky Tr.); Def. Ex. 18 at 22:10-23:5, 44:16-45:25, 59:4-60:16, 144:4-19 (Kamo Avagumyan Tr.).

**RESPONSE:**  Disputed.  Mr. Zheleznyak explained to Mr. Varshavsky that the invested funds would be deposited into PRBB's capital and used for various Bank projects, including investment and construction.  Zheleznyak Decl. ¶ 3.  Prior to August 2015, Mr. Zheleznyak never discussed Kamo Avagumyan's investments with him.  Zheleznyak Decl. ¶ 8.  Mr. Zheleznyak never said or suggested to Mr. Varshavsky or to Mr. Avagumyan that Mr. Leontiev intended to use the funds to invest in securities, or that the funds were to be used for

anything other than Bank projects.  Zheleznyak Decl. ¶¶ 3, 10.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Statements allegedly made by Mr. Zheleznyak to Mr. Varshavsky or to Kamo Avagumyan are hearsay and inadmissible against Mr. Leontiev. Fed. R. Evid. 802.  To the extent the statement relies on Kamo Avagumyan's deposition testimony, the cited evidence is inadmissible because Kamo Avagumyan has no personal knowledge of the business purportedly operated by Mr. Leontiev or Mr. Zheleznyak.  Fed. R. Evid. 602.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

7.     Leontiev and Zheleznyak were understood by others, such as Zubiy and Varshavsky, to be business partners. Def. Ex. 13 at 25:21-23, 168:20-170:6 (Varshavsky Tr.); Def. Ex. 27 at 20:12-21 (Zubiy Tr.).

**RESPONSE:**  Disputed.  The cited evidence does not support the statement that Mr. Varshavsky or Ms. Zubiy understood that Mr. Leontiev and Mr. Zheleznyak were "business partners."  The term "business partner" does not appear in any of the cited evidence.  Mr. Leontiev objects to the statement in full to the extent it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  To the extent the statement relies on Mr. Varshavsky's deposition testimony, the cited evidence is inadmissible because Mr. Varshavsky has no personal knowledge of the scope of the relationship between Mr. Leontiev and Mr. Zheleznyak.  Fed. R. Evid. 602.  To the extent the

statement relies on Ms. Zubiy's testimony, the cited evidence is inadmissible because Ms. Zubiy's

understanding of the scope of the relationship between Mr. Leontiev and Mr. Zheleznyak is not

relevant to any issue in dispute.  Fed. R. Evid. 401, 402.  Mr. Leontiev further objects to the

statement and to the cited evidence because they are not relevant or material to any matter on

which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d

309, 311 (2d Cir. 2003).

### B. Representations Made by Zheleznyak on behalf of Himself and Leontiev Throughout Avilon AG's Loans to Ambika

8.      Zheleznyak and Varshavsky have had a long-standing friendship, including at the time Zheleznyak discussed loan terms with Varshavsky in 2008. Def. Ex. 13 at 88:25-89:2, 156:25 (Varshavsky Tr.); Def. Ex. 15 at 67:17-20 (Zheleznyak Tr.).

**RESPONSE:**  Undisputed, except to clarify that Mr. Zheleznyak testified that he

has a "friendly relationship" with Mr. Varshavsky, not that they had a long-standing friendship.

Def. Ex. 15 at 67:17 (Zheleznyak Tr.).

9.      In or around December 2008, Leontiev asked Zheleznyak to acquire a large loan from Avilon. Consistent with that instruction, Zheleznyak then discussed loan terms with Varshavsky. Pl. Ex. 2 at 62:7-63:4, 66:9-12 (Zheleznyak Tr.).

**RESPONSE:**  Disputed as incomplete and mischaracterizing the record and not

supported by the cited evidence.  Mr. Leontiev testified that he "introduc[ed] the wealth

management product" at a "strategy session" in 2008, which Mr. Zheleznyak attended along with

hundreds of other bank managers.  Pl. Ex. 1 at 308:16-23 (Leontiev Tr.).  Mr. Leontiev did not

recall speaking with Mr. Zheleznyak specifically about obtaining funds from Avilon.  Pl. Ex. 1 at

308:24-309:21 (Leontiev Tr.).

10.      Zheleznyak told Varshavsky that he and Leontiev had opened Ambika, which was an "offshore company" that had "nothing to do with" PRBB and that a loan to Ambika could offer a higher interest rate than an investment with PRBB. Pl. Ex. 9 at 29:10-30:7 (Varshavsky Tr.). Zheleznyak further explained that Leontiev controlled the "offshore companies." *Id.* at 79:17-18.

**RESPONSE:**  Disputed as incomplete, misleading, and unsupported by the cited evidence and the record.  Mr. Varshavsky testified that prior to August 2015, he had "absolutely no idea what Ambika was and "no idea what the business . . . Ambika was in," and only learned that "Ambika was [an] offshore company" after August 2015.  King Decl. Ex. 1 at 26:13-27:9 (Varshavsky Tr.).  Mr. Varshavsky testified that he "didn't know the name Ambika at the time" that he negotiated the terms of the 2008 Loan with Mr. Zheleznyak.  King Decl. Ex. 1 at 44:22-25 (Varshavsky Tr.).  The cited evidence does not support the statement because Mr. Varshavsky does not mention the name Ambika at all and the cited testimony does not establish when Mr. Zheleznyak allegedly made these statements.  When Mr. Zheleznyak and Mr. Varshavsky discussed the potential investment in 2008, Mr. Zheleznyak never mentioned the name Ambika and never stated that Mr. Leontiev "controlled" an entity called Ambika.  Zheleznyak Decl. ¶¶ 4, 6.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Out-of-court statements allegedly made by Mr. Zheleznyak to Mr. Varshavsky are hearsay and inadmissible against Mr. Leontiev.  Fed. R. Evid. 802.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

11.    Zheleznyak represented to Varshavsky that Ambika had assets and was a company that bought and sold blue chip stocks for investment purposes. Def. Ex. 15 at 36:3-11 (Varshavsky Tr.).

**RESPONSE:**  Disputed as incomplete, misleading, and mischaracterizing the cited evidence and the record.  The cited evidence, which inadvertently cites to Def. Ex. 15 instead of Def. Ex. 13, omits the portion of Mr. Varshavsky's testimony where he admitted that Mr. Zheleznyak did not show him a "list of blue chip stocks" that Ambika or anyone else owned in 2008.  Def. Ex. 13 at 36:12-15 (Varshavsky Tr.).  In response to being asked about what Mr. Zheleznyak told him at the time "the loan was made in 2008 . . . about what assets or liabilities Ambika had" Mr. Varshavsky testified that Mr. Zheleznyak "always" told him that his "money [was] secure" and being kept "in London," and did not testify that Mr. Zheleznyak made any representations about securities trading.  King Decl. Ex. 1 at 36:16-37:2 (Varshavsky Tr.).  Mr. Zheleznyak never said or suggested to Mr. Varshavsky that Ambika was a company that bought and sold blue chip stocks.  Zheleznyak Decl. ¶ 4.  Neither Mr. Varshavsky nor Avilon's Financial Director, Irina Monakhova, nor anyone else at Avilon asked Mr. Zheleznyak for information about Ambika.  Zheleznyak Decl. ¶ 6; Pl. Ex. 9 at 30:14-24 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.).  Additionally, Mr. Varshavsky's testimony is vague as to the meaning of "secure."

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Statements allegedly made by Mr. Zheleznyak to Mr. Varshavsky are hearsay and inadmissible against Mr. Leontiev.  Fed. R. Evid. 802.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment. *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

12.     In addition to the loan negotiated in 2008, Avilon entered into loans with Ambika in 2010 and 2011, and subsequently entered into additional agreements, extending the terms of the loans. Pl. SOF ¶¶ 90-94, 97; Pl. Ex. 9 at 56:8-59:17 (Varshavsky Tr.); Pl. Ex. 2 at 117:19-118:11 (Zheleznyak Tr.); Pl. Ex. 13 at 74:2-25 (Monakhova Tr.); Pl. Ex. 24; Pl. Ex. 36.

**RESPONSE:**  Undisputed that Avilon AG (or its predecessor entity, New York

Motors Moscow) entered into agreements with Ambika in 2008 and 2011 and that Avilon Plaza

(or its predecessor entity, European Realty Company) entered into an agreement with Ambika in

2010, and that the respective parties subsequently entered into additional agreements to extend the

terms of the agreements and modify other terms such as interest rates.  Mr. Leontiev objects to the

cited evidence at Pl. Ex. 9 at 56:8-59:17 (Varshavsky Tr.) and Pl. Ex. 2 at 117:19-118:11

(Zheleznyak Tr.), as not supporting the statement.

13.     For all loans between Avilon and Ambika, Varshavsky and Zheleznyak negotiated the interest rate and the renewable one-year term of the loans and left it to their representatives to finalize other clauses. Def. Ex. 13 at 25:7-23, 29:3-30:7, 31:10-18, 56:8-59:17 (Varshavsky Tr.); Def. Ex. 15 at 62:25-63:22, 65:5-13, 66:9-12 (Zheleznyak Tr.); Def. Ex. 21 at 17:20-18:2, 20:16-25 (Monakhova Tr.).

**RESPONSE:**  Disputed in part.  Mr. Leontiev does not dispute that

Mr. Varshavsky and Mr. Zheleznyak negotiated the interest rates on the agreements between

Avilon and Ambika.  The cited evidence does not support the statement that Mr. Varshavsky or

Mr. Zheleznyak negotiated or discussed a "renewable one-year term."  The statement is also

vague as to the meaning of the term "representatives."

Mr. Leontiev objects to the statement to the extent it relies on evidence that would

be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every

statement must be supported by a "citation to evidence which would be admissible, set forth as

required by Fed. R. Civ. P. 56(c)."  The evidence cited at Def. Ex. 21 at 17:20-18:2 (Monakhova

Tr.) is inadmissible because Ms. Monakhova has no personal knowledge of the terms that were

"previously discussed with Mr. Zheleznyak."  Fed. R. Evid. 602.

14.     During annual renewal negotiations and throughout the period the loans were outstanding, Zheleznyak repeatedly represented to Varshavsky that Leontiev had invested the loaned funds in blue-chip securities, outside of PRBB, and that Avilon's money was secure and kept "outside of Russia, specifically in London." Def. Ex. 13 at 36:6-25, 155:16-156:11 (Varshavsky Tr.); *see also infra* Def. SOF ¶ 156.

**RESPONSE:**  Disputed.  The cited evidence does not support the statement that Mr. Zheleznyak represented to Mr. Varshavsky that Avilon's funds were invested in blue-chip securities.  At Def. Ex. 13 at 36:6-25, Mr. Varshavsky responded to a question about what Mr. Zheleznyak told him at the time "the loan was made in 2008 . . . about what assets or liabilities Ambika had" by stating that Mr. Zheleznyak "always" told him that his "money [was] secure" and being kept "in London."  At Def. Ex. 13 at 155:16-156:11, Mr. Varshavsky testified that Mr. Zheleznyak was "telling [him] all the time" that his money is "secured."  This testimony does not specify a date or provide the context for any such conversation, nor does this testimony refer to blue-chip securities or to Mr. Leontiev.  Additionally, Mr. Varshavsky's testimony is vague as to the meaning of "secure."  Def. ASF ¶ 156 refers to a purported conversation between Mr. Zheleznyak and Mr. Varshavsky in August 2015, which post-dates any negotiations about the terms of the Alleged Loans.  *See* Pl. Response to Def. ASF ¶ 156; Zheleznyak Decl. ¶ 5.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Statements allegedly made by Mr. Zheleznyak to Mr. Varshavsky are hearsay and inadmissible against Mr. Leontiev.  Fed. R. Evid. 802.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

15.     The principal due on Loan Agreement No. 0109/11 ("2011 Loan Agreement") (including the amounts rolled into that loan agreement upon the discharge of Loan Agreement No. 1812/08 ("2008 Loan Agreement")), totaling $27,601,156.17, remains unpaid, as do the interest payments that ceased being made after August 2015. Pl. SOF ¶¶ 58-59, 82, 90- 93, 97, 114; Def. Ex. 15 at 64:6-21 (Zheleznyak Tr.); Def. Ex. 26 at 95:10-96:12 (Popov Tr.).

**RESPONSE:** Disputed. The cited evidence does not support the purported

outstanding amount of the 2011 Loan Agreement. The cited portions of Plaintiff's Statement of

Undisputed Material Facts merely set forth the details of the agreement and its amendments. In

the cited portion of Mr. Zheleznyak's deposition transcript, Mr. Zheleznyak testified that "Ambika

has not paid off" the initial $19.9 million loan. Def. Ex. 15 at 64:6-21 (Zheleznyak Tr.). In the

cited portion of Mr. Popov's deposition testimony, Mr. Popov testified about having negotiations

with Maxim Shamis, a former PRBB lawyer, concerning the 2008 and 2011 loans after September

2015. Def. Ex. 26 at 95:10-13. This testimony does not establish any amount currently

outstanding on the 2011 Loan Agreement, much less the purported principal amount of

$27,601,156.17.

### C.     Zheleznyak also Raised Millions of Dollars from Individual Lenders.

16.     Zheleznyak and Kamo Avagumyan have been friends for many years, met regularly (several times a week), and saw each other at weddings and holidays. Def. Ex. 15 at 127:21-128:2 (Zheleznyak Tr.); Def. Ex. 18 at 14-15, 24:15-17, 46:11-20 (Kamo Avagumyan Tr.).

**RESPONSE:** Undisputed, but noted that the cited evidence at Def. Ex. 18 at 14-

15 does not support the statement.

17.     Beginning around 2010 or 2011, Zheleznyak solicited Kamo Avagumyan to lend funds to FGL, which he and "his partner," Leontiev "controlled," and later to a company called Vennop Trading Ltd. ("Vennop"), which Zheleznyak stated they similarly controlled and described as being "exactly the same business" as FGL. Def. Ex. 18 at 22:10-24:4, 54:2-55:3, 59:4-11, 61:17-23 (Kamo Avagumyan Tr.).

**RESPONSE:** Disputed. Prior to 2015, Mr. Zheleznyak never discussed Kamo

Avagumyan's investments with him. Zheleznyak Decl. ¶ 8. Prior to August 2015,

Mr. Zheleznyak never discussed Vennop with Mr. Avagumyan.  Zheleznyak Decl. ¶ 9.  The statement is also unsupported by the cited evidence.  Specifically, the evidence cited at Def. Ex. 18 at 54:11-17 and 61:17-23 (Kamo Avagumyan Tr.) refers to purported conversations between Yanna Krisiuk, Natalia Abramova, and Mr. Avagumyan, not between Mr. Zheleznyak and Mr. Avagumyan.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Statements allegedly made by Mr. Zheleznyak, Ms. Krisiuk, or Ms. Abramova to Kamo Avagumyan are hearsay and inadmissible against Mr. Leontiev.  Fed. R. Evid. 802.  The cited evidence is inadmissible because Kamo Avagumyan has no personal knowledge of the relationship between Mr. Leontiev and Mr. Zheleznyak, or of the business purportedly operated by Mr. Leontiev or Mr. Zheleznyak.  Fed. R. Evid. 602.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

18.    Zheleznyak represented that Leontiev would invest the loaned funds in securities, ensuring "high percentage rates," and keeping the loaned funds separate and apart from PRBB. Def. Ex. 18 at 22:10-24:4, 44:25-45:7, 59:4-59:11 (Kamo Avagumyan Tr.).

**RESPONSE:**  Disputed.  Prior to 2015, Mr. Zheleznyak never discussed Kamo Avagumyan's investments with him.  Zheleznyak Decl. ¶ 8.  Mr. Zheleznyak never told Mr. Avagumyan that Mr. Leontiev intended to or did use the invested funds for the purpose of securities trading in a business that was kept separate from PRBB.  Zheleznyak Decl. ¶ 10.

Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Statements allegedly made by Mr. Zheleznyak to Kamo Avagumyan are hearsay and inadmissible against Mr. Leontiev.  Fed. R. Evid. 802.  The cited evidence is inadmissible because Kamo Avagumyan has no personal knowledge of the relationship between Mr. Leontiev and Mr. Zheleznyak, or of the business purportedly operated by Mr. Leontiev or Mr. Zheleznyak.  Fed. R. Evid. 602.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

19.     Zheleznyak personally guaranteed the loans, avowing that this also constituted a guarantee from Leontiev because the two were equal partners. Def. Ex. 18 at 44:16-45:25 (Kamo Avagumyan Tr.). Kamo Avagumyan understood Zheleznyak's signature on the notes to represent both Zheleznyak and Leontiev "because I knew that they were partners." Def. Ex. 18 at 59:21-60:3 (Kamo Avagumyan Tr.).

**RESPONSE:**  Disputed.  The statement contradicts the documentary record. Mr. Zheleznyak signed certain promissory notes on behalf of ZAO FG Life, which was the issuer, and certain promissory notes on behalf of PRBB, which was the guarantor.  *See* Pl. Exs. 47, 49. To the extent Mr. Zheleznyak signed certain notes on behalf of ZAO FG Life or PRBB, he did so only in a representative capacity.  Zheleznyak Decl. ¶ 8.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Statements allegedly made by Mr. Zheleznyak to Kamo Avagumyan are hearsay and inadmissible against Mr. Leontiev.  Fed. R. Evid. 802.  The cited evidence is inadmissible because Mr. Avagumyan has no personal knowledge of the relationship

between Mr. Leontiev and Mr. Zheleznyak.  Fed. R. Evid. 602.  Mr. Leontiev further objects to

the statement and to the cited evidence because they are not material to any matter on which

Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

20.    Kamo Avagumyan decided to loan funds, and renewed his loans, relying on
that representation and Leontiev's reputed trading skills. Def. Ex. 18 at 25:15-21, 44:16- 45:25,
46:11-15, 60:7-16 (Kamo Avagumyan Tr.). When discussing the loans with Kamo Avagumyan,
Zheleznyak repeatedly stated that Leontiev's investments using the funds were doing very well.
*Id.*

**RESPONSE:**  Disputed.  The statement contradicts the documentary record.

Mr. Zheleznyak signed certain promissory notes on behalf of ZAO FG Life, which was the issuer,

and certain promissory notes on behalf of PRBB, which was the guarantor.  *See* Pl. Exs. 47, 49.

To the extent Mr. Zheleznyak signed certain notes on behalf of ZAO FG Life or PRBB, he did so

only in a representative capacity.  Zheleznyak Decl. ¶ 8.  The cited testimony omits Kamo

Avagumyan's testimony that he received regular interest payments on the promissory notes every

month for four to five years and chose to renew his notes because he "liked that business."  Pl. Ex.

11 at 35:24-36:7 (Kamo Avagumyan Tr.); Def. Ex. 18 at 60:3-6, 60:17-19 (Kamo Avagumyan

Tr.).

Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  Statements allegedly made by Mr. Zheleznyak to Kamo

Avagumyan are hearsay and inadmissible against Mr. Leontiev.  Fed. R. Evid. 802.  Mr. Leontiev

further objects to the statement and to the cited evidence because they are not material to any

matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d

Cir. 2003).

21.     Kamo Avagumyan provided the loaned funds to Leontiev's and Zheleznyak's representatives, Yanna Krisiuk and Natalia Abramova, in cash, in exchange for the FGL promissory notes. Def. Ex. 18 at 26:24-29:14 (Kamo Avagumyan Tr.).

**RESPONSE:**  Disputed as to the description of Ms. Krisiuk and Ms. Abramova as "representatives" of Mr. Leontiev and Mr. Zheleznyak.  Ms. Krisiuk and Ms. Abramova were members of PRBB's business unit that serviced VIP clients and were thus representatives and employees of the Bank.  Pl. SOF ¶ 40 (undisputed by Mr. Varshavsky).

### D.     Promissory Notes Issued by FGL and Vennop, and Signed by Zheleznyak

22.     Kamo Avagumyan entered into loans with FGL and later Vennop on behalf of his son, Karen Avagumyan, and he intended the Promissory Notes to be an inheritance. Def. Ex. 18 at 31:5-20 ((Kamo Avagumyan Tr.).

**RESPONSE:**  Undisputed that certain promissory notes issued by ZAO FG Life and Vennop are issued in the name of Karen Kamoevich Avagumyan, who is Kamo Avagumyan's son.

23.     The funds loaned by Kamo Avagumyan to FGL or Vennop under Promissory Notes Nos. 1938, 785, 792, 798, 806, 813, 825, 826, 1902, 1904, 1906, 1907, 1908, 1936, 1937, 1941, 1948, 2000, 1953, 1954, 1962, as well as interest thereunder, remain unpaid. Pl. Ex. 47, Pl. SOF ¶¶ 145, 148, 150, 152, 154, 157, 160, 163, 166, 169, 172, 175, 178, 181, 184, 187, 190, 192, 195, 197, 198; Def. Ex. 18 at 26:17-23; 50:4-52:25; 55:8-22; 122:8-123:15 (Kamo Avagumyan Tr.).

**RESPONSE:**  Disputed.  The cited evidence does not support the statement that the enumerated promissory notes remain unpaid.

24.     Zheleznyak personally signed at least 60 of the promissory notes issued to Karen Avagumyan. Promissory Notes Nos. 631, 638, 647, 653, 656, 658, 660, 662, 668, 714, 735, 765, 777, 785, 792, 798, 806, 813, 825, 826, 1902, 1904, 1906, 1907, 1908, 1936, 1937, 1938, 1941, 1948, 2310, 2322, 2323, 2336, 2340, 2344, 2363, 2365, 2369, 2382, 2392, 2399, 2400, 2407, 2408, 2414, 2428, 2444, 2465, 2471, 2489, 2496, 9001, 9077, 9087, 9167, 9179, 9185, 9194, and 9195 were issued to Karen Avagumyan by ZAO FG Life and signed by Zheleznyak. Pl. Exs. 47-51; Def. Ex. 29 (Promissory Notes Nos. 735, 756, 800, 1937, 1953, 2465).

**RESPONSE:**  Disputed.  The statement contradicts the documentary record. Mr. Zheleznyak signed certain promissory notes on behalf of ZAO FG Life, which was the issuer,

and certain promissory notes on behalf of PRBB, which was the guarantor.  *See* Pl. Exs. 47, 49.

To the extent Mr. Zheleznyak signed certain notes on behalf of ZAO FG Life or PRBB, he did so

only in a representative capacity.  Zheleznyak Decl. ¶ 8.

        25.     Kamo Avagumyan agreed to roll over several million dollars of loans in
exchange for promissory notes issued by Vennop rather than FGL. Kamo Avagumyan was told
that the name change from FGL to Vennop was the result of an internal restructuring of the
companies, that FGL was similar to Vennop and also personally controlled by Zheleznyak and
Leontiev, and that it would not substantively change the terms of their arrangement. Def. Ex. 18 at
54:2-55:22, 59:4-11, 61:17-23, 62:22-63:5 (Kamo Avagumyan Tr.).

        **RESPONSE:**  Disputed.  Prior to August 2015, Mr. Zheleznyak never discussed

Vennop with Mr. Avagumyan.  Zheleznyak Decl. ¶ 9.

        Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The cited evidence references statements allegedly made by

Mr. Zheleznyak, Ms. Abramova, and Ms. Krisiuk to Kamo Avagumyan.  These statements are

hearsay and inadmissible against Mr. Leontiev.  Fed. R. Evid. 802.  The cited evidence is also

inadmissible because Kamo Avagumyan has no personal knowledge of the relationship between

Mr. Leontiev and Mr. Zheleznyak.  Fed. R. Evid. 602.  Mr. Leontiev further objects to the

statement and to the cited evidence because they are not material to any matter on which Plaintiff

seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

        26.     In connection with the loans to Vennop, Zheleznyak never mentioned to
Kamo Avagumyan that FGL already had entered into liquidation proceedings. Def. Ex. 18 at
64:10-13 (Kamo Avagumyan Tr.).

        **RESPONSE:**  Disputed to the extent that the cited evidence does not refer to the

Vennop notes in connection with Mr. Zheleznyak's purported non-disclosure of ZAO FG Life's

liquidation proceedings.

### E.   Leontiev's Control Over the Activities of the Offshore Entities and Wonderworks

27.   Leontiev and Zheleznyak testified that—contrary to Zheleznyak's representations to Varshavsky and Avagumyan that Leontiev would invest the loaned funds in securities, independent of PRBB—the loaned funds were in fact treated as part of PRBB's general treasury. Def. Ex. 14 at 108:2-20, 311:14–20 (Leontiev Tr.); Def. Ex. 15 at 66:6-8, 120:8-121:8 (Zheleznyak Tr.). Zheleznyak has additionally described one of the ways the funds were used as "paying out previously attracted deposits and interest." Def. Ex. 66, AVPE0004384 (email from Zheleznyak to Varshavsky, dated February 18, 2016).

**RESPONSE:** Disputed as mischaracterizing the cited evidence and the record. Mr. Leontiev does not dispute that the invested funds were deposited into PRBB's treasury and were used for various Bank projects, including to satisfy Bank obligations. Mr. Leontiev disputes that this testimony was "contrary to Mr. Zheleznyak's representations that Mr. Leontiev would invest the loaned funds in securities" because Mr. Zheleznyak never made such representations. Zheleznyak Decl. ¶¶ 3-4, 8-10; Pl. Response to Def. ASF ¶¶ 6, 10-11, 17-18, 20.

Mr. Leontiev objects to this statement to the extent it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." To the extent the statement relies on Def. Ex. 66, a February 18, 2016 email from Mr. Zheleznyak to Mr. Varshavsky, that email is inadmissible hearsay. Fed. R. Evid. 802.

28.   According to Leontiev, the entities that obtained loans from Avilon and Avagumyan—Ambika, FGL, and Vennop—were just some of hundreds of "off-balance-sheet entities" of PRBB and were part of PRBB's "infrastructure." Def. Ex. 14 at 102:20-103:7, 115:11-19, 167:14-168:4, 178:23-179:2, 219:19-220:12, 247:15-248:7, 265:25-266:16, 272:4-5, 284:8-9, 345:8-13, 352:21-354:14, 355:13-356:12 (Leontiev Tr.). Because these entities were just part of PRBB's "infrastructure," "they couldn't do anything." *Id.* at 220:6-7, 345:8-13.

**RESPONSE:** Undisputed.

29.   Leontiev also testified that these off-shore entities were managed by PRBB employees. Def. Ex. 14 at 117:5-8, 119:17-21, 167:14-168:20, 220:4-12 (Leontiev Tr.).

**RESPONSE:**  Undisputed that PRBB employees operated the off-balance sheet entities affiliated with the Bank, but noted that the statement is misleading to the extent it refers to the entities as "off-shore" entities where the testimony refers to "off-balance" sheet entities.

30.    The off-shore entities were not, however, identified as affiliates or related parties on PRBB's audited financial statements, nor were their liabilities reported on PRBB's books. Pl. Ex. 3 (Probusinessbank Group:  Consolidated Financial Statements for the Year Ended 31 December 2014); Pl. Ex. 4 (Probusinessbank Group: Consolidated Financial Statements for the Year Ended 31 December 2013); Def. Ex. 14 at 49:10-22, 115:20-118:17 (Leontiev Tr.).

**RESPONSE:**  Disputed as mischaracterizing the cited evidence.  Mr. Leontiev testified that "sometimes" off-balance sheet companies were "reflected" on the Bank's financial statements, "depend[ing] on the type of product they provide to the client."  Def. Ex. 14 at 49:14-17; 118:11-16 (Leontiev Tr.).  The statement is vague and misleading as to which off-balance sheet entities it refers to, and misleading to the extent it refers to the entities as "off-shore" entities where the testimony refers to "off-balance" sheet entities.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

31.    Leontiev had ultimate control over the offshore entities, such as Ambika. Def. Ex. 15 at 94:10-22 (Zheleznyak Tr.).

**RESPONSE:**  Disputed as unsupported by the cited evidence and the record.  The cited portion of Mr. Zheleznyak's testimony is ambiguous and does not support the statement.  In the context of discussing whether PRBB was able to use the funds that were invested in Ambika by Avilon, Mr. Zheleznyak was asked if that was "because Sergey Leontiev ultimately controlled both Ambika and Probusinessbank."  Mr. Zheleznyak answered "[c]ontrolled, yes."  Def. Ex. 15 at 94:14-22 (Zheleznyak Tr.).  This answer is unclear and non-responsive to the question.  The statement is also vague with respect to the meaning of "ultimate control."  The evidentiary record shows that Ambika, like other off-balance sheet entities operated by the Bank, was managed by a

PRBB operations group led by a senior manager named Alexandra Vyulkova.  Pl. SOF ¶ 44.

Mr. Leontiev did not create these companies, did not instruct any operations group employees to

create these companies, and had no role in their management.  Pl. SOF ¶ 45.  Mr. Leontiev had

minimal contact with Ms. Vyulkova and did not direct her with respect to any of her job

responsibilities, including any responsibilities pertaining to the management of off-balance sheet

entities like Ambika.  Pl. SOF ¶ 46.

        32.     The offshore entities were created and originally were operated by PRBB employees who reported to Leontiev in his capacity as PRBB's President. Def. Ex. 14 at 116:16-117:8, 119:17-21, 168:17-170:7 (Leontiev Tr.).

**RESPONSE:**  Disputed as mischaracterizing the cited evidence.  Mr. Leontiev

does not dispute that the off-balance sheet entities were created and operated by employees of an

operations group at PRBB, and that the individuals who created and operated these entities were

employed by PRBB during the time that Mr. Leontiev was the President of the Bank.  The

statement is vague as to the meaning of "reported to" and the cited evidence does not support the

statement to the extent it suggests that Mr. Leontiev directly supervised any of the individuals who

created and operated these entities.

        33.     The PRBB employees responsible for implementing the asset transfers between the offshore entities were led by Aleksandra Vyulkova. Def. Ex. 14 at 14:18-15:13, 169:11-15 (Leontiev Tr.); Def. Ex. 15 at 102:9-104:9, 106:22-107:4 (Zheleznyak Tr.). ███████████████████████████████████████████

**RESPONSE:**  Disputed as incomplete.  Mr. Leontiev does not dispute that

Ms. Vyulkova's team was responsible for managing the off-balance sheet entities associated with

PRBB, including making asset transfers between off-balance sheet entities. ████████████

███████████████████████████████████████████████

███████████████████████████████████████████

Mr. Leontiev objects to the statement to the extent it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  To the extent Ms. Zubiy's testimony consists of statements from Ms. Vyulkova to Ms. Zubiy, those statements are inadmissible hearsay.  Fed. R. Evid. 802. Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

34.     Leontiev established the model that governed the transfer of funds among the offshore entities. Def. Ex. 15 at 102:12-104:9, 109:20-110:24, 131:19-22 (Zheleznyak Tr.).

**RESPONSE:**  Disputed as misleading and unsupported by the cited evidence or the record.  Mr. Leontiev does not dispute that he developed rules for PRBB's Treasury's dynamic models or that he was responsible for setting certain financial goals or benchmarks.  However, the record evidence shows that Mr. Leontiev's management philosophy was to provide autonomy and discretion to PRBB's managers, each of whom was incentivized to exercise sound business judgment through a profit sharing model.  Pl. SOF ¶¶ 34-35.  While Mr. Leontiev developed rules and benchmarks, he was not involved in and did not interfere with the day-to-day decision making of the business unit or Treasury managers.  Pl. SOF ¶ 36.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

35.     Leontiev's authorization was necessary to approve the movement of funds in and out of the offshore companies, and Leontiev approved individual fund transfers. Def. Ex. 15 at 131:19-132:15; 140:19-141:21 (Zheleznyak Tr.).

**RESPONSE:**  Disputed as mischaracterizing and unsupported by the cited evidence and the record.  In the cited evidence at Def. Ex. 15 at 131:19-132:15, Mr. Zheleznyak

testified that Mr. Leontiev's authorization was requested and obtained with respect to a $17 million payment from Valkera to Avilon in September 2015. The cited evidence at Def. Ex. 15 at 140:19-141:21 does not support the statement that Mr. Leontiev approved any specific transactions, but rather that he approved a "financial model." The cited evidence does not support the statement to the extent it suggests that Mr. Leontiev approved any individual fund transfers other than the $17 million payment from Valkera, or that his authorization was necessary to approve movement of funds in and out of the off-balance sheet companies. To the contrary, Mr. Leontiev's management philosophy vested individual bank managers with significant responsibility and he played no role in day-to-day decisions. Pl. SOF ¶ 36. Mr. Leontiev further objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment. *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

      36.    As the founder and sole owner of Wonderworks, Leontiev ██████████████ ██████████████████████████████████████████); Leontiev Decl. ¶¶ 27, 30. ██████████████████████████████████████████████████████

**RESPONSE:** Disputed in part as unsupported by the cited evidence.

Mr. Leontiev does not dispute that he was the founder of Wonderworks, that during a certain period of time, he was the sole owner of Wonderworks, ███████████████████ ████████████████████████████████████████████████████████

██████████████  The cited evidence does not support the statement to the extent it states that ██████████████████████████████████████████

      Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

37. █████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████

**RESPONSE:**  Disputed in part as vague and misleading. ██████████
████████████████████████████████████████  The cited evidence is

vague and misleading as to █████████████████████████████████████████

█████████████████████████████  Mr. Leontiev further objects

to the statement and to the cited evidence because they are not relevant or material to any matter

on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320

F.3d 309, 311 (2d Cir. 2003).

38. ████████████████████████████████████████████
██████████████████████████

**RESPONSE:**  Disputed as unsupported by the cited evidence and the record.  The

cited portions of Mr. Leontiev's testimony state that █████████████████████████

████████████████████████████████████.  The cited evidence

does not support the statement that █████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████  Mr. Leontiev objects to the statement and to the cited evidence

because they are not relevant or material to any matter on which Plaintiff seeks summary

judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

39.     Since the founding of Wonderworks in June 2011, Leontiev testified that he
has at all times played the role of a Chief Investment Officer ("CIO"), and that he was the sole
beneficial owner of Wonderworks. Def. Ex. 14 at 33:8-21, 175:9-23 (Leontiev Tr.).

**RESPONSE:**  Disputed as incomplete and misleading.  Mr. Leontiev does not

dispute that he was the sole beneficial owner of Wonderworks from the time it was founded in

June 2011 until December 2015. 

Mr. Leontiev further objects to the statement as vague with respect to the meaning of "played the role."

Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

40. 

**RESPONSE:** Disputed in part. Mr. Leontiev does not dispute that the cited evidence contains the content quoted in the statement, but the cited evidence does not support the statement to the extent it suggests that 

Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

41.

**RESPONSE:**  Disputed in part as mischaracterizing and unsupported by the cited

evidence.  Mr. Leontiev does not dispute that the cited evidence ████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████.  Mr. Leontiev also does not

dispute that ████████████████████████████████████████████████

███████████████████████████  The cited evidence does not support the

statement to the extent it suggests that ██████████████████████████████

████████████████████  Mr. Leontiev further objects to the statement and to

the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks

summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir.

2003).

42. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

**RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

43. ████████████████████████████████████████████████

████████████████████████████████████████████████████

**RESPONSE:**  Disputed as mischaracterizing the cited evidence.  ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████





██████████████████████████████████  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

44.  ████████████████████████████████████████
████████████████████████████████████████████

**RESPONSE:**  Undisputed that ████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

████████████████  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

45.  ████████████████████████████████████████
███████████████████████████████████████████

**RESPONSE:**  Disputed as mischaracterizing and unsupported by the cited evidence.  Mr. Leontiev does not dispute that ██████████████████████
██████████████████████████████████████████████
████████████████████████████  The cited evidence does not support the statement to the extent it ████████████████████████████████
██████████████████

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

46.     Zubiy is a cousin of Zheleznyak's wife, and from approximately August 2011 to September 2013, she worked at PRBB in the risk management department. Def. Ex. 27 at 10:25-11:9, 15:4-18, 17:3-16, 23:15-24 (Zubiy Tr.).

**RESPONSE:**  Undisputed.  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

47.


**RESPONSE:**  Disputed as mischaracterizing the cited evidence.  The testimony does not support the statement to the extent it suggests ███████████████████████████████████████████████████  Mr. Leontiev does not dispute that ████████████████████████████████████████████████████ Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

48.


**RESPONSE:**  Undisputed.  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

49.     When PRBB's license was revoked, Zubiy took over management of the "operations" of various offshore entities from Vyulkova, including the management of Ambika, Vermenda, and Valkera. Def. Ex. 27 at 50:23-52:14 (Zubiy Tr.).

**RESPONSE:**  Disputed as mischaracterizing the cited testimony.  Mr. Leontiev does not dispute that Ms. Zubiy took over the management of certain entities after PRBB's license was revoked, but Ms. Zubiy testified that she began to manage Ambika, Vermenda, and Valkera in August 2016, one year after PRBB's license was revoked.  Def. Ex. 27 at 52:3-7 (Zubiy Tr.). Mr. Leontiev objects to the statement to the extent it suggests that Ms. Zubiy managed these specified companies between August 2015, when PRBB's license was revoked, and August 2016. Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

50.     Vyulkova disappeared sometime after PRBB collapsed. Shcheglyaev Tr. at 43:7-8. Leontiev similarly testified that he did not know Vyulkova's whereabouts since PRBB's license was revoked. Def. Ex. 14 at 163:24-164:4 (Leontiev Tr.).

**RESPONSE:**  Undisputed that Ms. Vyulkova's whereabouts following PRBB's license revocation are unknown.  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

51.     In 2016, Zubiy was an authorized representative for Ambika to communicate with Trident Trust. Def. Ex. 31 at 117:6-119:3 (Kolotnikov Tr.).

**RESPONSE:**  Undisputed that Ms. Zubiy became an authorized representative for Ambika at some point in 2016, but the statement is not supported by the cited evidence. Mr. Kolotnikov testified that, in 2016, he "learned from Ms. Zubiy that she was an authorized representative for Ambika to communicate with Trident Trust," but it does not support the statement to the extent that it purports to establish a time period during which Ms. Zubiy was an authorized representative for Ambika.

Mr. Leontiev objects to the statement to the extent it relies on evidence that would

be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every

statement must be supported by a "citation to evidence which would be admissible, set forth as

required by Fed. R. Civ. P. 56(c)."  The statement relies on Mr. Kolotnikov's testimony that

Ms. Zubiy told him that she was an authorized representative for Ambika.  This testimony is

inadmissible as hearsay and because Mr. Kolotnikov lacks personal knowledge as to whether and

when Ms. Zubiy became an authorized representative for Ambika.  Fed. R. Evid. 602, 802.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not

relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401,

402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

52. ████████████████████████████████
████████████████████████████████████████

**RESPONSE:**  Undisputed that ████████████████████
████████████████████████████████████████

Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or

material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402;

*Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

53.     Kolotnikov also served as Chairman of the National Savings Bank, which
was wholly owned by PRBB, at the same time that he began working for Leontiev's company,
Wonderworks. Def. Ex. 31 at 32:17-33:8 (Kolotnikov Tr.). Kolotnikov worked for the National
Savings bank until December 2015. Def. Ex. 31 at 32:17-33:4 (Kolotnikov Tr.)

**RESPONSE:**  Disputed in part as unsupported by the cited evidence.

Mr. Leontiev does not dispute that Mr. Kolotnikov worked for National Savings Bank until

December 2015, and that Mr. Kolotnikov began to work for Wonderworks in September 2015.

The cited evidence does not support the statement that Mr. Kolotnikov was the "Chairman" of

National Savings Bank during this time period.  Mr. Leontiev objects to the statement and to the

cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

54.  ███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████

**RESPONSE:**  Undisputed.  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

55.  ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████

**RESPONSE:**  Disputed in part as compound and incomplete.  Mr. Leontiev does not dispute ███████████████████████████████████████████████
██████████████████████  Mr. Leontiev also does not dispute that ███████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████  Mr. Leontiev does not dispute that ███████████████████████████████████
The cited evidence does not support the remainder of the statement.  ████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████

Mr. Leontiev objects to the statement to the extent it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  To the extent the statement relies on ███████ ██████████████████████████████████████████████████████████ ██████████████████████ is inadmissible because he lacks personal knowledge of that subject matter.  Fed. R. Evid. 602.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

### F.  Leontiev Concealed His Control over the Offshore Entities By Using Nominee Owners

56.  The offshore entities were registered in the names of nominal owners who did not own or control the entities. Def. Ex. 14 at 140:15-24 (Leontiev Tr.).

**RESPONSE:**  Disputed in part as misleading.  Mr. Leontiev does not dispute that some of the off-balance sheet entities affiliated with PRBB were registered in the names of beneficial owners who did not exercise control over the entities.  Mr. Leontiev disputes the statement to the extent it suggests that the registered owners did not "own" these entities, and to the extent it characterizes the entities as "offshore" where the testimony refers to "off-balance sheet" entities.  Mr. Leontiev objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

57.  The offshore entities, as well as Wonderworks, were stocked with nominal Directors supplied by Trident Trust, a common registrator, who did not exercise independent decision-making authority. Def. Ex. 14 at 162:2-12, 170:8-20, 177:5-9 (Leontiev Tr.).

**RESPONSE:**  Disputed in part as compound, misleading, and mischaracterizing and unsupported by the cited evidence.  Mr. Leontiev does not dispute that ███████████ ██████████████████████████████████████████████████████████████████████ Mr. Leontiev disputes the remainder of the sentence as unsupported by the cited evidence.  The portion of the cited testimony at Def. Ex. 14 at 162:2-12 (Leontiev Tr.) does not pertain to Trident Trust.  The remainder of the cited evidence does not support the statement that ███████ ████████████████████████████████████████████████████████████ The cited evidence does not support the statement that directors who were employed by Trident Trust did not exercise independent decision-making authority.  The cited evidence merely states that ██████████████████████████████████████████████████████████████ ████████  Mr. Leontiev also objects to the statement as vague and misleading as to the meaning of "stocked."

Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

58.    Petros Livanios, in his capacity as a Trident Trust employee, also served as both the Director of Ambika, Pl. SOF ¶ 222, ████████████████████████████ in his capacity as an employee of Trident Trust. Def. Ex. 32, SL0002653; Def. Ex. 33, SL0002833; Def. Ex. 34 SL0011177.

**RESPONSE:**  Disputed as mischaracterizing and unsupported by the cited evidence.  Mr. Leontiev does not dispute that Mr. Livanios serves as the Director of Ambika. █████████████████████████████████████████████████████████████ █████████████████████████████████████████████ in his capacity as a director of Trident Trust.

Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

       59.    Alexander Shcheglyaev was listed as the beneficial owner of Ambika. Def. Ex. 35, SL0018143 (Trident Trust Authorized persons form) at SL0018144; Def. Ex. 14 at 177:16-21 (Leontiev Tr.).

       **RESPONSE:**  Disputed as incomplete, misleading, and mischaracterizing the cited evidence and the record.  Mr. Leontiev does not dispute that Mr. Shcheglyaev became the beneficial owner of Ambika at some point in time, but objects to the statement to the extent that it does not specify the time period during which Mr. Shcheglyaev was the beneficial owner of Ambika.  Mr. Shcheglyaev testified that he became the beneficial owner of certain off-balance sheet companies in or around August 2015 and had no involvement with any off-balance sheet entity associated with PRBB prior to August 2015.  King Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.).  The cited evidence at Def. Ex. 35 is an unsigned Trident Trust Authorized Persons Form for Ambika dated August 31, 2015.  The document was produced by Plaintiff as one of several attachments to an email dated September 7, 2015 from Fedor Brazhnikov to Alexia Andreou, Elizabeth Kitallides, and Marina Michael at Trident Trust.  King Decl. Ex. 3 at SL0018142.  The cover email is not included in any of the exhibits to the Hecker Declaration.  The cited evidence at Def. Ex. 14 at 177:16-21 (Leontiev Tr.) does not identify the time period during which Mr. Shcheglyaev served as the beneficial owner of Ambika.

       Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  To the extent the statement relies on Mr. Leontiev's deposition testimony, that evidence is not admissible because Mr. Leontiev testified that he only

learned of Mr. Shcheglyaev's involvement with Ambika "in the context of the litigation," Def. Ex.

14 at 177:13-15 (Leontiev Tr.), and had no other personal knowledge of such involvement.

Fed. R. Evid. 602.  To the extent the statement relies on Def. Ex. 35, the document and its cover

email are inadmissible hearsay and have not been authenticated by any competent witness.

Fed. R. Evid. 802, 901.

   Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

   60.  Shcheglyaev was listed as the beneficial owner of Vermenda. Def. Ex. 36,
SL0006048 at SL0006051; Def. Ex. 15 at 35:5 – 35:11 (Zheleznyak Tr.).

   **RESPONSE:**  Disputed as incomplete, misleading, and mischaracterizing the cited

evidence and the record.  Mr. Leontiev does not dispute that Mr. Shcheglyaev became the

beneficial owner of Vermenda at some point in time, but objects to the statement to the extent that

it does not specify the time period during which Mr. Shcheglyaev was the beneficial owner of

Vermenda.  The cited evidence at Def. Ex. 15 does not specify the date during which

Mr. Shcheglyaev was the beneficial owner of Vermenda.  Mr. Shcheglyaev testified that he

became the beneficial owner of certain off-balance sheet companies in or around August 2015 and

had no involvement with any off-balance sheet entity associated with PRBB prior to August 2015.

King Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.).  The cited evidence at

Def. Ex. 36 is a power of attorney dated June 7, 2016, procured by the Head of Avilon's Legal

Department, Vitaliy Popov, and his subordinate, Galina Lipina, from Mr. Shcheglyaev following

the filing of this lawsuit.  Mr. Popov and Ms. Lipina also procured a witness statement from

Mr. Shcheglyaev dated June 7, 2016 in which he purported to state that Vermenda was

"registered" "in [his] name" on August 30, 2007.  Mr. Shcheglyaev testified that this document

was false, because Vermenda "could not have been registered in my name on the 30th of August 2007, because it could have only been registered in my name after the August of 2015."  King Decl. Ex. 2 at 74:5-75:11 (Shcheglyaev Tr.).

Mr. Leontiev objects to this statement to the extent it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  To the extent the statement relies on Def. Ex. 36, the document is inadmissible hearsay.  Fed. R. Evid. 802.

Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

61.    Shcheglyaev was listed as the beneficial owner of Valkera Investments Limited. Def. Ex. 46, SL0018192 (Trident Trust Authorized persons form) at SL0018193.

**RESPONSE:**  Disputed as incomplete, misleading, and mischaracterizing the cited evidence and the record.  Mr. Leontiev does not dispute that Mr. Shcheglyaev became the beneficial owner of Valkera at some point in time, but objects to the statement to the extent that it does not specify the time period during which Mr. Shcheglyaev was the beneficial owner of Valkera.  Mr. Shcheglyaev testified that he became the beneficial owner of certain off-balance sheet companies in or around August 2015 and had no involvement with any off-balance sheet entity associated with PRBB prior to August 2015.  King Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.).  The cited evidence at Def. Ex. 46 is an unsigned Trident Trust Authorized Persons Form for Valkera dated August 31, 2015.  The document was produced by Plaintiff as one of several attachments to an email dated September 7, 2015 from Fedor Brazhnikov to Alexia Andreou, Elizabeth Kitallides, and Marina Michael at Trident Trust.

King Decl. Ex. 3 at SL0018142.  The cover email is not included in any of the exhibits to the

Hecker Declaration.

   Mr. Leontiev objects to this statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The document contained in the cited evidence and its cover

email are inadmissible hearsay and have not been authenticated by any competent witness.

Fed. R. Evid. 802, 901.

   Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

   62. Shcheglyaev was also listed as the beneficial owner for the following
companies: Clervaux Investments Limited. SL0018148 (Trident Trust Authorized persons form) at
SLSL0018149. Trigor Trading Limited. SL0018188 (Trident Trust Authorized persons form) at
SL0018189. Fervault Assets Limited. SL0018152 (Trident Trust Authorized persons form) at
SL0018153. Inakima Holdings Limited. SL0018156 (Trident Trust Authorized persons form) at
SL0018157. Ingtine Trading Limited. SL0018160 (Trident Trust Authorized persons form) at
SL0018161. Izatelom Investments Limited. SL0018164 (Trident Trust Authorized persons form)
at SL0018165. Kevina Holdings Limited. SL0018168 (Trident Trust Authorized persons form) at
SL0018169. Lunare Trading Limited. SL0018172 (Trident Trust Authorized persons form) at
SL0018173. Madgwick Holdings Limited. SL0018176 (Trident Trust Authorized persons form) at
SL0018177. Owena Investments Limited. SL0018180 (Trident Trust Authorized persons form) at
SL0018181. Sidran Trading Limited. SL0018184 (Trident Trust Authorized persons form) at
SL0018185. Veregar Holdings Limited. SL0018196 (Trident Trust Authorized persons form) at
SL0018197. Vesvora Trading Limited. SL0018204 (Trident Trust Authorized persons form) at
SL0018205.  Def. Ex. 37.

   **RESPONSE:**  Disputed as incomplete, misleading, and mischaracterizing the cited

evidence and the record.  Mr. Leontiev objects to the statement to the extent that it does not

specify the time period during which Mr. Shcheglyaev was the beneficial owner of any of the

entities enumerated in the statement.  Mr. Shcheglyaev testified that he became the beneficial

owner of certain off-balance sheet companies in or around August 2015 and had no involvement

with any off-balance sheet entity associated with PRBB prior to August 2015.  King Decl. Ex. 2 at

21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.).  The cited evidence at Def. Ex. 37 are

numerous unsigned Trident Trust Authorized Persons Forms dated August 31, 2015.  The

documents were produced by Plaintiff as attachments to an email dated September 7, 2015 from

Fedor Brazhnikov to Alexia Andreou, Elizabeth Kitallides, and Marina Michael at Trident Trust.

King Decl. Ex. 3 at SL0018142.  The cover email is not included in any of the exhibits to the

Hecker Declaration.

Mr. Leontiev objects to this statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The documents contained in the cited evidence and the

cover email are inadmissible hearsay and have not been authenticated by any competent witness.

Fed. R. Evid. 802, 901.

Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

63.     Zheleznyak asked Shcheglyaev to serve as the beneficial owner "of
companies like Ambika, Valkera, other companies". Def. Ex. 15 at 42:15-24 (Zheleznyak Tr.).
Shcheglyaev himself described being recruited by a PRBB employee "to become the beneficiary
of several companies for a certain remuneration." Def. Ex. 38 at 12:16-20 (Shcheglyaev Tr.).

**RESPONSE**:  Undisputed, except to clarify that the time period of any such

conversations was in the summer of 2015.  Mr. Shcheglyaev testified that he became the

beneficial owner of certain off-balance sheet companies in or around August 2015 and had no

involvement with any off-balance sheet entity associated with PRBB prior to August 2015.

King Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.).

Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

64.     Shcheglyaev received a small amount of monetary consideration in exchange for having his name used as the "beneficial" owner.  Def. Ex. 14 at 167:10-25 (Leontiev Tr.); Def. Ex. 15 at 42:22-43:4, 46:6-10 (Zheleznyak Tr.). Def. Ex. 27 at 131:19-132:8 (Zubiy Tr.); Def. Ex. 38 at 13:11-20 (Shcheglyaev Tr.).

**RESPONSE:**  Disputed in part as mischaracterizing the cited evidence and unsupported by the record.  Mr. Leontiev does not dispute that Mr. Shcheglyaev received a small amount of compensation as consideration for serving as a beneficial owner, except to clarify that the time period of any such compensation was after the summer of 2015.  Mr. Shcheglyaev testified that he became the beneficial owner of certain off-balance sheet companies in or around August 2015 and had no involvement with any off-balance sheet entity associated with PRBB prior to August 2015.  King Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.).  The cited evidence does not support the statement to the extent it suggests that the compensation was solely in exchange "for having [Mr. Shcheglyaev's] name used as the 'beneficial' owner."  Mr. Leontiev further states that the cited evidence at Def. Ex. 14 at 167:10-25 (Leontiev Tr.) does not support the statement and has nothing to do with Mr. Shcheglyaev.

Mr. Leontiev objects to this statement to the extent it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  To the extent the statement relies on Ms. Zubiy's testimony, it is inadmissible because she testified that Mr. Zheleznyak told her that Mr. Shcheglyaev received compensation as a beneficial owner.  Ms. Zubiy has no personal knowledge of this fact and

statements made by Mr. Zheleznyak to Ms. Zubiy are inadmissible hearsay.  Fed. R. Evid. 601,

802.  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant

or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402;

*Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

        65.     Shcheglyaev did not exercise any actual control or decision-making
authority, or make any important decisions, over the affairs of Ambika and other companies for
which he was listed as the beneficial owner.  Def. Ex. 15 at 43:13-19, 53:13-22, 72:10-24, 107:5-
11, 186:24-190:7 (Zheleznyak Tr.); Def. Ex. 27 at 126:22-127:6 (Zubiy Tr.).

        **RESPONSE:**  Disputed as vague and incomplete.  Mr. Leontiev does not dispute

that, during a certain period of time, Mr. Shcheglyaev was the beneficial owner of Ambika but did

not exercise control or decision-making authority over Ambika, but objects to the statement to the

extent that it does not specify the relevant time period.  Mr. Shcheglyaev testified that he became

the beneficial owner of certain off-balance sheet companies in or around August 2015 and had no

involvement with any off-balance sheet entity associated with PRBB prior to August 2015.  King

Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.).  The statement is also vague

as to the meaning of "other companies."  Mr. Leontiev objects to the statement and to the cited

evidence because they are not relevant or material to any matter on which Plaintiff seeks summary

judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

        66.     Shcheglyaev knew that all instructions to the Trident Trust corporate
administrators came not from a director or officer of Ambika, but from Aleksandra Vyulkova,
who worked at PRBB and ultimately reported to Zheleznyak and Leontiev, or later from Irina
Zubiy. Def. Ex. 15 at 44:3-16 (Zheleznyak Tr.); Def. Ex. 38 at 15:14-16:2, 42:8-24, 91:24-92:5
(Shcheglyaev Tr.).

        **RESPONSE:**  Disputed as misleading and mischaracterizing the cited evidence.

The statement does not specify the relevant time period.  Mr. Shcheglyaev testified that he became

the beneficial owner of certain off-balance sheet companies in or around August 2015 and had no

involvement with any off-balance sheet entity associated with PRBB prior to August 2015.  King

Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.).  Mr. Leontiev does not

dispute that Mr. Zheleznyak testified that Mr. Shcheglyaev received instructions regarding the off-

balance sheet companies from Alexandra Vyulkova, who worked for the Bank during the time

that Mr. Leontiev and Mr. Zheleznyak were President and First Vice-President of the Bank,

respectively.  However, during the time period that Mr. Shcheglyaev served as the beneficial

owner for the off-balance sheet entities, PRBB was seized by the Russian government and

thereafter Mr. Leontiev and Mr. Zheleznyak no longer served in their roles with the Bank.  The

cited evidence does not support the statement that Ms. Vyulkova gave instructions to Trident

Trust corporate administrators.

Mr. Leontiev objects to this statement to the extent it relies on evidence that would

be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every

statement must be supported by a "citation to evidence which would be admissible, set forth as

required by Fed. R. Civ. P. 56(c)."  The portion of Mr. Shcheglyaev's testimony at Def. Ex. 38 at

42:8-24 states that he learned "[f]rom the unconfirmed information that I have" that Ms. Zubiy

"contacted Trident herself."  This portion of Mr. Shcheglyaev's testimony is not made on personal

knowledge and is inadmissible hearsay.  Fed. R. Evid. 602, 802.

Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

67.    Further, Zheleznyak could not recall a single instance in which Shcheglyaev
himself gave instructions to directors of Ambika or the other companies he "beneficially" owned.
Def. Ex. 15 at 46:25-47:10 (Zheleznyak Tr.).

**RESPONSE:**  Undisputed, except that the statement does not specify the relevant

time period.  Mr. Shcheglyaev testified that he became the beneficial owner of certain off-balance

sheet companies in or around August 2015 and had no involvement with any off-balance sheet entity associated with PRBB prior to August 2015.  King Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.).  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

68.    Shcheglyaev was never given a list of the companies for which he was a "beneficial" owner. He testified that he could not recall the names of the companies he supposedly owned. Def. Ex. 38 at 13:21-14:3, 37:15-18 (Shcheglyaev Tr.).

**RESPONSE:**  Undisputed, except that the statement does not specify the relevant time period.  Mr. Shcheglyaev testified that he became the beneficial owner of certain off-balance sheet companies in or around August 2015 and had no involvement with any off-balance sheet entity associated with PRBB prior to August 2015.  King Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.).  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

69.    Shcheglyaev was not given access to an email account set up in his name that was used to correspond with Ambika's directors (shcheglyaev@gmail.com). Def. Ex. 38 at 35:2-22 (Shcheglyaev Tr.).

**RESPONSE:**  Undisputed, except that the statement does not specify the relevant time period.  Mr. Shcheglyaev testified that he became the beneficial owner of certain off-balance sheet companies in or around August 2015 and had no involvement with any off-balance sheet entity associated with PRBB prior to August 2015.  King Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.).  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

70.     Until December 2015, Vyulkova's team had access to the shcheglyaev@gmail.com account to communicate with Trident Trust. Def. Ex. 27 at 186:21-187:4 (Zubiy Tr.).

**RESPONSE:**  Disputed as mischaracterizing the cited evidence.  In the cited portions of Ms. Zubiy's testimony, she stated that Ms. Vyulkova's team had access to the scheglyaev@gmail.com email address in December 2015, but does not otherwise specify a time period.  Mr. Leontiev also notes that the email address is misspelled in the statement.

Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Ms. Zubiy testified that she had no personal knowledge of "the existence of this email" and that she "later learn[ed]" that Ms. Vyulkova's team had access to this email address in December 2015.  Def. Ex. 27 at 186:19-187:2 (Zubiy Tr.).  This portion of Ms. Zubiy's testimony is not made on personal knowledge and is inadmissible hearsay.  Fed. R. Evid. 602, 802.

Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

71.     Zheleznyak introduced Zubiy to Shcheglyaev and instructed Zubiy to communicate with Shcheglyaev. Def. Ex. 15 at 39:11-22 (Zheleznyak Tr.).

**RESPONSE:**  Undisputed, except that the statement does not specify the relevant time period.  Mr. Zheleznyak testified that he does not remember when he asked Ms. Zubiy to communicate with Mr. Shcheglyaev.  Def. Ex. 15 at 39:22-40:2 (Zheleznyak Tr.). Mr. Shcheglyaev testified that he became the beneficial owner of certain off-balance sheet companies in or around August 2015 and had no involvement with any off-balance sheet entity

associated with PRBB prior to August 2015.  King Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11,

75:6-10 (Shcheglyaev Tr.).  The earliest conversation that Ms. Zubiy testified about having with

Mr. Shcheglyaev was in spring 2016.  King Decl. Ex. 4 138:11-139:15 (Zubiy Tr.).

        Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

        72.    In April 2016, Zubiy sent e-mails purporting to be on behalf of Shcheglyaev
using an email account she established with his name at gmail (Alex.shcheglyaev@gmail.com) in
order to communicate with Trident Trust. Def. Ex. 39, SL0032783; Def. Ex. 27 at 111:5-22,
116:16-117:17 (Zubiy Tr.).

        **RESPONSE:**  Undisputed, except to note that the email address is misspelled in

the statement.  Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

        73.    Zubiy did not notify Trident Trust that Shcheglyaev was not the actual
sender of the emails. Def. Ex. 27 at 114:12-115:5 (Zubiy Tr.).

        **RESPONSE:**  Disputed as mischaracterizing the cited evidence and the record.

Mr. Leontiev admits that Ms. Zubiy did not tell Trident Trust that Mr. Shcheglyaev was not the

sender of emails from the alex.scheglyaev@gmail.com email address.  However, Ms. Zubiy

testified that she had a "phone call with Mr. Shcheglyaev, myself, and Farida from Trident Trust,

when I pointed out that there will be [a] new e-mail address used to obtain information regarding

the companies where Mr. Shcheglyaev is beneficial owner."  King Decl. Ex. 4 at 112:11-113:14,

197:22-198:12 (Zubiy Tr.).  Mr. Leontiev objects to the statement and to the cited evidence

because they are not relevant or material to any matter on which Plaintiff seeks summary

judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

74.     In May 2016, after the commencement of this action, and acting on Zheleznyak's request, Zubiy sent Svetlana Mishustina, a former PRBB employee, the Alex.shcheglyaev@gmail.com account name and password so that Mishustina could delete it. Def. Ex. 27 at 117:23-121:3 (Zubiy Tr.).

**RESPONSE:**  Undisputed, except to note that the email address is misspelled in

the statement.  Mr. Leontiev objects to this statement to the extent it relies on evidence that would

be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every

statement must be supported by a "citation to evidence which would be admissible, set forth as

required by Fed. R. Civ. P. 56(c)."  Ms. Zubiy's testimony with respect to any requests that she

received from Mr. Zheleznyak is inadmissible hearsay.  Fed. R. Evid. 802.  Mr. Leontiev further

objects to the statement and to the cited evidence because they are not relevant or material to any

matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*,

320 F.3d 309, 311 (2d Cir. 2003).

75.     Zubiy never provided Shcheglyaev the password to the Alex.shcheglyaev@gmail.com email account. Mishustina was the only other person who was provided with access to the email account and password, for the limited purpose of deleting the account. Def. Ex. 27 at 118:3-119:9 (Zubiy Tr.).

**RESPONSE:**  Disputed as misleading and mischaracterizing the record.

Mr. Leontiev does not dispute that Ms. Zubiy did not provide Mr. Shcheglyaev with the password

to the alex.scheglyaev@gmail.com email account and that Ms. Mishustina did receive the

password to the account for the purpose of deleting it.  Ms. Zubiy testified that Mr. Shcheglyaev

never received the password to the account because "[h]e never asked about it."  Def. Ex. 27 at

118:5-8 (Zubiy Tr.).  Ms. Zubiy also testified that Mr. Shcheglyaev was informed that she would

use an email address with his name on it and that "he said yes to all the changes that were

happening at that time."  King Decl. Ex. 4 at 112:11-113:14 (Zubiy Tr.).  Mr. Leontiev objects to

the statement and to the cited evidence because they are not relevant or material to any matter on

which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

**G.** **FGL Was Voluntarily Liquidated, and That Liquidation Has Been Reversed Twice.**

76. On February 20, 2015, FGL's sole shareholder, OOO Alivikt, signed a resolution providing for its voluntary liquidation. Def. Ex. 40, SL0038683.

**RESPONSE:**  Undisputed that Marina Krylova signed a resolution on February 20, 2015 in her capacity as general director of OOO Alivikt authorizing the voluntary liquidation of ZAO FG Life.

Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 40, a February 20, 2015 ZAO FG Life shareholder's resolution, which is inadmissible hearsay and has not been authenticated by any competent witness.  Fed. R. Evid. 802, 901.

77. Leontiev testified that he could not recall the nature or extent of his involvement in the decision to liquidate FGL. Def. Ex. 14 at 109:2-24, 113:16-115:19 (Leontiev Tr.).

**RESPONSE:**  Disputed as misleading.  Mr. Leontiev does not dispute that he testified that he had no recollection of the events surrounding the liquidation of ZAO FG Life. Mr. Leontiev in fact had no involvement in the liquidation of ZAO FG Life.  Leontiev Decl. ¶ 33.

78. FGL's creditors were not informed of its impending liquidation. Def. Ex. 18 at 64:10-13 (Kamo Avagumyan Tr.); Def. Ex. 41 at 59:16-19 (Karen Avagumyan Tr.).

**RESPONSE:**  Disputed.  ZAO FG Life published a notice of voluntary liquidation in the April 1, 2015 issue of the State Registration Bulletin.  Pl. Ex. 57.

79.     FGL's liquidation was finalized on August 5, 2015. Def. Ex. 42, SL0038698.

**RESPONSE:**  Undisputed.

80.     The accounting statements prepared in connection with the liquidation of FGL failed to reflect the millions of dollars owed to Avagumyan and instead falsely stated that FGL had no liabilities whatsoever: Despite borrowing millions of dollars on promissory notes, an FGL profit and loss statement dated June 8, 2015 shows absolutely zero financial activity undertaken by FGL between January to June 2014 and between January to June 2015. Def. Ex. 43, SL0038687.  An interim liquidation balance sheet and a liquidation balance sheet, dated June 8 and June 30, 2015, respectively, both show that FGL on Dec. 31, 2013 had a final balance of 23,000 RUB, on Dec. 31, 2014 it had 9,000 RUB, and by the reporting date in June 2015 there was no balance.  Def. Ex. 44 SL0038685; Def. Ex. 47, SL0038689.  Despite borrowing millions of dollars on promissory notes that remain unpaid, both balance sheets list zero loans and borrowings.  *Id.*

**RESPONSE:**  Disputed as characterized.  Mr. Leontiev does not dispute that the

cited documents do not reflect any debt allegedly owed to Mr. Avagumyan, or that the figures in

the statement are contained in the cited evidence.  Mr. Leontiev objects to this statement in full

because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule

56.1(d), which requires that every statement must be supported by a "citation to evidence which

would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def.

Exs. 43, 44, and 47, which are ZAO FG Life's profit and loss statement, interim liquidation

balance sheet, and liquidation balance sheet, respectively.  These documents are inadmissible

hearsay and have not been authenticated by any competent witness.  Fed. R. Evid. 802, 901.

Mr. Leontiev objects to the statement and to the cited evidence because they are not material to

any matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311

(2d Cir. 2003).

81.     The financial statements show that, as of June 2015, FGL had no assets to repay its obligations under the promissory notes. Def. Ex. 44 SL0038685; Def. Ex. 47, SL0038689.

**RESPONSE:**  Disputed as characterized.  Mr. Leontiev does not dispute that the cited documents state that ZAO FG Life had assets of 23,000 RUR as of June 2015.  Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Exs. 44 and 47, which are ZAO FG Life's interim liquidation balance sheet and liquidation balance sheet, respectively.  These documents are inadmissible hearsay and have not been authenticated by any competent witness.  Fed. R. Evid. 802, 901.  Mr. Leontiev objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

82.     The interim liquidation balance sheet dated June 8, 2015 and the liquidation balance sheet dated June 30, 2015 were approved as accurate by Leontiev's and Zheleznyak's company OOO Alivikt as FGL's sole shareholder by resolutions dated June 8, 2015 and June 30, 2015, respectively. Def. Ex. 48, SL0038691; Def. Ex. 49, SL0038692.

**RESPONSE:**  Undisputed that Marina Krylova signed two resolutions, dated June 8, 2015 and June 30, 2015, respectively, in her capacity as general director of OOO Alivikt approving the interim liquidation balance sheet and the liquidation balance sheet of ZAO FG Life.

Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Exs. 48 and 49, which are resolutions dated June 8, 2015 and June 30, 2015, respectively.  These documents are inadmissible hearsay and have not been authenticated by any competent witness.  Fed. R. Evid. 802, 901.

83.     On January 27, 2017, according to the Russian State registrar, the liquidation of FGL has again been cancelled, making it again possible for the company to be placed into bankruptcy proceedings. Def. Ex. 20 (January 2017 ZAO FG Life Corporate Registry Record).

**RESPONSE:**  Disputed in part.  Mr. Leontiev does not dispute that the Russian State registrar records reflect that the voluntary liquidation of ZAO FG Life was cancelled on January 27, 2017, but disputes the statement to the extent it suggests that the company may be placed in bankruptcy proceedings as improper speculation unsupported by the cited evidence.

### H.     The Offshore Entities Engaged in Economically Indefensible Transactions with Wonderworks, for the Ultimate Benefit of Leontiev.

84.     Ambika and Wonderworks engaged in hundreds of forward sale transactions involving securities and bonds in 2014 and 2015, which resulted in Ambika making payments of roughly $17 million to Wonderworks. Def. Ex. 7 at ¶¶ 37, 49 (Rollins Report); Def. Ex. 19 at 2 (Laurence Report). The overall effect of these transactions, over a period of a little more than year, was a net gain to Wonderworks and net loss to Ambika of $16.58 million.  Def. Ex. 7 at ¶¶ 37, 49 (Rollins Report); Def. Ex. 19 at 2 (Laurence Report).

**RESPONSE:**  Undisputed that Ambika and Wonderworks engaged in a series of forward sales transactions involving securities and bonds in 2014 and 2015, which resulted in a net gain to Wonderworks of approximately $16.58 million.  Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the statement because it relies solely on the expert reports of Charles Laurence and John Rollins.  Expert testimony may be introduced at the summary judgment stage through an affidavit, but the affidavit must satisfy Rule 56's requirements that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge."  Fed. R. Civ. P. 56(c)(4). Here, Defendant did not submit a declaration or affidavit from Mr. Laurence or Mr. Rollins, but instead attached their reports to an attorney affidavit.  *See* Hecker Decl. ¶¶ 9, 21 and Def. Exs. 7,

19.  Such an unsworn report is hearsay and cannot be considered on summary judgment.  *See, e.g.*, *Fall v. N.Y. State United Teachers*, 289 F. App'x 419, 421 n.3 (2d Cir. 2008) (summary order); *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005) ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of [former] Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support.").

Mr. Leontiev further objects to the statement and to the cited evidence because they are not material to any matter on which Plaintiff seeks summary judgment.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

85.     The series of 2014 and 2015 forward sale transactions Ambika engaged in with Wonderworks pursuant to an ISDA Master Agreement, Pl. Ex. 53, failed to take into account costs such as counterparty risk and transaction costs that one would expect to see in contracts negotiated at arms-length between unrelated parties. Def. Ex. 7 at ¶ 43 (Rollins Report).

**RESPONSE:**  Undisputed that Ambika engaged in a series of forward sales transactions with Wonderworks pursuant to an ISDA Master Agreement in 2014 and 2015. Mr. Leontiev objects to the remainder of the statement because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the statement because it relies solely on Mr. Rollins's expert report.  Expert testimony may be introduced at the summary judgment stage through an affidavit, but the affidavit must satisfy Rule 56's requirements that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge."  Fed. R. Civ. P. 56(c)(4).  Here, Defendant did not submit a declaration or affidavit from Mr. Rollins, but instead attached his report to an attorney affidavit.  *See* Hecker Decl. ¶ 9; Def. Ex. 7.  Such an unsworn report is hearsay and cannot be considered on summary judgment.  *See, e.g.*, *Fall v. N.Y.*

*State United Teachers*, 289 F. App'x 419, 421 n.3 (2d Cir. 2008) (summary order); *Berk v. St.*

*Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005) ("Courts in this Circuit

have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of

[former] Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without

additional affidavit support.").

Mr. Leontiev further objects to the statement and to the cited evidence because they

are not material to any matter on which Plaintiff seeks summary judgment. *Kinsella v. Rumsfeld*,

320 F.3d 309, 311 (2d Cir. 2003).



86.

**RESPONSE:**  Disputed as mischaracterizing the cited evidence.  Mr. Leontiev

testified that

Mr. Leontiev testified that

would "breach" the basic principles of his management

philosophy which is that business unit heads "are independent and make their own decisions."

Def. Ex. 14 at 270:8-20 (Leontiev Tr.).

This testimony establishes that

Mr. Leontiev further objects to the statement and to the cited evidence because they are not

material to any matter on which Plaintiff seeks summary judgment. *Kinsella v. Rumsfeld*, 320

F.3d 309, 311 (2d Cir. 2003).

1.      *Ambika*

    A.      <u>Structure & General Financial Position</u>

87.      As Chairman of Probusinessbank, Leontiev created the financing structure that allowed for offshore entities, and the people responsible for implementing that structure were PBB employees who ultimately reported to him. Def. Ex. 15 at 101:13-105:4 (Zheleznyak Tr.).

**<u>RESPONSE</u>:** Disputed as unsupported by the cited evidence or the record.  The statement is vague as to the meaning of "Chairman."  Mr. Leontiev was the President of PRBB and Chairman of the Board of Directors.  Leontiev Decl. ¶ 5.  The cited portion of Mr. Zheleznyak's testimony explains that a "financial department[]" operated by Alexandra Vyulkova and Fedor Brazhnikov was responsible for making decisions about Ambika's business activities.  Def. Ex. 15 at 101:21-102:23 (Zheleznyak Tr.).  Mr. Zheleznyak explained that the department was "very independent" and refused to testify that Ms. Vyulkova "worked for Sergey Leontiev ultimately" because under that logic "the drivers" and "cleaning ladies" also worked for Mr. Leontiev who was "the CEO of the company."  Def. Ex. 15 at 103:3, 104:19-105:4 (Zheleznyak Tr.).  Mr. Zheleznyak also stated that Mr. Leontiev has "probably only seen [Ms. Vyulkova] two times in his life."  Def. Ex. 15 at 104:12-13 (Zheleznyak Tr.).

    The statement is also vague as to the meaning of "ultimately reported" and inconsistent with the record evidence.  The record evidence shows that Mr. Leontiev's management philosophy was to provide autonomy and discretion to PRBB's managers, each of whom was incentivized to exercise sound business judgment through a profit sharing model.  Pl. SOF ¶¶ 34-35.  While Mr. Leontiev developed rules for PRBB's Treasury's dynamic models, he was not involved in and did not interfere with day-to-day decision making of the business unit or Treasury managers.  Pl. SOF ¶ 36.

    88.      Leontiev ultimately controlled Ambika. Def. Ex. 15 at 94:14-22 (Zheleznyak Tr.).

**RESPONSE:**  Disputed as unsupported by the cited evidence or the record.  The cited portion of Mr. Zheleznyak's testimony is ambiguous and does not support the statement.  In the context of discussing whether PRBB was able to use the funds that were invested in Ambika by Avilon, Mr. Zheleznyak was asked if that was "because Sergey Leontiev ultimately controlled both Ambika and Probusinessbank."  Mr. Zheleznyak answered "Controlled, yes."  Def. Ex. 15 at 94:14-22 (Zheleznyak Tr.).  This answer is unclear and non-responsive to the question.  The statement is also vague with respect to the meaning of "ultimately controlled."  The evidentiary record shows that Ambika, like other off-balance sheet entities operated by the Bank, was managed by a PRBB operations group led by a senior manager named Alexandra Vyulkova.  Pl. SOF ¶ 44.  Mr. Leontiev did not create these companies, did not instruct any operations group employees to create these companies and had no role in their management.  Pl. SOF ¶ 45.  Mr. Leontiev had minimal contact with Ms. Vyulkova and did not direct her with respect to any of her job responsibilities, including any responsibilities pertaining to the management of off-balance sheet entities like Ambika.  Pl. SOF ¶ 46.

89.    As of December 31, 2012, Ambika had no employees and no operating expenses other than licensing fees, brokerage fees and compensation for auditors and other professionals. Def. Ex. 51 (2012 Ambika Financials, n.6 at AVP0005580).

**RESPONSE:**  Undisputed that the cited evidence states the information contained in the statement.  Mr. Leontiev also does not dispute that Ambika had no employees or operating expenses beyond those enumerated above because Ambika was operated by employees of a PRBB business unit headed by Alexandra Vyulkova as an off-balance sheet entity of the Bank.  Pl. SOF ¶¶ 43-44.

Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." The statement relies on Def. Ex. 51, which is Ambika's 2012 financial statement. This document is inadmissible hearsay and has not been authenticated by any competent witness. Fed. R. Evid. 802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003). Neither Mr. Varshavsky nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions about Ambika's financial statements or financial status, or asked to see any documents representing Ambika's financial health, including its financial statements, at any point in time. Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6 (Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

90.     Ambika had net losses of $17 million in 2011, $37 million in 2012, and $66 million in 2013. Def. Ex. 52 (2013 Ambika Financials at AVP0005592); Def. Ex. 51 (2012 Ambika Financials at AVP0005571).

**RESPONSE:** Undisputed that the cited evidence states the information contained in the statement. Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." The statement relies on Def. Exs. 51 and 52, which are Ambika's 2012 financial statement and 2013 restated financial statement, respectively. These documents are inadmissible hearsay and have not been authenticated by any competent witness. Fed. R. Evid. 802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Neither Mr. Varshavsky nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions about Ambika's financial statements or financial status, or asked to see any documents representing Ambika's financial health, including its financial statements, at any point in time. Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhov Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6 (Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

91.    As of December 31, 2013, Ambika's share capital was one share valued at two dollars. Def. Ex. 52 (2013 Ambika Financials at AVP0005604).

**RESPONSE:**  Undisputed that the cited evidence states the information contained in the statement.  Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 52, which is Ambika's 2013 restated financial statement.  This document is inadmissible hearsay and has not been authenticated by any competent witness.  Fed. R. Evid. 802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Neither Mr. Varshavsky nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions about Ambika's financial statements or financial status, or asked to see any documents representing Ambika's financial health, including its financial statements, at any point in time.

Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6 (Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

      92.    Ambika's 2011 Audited Financial Statements contain a "going concern" statement indicating that Ambika was "dependent upon the continuing financial support of its shareholder," "without which there would be significant doubt about its ability to continue as a going concern." The statement continues, "The shareholder has indicated its intention to continue providing such financial assistance to the Company to enable it to continue as a going concern and to meet its obligation as they fall due." Def. Ex. 50 (2011 Ambika Financials at AVP0005551).

**RESPONSE:** Undisputed that the cited evidence states the information contained in the statement. Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." The statement relies on Def. Ex. 50, which is Ambika's 2011 financial statement. This document is inadmissible hearsay and has not been authenticated by any competent witness. Fed. R. Evid. 802, 901.

      Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003). Fed. R. Evid. 401, 402. Neither Mr. Varshavsky nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions about Ambika's financial statements or financial status, or asked to see any documents representing Ambika's financial health, including its financial statements, at any point in time. Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6 (Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

93.     Ambika's 2012 Audited Financial Statements contain a "going concern" statement indicating that Ambika was "dependent upon the continuing financial support of its shareholder," "without which there would be significant doubt about its ability to continue as a going concern." The statement continues, "The shareholder has indicated its intention to continue providing such financial assistance to the Company to enable it to continue as a going concern and to meet its obligation as they fall due." Def. Ex. 51 (2012 Ambika Financials at AVP0005570).

**RESPONSE:**  Undisputed that the cited evidence states the information contained in the statement.  Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 51, which is Ambika's 2012 financial statement.  This document is inadmissible hearsay and has not been authenticated by any competent witness.  Fed. R. Evid. 802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Neither Mr. Varshavsky nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions about Ambika's financial statements or financial status, or asked to see any documents representing Ambika's financial health, including its financial statements, at any point in time. Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6 (Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

94.     Ambika's 2013 Audited Financial Statements contain a "going concern" statement indicating that Ambika was "dependent upon the continuing financial support of its shareholder," "without which there would be significant doubt about its ability to continue as a going concern." The statement continues, "The shareholder has indicated its intention to continue providing such financial assistance to the Company to enable it to continue as a going concern and to meet its obligation as they fall due." Def. Ex. 52 (2013 Ambika Financials at AVP0005591).

**RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to this statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 52, which is Ambika's

2013 restated financial statement.  This document is inadmissible hearsay and has not been

authenticated by any competent witness.  Fed. R. Evid. 802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Neither Mr. Varshavsky

nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions

about Ambika's financial statements or financial status, or asked to see any documents

representing Ambika's financial health, including its financial statements, at any point in time.

Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9,

39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6

(Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

95.



**RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to this statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The statement relies on ███████████████████
█████████████████████████████████████████████  These documents are

inadmissible hearsay and have not been authenticated by any competent witness.  Fed. R. Evid.

802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Neither Mr. Varshavsky

nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions

about Ambika's financial statements or financial status, or asked to see any documents

representing Ambika's financial health, including its financial statements, at any point in time.

Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9,

39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6

(Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

96.     Neither the reissued 2013 Ambika Audited Financial Statements nor the
2016 Auditor's Letter that accompany them acknowledge that there was a previous set of 2013
Audited Financial Statements or explain a restatement was issued. Def. Ex. 52 (2013 Ambika
Financials with 2016 Auditor's Letter, AVP0005586-5606).

**RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to this statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 52, which is Ambika's

2013 restated financial statement.  This document is inadmissible hearsay and has not been

authenticated by any competent witness.  Fed. R. Evid. 802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003). Neither Mr. Varshavsky nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions about Ambika's financial statements or financial status, or asked to see any documents representing Ambika's financial health, including its financial statements, at any point in time. Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6 (Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

97.

**RESPONSE:** Undisputed that the cited evidence states the information contained in the statement. Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." The statement relies on 

 This document is inadmissible hearsay and has not been authenticated by any competent witness. Fed. R. Evid. 802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003). Neither Mr. Varshavsky nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions about Ambika's financial statements or financial status, or asked to see any documents representing Ambika's financial health, including its financial statements, at any point in time.

Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6 (Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

98.   The 2013 Ambika Audited Financial Statements with 2016 Auditor's Letter report a net loss of $66,363,733 for the year ending December 31, 2013. Def. Ex. 52 (2013 Ambika Financials with 2016 Auditor's Letter at AVP0005592).

**RESPONSE:**   Undisputed that the cited evidence states the information contained in the statement.  Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 52, which is Ambika's 2013 restated financial statement.  This document is inadmissible hearsay and has not been authenticated by any competent witness.  Fed. R. Evid. 802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; Kinsella v. Rumsfeld, 320 F.3d 309, 311 (2d Cir. 2003).  Neither Mr. Varshavsky nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions about Ambika's financial statements or financial status, or asked to see any documents representing Ambika's financial health, including its financial statements, at any point in time. Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6 (Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

99.   The line "Total equity" on the Statements of Financial Position in Ambika's 2012 Audited Financial Statements shows a negative net equity of $52.9 million for the year ending December 31, 2012. Def. Ex. 51 (2012 Ambika Financials at AVP0005572).

**RESPONSE:**  Undisputed that the cited evidence states the information contained in the statement.  Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 51, which is Ambika's 2012 financial statement.  This document is inadmissible hearsay and has not been authenticated by any competent witness.  Fed. R. Evid. 802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Neither Mr. Varshavsky nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions about Ambika's financial statements or financial status, or asked to see any documents representing Ambika's financial health, including its financial statements, at any point in time.  Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6 (Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

100.

**RESPONSE:**  Undisputed that the cited evidence states the information contained in the statement.  Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on

██████████████████████   This document is inadmissible hearsay and has not

been authenticated by any competent witness.  Fed. R. Evid. 802, 901.

       Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Neither Mr. Varshavsky

nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions

about Ambika's financial statements or financial status, or asked to see any documents

representing Ambika's financial health, including its financial statements, at any point in time.

Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9,

39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at  22:3-6

(Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

       101.    The line "Total equity" on the Statements of Financial Position in Ambika's
2013 Audited Financial Statements accompanying the 2016 Auditor's Letter shows a negative net
equity of $52.9 million for the year ending December 31, 2012. Def. Ex. 52 (2013 Ambika
Financials with 2016 Auditor's Letter at AVP0005593).

       **RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to this statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 52, which is Ambika's

2013 restated financial statement.  This document is inadmissible hearsay and has not been

authenticated by any competent witness.  Fed. R. Evid. 802, 901.

       Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Neither Mr. Varshavsky

nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions about Ambika's financial statements or financial status, or asked to see any documents representing Ambika's financial health, including its financial statements, at any point in time. Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6 (Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

102. █████████████████████████████████████████████████████████████████

**RESPONSE:**  Undisputed that the cited evidence states that ██████████████ ████████████████████████████████████ Mr. Leontiev objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." The statement relies on ██████████████████████████████████████████ This document is inadmissible hearsay and has not been authenticated by any competent witness. Fed. R. Evid. 802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003). Neither Mr. Varshavsky nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions about Ambika's financial statements or financial status, or asked to see any documents representing Ambika's financial health, including its financial statements, at any point in time. Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9,

39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at  22:3-6

(Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

103.     Ambika's 2013 Audited Financial Statements accompanying the 2016 Auditor's Letter report accumulated losses of $119,318,448 as of December 31, 2013. Def. Ex. 52 (2013 Ambika Financials with 2016 Auditor's Letter at AVP0005594).

**RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to this statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 52, which is Ambika's

2013 restated financial statement.  This document is inadmissible hearsay and has not been

authenticated by any competent witness.  Fed. R. Evid. 802, 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Neither Mr. Varshavsky

nor anyone at Avilon conducted any due diligence with respect to Ambika, asked any questions

about Ambika's financial statements or financial status, or asked to see any documents

representing Ambika's financial health, including its financial statements, at any point in time.

Pl.  Ex. 9 at 27:10-14, 30:14-24, 79:19-21 (Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9,

39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at 76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at 22:3-6

(Popov Tr.); King Decl. Ex. 7 at 16:14-18:2 (Semenova Tr.).

104.   There is no evidence in the record that Avilon was provided information about Ambika's financial condition, even though it continued to renew its loans to Ambika during the time when Ambika's financial statements reflected significant negative equity and "going concern" audit opinions.  Def. Ex. 21 at 24:20-25 (Monakhova Tr.).

**RESPONSE:**  Undisputed that Avilon did not receive information about Ambika's

financial condition because neither Mr. Varshavsky nor anyone at Avilon conducted any due

diligence with respect to Ambika, asked any questions about Ambika's financial statements or

financial status, or asked to see any documents representing Ambika's financial health, including

its financial statements, at any point in time.  Pl. Ex. 9 at 27:10-14, 30:14-24, 79:19-21

(Varshavsky Tr.); King Decl. Ex. 5 at 23:19-25:9, 39:22-40:2 (Monakhova Tr.); Pl. Ex. 13 at

76:3-15 (Monakhova Tr.); King Decl. Ex. 6 at  22:3-6 (Popov Tr.); King Decl. Ex. 7 at 16:14-18:2

(Semenova Tr.).

B.    <u>Ambika Loans</u>

105.    Ambika and other PRBB offshore entities generally offered lenders interest
rates of 12% to 15%. Def. Ex. 54 at ¶ 23 (Voronin report). Ambika raised money from Avilon at
interest rates of 11% to 15%. Pl. Exs. 24, 36.

<u>**RESPONSE:**</u>  Disputed as mischaracterizing the record.  PRBB offered wealth

management products in the form of high-interest rate investments offering a rate of return of

between 10 and 15% that were structured using domestic and offshore off-balance sheet

companies.  Pl. SOF ¶ 39.  Mr. Leontiev does not dispute that Ambika obtained investments from

Avilon at interest rates ranging between 11 and 15%.

Mr. Leontiev objects to this statement to the extent it relies on evidence that would

be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every

statement must be supported by a "citation to evidence which would be admissible, set forth as

required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the statement to the extent that it is

based on the expert report of Vadim Voronin.  Expert testimony may be introduced at the

summary judgment stage through an affidavit, but the affidavit must satisfy Rule 56's

requirements that "[a]n affidavit or declaration used to support or oppose a motion must be made

on personal knowledge."  Fed. R. Civ. P. 56(c)(4).  Here, Defendant did not submit a declaration

65

or affidavit from Mr. Voronin, but instead attached his report to an attorney affidavit. *See* Hecker Decl. ¶ 56; Def. Ex. 54. Such an unsworn report is hearsay and cannot be considered on summary judgment. *See, e.g., Fall v. N.Y. State United Teachers*, 289 F. App'x 419, 421 n.3 (2d Cir. 2008) (summary order); *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005) ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of [former] Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support.").

106.



**RESPONSE:** Disputed. The cited evidence is

Mr. Leontiev objects to the cited evidence as incomplete because Def. Ex. 5 does not contain all of the attachments to the cover email.

Mr. Leontiev further objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

The email and its attachments are inadmissible hearsay and have not been authenticated by any competent witness. Fed. R. Evid. 802, 901. Mr. Leontiev

further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).



107. ██████████████████████████████████████

████████████

**RESPONSE:**  Disputed.  The cited evidence is ████████████████

████████████████████████████████████████████████ The cited evidence does not support the statement that ████████████████████

███████████  Mr. Leontiev also objects to the characterization of the cited documents as "undated" as ████████████████████  Mr. Leontiev objects to the cited evidence as incomplete because Def. Ex. 5 does not contain all of the attachments to the cover email.

Mr. Leontiev further objects to this statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." ██████████████████████

████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████  The email and its attachments are inadmissible hearsay and have not been authenticated by any competent witness. Fed. R. Evid. 802, 901.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material

to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v.*

*Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

108.    According to Leontiev, Vermenda was an offshore company managed by
PRBB employees. Def. Ex. 14 at 235:7-13 (Leontiev Tr.).

**RESPONSE:**  Undisputed that Vermenda was a Cyprus-based company managed

by PRBB employees, but noted that the cited evidence supports the statement that Vermenda was

an "off-balance sheet" company, not an "offshore" company.  Mr. Leontiev objects to the

statement and to the cited evidence because they are not relevant or material to any matter on

which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d

309, 311 (2d Cir. 2003).

109.    Ambika purchased subordinated debt issued by Probusinessbank that paid
out approximately 6.6%. Def. Ex. 55, SL0035142; Def. Ex. 56, SL0015624.

**RESPONSE:**  Undisputed.

2.    *Wonderworks*

A.    <u>General Information</u>

110.    The first audited financial statements for Wonderworks cover the period of
June 20, 2011 to December 31, 2011, and were authorized for issue on April 23, 2012. Def. Ex. 57
(2011 Wonderworks Financials at AVP0005615).

**RESPONSE:**  Undisputed.  Mr. Leontiev objects to the statement and to the cited

evidence because they are not relevant or material to any matter on which Plaintiff seeks summary

judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

111.    Wonderworks' total equity as of year end 2011 was negative $21,724.
Wonderworks' total equity as of year end 2012 was negative $8,017,746. Def. Ex. 58 (2012
Wonderworks Financials at AVP0005632).

**RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

112.    As of year end 2011, Wonderworks had an operating loss of $21,873.  As of year end 2012, Wonderworks had an operating loss of $4,224,040. Def. Ex. 58 (2012 Wonderworks Financials at AVP0005631).

**RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

113.    Wonderworks' 2011 Audited Financial Statements contains a "going concern" statement.  Def. Ex. 57 (2011 Wonderworks Financials at AVP0005611, AVP0005613). The report of Wonderworks' Board of Directors and Other Officers accompanying the company's 2012 Audited Financial Statements also contains a "going concern" statement. Def. Ex. 58 (2012 Wonderworks Financials at AVP0005627).

**RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

114.    Wonderworks had no credit history before 2011. Ex. 57 (2011 Wonderworks Financials).

**RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

115.    As of year end 2012, Wonderworks had $94,300,839 in unsecured borrowings at interest rates ranging from 3.2% to 4.5% per year. Ex. 58 (2012 Wonderworks Financials at AVP0005643).

**RESPONSE:** Undisputed that the cited evidence states the information contained in the statement.  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

116.    As of year end 2013, Wonderworks had $141,678,440 in unsecured borrowings at interest rates ranging from 2.1% to 4.5% per year. Ex. 4 (2013 Wonderworks Financials at AVP0005663).

**RESPONSE:** Undisputed that the cited evidence states the information contained in the statement.  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

B.    <u>Wonderworks Loans</u>

117.



**RESPONSE:** Disputed in part.  Mr. Leontiev does not dispute that

Pl. Exs. 7-8.  The remainder of the statement is not supported by the cited evidence.

, Pl. Exs. 7-8, and the cited testimony characterizes the lending entities as "off-balance sheet" companies, not "offshore" companies. Leontiev Decl. ¶ 28; Def. Ex. 14 at 147:15-23, 234:13-236:20 (Leontiev Tr.); Pl. SOF ¶ 14.  The statement is vague as to the meaning of