█████████████

Mr. Leontiev objects to the statement to the extent it relies on the expert reports of Mr. Laurence and Mr. Rollins.  Expert testimony may be introduced at the summary judgment stage through an affidavit, but the affidavit must satisfy Rule 56's requirements that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge."  Fed. R. Civ. P. 56(c)(4).  Here, Defendant did not submit a declaration or affidavit from Mr. Laurence or Mr. Rollins, but instead attached his report to an attorney affidavit.  *See* Hecker Decl. ¶¶ 9, 21; Def. Exs. 7, 19.  Such an unsworn report is hearsay and cannot be considered on summary judgment.  *See, e.g.*, *Fall v. N.Y. State United Teachers*, 289 F. App'x 419, 421 n.3 (2d Cir. 2008) (summary order); *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005) ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of [former] Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support.").

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

118.  ████████████████████████████████████
████████████████████████████████████████

**RESPONSE:**  Disputed as unsupported by the cited evidence.  Although Mr. Laurence testified ██████████████████████████████, there is no admissible evidence to support the statement that ████████████████ Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d

309, 311 (2d Cir. 2003).

119.

**RESPONSE:** Disputed as mischaracterizing the record.  Mr. Leontiev does not

dispute that

Mr. Leontiev objects to the statement in full because it relies solely on the expert

report of Mr. Rollins.  Expert testimony may be introduced at the summary judgment stage

through an affidavit, but the affidavit must satisfy Rule 56's requirements that "[a]n affidavit or

declaration used to support or oppose a motion must be made on personal knowledge." Fed. R.

Civ. P. 56(c)(4).  Here, Defendant did not submit a declaration or affidavit from Mr. Rollins, but

instead attached his report to an attorney affidavit.  *See* Hecker Decl. ¶ 9; Def. Ex. 7.  Such an

unsworn report is hearsay and cannot be considered on summary judgment.  *See, e.g.*, *Fall v. N.Y.*

*State United Teachers*, 289 F. App'x 419, 421 n.3 (2d Cir. 2008) (summary order); *Berk v. St.*

*Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005) ("Courts in this Circuit

have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of

[former] Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without

additional affidavit support.").

Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

120. ███████████████████████████████
████████████████████████

**RESPONSE:**  Undisputed that ███████████████████████
██████████████████████████████████

Mr. Leontiev objects to the statement in full because it relies solely on the expert reports of Mr. Rollins.  Expert testimony may be introduced at the summary judgment stage through an affidavit, but the affidavit must satisfy Rule 56's requirements that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4).  Here, Defendant did not submit a declaration or affidavit from Mr. Rollins, but instead attached his report to an attorney affidavit.  *See* Hecker Decl. ¶ 9; Def. Ex. 7.  Such an unsworn report is hearsay and cannot be considered on summary judgment.  *See, e.g.*, *Fall v. N.Y. State United Teachers*, 289 F. App'x 419, 421 n.3 (2d Cir. 2008) (summary order); *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005) ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of [former] Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support.").

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

121. ███████████████████████████████
████████████████████████

**RESPONSE:**  Disputed as unsupported by the cited evidence.  Mr. Laurence testified that ████████████████████████████████████

 Mr. Laurence also testified that ██████████████████████████████████████████████████████████ ████████████████████████████████████ The cited evidence does not support the statement that ████████████ ████████████████████████, and Mr. Varshavsky has offered no other admissible evidence showing that it was.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Mr. Laurence's testimony with respect to whether ██████████████████████████████ is inadmissible for lack of foundation as he does not have personal knowledge of those transactions. Fed. R. Evid. 602. Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

122. 

**RESPONSE:** Undisputed that the cited evidence states the information contained in the statement. Mr. Leontiev objects to this statement to the extent it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 61, which consists of ███

██████████████████████████████████████████████████████████

████████████████   The emails are inadmissible hearsay and have not been authenticated by any

competent witness.  Fed. R. Evid. 802, 901.  Mr. Leontiev further objects to the statement and to

the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks

summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir.

2003).

      123.    Wonderworks' audited financials for the year ended 2015 list, among its
"Payables to related parties," Dunning Finance Inc. and Greenex Trading. Def. Ex. 62 (2015
Wonderworks Financials at 22).

      **RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev further objects to the statement and to the cited evidence because

they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed.

R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

## I.     PRBB License Revocation and Criminal Investigations

      124.    Following the revocation of PRBB's license in August 2015, a Russian
government investigation found evidence of billions of dollars in fictitious or overvalued assets on
PRBB's books, including loans to related companies not engaged in any economic activities, and
the embezzlement of funds through those companies. Def. Ex. 3 (February 17, 2016,
Announcement on the Official Website of the Investigative Committee of the Russian Federation,
http://sledcom.ru/news/item/1017596/).

      **RESPONSE:**  Disputed.  The cited evidence does not support the statement that

the investigation "found evidence."  The cited evidence does not contain evidentiary findings, but

rather unproven allegations set forth by investigators.  Nor does the cited evidence support the

portion of the statement regarding "billions of dollars in fictitious or overvalued assets."  To the

extent that the cited evidence mentions "fictitious or overvalued assets," the purported value of

such assets is not specified.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." The statement relies on Def. Ex. 3, a February 17, 2016 announcement from the Investigative Committee of the Russian Federation instituting charges against several former PRBB executives, none of whom are Mr. Leontiev. This statement is inadmissible hearsay and cannot be offered against Mr. Leontiev. Fed. R. Evid. 802.

The public records exception to the rule against hearsay does not apply. Federal Rule of Evidence 803(8) provides that "[a] record or statement of a public office" containing "factual findings from a legally authorized investigation" is admissible if and only if the opponent fails to show "that the source of information or other circumstances indicate a lack of trustworthiness." The public records exception depends on "the assumption that a public official will perform his duty properly." Advisory Committee Notes, Fed. R. Evid. 803. As the Advisory Committee noted, factors relevant to determining the admissibility of such evidence include the timeliness of the investigation, the special skill or experience of the official, whether a hearing was held and the level at which it was conducted, and the motivation of the investigation. *Id.* The cited evidence does not contain the requisite indicia of trustworthiness. The February 17, 2016 announcement contains no evidence of a hearing of any kind. The announcement is further undermined by a December 1, 2015 written opinion from the senior investigator on the Investigative Committee of the Russian Federation, stating that criminal charges were unwarranted in connection with PRBB's bankruptcy. King Decl. Ex. 8 at SL00002851 (12/1/2015 Order of Refusal to Initiate Criminal Proceedings). The circumstances surrounding the Russian government's seizure of PRBB cast further doubt on the validity of this document. *See* Leontiev

Decl. ¶¶ 21-24.  Finally, the United States Congress has expressed "serious concerns about the right to a fair trial and the independence of the judiciary in the Russian Federation."  The Sergey Magnitsky Rule of Law and Accountability Act of 2012, Pub. L. No. 112-208, 126 Stat. 1496, 1504 (2012) (imposing sanctions on Russian government officials in connection with the death of an attorney, Sergey Magnitsky, in a Russian prison) (noting that "[t]he lack of credible charges, intimidation of witnesses, violations of due process and procedural norms, falsification or withholding of documents, denial of attorney-client privilege, and illegal detention" in high-profile cases were "highly troubling").  For these reasons, Def. Ex. 3 is inadmissible under the public records exception to the hearsay rule.  *See Lakah v. UBS AG*, 996 F. Supp. 2d 250, 256 (S.D.N.Y. 2014) (excluding governmental reports relating to the potential prosecution of plaintiffs in Egypt due to "the absence of hearings and the lack of trustworthiness" of the reports and noting that evidence of "extreme measures against political opponents" in Egypt undermined the trustworthiness of the reports).

      Mr. Leontiev further objects to Def. Ex. 3 as impermissible evidence "of a crime, wrong, or other act" proffered "to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Even if Def. Ex. 3 were relevant, Mr. Leontiev objects to the admissibility of this evidence because its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, . . . [and] wasting time."  Fed. R. Evid. 403.  The cited evidence consists of a list of indicted individuals, a summary of what the "investigators believe," and a statement that the investigation is ongoing.  It is settled law that

indictments have no probative value.  *See, e.g.*, *United States v. Velez-Vasquez*, 116 F.3d 58, 62

(2d Cir. 1997) ("an indictment is not evidence, but only an accusation").  The probative value of

the beliefs of the unidentified investigators is minimal, especially in the absence of a justification

for their beliefs.  By contrast, the dangers of the cited evidence are significant.  The risk of unfair

prejudice is evident, as Mr. Varshavsky seeks to conjure up improper inferences about

Mr. Leontiev's integrity as a businessman, based on unfounded allegations about PRBB.  The

cited evidence also would waste time, create substantial confusion, and mislead the jury by

introducing unnecessary issues into this case.

   125. In a statement dated February 17, 2016 announcing criminal charges against former PRBB executives, the Investigative Committee of the Russian Federation, stated, among other things, that: "investigators believe that unidentified persons among executive officers and employees of the Bank abused their office to embezzle money from the Bank and recruited their subordinates, employees of Life Financial Group as well as CEOs of a number of fictitious commercial organizations to take part in their criminal intent"; "this crime involved extending loans to fictitious enterprises under their control that were not engaged in any economic activities, where these loans were deliberately impossible to recover, were not secured by any property collateral, and were transferred to current accounts held by these fictitious enterprises"; "[l]ater the embezzled funds in rubles were converted in their entirety into US dollars and transferred to various accounts of overseas organizations and physical persons and then used by the perpetrators of the crime at their discretion"; and "[w]hile the documents formalizing the extension of these loans formally appeared legal to make the deals in question look legal as well, in fact the aforementioned documents contained inaccurate information and all actions of the perpetrators were taken with a view to embezzling funds from the Bank."  Def. Ex. 3 (February 17, 2016, Announcement on the Official Website of the Investigative Committee of the Russian Federation, http://sledcom.ru/news/item/1017596/).

   **RESPONSE:** Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 3, a February 17, 2016

announcement from the Investigative Committee of the Russian Federation instituting charges

against several former PRBB executives, none of whom are Mr. Leontiev.  This statement is

inadmissible hearsay and cannot be offered against Mr. Leontiev.  Fed. R. Evid. 802.

   The public records exception to the rule against hearsay does not apply.  Federal

Rule of Evidence 803(8) provides that "[a] record or statement of a public office" containing

"factual findings from a legally authorized investigation" is admissible if and only if the opponent

fails to show "that the source of information or other circumstances indicate a lack of

trustworthiness."  The public records exception depends on "the assumption that a public official

will perform his duty properly."  Advisory Committee Notes, Fed. R. Evid. 803.  As the Advisory

Committee noted, factors relevant to determining the admissibility of such evidence include the

timeliness of the investigation, the special skill or experience of the official, whether a hearing

was held and the level at which it was conducted, and the motivation of the investigation.  *Id.*  The

cited evidence does not contain the requisite indicia of trustworthiness.  The February 17, 2016

announcement contains no evidence of a hearing of any kind.  The announcement is further

undermined by a December 1, 2015 written opinion from the senior investigator on the

Investigative Committee of the Russian Federation, stating that criminal charges were

unwarranted in connection with PRBB's bankruptcy.  King Decl. Ex. 8 at SL00002851 (12/1/2015

Order of Refusal to Initiate Criminal Proceedings).   The circumstances surrounding the Russian

government's seizure of PRBB cast further doubt on the validity of this document.  *See* Leontiev

Decl. ¶¶ 21-24.  Finally, the United States Congress has expressed "serious concerns about the

right to a fair trial and the independence of the judiciary in the Russian Federation."  The Sergey

Magnitsky Rule of Law and Accountability Act of 2012, Pub. L. No. 112-208, 126 Stat. 1496,

1504 (2012) (imposing sanctions on Russian government officials in connection with the death of

an attorney, Sergey Magnitsky, in a Russian prison) (noting that "[t]he lack of credible charges,

intimidation of witnesses, violations of due process and procedural norms, falsification or

withholding of documents, denial of attorney-client privilege, and illegal detention" in high-

profile cases were "highly troubling").  For these reasons, Def. Ex. 3 is inadmissible under the

public records exception to the hearsay rule.  *See Lakah v. UBS AG*, 996 F. Supp. 2d 250, 256

(S.D.N.Y. 2014) (excluding governmental reports relating to the potential prosecution of plaintiffs

in Egypt due to "the absence of hearings and the lack of trustworthiness" of the reports and noting

that evidence of "extreme measures against political opponents" in Egypt undermined the

trustworthiness of the reports).

Mr. Leontiev further objects to Def. Ex. 3 as impermissible evidence "of a crime,

wrong, or other act" proffered "to show that on a particular occasion the person acted in

accordance with the character."  Fed. R. Evid. 404(b)(1).  Mr. Leontiev further objects to the

statement and to the cited evidence because they are not relevant or material to any matter on

which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d

309, 311 (2d Cir. 2003).  Even if Def. Ex. 3 was relevant, Mr. Leontiev objects to the

admissibility of this evidence because its "probative value is substantially outweighed by a danger

of . . . unfair prejudice, confusing the issues, misleading the jury, . . . [and] wasting time."  Fed. R.

Evid. 403.  The cited evidence consists of a list of indicted individuals, a summary of what the

"investigators believe," and a statement that the investigation is ongoing.  It is settled law that

indictments have no probative value.  *See, e.g.*, *United States v. Velez-Vasquez*, 116 F.3d 58, 62

(2d Cir. 1997) ("an indictment is not evidence, but only an accusation").  The probative value of

the beliefs of the unidentified investigators is minimal, especially in the absence of a justification

for their beliefs.  The risk of unfair prejudice is evident, as Mr. Varshavsky seeks to conjure up

improper inferences about Mr. Leontiev's integrity as a businessman, based on unfounded

allegations about PRBB.  The cited evidence also would waste time, create substantial confusion, and mislead the jury by introducing unnecessary issues into this case.

126.    The February 17, 2016 statement from the Investigative Committee of the Russian Federation also noted that the "criminal investigation is still under way." Def. Ex. 3 (February 17, 2016, Announcement on the Official Website of the Investigative Committee of the Russian Federation, http://sledcom.ru/news/item/1017596/).

**RESPONSE:**  Undisputed that the cited evidence states the information contained in the statement.  Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 3, a February 17, 2016 announcement from the Investigative Committee of the Russian Federation instituting charges against several former PRBB executives, none of whom are Mr. Leontiev.  This statement is inadmissible hearsay and cannot be offered against Mr. Leontiev.  Fed. R. Evid. 802.

The public records exception to the rule against hearsay does not apply.  Federal Rule of Evidence 803(8) provides that "[a] record or statement of a public office" containing "factual findings from a legally authorized investigation" is admissible if and only if the opponent fails to show "that the source of information or other circumstances indicate a lack of trustworthiness."  The public records exception depends on "the assumption that a public official will perform his duty properly."  Advisory Committee Notes, Fed. R. Evid. 803.  As the Advisory Committee noted, factors relevant to determining the admissibility of such evidence include the timeliness of the investigation, the special skill or experience of the official, whether a hearing was held and the level at which it was conducted, and the motivation of the investigation.  *Id.*  The cited evidence does not contain the requisite indicia of trustworthiness.  The February 17, 2016 announcement contains no evidence of a hearing of any kind.  The announcement is further

undermined by a December 1, 2015 written opinion from the senior investigator on the

Investigative Committee of the Russian Federation, stating that criminal charges were

unwarranted in connection with PRBB's bankruptcy.  King Decl. Ex. 8 at SL00002851 (12/1/2015

Order of Refusal to Initiate Criminal Proceedings).   The circumstances surrounding the Russian

government's seizure of PRBB cast further doubt on the validity of this document.  *See* Leontiev

Decl. ¶¶ 21-24.  Finally, the United States Congress has expressed "serious concerns about the

right to a fair trial and the independence of the judiciary in the Russian Federation."  The Sergey

Magnitsky Rule of Law and Accountability Act of 2012, Pub. L. No. 112-208, 126 Stat. 1496,

1504 (2012) (imposing sanctions on Russian government officials in connection with the death of

an attorney, Sergey Magnitsky, in a Russian prison) (noting that "[t]he lack of credible charges,

intimidation of witnesses, violations of due process and procedural norms, falsification or

withholding of documents, denial of attorney-client privilege, and illegal detention" in high-

profile cases were "highly troubling").  For these reasons, Def. Ex. 3 is inadmissible under the

public records exception to the hearsay rule.  *See Lakah v. UBS AG*, 996 F. Supp. 2d 250, 256

(S.D.N.Y. 2014) (excluding governmental reports relating to the potential prosecution of plaintiffs

in Egypt due to "the absence of hearings and the lack of trustworthiness" of the reports and noting

that evidence of "extreme measures against political opponents" in Egypt undermined the

trustworthiness of the reports).

   Mr. Leontiev further objects to Def. Ex. 3 as impermissible evidence "of a crime,

wrong, or other act" proffered "to show that on a particular occasion the person acted in

accordance with the character."  Fed. R. Evid. 404(b)(1).  Mr. Leontiev further objects to the

statement and to the cited evidence because they are not relevant or material to any matter on

which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d

309, 311 (2d Cir. 2003).  Even if Def. Ex. 3 was relevant, Mr. Leontiev objects to the

admissibility of this evidence because its "probative value is substantially outweighed by a danger

of . . . unfair prejudice, confusing the issues, misleading the jury, . . . [and] wasting time."  Fed. R.

Evid. 403.  The cited evidence consists of a list of indicted individuals, a summary of what the

"investigators believe," and a statement that the investigation is ongoing.  It is settled law that

indictments have no probative value.  *See, e.g.*, *United States v. Velez-Vasquez*, 116 F.3d 58, 62

(2d Cir. 1997) ("an indictment is not evidence, but only an accusation").  The probative value of

the beliefs of the unidentified investigators is minimal, especially in the absence of a justification

for their beliefs.  The risk of unfair prejudice is evident, as Mr. Varshavsky seeks to conjure up

improper inferences about Mr. Leontiev's integrity as a businessman, based on unfounded

allegations about PRBB.  The cited evidence also would waste time, create substantial confusion,

and mislead the jury by introducing unnecessary issues into this case.

127.    The Russian Central Bank revoked PRBB's license on August 12, 2015,
after discovering "signs of performance of illegal actions" in the bank's activities.  Those signs of
illegal actions included failure to comply with federal bank laws and regulations, capital ratios
below two percent, and decrease of capital ratios below the minimum level of charter capital
required for PRBB as a state-registered credit institution. Furthermore, according to financial
statement data submitted by former PRBB managers, as of the date of the license revocation,
PRBB's liabilities exceeded its assets.  In light of the revocation of license and insufficient assets,
the Central Bank filed an application to the Arbitration Court of Moscow requesting that PRBB be
recognized as insolvent (bankrupt). Def. Ex. 1, SL0035954 at SL0035955-56 (Letter from the
Russian Central Bank to Y. Chaika, the Prosecutor General of the Russian Federation).

**RESPONSE:**  Disputed in part as unsupported by and as mischaracterizing the

cited evidence.  Mr. Leontiev does not dispute that the Russian Central Bank revoked PRBB's

license on August 12, 2015, or that the Central Bank filed an application to the Arbitration Court

of Moscow requesting that PRBB be recognized as insolvent (bankrupt).  The cited evidence does

not support the statement that the Russian Central Bank "discover[ed] signs of performance of

illegal actions." (internal quotation marks omitted).  The cited evidence purports to "inform[]" the

recipient "of discovered signs" but does not specify who allegedly discovered these signs, when this alleged discovery occurred, or to whom these alleged discoveries are being conveyed.  Def. Ex. 1 at SL0035955.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 1, a translation of an unsigned, undated, and unaddressed letter purportedly to Yuri Chaika.  The cited evidence is inadmissible hearsay and has not been authenticated by any competent witness.  Fed. R. Evid. 802, 901.

Mr. Leontiev also objects to Def. Ex. 1 for lack of foundation, as there is no basis from which to conclude that the unidentified author of Def. Ex. 1 had personal knowledge of the purported investigation or its findings.  Fed. R. Evid. 602.  Mr. Leontiev further objects to Def. Ex. 1 as impermissible evidence "of a crime, wrong, or other act" proffered "to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Even if Def. Ex. 1 was relevant, Mr. Leontiev objects to the admissibility of this evidence because its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, . . . [and] wasting time."  Fed. R. Evid. 403.  An unknown speaker's recitation of alleged discoveries made by unknown parties has minimal probative value, especially in the absence of a description of the basis for these statements.  The risk of unfair prejudice is evident, as

Mr. Varshavsky seeks to conjure up improper inferences about Mr. Leontiev's integrity as a

businessman, based on unfounded allegations about PRBB.  The cited evidence also would waste

time, create substantial confusion, and mislead the jury by introducing unnecessary issues into this

case.

       128.    The Central Bank's investigation revealed that "Ambika Investment
Limited was practically exclusive (single) counterparty of the Bank in its transactions of purchase
and sale of foreign currency and the terms of transactions considerabl[y] differed from the market
conditions and were performed by the Bank for technical increase of the profit." An audit of
PRBB's financial position showed that PRBB held securities with Brokercreditservie and Otkritie
Capital, which in turn provided loans to Ambika and another counterparty called Merianol. When
Merianol and Ambika failed to fulfill their obligations to Brokercreditservice and Otkritie, PRBB
lost assets with a balance value of "not less than 25 billion rubles." PRBB concealed from
authorities the fact that those securities were encumbered. Def. Ex. 1, SL0035954 at SL0035955
(Letter from the Russian Central Bank to Y. Chaika, the Prosecutor General of the Russian
Federation).

      **RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Leontiev objects to the statement in full because it relies on evidence that would

be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every

statement must be supported by a "citation to evidence which would be admissible, set forth as

required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 1, a translation of an

unsigned, undated, and unaddressed letter purportedly to Yuri Chaika.  The cited evidence is

inadmissible hearsay and has not been authenticated by any competent witness.  Fed. R. Evid.

802, 901.

      Mr. Leontiev also objects to Def. Ex. 1 for lack of foundation, as there is no basis

from which to conclude that the unidentified author of Def. Ex. 1 had personal knowledge of the

purported investigation or its findings.  Fed. R. Evid. 602.  Mr. Leontiev further objects to

Def. Ex. 1 as impermissible evidence "of a crime, wrong, or other act" proffered "to show that on

a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003). Even if Def. Ex. 1 was relevant, Mr. Leontiev objects to the admissibility of this evidence because its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, . . . [and] wasting time." Fed. R. Evid. 403. An unknown speaker's recitation of alleged discoveries made by unknown parties has minimal probative value, especially in the absence of a description of the basis for these statements. The risk of unfair prejudice is evident, as Mr. Varshavsky seeks to conjure up improper inferences about Mr. Leontiev's integrity as a businessman, based on unfounded allegations about PRBB. The cited evidence also would waste time, create substantial confusion, and mislead the jury by introducing unnecessary issues into this case.

129.    The Central Bank's investigation revealed that a number of "technical" economically-affiliated borrowers provided funds totaling 3 billion rubles, which were then transferred out of PRBB into the operating account of "their common counterparty Vermenda Holdings Limited with further transfer to the operating account of mentioned counterparty" at Trasta Komercbanka. Def. Ex. 1, SL0035954 at SL0035956 (Letter from the Russian Central Bank to Y. Chaika, the Prosecutor General of the Russian Federation).

**RESPONSE:** Undisputed that the cited evidence states the information contained in the statement. Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." The statement relies on Def. Ex. 1, a translation of an unsigned, undated, and unaddressed letter purportedly to Yuri Chaika. The cited evidence is inadmissible hearsay and has not been authenticated by any competent witness. Fed. R. Evid. 802, 901.

Mr. Leontiev also objects to Def. Ex. 1 for lack of foundation, as there is no basis from which to conclude that the unidentified author of Def. Ex. 1 had personal knowledge of the purported investigation or its findings.  Fed. R. Evid. 602.  Mr. Leontiev further objects to Def. Ex. 1 as impermissible evidence "of a crime, wrong, or other act" proffered "to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Even if Def. Ex. 1 was relevant, Mr. Leontiev objects to the admissibility of this evidence because its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, . . . [and] wasting time."  Fed. R. Evid. 403.  An unknown speaker's recitation of alleged discoveries made by unknown parties has minimal probative value, especially in the absence of a description of the basis for these statements.  The risk of unfair prejudice is evident, as Mr. Varshavsky seeks to conjure up improper inferences about Mr. Leontiev's integrity as a businessman, based on unfounded allegations about PRBB.  The cited evidence also would waste time, create substantial confusion, and mislead the jury by introducing unnecessary issues into this case.

130.    The Central Bank observed that the PRBB had regular interbank operations with other banks in the FGL banking group, "controlled by Leontiev S.L. and Zheleznyak A.D.," and a high dependency on the funds of individuals, which constituted 88% to 96% of its resource base, "with doubtful (suspicious) quality of assets and performance by the banks of the group high risk loan policy." Def. Ex. 1, SL0035954 at SL0035956 (Letter from the Russian Central Bank to Y. Chaika, the Prosecutor General of the Russian Federation).

**RESPONSE:**  Undisputed that the cited evidence states the information contained in the statement.  Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 1, a translation of an unsigned, undated, and unaddressed letter purportedly to Yuri Chaika.  The cited evidence is inadmissible hearsay and has not been authenticated by any competent witness.  Fed. R. Evid. 802, 901.

Mr. Leontiev also objects to Def. Ex. 1 for lack of foundation, as there is no basis from which to conclude that the unidentified author of Def. Ex. 1 had personal knowledge of the purported investigation or its findings.  Fed. R. Evid. 602.  Mr. Leontiev further objects to Def. Ex. 1 as impermissible evidence "of a crime, wrong, or other act" proffered "to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Even if Def. Ex. 1 was relevant, Mr. Leontiev objects to the admissibility of this evidence because its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, . . . [and] wasting time."  Fed. R. Evid. 403.  An unknown speaker's recitation of alleged discoveries made by unknown parties has minimal probative value, especially in the absence of a description of the basis for these statements.  The risk of unfair prejudice is evident, as Mr. Varshavsky seeks to conjure up improper inferences about Mr. Leontiev's integrity as a businessman, based on unfounded allegations about PRBB.  The cited evidence also would waste time, create substantial confusion, and mislead the jury by introducing unnecessary issues into this case.

131.   In a request for prosecution to the Prosecutor General of the Russian Federation, the Central Bank concluded that the "facts of withdrawal of assets" from PRBB "proves implementation by owners of banking group of their powers in order to gain profit, benefits and advantages for themselves in spite of legal interests of creditors and depositors, which a reason to suggest presence in their actions of penal criminal acts, set out by the article 159 'Fraud', article 160 'Embezzlement', article 196 'Deliberate bankruptcy' and article 201 'Abuse of powers' of the Penal Code of the Russian Federation." Def. Ex. 1, SL0035954 at SL0035956 (Letter from the Russian Central Bank to Y. Chaika, the Prosecutor General of the Russian Federation).

**RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 1, a translation of an

unsigned, undated, and unaddressed letter purportedly to Yuri Chaika.  The cited evidence is

inadmissible hearsay and has not been authenticated by any competent witness.  Fed. R. Evid.

802, 901.

Mr. Leontiev also objects to Def. Ex. 1 for lack of foundation, as there is no basis

from which to conclude that the unidentified author of Def. Ex. 1 had personal knowledge of the

purported investigation or its findings.  Fed. R. Evid. 602.  Mr. Leontiev further objects to

Def. Ex. 1 as impermissible evidence "of a crime, wrong, or other act" proffered "to show that on

a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).

Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Even if Def. Ex. 1 was

relevant, Mr. Leontiev objects to the admissibility of this evidence because its "probative value is

substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the

89

jury, . . . [and] wasting time." Fed. R. Evid. 403.  An unknown speaker's recitation of alleged

discoveries made by unknown parties has minimal probative value, especially in the absence of a

description of the basis for these statements.  The risk of unfair prejudice is evident, as

Mr. Varshavsky seeks to conjure up improper inferences about Mr. Leontiev's integrity as a

businessman, based on unfounded allegations about PRBB.  The cited evidence also would waste

time, create substantial confusion, and mislead the jury by introducing unnecessary issues into this

case.

> 132.    The letter from the Russian Central Bank to Yury Chaika, the Prosecutor
General of the Russian Federation, was produced by Plaintiff. It is attached to a January 4, 2016
cover email, showing that it was translated for Zheleznyak by Eugeniya Sokolova. Def. Ex. 1,
SL0035954. The metadata author for the translation of the Central Bank's Letter is "Evgeniya
Sokolova"; the metadata createddate and modifieddate is "2016/01/04"; and the metadata filename
is "Application of CB to enforcement bodies.docx." It is a translation of the Russian version of the
Central Bank letter, also produced by Plaintif. Def. Ex. 1, SL0000496.  The metadata author for
the Russian version of the Central Bank's Letter is "Evgeniya Sokolova."

**RESPONSE:**  Undisputed.  Mr. Leontiev objects to the statement in full because it

relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d),

which requires that every statement must be supported by a "citation to evidence which would be

admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 1, a

translation of an unsigned, undated, and unaddressed letter purportedly to Yuri Chaika.  To the

extent that Def. ASF ¶ 132 suggests that Ms. Sokolova's translation of a particular document

addresses Mr. Leontiev's admissibility objections as to that document, it is incorrect.

Ms. Sokolova's translation contains two levels of hearsay, each of which renders the cited

evidence (Def. Ex. 1) inadmissible.  Fed. R. Evid. 801, 802, 805.  Neither the email nor its

attachment have ever been authenticated by any competent witness.  Fed. R. Evid. 901.

Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

133.    Eugeniya Sokolova is Zheleznyak's "personal translator," who accompanied Zheleznyak at his deposition to assist with translation. Def. Ex. 15 at 2, 5, 45, 118, 154 (Zheleznyak Tr.).

**RESPONSE:**  Undisputed.  Mr. Leontiev objects to the statement and to the cited

evidence because they are not relevant or material to any matter on which Plaintiff seeks summary

judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

134.    Plaintiffs' expert witness Vadim Voronin, offered as an expert on Russian banking regulations, testified that Russian Central Bank documents are reliable and generally accurate, and that the Russian Central Bank is a professionally-managed agency. Def. Ex. 59 at 113:14-114:16 (Voronin Tr.).

**RESPONSE:**  Undisputed.  Mr. Leontiev objects to the statement and to the cited

evidence because they are not relevant or material to any matter on which Plaintiff seeks summary

judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

135.    On January 14, 2016, the Russian Deposit Insurance Agency ("DIA") submitted to the Russian Federal Security Service a letter with the heading, "Report of a crime, committed by Executives of OAO AKB Probusinessbank." Def. Ex. 2, SL0032531, at SL0032532-35. Among the allegations of criminal activity were the creation of bank accounts and loan agreements that diverted hundreds of millions of rubles from PRBB to Vermenda, through the creation of various intermediaries and assignment of rights of claim to debtors.  The DIA noted that "there are grounds to believe that the debtors are technical, namely that they are not performing any actual business and economic activities and they do not have assets sufficient to repay the debts to the Bank, legal entities, operations on accounts of which were carried out for the benefit of top managers and owners of the Bank without knowledge and agreement of persons, mentioned as their directors." Def. Ex. 2, SL0032531 at SL0032531-34.

**RESPONSE:**  Disputed in part as unsupported by the cited evidence.

Mr. Leontiev does not dispute the date, sender, recipient, and heading of the cited evidence, or

that the quotation included in the statement appears in the cited document.  The cited evidence

does not support the portion of the statement suggesting that "[a]mong the allegations of criminal

activity were the creation of bank accounts and loan agreements that diverted hundreds of millions

of rubles from PRBB to Vermenda, through the creation of various intermediaries and assignment

of rights of claim to debtors."  The cited evidence does not list creation of bank accounts or

intermediaries among the allegedly criminal activities.

        Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 2, a translation of a letter

from the Deposit Insurance Agency to the deputy head of the FSB.  The cited evidence is

inadmissible hearsay and has not been authenticated by any competent witness.  Fed. R. Evid.

802, 901.  The document is unreliable on its face, as the cover email and translation note that "this

document is missing p[age] 5."  Def. Ex. 2 at SL0032531, SL0032534.  Nor does Def. Ex. 2

contain the original version of the document that Ms. Sokolova translated.

        Mr. Leontiev also objects to Def. Ex. 2 for lack of foundation, as there is no basis

from which to conclude that the author of Def. Ex. 2 had personal knowledge of the issues

discussed in the letter.  Fed. R. Evid. 602.  Mr. Leontiev also objects to Def. Ex. 2 as

impermissible evidence "of a crime, wrong, or other act" proffered "to show that on a particular

occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).

        Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Even if Def. Ex. 2 was

relevant, Mr. Leontiev objects to the admissibility of this evidence because its "probative value is

substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the

jury, . . . [and] wasting time."  Fed. R. Evid. 403.  A list of purported transactions, presented in a

conclusory fashion without any description of the methodology or basis relied upon to make the

alleged findings has minimal probative value, particularly where the purported transactions bear

no relationship to the facts at issue in this case.  The risk of unfair prejudice is evident, as

Mr. Varshavsky seeks to conjure up improper inferences about Mr. Leontiev's integrity as a

businessman, based on unfounded allegations about PRBB.  The cited evidence also would waste

time, create substantial confusion, and mislead the jury by introducing unnecessary issues into this

case.

136.    The translated letter from the DIA to the deputy head of the FSB was
produced by Plaintiff. It is attached to a February 25, 2016 cover email, showing that it was
translated for Zheleznyak by Eugeniya Sokolova. Def. Ex. 2, SL0032531-35. The metadata author
for the translation is "Evgeniya Sokolova"; the metadata createddate and modifieddate is
"2016/02/25"; and the metadata filename is "DIA_FSB.docx."

**RESPONSE:**  Undisputed that the document contained in Def. Ex. 2 was produced

by Mr. Leontiev with the metadata identified above.  To the extent that Def. ASF ¶ 136 suggests

that Ms. Sokolova's translation of a particular document addresses Mr. Leontiev's admissibility

objections as to that document, it is incorrect.  Ms. Sokolova's translation contains two levels of

hearsay, each of which renders the cited evidence (Def. Ex. 2) inadmissible.  Fed. R. Evid. 801,

802, 805.  Neither the email nor its attachment have been authenticated by a competent witness.

Fed. R. Evid. 901.  The document is unreliable on its face, as the cover email and translation note

that "this document is missing p[age] 5."  Def. Ex. 2 at SL0032531, SL0032534.  Nor does Def.

Ex. 2 contain the original version of the document that Ms. Sokolova translated.

Mr. Leontiev further objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

137.    In an order dated February 7, 2016, S.A. Novikov, a senior investigator
with the Investigative Committee of the Russian Federation, announced commencement of a
criminal case against former PRBB executives. Def. Ex. 63, SL0002863 at SL0002863,
SL0002876 (Order on Institution and Commencement of Criminal Proceedings). The order

revealed that Russia Central Bank staff had discovered "numerous violations." During the same period that the Central Bank was reporting those violations and asking PRBB to correct them, PRBB management and employees instead, "acting for financial gain, for their personal wealth accumulation developed plan of actions directed to the theft of funds of the Bank in an especially large amount by means of embezzlement and misappropriation for the benefit of third parties." Def. Ex. 63, SL0002863 at SL0002864. The order noted that Vermenda was among the companies that "did not perform any commercial or any operating activities" but were used for the purpose of embezzlement of PRBB funds. Def. Ex. 63, SL0002863 at SL0002864.  The order described a series of transfers of hundreds of millions of rubles, "directed to the embezzlement of funds of the Bank" and transferred into accounts held by Vermenda and other entities that served no purpose except to wrongfully divert PRBB funds to third parties. Def. Ex. 63, SL0002863 at SL0002864-SL0002875.

**RESPONSE:**  Disputed in part as unsupported by and as mischaracterizing the cited evidence.  Mr. Leontiev does not dispute that an order purportedly signed by S. A. Novikov, a senior investigator with the Investigative Committee of the Russian Federation, announced a criminal case against former PRBB executives, none of whom are Mr. Leontiev, except to note that it was dated February 17, 2016.  Mr. Leontiev does not dispute that the allegations enumerated above are set forth in Def. Ex. 63, but objects to the characterization of these allegations as statements of fact.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The statement relies on Def. Ex. 63, a translation of the February 17, 2017 order.  The cited evidence is inadmissible hearsay and has not been authenticated by any competent witness.  Fed. R. Evid. 802, 901.  Def. Ex. 63 does not contain the original version of the document that Ms. Sokolova translated.

Mr. Leontiev also objects to Def. Ex. 63 for lack of foundation, as there is no basis from which to conclude that the author of Def. Ex. 63 had personal knowledge of the issues discussed in the order.  Fed. R. Evid. 602.  Mr. Leontiev also objects to Def. Ex. 63 as

impermissible evidence "of a crime, wrong, or other act" proffered "to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Even if Def. Ex. 63 was relevant, Mr. Leontiev objects to the admissibility of this evidence because its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, . . . [and] wasting time."  Fed. R. Evid. 403.  The cited evidence is an order instituting criminal proceedings against certain former PRBB employees, none of whom are Mr. Leontiev.  It is settled law that indictments have no probative value.  *See, e.g.*, *United States v. Velez-Vasquez*, 116 F.3d 58, 62 (2d Cir. 1997) ("an indictment is not evidence, but only an accusation").  The risk of unfair prejudice is evident, as Mr. Varshavsky seeks to conjure up improper inferences about Mr. Leontiev's integrity as a businessman, based on unfounded allegations about PRBB.  The cited evidence also would waste time, create substantial confusion, and mislead the jury by introducing unnecessary issues into this case.

138.    The translated Order on Institution and Commencement of Criminal Proceedings was produced by Plaintiff. The metadata author for the translation is "Evgeniya Sokolova"; the metadata custodian is Vadim Kolotnikov, ███████████████; the metadata createdate is "2016/02/24"; the metadata modifieddate is "2016/02/25"; and the metadata filename is "Order of initiation and commencement of criminal proceedings.docx."

**RESPONSE:**  Undisputed that the document contained in Def. Ex. 63 was produced by Mr. Leontiev with the metadata identified above.  To the extent that Def. ASF ¶ 138 suggests that Ms. Sokolova's translation of a particular document addresses Mr. Leontiev's admissibility objections as to that document, it is incorrect.  Ms. Sokolova's translation contains two levels of hearsay, each of which renders the cited evidence (Def. Ex. 63) inadmissible.  Fed.

R. Evid. 801, 802, 805.  The document contained in Def. Ex. 63 has never been authenticated by any competent witness.  Fed. R. Evid. 901.  The document is unreliable on its face, as it does not contain the original document that Ms. Sokolova translated.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

### J.    Misrepresentations and Preventative Measures in Furtherance of Leontiev's Scheme

139.    Leontiev came to the United States in late August or early September 2015 and has remained continuously in the United States since that time. Def. Ex. 14 at 20:11-23 (Leontiev Tr.).

**RESPONSE:**  Undisputed.  Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

140.    In or around October 2015, Leontiev and his associates began collecting information and working with Leontiev's immigration lawyer for the purposes of trying to obtain an L-1 visa that would allow Leontiev to work in the United States. Def. Ex. 27 at 91:10-92:14 (Zubiy Tr.); Def. Ex. 31 at 86:20-25 (Kolotnikov Tr.).

**RESPONSE:**  Disputed in part.  Mr. Leontiev does not dispute that in or around October 2015, Mr. Kolotnikov and Ms. Zubiy collected information at the direction of his immigration attorney in connection with an immigration visa application.  Mr. Leontiev disputes the statement to the extent that "associates" is vague and misleading.  Mr. Leontiev disputes the remainder of the statement as unsupported by and mischaracterizing the cited evidence. Mr. Kolotnikov and Ms. Zubiy did not testify as to the type of visa obtained by Mr. Leontiev or as to the visa's effect on Mr. Leontiev's ability to work in the United States.

Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Mr. Leontiev further objects to

the cited evidence concerning his immigration status because of the attendant dangers of unfair

prejudice and confusing the issues.  Fed. R. Evid. 403.

141.    At his deposition on January 3, 2017, Leontiev testified that he obtained an
L-1 visa "[a] year ago." Def. Ex. 14 at 32:6-11 (Leontiev Tr.).

**RESPONSE:**  Undisputed.  Mr. Leontiev objects to the statement and to the cited

evidence because they are not relevant or material to any matter on which Plaintiff seeks summary

judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

Mr. Leontiev further objects to the cited evidence concerning his immigration status because of

the attendant dangers of unfair prejudice and confusing the issues.  Fed. R. Evid. 403.

142.    Leontiev obtained his L-1 visa, an intracompany transferee visa for
executives of foreign companies that establish a branch in the United States, through his role as an
executive of Grid Research, a position that Leontiev testified he began to hold at the same time
that he received his L-1 visa. Def. Ex. 14 at 32:12-33:7 (Leontiev Tr.).

**RESPONSE:**  Undisputed that this statement accurately describes what an L-1

visa is and that Mr. Leontiev obtained his L-1 visa as an executive of a company named Grid

Market Research.  Mr. Leontiev objects to the statement and to the cited evidence because they

are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R.

Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Mr. Leontiev further

objects to the cited evidence concerning his immigration status because of the attendant dangers of

unfair prejudice and confusing the issues.  Fed. R. Evid. 403.

143.    Prior to applying for his L-1 visa, Leontiev played the role of chief
investment officer at Wonderworks. Def. Ex. 14 at 33:8-33:23 (Leontiev Tr.).

**RESPONSE:**  Disputed in part.  Mr. Leontiev does not dispute that ███████

███████████████████████████████████████████████████████████████████

 The cited evidence does not establish ▮▮▮▮▮

▮▮▮▮▮ with respect to the timing of his L-1 visa

application.  Mr. Leontiev further objects to the statement as vague with respect to the meaning of

"played the role."

Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Mr. Leontiev further objects to

the cited evidence concerning his immigration status because of the attendant dangers of unfair

prejudice and confusing the issues.  Fed. R. Evid. 403.



144. ▮▮▮▮▮

**RESPONSE:**  Undisputed that ▮▮▮▮▮

▮▮▮▮▮.  Mr. Leontiev objects to the

statement and to the cited evidence because they are not relevant or material to any matter on

which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d

309, 311 (2d Cir. 2003).  Mr. Leontiev further objects to the cited evidence ▮▮▮▮▮

▮▮▮▮▮ because of the attendant dangers of unfair prejudice and confusing the issues.

Fed. R. Evid. 403.

145. ▮▮▮▮▮

**RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

146. ████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████

**RESPONSE:** Undisputed that the cited evidence states the information contained in the statement, except to note that the document does not support the statement that its author works (or worked) as a banker. Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

147. ████████████████████████████████████████████
████████████████████████████████████

**RESPONSE:** Undisputed. Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

148. At his deposition, Leontiev denied that he was ever the CEO of Wonderworks, insisting that he was the CIO. Def. Ex. 14 at 33:14-33:18; 194:11-195:3 (Leontiev Tr.).

**RESPONSE:** Disputed as mischaracterizing and as not supported by the cited evidence. Mr. Leontiev does not dispute that ███████████████████████████
████████████████████████████████████████ The cited evidence does not establish ████████████████████████████████████. The cited evidence does not support the categorical statement that Mr. Leontiev ████████████████████████
████████████████████████████████████████████

Mr. Leontiev disputes the statement's use of "insisting" as a mischaracterization of the cited

evidence.  To the extent that Mr. Leontiev testified numerous times that ███████████

████████████████████████████████████, he did so in response to repetitive

questioning.

Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

149.   At his deposition, Kolotnikov repeatedly denied that Leontiev was the CEO
or even CIO of Wonderworks. Def. Ex. 31 at 57:16-58:9, 62:9-63:6, 66:15-66:21 (Kolotnikov
Tr.).

**RESPONSE:**  Disputed as incomplete and as mischaracterizing the cited evidence

and the record.  Mr. Leontiev objects to the statement as vague and misleading in failing to

specify a relevant time period.  Mr. Kolotnikov testified that ██████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████   Mr. Kolotnikov also testified that ████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████   To the extent that Mr. Kolotnikov

"repeatedly" said anything on this issue, he did so in response to repetitive questioning.

Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

150. ████████████████████████████████████████████████

██████████████████████████████████████████████████████████

**RESPONSE:**  Disputed as misleading and mischaracterizing the cited evidence

and the record. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

      Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

      151. ████████████████████████████████████

████████████████████████████████████████

      **RESPONSE:**  Disputed as misleading and unsupported by the cited evidence.

Mr Leontiev does not dispute that ████████████████████████████████

████████████████████████████████████████

████████████████  The cited evidence does not support the statement to the extent it

suggests that ████████████████████████████████████████

████████████████████████

      Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  Mr. Leontiev further objects to

the cited evidence concerning ████████████████ because of the attendant dangers of unfair

prejudice and confusing the issues.  Fed. R. Evid. 403.

    **K.**    **Leontiev Repeatedly Acknowledged The Debts And Promised To Repay The Loaned Funds.**

      152.    After PRBB's license was revoked in mid-August 2015, Leontiev, Zheleznyak, and Varshavsky met at Avilon's Moscow offices ("Moscow meeting") to discuss the repayment of the funds loaned from Avilon to Zheleznyak and Leontiev in light of PRBB's license revocation. Def. Ex. 13 at 80:15-81:13 (Varshavsky Tr.); Def. Ex. 14 at 123:17-124:13 (Leontiev Tr.); Def. Ex. 15 at 142:7-13 (Zheleznyak Tr.); Ex. 21 at 132:19-133:10 (Monakhova Tr.).

**RESPONSE:**  Disputed in part.  Mr. Leontiev does not dispute that he met with Mr. Zheleznyak and Mr. Varshavsky at Avilon's offices in Moscow after PRBB's license was revoked in mid-August 2015.  The cited evidence, however, does not support the statement that Avilon loaned funds to Mr. Zheleznyak or Mr. Leontiev, nor has Defendant offered any evidence to establish that fact.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the admission of any evidence of statements made during the Moscow meeting because they are "statement[s] made during compromise negotiations about the claim" which are not admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim."  Fed. R. Evid. 408.  Statements allegedly made by Mr. Zheleznyak to Mr. Varshavsky or Ms. Monakhova are hearsay and inadmissible against Mr. Leontiev.  Fed. R. Evid. 802.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

153.    Other lenders, such as Kamo and Karen Avagumyan and Igor Renich, had asked Varshavsky to negotiate on their behalf.  Def. Ex. 13 at 16:24-17:16 (Varshavsky Tr.); Def. Ex. 18 at 85:11-15 (Kamo Avagumyan Tr.).

**RESPONSE:**  Undisputed that Mr. Varshavsky purported to negotiate on behalf of Kamo and Karen Avagumyan and Igor Renich.  Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which

would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." To the extent the statement

relies on Def. Ex. 13 at 16:24-17:16 (Varshavsky Tr.), statements allegedly made by Mr. Renich

to Mr. Varshavsky are hearsay and inadmissible.  Fed. R. Evid. 802.  Mr. Leontiev further objects

to the statement and to the cited evidence because they are not relevant or material to any matter

on which Plaintiff seeks summary judgment, Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320

F.3d 309, 311 (2d Cir. 2003), particularly as Mr. Varshavsky has admitted that none of the alleged

lenders assigned him their rights under the Alleged Loans.  *See* Pl. SOF ¶ 279.

   154. Zheleznyak did not perceive any of Mr. Varshavsky's or Mr. Avagumyan's
statements throughout the course of the repayment negotiations as threats that would be a cause
for concern. Def. Ex. 15 at 114:21-115:25 (Zheleznyak Tr.). A recording of repayment
negotiations in London similarly contains no evidence of threats by Varshavsky against Leontiev.
*See generally* Def. Ex. 22 (London Tr.).

   **RESPONSE:** Undisputed that Mr. Zheleznyak "for [him]self . . . did not"

perceive Mr. Varshavsky's words as threats, but otherwise disputed as mischaracterizing the cited

evidence.  The term "cause for concern" does not appear in the cited evidence.  Mr. Zheleznyak

testified only that Mr. Varshavsky did not threaten Mr. Zheleznyak and that Mr. Zheleznyak

"relayed the words of Alex Varshavsky and Kamo Avagumyan at their request to Sergey

Leontiev," but that "[h]ow [Mr. Leontiev] perceived those words, it would be best to ask

[Mr. Leontiev]."  Def. Ex. 15 at 114:21-115:25 (Zheleznyak Tr.).  With respect to the meeting that

took place in London (Def. Ex. 22), Mr. Leontiev has explained that he perceived references by

Mr. Varshavsky and others to the possibility that Mr. Zheleznyak might be arrested as threats.

Leontiev Decl. ¶ 41.

   Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the admission of the transcript of

the London meeting, as well as any evidence of statements made during the London meeting,

because such evidence constitutes "statement[s] made during compromise negotiations about the

claim" which are not admissible "on behalf of any party . . . to prove . . . the validity or amount of

a disputed claim."  Fed. R. Evid. 408.  Mr. Leontiev objects to the admission of the transcript of

the London meeting, and statements made by Mr. Varshavsky therein, as containing hearsay

inadmissible against Mr. Leontiev.  Fed. R. Evid. 802.  Mr. Leontiev further objects to the

statement and to the cited evidence because they are not relevant or material to any matter on

which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d

309, 311 (2d Cir. 2003).

> 155.   Leontiev attended the Moscow meeting to further repayment discussions.
> Def. Ex. 13 at 80:15-81:2 (Varshavsky Tr.); Def. Ex. 15 at 142:7-13 (Zheleznyak Tr.); Def. Ex. 14
> at 123:17-124:13 (Leontiev Tr.); Def. Ex. 21 at 132:19-133:10 (Monakhova Tr.).

**RESPONSE:**  Disputed as mischaracterizing the evidence.  None of the cited

testimony from Mr. Varshavsky, Mr. Zheleznyak, or Ms. Monakhova discusses Mr. Leontiev's

reasons for attending the Moscow meeting:  Mr. Varshavky's testimony speaks only to statements

allegedly made to him by Mr. Zheleznyak; Mr. Zheleznyak's testimony only relates to him setting

up the Moscow meeting which Mr. Leontiev and Mr. Varshavsky attended; and Ms. Monakhova's

testimony purports to recount what she and Mr. Varshavsky asked Mr. Leontiev and Mr.

Zheleznyak at the Moscow meeting and how Mr. Leontiev and Mr. Zheleznyak allegedly

responded.  Mr. Leontiev's testimony makes clear that he attended the Moscow meeting to

"propose . . . settlement to Varshavsky" and any discussion of "potentially repaying the moneys

that were then outstanding to Avilon" was "part of the settlement."  *See* Def. Ex. 14 at 123:17-

124:13 (Leontiev Tr.).

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Mr. Leontiev objects to the admission of any evidence of statements made during the Moscow meeting because they are "statement[s] made during compromise negotiations about the claim" which are not admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim." Fed. R. Evid. 408. Statements allegedly made by Mr. Zheleznyak to Mr. Varshavsky or Ms. Monakhova are hearsay and inadmissible against Mr. Leontiev. Fed. R. Evid. 802. To the extent the statement relies on Def. Ex. 13 at 80:15-81:2 (Varshavsky Tr.) or Def. Ex. 21 at 132:19-133:10 (Monakhova Tr.), it is inadmissible because Mr. Varshavsky and Ms. Monakhova have no personal knowledge of Mr. Leontiev's reasons for attending the Moscow meeting. Fed. R. Evid. 602. Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

156.    Prior to this meeting, Zheleznyak informed Mr. Varshavsky that Leontiev had taken control of the borrowed funds and invested them in securities held by Wonderworks, which received the funds via loans from Vermenda; in support, Zheleznyak showed Mr. Varshavsky an Excel schedule showing approximately $123 million invested in Apple, Google, and other blue-chip securities. Def. Ex. 13 138:11-139:25 (Varshavsky Tr.); Def. Ex. 64, AVP0002768.

**RESPONSE:** Disputed. The cited evidence does not support the statement. The cited portion of Mr. Varshavsky's testimony is wholly unrelated to the substance of the statement it is cited for. Def. Ex. 13 at 138:13-139:25 (Varshavsky Tr.). Exhibit 64 appears to be a screenshot of a spreadsheet listing certain stocks, shares, current prices, market value, and "% of book." But nothing on the face of the exhibit, or in any testimony adduced by Defendant,

supports the contention that the funds allegedly reflected in Exhibit 64 are related in any way to the Alleged Loans.  Indeed, the record reflects that they are not; in August 2015, Mr. Zheleznyak showed Mr. Varshavsky a document showing certain securities that were held by Wonderworks, for the purpose of resolving the ongoing dispute and to demonstrate that, in August 2015, Mr. Leontiev had the financial capacity to settle that dispute.  Mr. Zheleznyak did not state or suggest that these securities were purchased with the proceeds of the Alleged Loans.  Zheleznyak Decl. ¶ 10.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the statement in full to the extent it relies on Def. Ex. 64, which is inadmissible hearsay, and Mr. Varshavsky's testimony, which recounts statements made in another document which is hearsay.  Fed. R. Evid. 802.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

157.    At the Moscow meeting, Leontiev and Zheleznyak acknowledged that Leontiev owed the money, told Varshavsky not to worry because it was invested in securities, and said that Leontiev would fully repay the loans and devise a payment plan for doing so. Def. Ex. 22 at 17:10-13 (London Tr.); Def. Ex. 13 at 80:15-83:13, 87:9-23 (Varshavsky Tr.); Def. Ex. 14 at 142:7-13, 143:2-146:14 (Zheleznyak Tr.); Def. Ex. 21 at 132:13-133:10, 134:16-21, 136:2- 9 (Monakhova Tr.).

**RESPONSE:**  Disputed.  The cited evidence does not support the statement. Ms. Monakhova's testimony makes clear that the issue discussed at the Moscow meeting was "whether the revocation of Probusinessbank license [sic] would affect the repayment of debt *on other companies*," specifically the repayment of money "*[f]rom Ambika*," which she described as

"Ambika's debt," and the attendees "did not" "discuss who exactly owed the balance of the money." Def. Ex. 21 at 132:13-133:24, 135:6-21 (Monakhova Tr.) (emphases added). Defendant has proffered no admissible evidence demonstrating that Mr. Leontiev was responsible for repayment of the Alleged Loans. Mr. Leontiev further objects to the statement as vague as to the meaning of "the money."

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Mr. Leontiev objects to the admission of any evidence of statements made during the Moscow meeting because they are "statement[s] made during compromise negotiations about the claim" which are not admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim." Fed. R. Evid. 408. To the extent the statement relies on Def. Ex. 22 at 17:10-13 (London Tr.), the cited evidence is similarly inadmissible as it is comprised entirely of "statement[s] made during compromise negotiations about the claim" which are not admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim." Fed. R. Evid. 408. Statements allegedly made by Mr. Zheleznyak to Mr. Varshavsky or Ms. Monakhova are hearsay and inadmissible against Mr. Leontiev. Fed. R. Evid. 802. Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

158.   At the end of that meeting, Messrs. Leontiev, Zheleznyak, and Varshavsky all agreed to meet again the following morning to finalize the terms of repayment. Def. Ex.15 at 146:15-18 (Zheleznyak Tr.).

**RESPONSE:**  Disputed in part.  The cited testimony merely states that "the meeting ended with a plan to meet the next day," but does not identify the parties to that plan.  Def. Ex.15 at 146:15-18 (Zheleznyak Tr.).  Mr. Zheleznyak testified that any such agreement was merely "in theory," and "there was no set time or place."  Def. Ex. 15 at 146:19-25 (Zheleznyak Tr.).

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the admission of any evidence of statements made during the Moscow meeting because they are "statement[s] made during compromise negotiations about the claim" which are not admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim."  Fed. R. Evid. 408.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

159.    Leontiev did not show up for their scheduled meeting the next morning; instead, amidst increasing scrutiny from Russian government officials relating to PRBB's failure, Leontiev Aff. at ¶ 22, Leontiev fled Russia overnight. Def. Ex. 13 at 82:6-83:13 (Varshavsky Tr.); see also Def. Ex. 15 at 147:2-22 (Zheleznyak Tr.).

**RESPONSE:**  Disputed in part.  Mr. Leontiev does not dispute that he did not meet with Mr. Varshavsky and Mr. Zheleznyak the day after the Moscow meeting.  However, the cited evidence does not reflect that they had a scheduled meeting the next morning, *see supra* Response to Def. SOF ¶ 158, nor does the cited evidence support the remainder of the statement.  Paragraph 22 of the Leontiev Declaration merely recounts actions of the Russian Deposit Insurance Agency vis-à-vis PRBB; it says nothing about Mr. Leontiev's reasons for leaving

Russia.  Mr. Zheleznyak's testimony actually contradicts the statement, as he testified that

Mr. Leontiev left Moscow "for a meeting with [] attorneys."  Def. Ex. 15 at 147:2-22 (Zheleznyak

Tr.).

    Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  To the extent the statement relies on Def. Ex. 13 at 82:6-

83:13 (Varshavsky Tr.), it is inadmissible because it relies in part on statements made during the

Moscow meeting, which are "statement[s] made during compromise negotiations about the

claim," not admissible "on behalf of any party . . . to prove . . . the validity or amount of a

disputed claim."  Fed. R. Evid. 408.  Similarly, to the extent the statement relies on Def. Ex. 13 at

82:6-83:13 (Varshavsky Tr.), it is inadmissible because it relies in part on statements allegedly

made by Mr. Zheleznyak to Mr. Varshavsky, which are hearsay and inadmissible against

Mr. Leontiev, Fed. R. Evid. 802, and because Mr. Varshavsky has no personal knowledge of why

Mr. Leontiev left Russia, Fed. R. Evid. 602.  Mr. Leontiev further objects to the statement and to

the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks

summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir.

2003).

    160. After Leontiev's departure from Moscow, the parties agreed to meet again
in London in August 2015 (the "London meeting"). Leontiev recorded this meeting, during which
he Leontiev repeatedly described Zheleznyak as his "partner." Def. Ex. 22 at 3:18, 6:39, 12:13-14,
19:10, 31:2-5, 48:11 (London Tr.). Leontiev stated of Zheleznyak, "He and I are partners, and his
obligations are my obligations, no doubt about it." *Id.* at 12:13-14 (London Tr.).

    **RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement and that Mr. Leontiev agreed to meet, and ultimately met, with Mr. Zheleznyak

and Mr. Varshavsky in London.  The statement is unsupported by the cited evidence to the extent

that it relies on representations made during an August 2015 meeting to describe Mr. Leontiev's

and Mr. Zheleznyak's relationship at any other point in time.  To the extent Mr. Leontiev

described Mr. Zheleznyak as his "partner" in statements made to Mr. Varshavsky, he explained

that he used the term "partner" to mean "that we are friends."  Def. Ex. 14 at 68:3-5, 69:12-15

(Leontiev Tr.).

    Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  To the extent the statement relies on the transcript of the

London meeting, both the statement and the transcript in its entirety are inadmissible because

"statement[s] made during compromise negotiations about the claim" are not admissible "on

behalf of any party . . . to prove . . . the validity or amount of a disputed claim."  Fed. R. Evid.

408.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not

relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401,

402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

    161. Leontiev used the word "we," referring to himself and Zheleznyak, when
describing Avilon's contractual counterparty on the loans: "We had a business with you. …We
paid interest." Def. Ex. 22 at 2:26-3:1 (London Tr.).

    **RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement.  To the extent Mr. Leontiev stated "[w]e had a business with you" and "[w]e paid

interest," Defendant's cited evidence makes clear that this was PRBB's business:  "We had a

business with you.  The business was profitable for you and for us.  We paid interest.  We paid a

lot of interest . . . about 100 million dollars in interest.  And after the bank's license was revoked,

the business was broken, there's no business." Def. Ex. 22 at 2:26-3:3 (London Tr.).

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." To the extent the statement relies on the transcript of the London meeting, both the statement and the transcript in its entirety are inadmissible because "statement[s] made during compromise negotiations about the claim" are not admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim." Fed. R. Evid. 408. Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

162.    At the London meeting, Leontiev and Zheleznyak again expressly and repeatedly acknowledged the debt and gave repeated assurances that they would repay the indebtedness. Def. Ex. 22 at 3:7-13; 9:3-6; 18:16-21; 30:7-8; 38:8-14; 38:23-39:4; 48:3-15 (London Tr.). For example, Leontiev stated that "You can be certain that we will perform our obligations to you" and "I give you my word, we will perform the obligation." Def. Ex. 22 at 13:21-22; 22:22 (London Tr.).

**RESPONSE:**  Undisputed that the cited evidence states the information contained in the statement, but disputed that the cited evidence supports the proposition that Mr. Leontiev ever acknowledged the Alleged Loans as his personal debt, or had an obligation to repay the Alleged Loans in his personal capacity.  Defendant has proffered no admissible evidence demonstrating that Mr. Leontiev is personally responsible for the Alleged Loans.  Nowhere in the transcript of the London meeting is the nature or amount of the debt stated, nor are the identities of the borrowers or of the lenders.  To the extent any conclusions can be drawn about what debts were at issue in the London meeting, it is amounts owed under "promissory notes" held by Boris Zuev and Mr. Varshavsky.  Def. Ex. 22 at 14:1-9 (London Tr.).  Defendant has proffered no

admissible evidence demonstrating that Mr. Leontiev was personally responsible for any debts

owed under any promissory notes. Indeed, Mr. Leontiev stated repeatedly at the London meeting

that these were not his personal obligations. Def. Ex. 22 at 3:14-21, 12:8-15 (London Tr.).

Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)." Mr. Leontiev objects to the admission of the transcript of

the London meeting, or any evidence of statements made during the London meeting, because

they are "statement[s] made during compromise negotiations about the claim" which are not

admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim."

Fed. R. Evid. 408. To the extent the statement relies on Mr. Zheleznyak's statements during the

London meeting, it is inadmissible as those statements are hearsay and not admissible against

Mr. Leontiev. Fed. R. Evid. 802. Mr. Leontiev further objects to the statement and to the cited

evidence because they are not relevant or material to any matter on which Plaintiff seeks summary

judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

163. When Mr. Varshavsky noted that he had previously spoken to Zheleznyak
seeking assurances of repayment, Leontiev responded that he would have to be the one to make
repayment because he had all of the money. Def. Ex. 22 at 12:3-6 (London Tr.) ("He [Zheleznyak]
can't repay you … because I have the money. I manage the business… that part of the business is
managed by me.").

**RESPONSE:** Undisputed that the cited evidence states the information contained

in the statement, but disputed that the cited evidence supports the proposition that Mr. Leontiev

ever acknowledged the Alleged Loans as his personal debt, or had an obligation to repay the

Alleged Loans in his personal capacity. *See supra* Response to Def. 56.1 ¶ 162. Defendant has

proffered no admissible evidence demonstrating that Mr. Leontiev is personally responsible for

the Alleged Loans.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the admission of the transcript of the London meeting, or any evidence of statements made during the London meeting, because they are "statement[s] made during compromise negotiations about the claim" which are not admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim." Fed. R. Evid. 408.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

164.    The material terms for payment of the debt by Leontiev were agreed upon and confirmed among the parties at the London meeting, including: (1) Leontiev's express personal commitment to pay, as well as the fact that he had the funds to do so; (2) the amount to be paid ($100 million); (3) the fact of Leontiev's partnership with Zheleznyak and Zheleznyak's responsibility for the debt; and (4) Leontiev's promise to repay the debt over the course of the next two years, without interest, according to a repayment schedule. Def. Ex. 22 at 3:7-13; 4:9- 12; 9:3-6; 12:3-6; 18:16-21; 25:3-6; 30:7-8; 31:6-8; 38:8-14; 38:23-39:4; 48:3-15 (London Tr.).

**RESPONSE:**  Disputed.  The cited evidence does not support the statement.  In fact, the cited evidence makes clear that no agreement was reached and that an agreement would only be reached if the parties' lawyers got involved and finalized the terms.  Def. Ex. 22 at 41:2-20 (London Tr.).  The parties did not reach agreement on any material terms, including the amount owed, collateral, an interest rate, or a schedule for payment, at the London meeting. Pl. Ex. 9 at 104:10-18, 105:9-13 (Varshavsky Tr.); Pl. Ex. 1 at 134:20-135:4 (Leontiev Tr.).

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the admission of the transcript of

the London meeting, or any evidence of statements made during the London meeting, because

they are "statement[s] made during compromise negotiations about the claim" which are not

admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim."

Fed. R. Evid. 408.  Mr. Leontiev further objects to the statement and to the cited evidence because

they are not relevant or material to any matter on which Plaintiff seeks summary judgment.

Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

165.    At issue in the London discussion were a variety of debts that nominally
multiple entities, controlled by Leontiev and Zheleznyak, owed to different lenders. Def. Ex. 22 at
18:17-21, 30:18-31:13 (London Tr.).

**RESPONSE:**  Disputed.  The cited evidence does not support the statement.

Nowhere in the transcript of the London meeting is the nature or amount of the debt stated, nor are

the identities of the borrowers or of the lenders mentioned.  To the extent any conclusions can be

drawn about what debts were at issue in the London meeting, it is amounts owed under

"promissory notes" held by Boris Zuev and unidentified other people.  Def. Ex. 22 at 14:1-9

(London Tr.).  Defendant has proffered no admissible evidence demonstrating that Mr. Leontiev

was personally responsible for any debts owed under any promissory notes.

Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the admission of the transcript of

the London meeting, or any evidence of statements made during the London meeting, because

they are "statement[s] made during compromise negotiations about the claim" which are not

admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim."

Fed. R. Evid. 408.  Mr. Leontiev further objects to the statement and to the cited evidence because

they are not relevant or material to any matter on which Plaintiff seeks summary judgment.

Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

        166.    The repayment schedule that Leontiev proposed at the London meeting had materially different terms than the underlying loan agreements and Promissory Notes, including freezing interests and paying installments over the course of two years, beginning with 25 million in the first quarter of 2016. Def. Ex. 22 at 4:9-12, 31:6-9 (London Tr.).

        **RESPONSE:**  Undisputed that the cited evidence states the information contained

in the statement, though the statement is vague as to the phrase "materially different."  Moreover,

the cited evidence makes clear that no agreement was reached at the London meeting and that an

agreement would only be reached if the parties' lawyers got involved and finalized the terms.

Specifically, in response to Mr. Zheleznyak inquiring "why can't we guarantee this money

according to the proposed plan," Mr. Leontiev responded that "that would require organizing a

meeting with the lawyers" and "it takes time."  Mr. Varshavsky then asked Mr. Leontiev whether,

if "[the parties'] plan is suitable to [Mr. Leontiev's] lawyers," or "the plan of [Mr. Leontiev's]

lawyers is suitable to [Mr. Varshavsky's] lawyers, and [Mr. Varshavsky] also receive[s] essential

guarantees, without the withdrawal of funds, would that option be acceptable to [Mr. Leontiev],"

to which Mr. Leontiev responded, "[i]f the lawyers come to an agreement, no question."  Def. Ex.

22 at 41:2-20 (London Tr.).

        Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the admission of the transcript of

the London meeting, or any evidence of statements made during the London meeting, because

they are "statement[s] made during compromise negotiations about the claim" which are not

admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim."

Fed. R. Evid. 408.  Mr. Leontiev further objects to the statement and to the cited evidence because

they are not relevant or material to any matter on which Plaintiff seeks summary judgment.

Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

> 167.    At the London meeting, Leontiev offered a repayment schedule that would
> give him time to continue trading on what he described as his "personal assets" so that he could
> make enough money to repay the various obligations that he owed, not only to Avilon but to
> others. Def. Ex. 22 at 3:2-13, 14:15-16, 35:8-36:7 (London Tr.).

> **RESPONSE:**  Undisputed that the cited evidence contains the term "personal

assets," but disputed that Mr. Leontiev owes money in his personal capacity to Avilon or to any

other lender; the cited evidence does not support that portion of the statement.  Rather, the cited

evidence indicates that the parties were discussing PRBB's business with Mr. Varshavsky at the

London meeting, and that that business "was broken" "after the bank's license was revoked."  *See*

Def. Ex. 22 at 2:26-3:3, 14:15-16 ("our business got broken") (London Tr.).  The cited evidence

demonstrates at most that Mr. Leontiev was willing, as part of a settlement negotiation, to

consider using his personal assets to settle the dispute regarding amounts Mr. Varshavsky alleged

were owed and to "settle . . . [Mr. Zheleznyak's] obligations."  Def. Ex. 22 at 35:8-17 (London

Tr.).  Defendant has proffered no admissible evidence demonstrating that Mr. Leontiev personally

owed any money pursuant to the Alleged Loans.

> Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the admission of the transcript of

the London meeting, or any evidence of statements made during the London meeting, because

they are "statement[s] made during compromise negotiations about the claim" which are not admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim." Fed. R. Evid. 408.  Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

### L. Leontiev Partially Repaid the Debts through Valkera, Another Offshore Entity He Controlled.

168.    In September 2015, one of Avilon's loans to Ambika, under Loan Agreement No. 2712/10 (the "2010 Loan Agreement"), was repaid via an assignment of Avilon Plaza's rights under the loan to Avilon Holdings Limited, which in turn assigned those rights to Valkera in exchange for $17 million. Pl. Ex. 34 at AVPE0002555-59 (9/17/2015 email from A. Zheleznyak to Mr. Popov attaching assignments agreements); Def. Ex. 14 at 138:20-139:6 (Leontiev Tr.); Def. Ex. 15 at 68:23-70:23 (Zheleznyak Tr.).

**RESPONSE:**  Disputed in part.  Mr. Leontiev does not dispute that Ambika's debt obligations under the 2010 Loan Agreement were discharged in September 2015 via an assignment of Avilon Plaza's rights under the loan to Avilon Holdings Limited, which in turn assigned those rights to Valkera in exchange for $17 million.  Mr. Leontiev objects to the statement "one of Avilon's loans to Ambika" because its use of the plural form is misleading. Under the 2010 Loan Agreement, European Realty Company (subsequently renamed as Avilon Plaza) issued a $12.25 million loan to Ambika.  Pl. SOF ¶ 90 (undisputed by Mr. Varshavsky). No other loans from Avilon Plaza to Ambika have been identified.  To the extent that it relies on Def. Ex. 14 at 138:20-139:6, Mr. Leontiev objects to the statement as unsupported by the cited evidence.  The cited evidence contains Mr. Leontiev's testimony that he "said yes" to the "payment of $17 million from Valkera," but does not refer to the relevant time frame, the 2010 Loan Agreement, or any other aspect of the transaction.  Def. Ex. 14 at 138:20-139:6 (Leontiev Tr.).

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  The $17 million payment from Valkera resolved the dispute with respect to the 2010 loan from Avilon Plaza to Ambika and has no bearing on the dispute with regard to the Alleged Loans.  To the extent Mr. Varshavsky seeks to characterize the Valkera payment as pertaining to the dispute at issue in this case, Mr. Leontiev objects to the statement because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  To the extent Mr. Varshavsky seeks to characterize the Valkera payment as pertaining to the dispute at issue in this case, Mr. Leontiev objects to the admission of evidence of the Valkera payment because the "furnishing [of] a valuable consideration in compromising or attempting to compromise the claim" is not admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim."  Fed. R. Evid. 408.

169.    Valkera was used by Leontiev to pay the money Ambika owed to Avilon under the 2010 Loan Agreement because Ambika did not have the money to make the payment itself. Def. Ex. 15 at 70:6-12 (Zheleznyak Tr.).

**RESPONSE:**  Disputed as unsupported by and as mischaracterizing the cited evidence and the record.  Mr. Leontiev does not dispute that Ambika's debt obligation to Avilon Plaza under the 2010 Loan Agreement was discharged through a payment from Valkera.  Mr. Leontiev objects to the statement that "Valkera was used by Leontiev to pay the money."  The cited evidence makes no mention of Mr. Leontiev or of his alleged "use" of Valkera, and Mr. Leontiev testified that Mr. Zheleznyak "made the payment of seventeen million from Valkera," Def. Ex. 14 at 137:20-21 (Leontiev Tr.); *see also* Def. Ex. 15 at 71:12-15 (Zheleznyak

Tr.) ("I was the one . . . who instructed Vyulkova to make the payment . . . ."). No evidence has been cited to support the allegation that Mr. Leontiev "used" Valkera. Mr. Leontiev further objects to the statement that "Valkera was used . . . because Ambika did not have the money to make the payment itself" as unsupported by the cited evidence. Mr. Zheleznyak did not testify as to the reason why Valkera made the payment to Avilon Plaza.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment. Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003). The $17 million payment from Valkera resolved the dispute with respect to the 2010 loan from Avilon Plaza to Ambika and has no bearing on the dispute with regard to the Alleged Loans. To the extent Mr. Varshavsky seeks to characterize the Valkera payment as pertaining to the dispute at issue in this case, Mr. Leontiev objects to the statement because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." To the extent Mr. Varshavsky seeks to characterize the Valkera payment as pertaining to the dispute at issue in this case, Mr. Leontiev objects to the admission of evidence of the Valkera payment because the "furnishing [of] a valuable consideration in compromising or attempting to compromise the claim" is not admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim." Fed. R. Evid. 408.

170.    Leontiev personally approved the payment of $17 million from Valkera to Avilon. He covered the payment of the principal and interest due on the 2010 Loan Agreement. Def. Ex. 14 at 138:20-22 (Leontiev Tr.); Def. Ex. 15 at 70:19-23, 71:12-73:16 (Zheleznyak Tr.). ███████████████████████████████████ The payment instruction could not have been given without Leontiev's agreement, and Leontiev was the only person who could have made the decision. Def. Ex. 15 at 70:24-73:16 (Zheleznyak Tr.).

**RESPONSE:**  Disputed.  Mr. Leontiev does not dispute that he "said yes to [the $17 million] payment" from Valkera to Avilon and did not try to stop it.  Def. Ex. 14 at 138:22-139:3 (Leontiev Tr.).  Mr. Leontiev objects to the statement that he "covered the payment" as vague, mischaracterizing the cited evidence, and unsupported by the cited evidence and the record.  Mr. Leontiev further objects to the statement ████████████████████████████ ██████████████████████████████████████ as mischaracterizing the cited evidence.  Mr. Zheleznyak testified that Mr. Leontiev "gave his agreement" to this payment before Mr. Zheleznyak instructed Ms. Vyulkova to make the payment.  Ex. 15 at 71:12-19 (Zheleznyak Tr.).  Mr. Leontiev confirmed that he "said yes" to the payment after Mr. Zheleznyak "asked [him] several times," but did not otherwise testify about his involvement in the decision to make the payment.  Def. Ex. 14 at 138:22-139:19 (Leontiev Tr.).

Mr. Leontiev further objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  The $17 million payment from Valkera resolved the dispute with respect to the 2010 loan from Avilon Plaza to Ambika and has no bearing on the dispute with regard to the Alleged Loans.  To the extent Mr. Varshavsky seeks to characterize the Valkera payment as pertaining to the dispute at issue in this case, Mr. Leontiev objects to the statement because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  To the extent Mr. Varshavsky seeks to characterize the Valkera payment as pertaining to the dispute at issue in this case, Mr. Leontiev objects to the admission of evidence of the Valkera payment because the "furnishing [of] a valuable consideration in compromising or

attempting to compromise the claim" is not admissible "on behalf of any party . . . to prove . . . the validity or amount of a disputed claim."  Fed. R. Evid. 408.

171.    Although Shcheglyaev was the nominal owner of Valkera, Zheleznyak did not need to check with Shcheglyaev before the $17 million payment from Valkera was made because Shcheglyaev had no decision-making authority with respect to the activities of Valkera. Def. Ex. 15 at 72:17-24 (Zheleznyak Tr.).

**RESPONSE:**  Disputed in part as vague and incomplete.  Mr. Leontiev does not dispute that Mr. Shcheglyaev was the nominal owner of Valkera for a certain time period and that he did not have decision-making authority with respect to Valkera's activities.  Mr. Leontiev objects to the statement that "Shcheglyaev was the nominal owner of Valkera" because it does not establish a relevant point in time.  Mr. Shcheglyaev testified that he became the beneficial owner of certain off-balance sheet companies in or around August 2015 and had no involvement with any off-balance sheet entity associated with PRBB prior to August 2015.  King Decl. Ex. 2 at 21:8-21, 68:14-18, 72:7-11, 75:6-10 (Shcheglyaev Tr.). Mr. Leontiev further objects to the statement to the extent that it assumes Mr. Shcheglyaev's nominal ownership of Valkera is relevant to decision-making authority with respect to Valkera's activities.  Mr. Zheleznyak testified that Valkera was created and operated by the financial bloc of the Bank.  Pl. Ex. 2 at 73:24-74:2, 102:11-103:25 (Zheleznyak Tr.).

Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

172.    From September 2015 to December 2015, representatives of Leontiev, Zheleznyak, and Varshavsky continued to discuss a timetable for the loan repayment.  Maxim Shamis, who represented Leontiev and Zheleznyak in the repayment negotiations, was also involved in the preparation of some of the settlement agreements and payment schedules for the remaining amount, which he sent to Avilon employees. Def. Ex. 23 at AVPE0006100 (November 30, 2015 Cover email to Pl. Ex. 60 at AVPE0006115-17 (unsigned deed of arrangement); Def. Ex. 24 at AVPE0006123-24 (December 1, 2015 Cover email to Pl. Ex. 61 at AVPE0006126-28

(unsigned surety agreement); Def. Ex. 25 at AVP0002705-17 (November 18, 2015 Cover email to Pl. Ex. at AVP0002718-19 (unsigned deed of arrangement).

**RESPONSE:**  Disputed in part as mischaracterizing and unsupported by the cited evidence and the record.  Mr. Leontiev does not dispute that discussions of a settlement were ongoing between September and December 2015, and that these discussions touched on a potential timetable for the payment of the settlement, among other topics.  Further, Mr. Leontiev does not dispute that Mr. Zheleznyak designated Maxim Shamis as a "coordinator" for some of these settlement negotiations, and that Mr. Shamis subsequently was involved in the preparation of draft settlement agreements and payment schedules.  Def. Ex. 25 at AVP0002705-07.  Mr. Leontiev objects to the reference to "representatives of Leontiev" and to "Maxim Shamis, who represented Leontiev" as unsupported by the cited evidence.  The cited evidence consists of email exchanges, not one of which involves Mr. Leontiev or purports to contain representations made on his behalf.  Mr. Leontiev objects to the terms "loan repayment" and "repayment" to the extent that they refer to anything other than settlement negotiations.  Mr. Leontiev's involvement was limited to seeking to negotiate a resolution of the dispute between Mr. Varshavsky and Mr. Zheleznyak.  Leontiev Decl. ¶¶ 35, 39.  Mr. Leontiev further objects to the phrase "for the remaining amount" as misleading and vague.  Additionally, Def. Ex. 25 shows that the amount at issue remained in flux throughout the negotiations.  Def. Ex. 25 at AVP0002705-07.

Mr. Leontiev objects to the statement in full because it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the admission of any evidence of statements made during these negotiations and to any draft settlement documents because they are "statement[s] made during compromise negotiations about the claim" which are not admissible on

behalf of any party . . . to prove . . . the validity or amount of a disputed claim."  Fed. R. Evid.

408.  Mr. Leontiev further objects to the statement, to the extent it relies on Def. Exs. 23, 24, and

25, and to these exhibits, as they consist of inadmissible hearsay.  Fed. R. Evid. 802.

Mr. Leontiev further objects to the statement and to the cited evidence because they are not

relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401,

402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

> 173.    On January 15, 2016, Leontiev and Mr. Varshavsky, represented by
> counsel, met in New York specifically to continue the ongoing discussions regarding the
> repayment of the funds owed to the Lenders. Def. Ex. 13 at 80:9-14, 105:14-23. (Varshavsky Tr.).

**RESPONSE:**  Disputed in part.  Mr. Leontiev does not dispute that he and

Mr. Varshavsky, represented by counsel, met in New York on January 15, 2016.  Mr. Leontiev

objects to the rest of this statement as not supported by the cited evidence, which states only that

such a meeting in New York took place.  Mr. Leontiev further objects to the rest of the statement

as mischaracterizing and unsupported by the record to the extent that it suggests that the purpose

of this meeting was to discuss "repayment" and that it suggests the then-existence of "ongoing

discussions regarding repayment."  Def. Ex. 14 at 68:22-69:9 (Leontiev Tr.) (testifying that the

purpose of the London meeting was "to settle [a] dispute").

Mr. Leontiev further objects to the statement to the extent it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  Mr. Leontiev objects to the admission of any evidence of

statements made during the New York meeting, because they are "statement[s] made during

compromise negotiations about the claim" which are not admissible "on behalf of any party . . . to

prove . . . the validity or amount of a disputed claim."  Fed. R. Evid. 408.  Mr. Leontiev further

objects to the statement and to the cited evidence because they are not relevant or material to any

matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*,

320 F.3d 309, 311 (2d Cir. 2003).

    **K.**    **While Promising to Repay the Debt, Leontiev Was Secretly Taking Steps to Transfer His Assets Out of the Reach of Creditors.**

    174.



    **RESPONSE:**  Disputed as unsupported by the cited evidence and the record.  The

cited evidence does not support the statement to the extent that it causally connects the settlement

discussions between Mr. Leontiev and Mr. Varshavsky

 Mr. Leontiev objects to the statement as vague and

misleading with respect to

Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or

material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402;

*Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

    175.

    **RESPONSE:**  Undisputed that

Mr. Leontiev objects to the statement and to the cited evidence because they are not

relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401,

402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

176.

████████████████████████████████████████████

**RESPONSE:**  Disputed in part as unsupported by the cited evidence.

Mr. Leontiev does not dispute that ████████████████████████

████████████████.  Mr. Leontiev objects to the statement as vague and misleading to

the extent it refers to ████████████████████  The cited testimony

does not support the statement to the extent it suggests that ████████████

████████████████████  Mr. Leontiev objects to the statement and

to the cited evidence because they are not relevant or material to any matter on which Plaintiff

seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d

Cir. 2003).

177. ████████████████████████

**RESPONSE:**  Disputed as unsupported by the cited evidence. ████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████  The cited evidence does not support the statement to the extent it suggests that

Avilon is a creditor of Mr. Leontiev ████████████████████████

████████████████████████

Mr. Leontiev objects to the statement in full because it relies on evidence that

would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that

every statement must be supported by a "citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  The cited evidence is inadmissible because Mr. Zheleznyak

does not have personal knowledge of ████████████████  Mr. Leontiev further

objects to the statement and to the cited evidence because they are not relevant or material to any

matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*,

320 F.3d 309, 311 (2d Cir. 2003).

178.    The trust deed governing the Legion Trust contains numerous provisions intended to defeat any attempt by creditors to obtain repayment from the assets of the trust, including defensive provisions triggered by the receipt of any court order or instruction. Def. Ex. 28 (Legion Trust agreement), at Ex. C § 4.1 ("Event of Duress"). These provisions provide for a trustee to simply ignore any exercise of powers under the trust deed that the trustee believes was compelled by a court order (*id.* §§ 14.0-14.2); to remove and replace any trustee who potentially could become subject to a court order by virtue of being domiciled in the same country as the settlor (*id.* § 25.11); and even to move the trust or its assets to another jurisdiction altogether in order to avoid the effect of a court order (*id.* §§ 21.2-21.3).

**RESPONSE:**  Disputed as characterized.  The trust deed speaks for itself.

Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or

material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402;

*Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).



179.

**RESPONSE:**  Undisputed that

Mr. Leontiev

objects to the statement and to the cited evidence because they are not relevant or material to any

matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*,

320 F.3d 309, 311 (2d Cir. 2003).

180. █████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

**RESPONSE:**  Disputed as unsupported by and mischaracterizing the cited

evidence.  Mr. Leontiev does not dispute that prior to December 2015, ████████████

████████████████████████████████████  Mr. Leontiev also does not

dispute that, ████████████████████████████████  although that statement

is not supported by the cited evidence.  The cited evidence does not support the statement to the

extent it suggests that █████████████████████████████

███████████████████████████████████████████████

████████████  Mr. Leontiev objects to the statement and to the cited evidence because they are

not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid.

401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

181. █████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████

**RESPONSE:**  Undisputed that ████████████████████████

███████████████████████████████████████████████

████████████████████████  Mr. Leontiev objects to the statement and to the

cited evidence because they are not relevant or material to any matter on which Plaintiff seeks

summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir.

2003).

182.    Leontiev fled from Moscow and arrived in the United States in late summer 2015. Def. Ex. 14 at 20:11-17 (Leontiev Tr.); Def. Ex. 15 at 147:2-22 (Zheleznyak Tr.); Def. Ex. 13 at 82:6-83:13 (Varshavsky Tr.).

**RESPONSE:**  Undisputed that Mr. Leontiev left Moscow in the summer of 2015 and arrived in the United States thereafter.  Mr. Leontiev objects to the statement to the extent it relies on evidence that would be inadmissible at trial and thus fails to comply with Rule 56.1(d), which requires that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The cited portion of Mr. Varshavsky's deposition testimony is inadmissible because Mr. Varshavsky lacks personal knowledge of when Mr. Leontiev left Moscow and arrived in the United States.  Fed. R. Evid. 602.  The cited portion of Mr. Varshavsky's testimony is also inadmissible to the extent it is based on statements made by Mr. Zheleznyak to Mr. Varshavsky.  Fed. R. Evid. 802.  Mr. Leontiev also objects to the statement as vague with respect to the meaning of "fled."

Mr. Leontiev objects to the statement and to the cited evidence because they are not relevant or material to any matter on which Plaintiff seeks summary judgment.  Fed. R. Evid. 401, 402; *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).

Dated: New York, New York
February 17, 2017

GIBSON, DUNN & CRUTCHER LLP

By: _____

Robert L. Weigel
Marshall R. King
Alison L. Wollin

200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
Fax: (212) 351-4035

*Attorneys for Plaintiff*