UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SERGEY LEONTIEV,

               Plaintiff,

-against-                                No. 16-cv-03595 (JSR)

ALEXANDER VARSHAVSKY,

               Defendant.

------------------------------------------------------------x

## REPLY DECLARATION OF YURI MONASTYRSKY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1.      I have reviewed the Supplemental Declaration of Svetlana Volodina and Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Opposition Brief") and have the following comments.

**Status of ZAO Financial Group "Life"**

2.      Public records show that ZAO Financial Group "Life" ("ZAO FG Life") has, indeed, been reinstated (after an earlier failed attempt) and is in the process of being liquidated. However, in paragraph 4 of her Supplemental Declaration, Ms. Volodina makes an assertion that "the liquidation procedure was breached" (note that the word "breached" was incorrectly translated as "disrupted" in the English version of her Supplemental Declaration) and that "known creditors were not notified in writing." There is no public record corroborating either statement and Ms. Volodina has not submitted any evidence that the procedure was breached, that any of the alleged creditors were "known" to the liquidator, or that such creditors were not notified in writing. In fact, notice of the liquidation was published in the State Registration Bulletin on April 1, 2015.

1

**Piercing the corporate veil**

3. I concur with Ms. Volodina's statement (*see* paragraph 6 of her Supplemental Declaration) that "[t]he principle of 'lifting the corporate veil' is not currently included in Russian law." I disagree, however, with Ms. Volodina's conclusion (*see* paragraphs 7 and 8 of her Supplemental Declaration) that, merely because *parties themselves* request that principle be applied, or courts have *referenced* that principle in a small number of cases, that means that Russian courts recognize and apply the principle of veil piercing. To the contrary, while there are, indeed, references to such principle in the court practice, the court practice actually imposing liability on the parent entity or person on the basis of such principle is extremely limited and, in all instances known to me, is factually inapposite to the case at hand (as is evident from the cases cited by Ms. Volodina in paragraph 8 of her Supplemental Declaration and as more fully described below).

4. In paragraph 7 of Ms. Volodina's Supplemental Declaration, she lists a number of circumstances referred to by plaintiffs in various cases to justify the application of the principle of veil piercing. She fails to mention, however, that in every single case she cites in paragraph 8 of her Supplemental Declaration (with one exception discussed below), the courts either did not impose liability on the parent entity or person on the basis of veil piercing, or did not even entertain the veil piercing argument:

| Case | Outcome |
| --- | --- |
| RF Supreme Arbitration Court Resolution 16404/11 of 4/24/2012 | Considered veil piercing solely as a basis for asserting jurisdiction (though case was ultimately dismissed on jurisdictional grounds) |
| RF Supreme Arbitration Court Ruling VAS-16126/13 of 12/23/2013 | Refused to consider veil piercing |

2

| Case | Outcome |
|---|---|
| Federal Arbitration Court for the West Siberian District Resolution No. F04-7094/11 of 6/6/2012, Case No. A70-7811/2011 | No reference to veil piercing |
| Federal Arbitration Court for the North Western District Resolution No. F07-8364/12 of 2/20/2013, case No. A56-38334/2011[1] | No reference to veil piercing |
| Federal Arbitration Court for the Far Eastern District Resolution F03-3534/13 of 8/12/2013, Case No. A73-15127/2012 | Refused to consider veil piercing |
| Federal Arbitration Court for East Siberian District Resolution F02-3522/13 of 9/17/2013, Case No. A19-11062/2011 | Considered but rejected veil piercing |
| Third Arbitration Appellate Court Resolution 03AP-1178/12 of 5/29/2012 | No reference to veil piercing |
| Thirteenth Arbitration Appellate Court Resolution of 6/17/2014, Case No. A56-55593/2008 | Considered but rejected veil piercing |
| Krasnoyarsk Regional Arbitration Court Decision of 12/16/2014, Case No. A33-3867/2014 | Considered but rejected veil piercing |
| Novosibirsk Regional Arbitration Court Decision of 11/5/2014, Case No. A45-12142/2014 | Applied veil piercing under totally inapposite facts, as described in paragraph 5 below |

5. The only decision recognizing the parent entity's liability for damages caused to a third-party creditor of a subsidiary was the decision of the Arbitrazh Court of the Novosibirsk Region dated 05.11.2014 in case No. A45-12142/2014. In that case, a company called MoCom, a wholly-owned subsidiary of a company called Gamma Unipack, took a loan from a bank, secured by way of a suretyship from an individual named Mr. Benevalensky. Having subsequently acquired both the bank's claim against MoCom and the accessory claim against Mr. Benevalensky under the suretyship agreement, Gamma Unipack then made the decision to liquidate MoCom, and Mr. Egorov—the controlling shareholder of Gamma Unipack and MoCom—acted as the liquidator. Mr. Benevalensky paid the bank an amount of 4 million

---

[1] This case appears to have been inadvertently omitted from the English translation of Ms. Volodina's Supplemental Declaration, which instead lists twice the Federal Arbitration Court for the Far Eastern District Resolution F03-3534/13 of 8/12/2013, Case No. A73-15127/2012.

3

Roubles (approx. USD 60,000 at today's exchange rate) under the suretyship, thus acquiring a claim against the primary obligor (MoCom) by subrogation. When Gamma Unipack then sought to recover additional amounts from Mr. Benevalensky under the suretyship agreement, Mr. Benevalensky filed a claim for damages against both Mr. Egorov and Gamma Unipack. Concluding that the liquidation had been taken in bad faith, the court imposed liability on Mr. Egorov and Gamma Unipack in the amount of 4 million Roubles (the amount Mr. Benevalensky had previously paid under the suretyship) for reasons wholly inapplicable here: As to Mr. Egorov, the court imposed liability for the bad faith liquidation, not as the controlling shareholder of either MoCom or Gamma Unipack, but as the *liquidator*. As to Gamma Unipack, the court imposed liability on a veil piercing theory under Article 10 of the Civil Code,[2] solely because Gamma Unipack had attempted to exercise civil law rights (asserting a claim against the surety) in bad faith, knowing that, as a result of the bad faith liquidation of the primary obligor (MoCom), the surety (Mr. Benevalensky) would be deprived of the recourse he otherwise would have had against MoCom. In other words, this case stands only for the proposition that a surety can impose liability on a liquidator who conducts the liquidation procedure in bad faith, and can use the principle of veil piercing to recover from a parent that liquidates its subsidiary in order to recover funds from the surety in bad faith—facts entirely inapposite to the case at hand, since Mr. Leontiev was not the liquidator of ZAO FG Life, and is not attempting to exercise any civil law right at all, in bad faith or otherwise.

   6.  I also note the insufficiency of Defendant's argument in the case at hand that "Zheleznyak personally guaranteed the loans—and signed a number of promissory notes on

---

[2] Article 10 of the Civil Code prohibits "the carrying out of one's civil law rights with the exclusive intent to cause harm to another person, any actions evading the law with an unlawful purpose as well as any other exercise of civil law rights deliberately carried out in bad faith (an abuse of right)."

[ZAO FG Life's] behalf—avowing that this also constituted a guarantee from Leontiev because the two were equal partners." (Citation omitted.) Defendant's Opposition Brief fails to cite any documentary evidence of either Mr. Zheleznyak's written undertaking to guarantee the loans (the promissory notes were signed on behalf of ZAO FG Life, or on behalf of Probusinessbank as guarantor, rather than in his own name) or of a partnership agreement between Mr. Zheleznyak and Mr. Leontiev. Without such a writing, there is no basis under Russian law to impose liability on Mr. Zheleznyak for any alleged promise to answer for ZAO FG Life's (or any other entity's) obligations. And even if Mr. Zheleznyak could be held personally liable under any suretyship agreement, which he cannot be, in the absence of a written partnership agreement, there is no basis under Russian law to impose liability on Mr. Leontiev as Mr. Zheleznyak's alleged partner.

7.   Article 361.1 of the Civil Code provides that "[p]ursuant to suretyship agreement the surety undertakes to the creditor of another person to answer for the performance by the latter of his obligations in full or in part." So under Russian law, Mr. Zheleznyak's alleged guarantees could only be classified as a suretyship agreement. Pursuant to Article 362 of the Civil Code, "[a] suretyship agreement must be made in a written form. Failure to observe the written form results in the invalidity of the suretyship agreement." Therefore, if Defendant has not produced a writing signed by Mr. Zheleznyak on his own behalf, any promises to answer for the debts of the borrowers would be invalid as a matter of Russian law.

8.   Even if such a written suretyship agreement did exist, Mr. Zheleznyak's liability as a surety could not attach to Mr. Leontiev on the basis of the assertion that Mr. Zheleznyak and Mr. Leontiev were "equal partners." While Russian law permits joint and several liability of general partners in a partnership, it imposes such liability only when the partnership is formalized. Article 70 of the Civil Code requires that all partners conduct commercial activities

in the name of the partnership (rather than in their own names) and sign a written foundation agreement specifying the amount of the partnership's segregated capital and the amount and timing of capital contributions by each partner. Without such a written foundation agreement, Russian law does not permit the imposition of joint and several liability on the basis of an alleged partnership.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17 day of February, 2017 in Moscow, Russian Federation.

_____
Yuri Monastyrsky