UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

|  |  |  |
|---|---|---|
| SERGEY LEONTIEV, | : | |
| Plaintiff, | : | |
| -against- | : | No. 16-cv-03595 (JSR) |
| ALEXANDER VARSHAVSKY, | : | |
| Defendant. | : | |

----------------------------------------------------------------x

## DECLARATION OF ALEXANDER ZHELEZNYAK

ФЕДЕРАЛЬНЫЙ ОКРУЖНОЙ СУД США
ПО ЮЖНОМУ ОКРУГУ ШТАТА НЬЮ-ЙОРК

--------------------------------------------------------------------x
                                          :
СЕРГЕЙ ЛЕОНТЬЕВ,                          :
                     Истец,               :
                                          :
      -против-                            :    № 16-cv-03595 (JSR)
                                          :
АЛЕКСАНДРА ВАРШАВСКОГО,                    :    **ЗАЯВЛЕНИЕ АЛЕКСАНДРА ЖЕЛЕЗНЯКА**
                     Ответчика.           :
                                          :
                                          :
--------------------------------------------------------------------x

      Я, АЛЕКСАНДР ЖЕЛЕЗНЯК, будучи предупрежден об ответственности за дачу ложных показаний, заявляю следующее:

      1. В 1993 году я стал соучредителем акционерного коммерческого банка «Пробизнесбанк» (далее — «ПРББ» или «Банк») совместно со своим другом Сергеем Леонтьевым и третьим лицом. В разное время у банка были разные акционеры. Я владел примерно 11% акций Банка.

      2. С 1993 года по апрель 2015 года я являлся первым вице-президентом ПРББ и председателем правления ПРББ. С 2004 года я также занимал должность руководителя корпоративного подразделения ПРББ, которое обслуживало крупных корпоративных клиентов.

      3. В 2008 году у меня с Александром Варшавским состоялась беседа о возможности осуществления инвестиций в Банк. Я объяснил ему, что ПРББ будет использовать эти средства для осуществления инвестиций в различные проекты, в том числе в инвестиционные и строительные проекты. Я никогда не говорил г-ну Варшавскому о том, что данная инвестиция «никак не относилась» к ПРББ. Наоборот, я всегда ясно давал понять, что данные средства будут использоваться Банком для его проектов.

      4. Компания «Амбика Инвестментс Лтд.» (Ambika Investments Ltd., далее — «Амбика») представляла собой забалансовую компанию, которая использовалась ПРББ для структурирования инвестиций. До 2015 года я никогда не обсуждал с г-ном Варшавским вопрос об «Амбике». Мы не обсуждали с ним, каким видом деятельности занимается компания «Амбика». Я никогда не говорил г-ну Варшавскому, что «Амбика» является компанией, покупающей и продающей высокодоходные акции первоклассных компаний в инвестиционных целях. Я никогда не говорил г-ну Варшавскому, что компанию «Амбика» «контролирует» г-н Леонтьев.

      5. В 2008 году мы с г-ном Варшавским согласовали только процентную ставку и срок кредита. После того, как мы согласовали эти условия, соглашением занималась Ирина Монахова, финансовый директор Группы «Авилон», и Янна Крисюк, один из руководителей ПРББ, которая работала в подразделении по работе с VIP-клиентами и обслуживала счета г-на Варшавского и его компаний. С 2008 года по 2015 год суммы инвестиций г-на Варшавского и аффилированных с ним компаний очень сильно менялись, и мы с г-ном Варшавским никогда не обсуждали каждую сумму.

      6. Впоследствии мне стало известно, что структура инвестиции была разработана в виде кредита на сумму 19,9 млн. долл., который предоставляла компания «Нью-Йорк Моторс Москва» (New York Motors Moscow) компании «Амбика». До 2015 года ни сам г-н Варшавский, ни гжа Монахова никогда не обсуждали со мной вопрос о компании «Амбика».

      7. ПРББ предоставил банковские гарантии по каждой из инвестиций Группы «Авилон» и иногда предоставлял новые гарантии по мере предоставления кредитов. Я подписал несколько таких гарантий в качестве председателя правления ПРББ. От себя лично я никогда не

гарантировал возврата кредитов компании «Авилон» и никогда не говорил и не намекал, что г-н Леонтьев гарантировал возврат кредитов от себя лично. Ни я, ни г-н Леонтьев никогда не подписывали гарантий от себя лично.

8. До 2015 года я никогда не обсуждал с г-ном Камо Авагумяном вопрос об условиях его инвестиций в Банк, но я знал, что он и его друзья инвестировали средства. Я подписал ряд векселей, выписанных на имя сына Камо Авагумяна, Карена Авагумяна, в качестве представителя ЗАО ФГ «Лайф» или ПРББ, но я не гарантировал эти векселя от себя лично и никогда не говорил и не намекал г-ну Авагумяну, что г-н Леонтьев гарантировал векселя от себя лично.

9. До августа 2015 года мне ничего не было известно о компании под названием «Венноп Трейдинг Лимитед» (Vennop Trading Limited). После августа 2015 года мне стало известно, что компания «Венноп» выпустила ряд простых векселей на имя Карена Авагумяна. До августа 2015 года я никогда не обсуждал вопрос о компании «Венноп» с г-ном Камо Авагумяном.

10. Я никогда не говорил г-ну Варшавскому или г-ну Камо Авагумяну, что средства, вложенные ими в ПРББ, будут использоваться г-ном Леонтьевым с целью осуществления инвестиций в ценные бумаги. В августе 2015 года я показал г-ну Варшавскому документ, касавшийся определенных ценных бумаг, находившихся в распоряжении компании «Вандерворкс» (Wonderworks), владельцем которой в то время являлся г-н Леонтьев. Я показал г-ну Варшавскому этот документ в рамках переговоров, направленных на разрешение спора о деньгах, в качестве доказательства того, что г-н Леонтьев располагал финансовыми возможностями для урегулирования этого спора. При этом я не говорил и не намекал, что эти ценные бумаги были приобретены за счет средств, вложенных компанией «Авилон» или г-ном Авагумяном.

Будучи предупрежден об ответственности за дачу ложных показаний в соответствии с законодательством Соединенных Штатов Америки, заявляю, что все вышесказанное верно и правильно. Подписано «16» февраля 2017 года в городе Бостон (штат Массачусетс).

Александр Железняк

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                :

SERGEY LEONTIEV,                  :
                                                                 :

                Plaintiff,      :  No. 16-cv-03595 (JSR)
                                                            :

      -against-               :  **DECLARATION OF ALEXANDER**
                                                          :  **ZHELEZNYAK**
ALEXANDER VARSHAVSKY,     :

                                                              :

                Defendant.     :
------------------------------------------------------------------x

       I, ALEXANDER ZHELEZNYAK, declare under penalty of perjury as follows:

       1.     In 1993, I co-founded Probusinessbank ("PRBB" or "the Bank"), a joint-stock commercial bank, with my friend Sergey Leontiev and a third person.  At different times the Bank had various shareholders.  I owned approximately 11% of the Bank's shares.

       2.     I was the First Vice-President of PRBB and Chairman of PRBB's Management Board from 1993 to April 2015.  I also served as the Head of PRBB's Corporate Division since 2004, which provided services to large corporate customers.

       3.     In 2008, I discussed with Alexander Varshavsky the possibility of an investment in the Bank.  I explained to him that PRBB would use the funds to invest in various projects, including investment and construction.  I never told Mr. Varshavsky that the investment had "nothing to do" with PRBB.  To the contrary, I was always clear that the funds were to be used by the Bank for Bank projects.

       4.     Ambika Investments Ltd. ("Ambika") was an off-balance sheet company used by PRBB to structure investments.  Prior to 2015, I never discussed Ambika with Mr. Varshavsky.  We did not discuss what business Ambika was involved with.  I never told Mr.

Varshavsky that Ambika was a company that bought and sold blue chip stocks for investment purposes.  I never told Mr. Varshavsky that Mr. Leontiev "controlled" Ambika.

5.      In 2008, Mr. Varshavsky and I negotiated only the interest rate and the period of the loan.  After we agreed on these terms, the agreement was sorted out by Irina Monakhova, the Avilon Group's Financial Director, and Yanna Krisiuk, a PRBB manager who worked in the VIP clients department and serviced Mr. Varshavsky's and his companies' accounts.  Between 2008 and 2015, the total amounts invested by Mr. Varshavsky and the companies affiliated with him changed significantly, but Mr. Varshavsky and I did not discuss each sum.

6.      Afterwards, I learned that the investment was structured as a $19.9 million loan from New York Motors Moscow to Ambika.  Prior to 2015, neither Mr. Varshavsky nor Ms. Monakhova ever discussed Ambika with me.

7.      PRBB provided bank guarantees for each of the Avilon Group's investments, and sometimes provided new guarantees when the loans were extended.  I signed several of these guarantees in my capacity as Chairman of PRBB's Management Board.  I never guaranteed repayment of the Avilon loans in my personal capacity, nor did I state or suggest that Mr. Leontiev guaranteed the loans in his personal capacity.  Neither I nor Mr. Leontiev ever signed guarantees in our personal capacities.

8.      Prior to 2015, I never discussed the terms of Kamo Avagumyan's investments in the Bank with him, but I knew that he and his friends had invested funds.  I signed some of the notes that were issued in the name of Kamo Avagumyan's son, Karen Avagumyan, either as a representative of ZAO FG Life or of PRBB, but I did not personally

2

guarantee the notes, nor did I state or suggest to Mr. Avagumyan that Mr. Leontiev personally guaranteed the notes.

9.      Prior to August 2015, I did not know about a company called Vennop Trading Limited.  After August 2015, I learned that Vennop issued certain promissory notes in the name of Karen Avagumyan.  Prior to August 2015, I never discussed Vennop with Kamo Avagumyan.

10.      I never told Mr. Varshavsky or Kamo Avagumyan that the funds that they invested in PRBB would be used by Mr. Leontiev to invest in securities.  In August 2015, I showed Mr. Varshavsky a document showing certain securities that were held by Wonderworks, a company that was owned by Mr. Leontiev at the time.  I showed Mr. Varshavsky this document in aid of a negotiation to resolve the dispute over money and to demonstrate that Mr. Leontiev had the financial capacity to settle this dispute.  I did not state or suggest that these securities were purchased with the funds that Avilon or Mr. Avagumyan had invested.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 16th day of February, 2017 in Boston, Massachusetts.

_____
/signature/
Alexander Zheleznyak

translations@geotext.com
www.geotext.com

STATE OF NEW YORK            )
                             )     ss
                             )

## CERTIFICATION

This is to certify that the attached English witness statement of Alexander Zheleznyak is, to the

best of my knowledge and belief, a true and accurate representation of the Russian.

_____

Nathan Haselby, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me

this 17 day of February, 20 17 .

DUSTIN PAUL RICHARD
NOTARY PUBLIC-STATE OF NEW YORK
No. 01RI6319157
Qualified In Bronx County
My Commission Expires February 09, 2019

New York
t: +1.212.631.7432

London
t: +44.20.7553.4100

Washington, D.C.
t: +1.202.828.1267

Paris
t: +33.1.42.68.51.47

Chicago
t: +1.312.242.3756

Stockholm
t: +46.8.463.11.87

Houston
t: +1.713.353.3909

Frankfurt
t: +49.69.7593.8434

San Francisco
t: +1.415.576.9500

Hong Kong
t: +852.2159.9143