# EXHIBIT 2

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - -x

SERGEY LEONTIEV,

               Plaintiff,

                            Case No. 16-cv-3595
   -against-

ALEXANDER VARSHAVSKY,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - -x

               January 11, 2017
               3:10 p.m.

      Videotaped deposition of
ALEXANDER SHCHEGLYAEV, taken by Defendant,
pursuant to Notice, held at Hotel Kämp,
Pohjoisesplanadi 29, Helsinki, Finland,
before Sharon Lengel, a Registered
Professional Reporter, Certified Realtime
Reporter, and Notary Public of the State
of New York.

        *    *    *

1
2  A P P E A R A N C E S:
3
       GIBSON, DUNN & CRUTCHER LLP
4           Attorneys for Plaintiff
            200 Park Avenue
5           New York, New York 10166
6      BY:  MARSHALL KING, ESQ.
            ANDREI MALIKOV, ESQ.
7
8
9      DEBEVOISE & PLIMPTON LLP
            Attorneys for Defendant
10          801 Pennsylvania Avenue, N.W.
            Washington, D.C. 20004
11
       BY:  NICHOLAS C. TOMPKINS, ESQ.
12          COLBY A. SMITH, ESQ.
13
14
15 ALSO PRESENT:
16          DAVID ROSS ELLIOTT, Videographer
17          PAVEL KHOKHLACHEV, Interpreter
18          VICTOR POTAPOV, Check Interpreter
19          VITALIY POPOV, ESQ.
20
                *     *     *
21
22
23
24
25

Page 20

1      SHCHEGLYAEV
2  all of this, and she knows everything.
3  And then I said what Vyulkova told me,
4  that it was necessary to change the
5  beneficiary after a certain period of
6  time -- five or six years -- to which
7  Zheleznyak shrugged his shoulders and
8  said, "Then this is the case. She is
9  dealing with everything, and I'm not even
10 getting involved there. She's been
11 working with us for a long time."
12      Q.   You said that, at the time
13 Ms. Vyulkova approached you, she was an
14 employee of Probusinessbank; is that
15 right?
16      A.   Good question. I never saw her
17 employment records.
18      Q.   Okay.
19      A.   But everyone around told me that
20 she was an employee of Probusinessbank,
21 and at all negotiations with
22 Probusinessbank, she was always present as
23 an employee of Probusinessbank.
24      Q.   Did you understand that the
25 companies for which you became the

1                SHCHEGLYAEV
2    beneficiary were operated in some way in
3    relation to Probusinessbank?
4            MR. KING:  Objection to form.
5        Leading.  Foundation.
6        A.    It's very difficult for me to
7    answer this question.  I didn't -- I did
8    not have any understanding.  Moreover, I
9    became the beneficiary somewhere in
10   August 2015, and literally two weeks
11   later, the bankruptcy of Probusinessbank
12   took place.
13       Q.    And was August of 2015 the first
14   time that you took on the role of
15   beneficiary at any companies at the
16   request of Ms. Vyulkova?
17       A.    Yes.
18       Q.    Prior to August of 2015, had you
19   ever acted as the beneficiary for any
20   company?
21       A.    No.  If -- except for the
22   Russian companies.
23       Q.    I'm sorry.  What do you mean by
24   that?
25       A.    I was, of course, shareholder

```
                                              Page 68
 1                  SHCHEGLYAEV
 2             I ask you to look at this
 3    document and see if you recognize it.
 4        A.    (Witness perusing document.)
 5             This is nonsense.  I don't know
 6    how to comment this.
 7        Q.    Well, looking at the --
 8        A.    It says, "In spring 2006."  In
 9    spring 2006, I was not even aware of Life
10    Group's existence.  Then it says, "I gave
11    my consent solely for consideration, after
12    which several companies were registered in
13    my name, including Ambika Investment."
14             But before the end of
15    July/beginning of August 2015, no
16    companies were reregistered in my name.  I
17    think this could be checked, and Trident
18    will give this information.
19        Q.    If you look at the second page
20    of this document, bearing Bates No.
21    AVP0000047, do you see your signature on
22    that page?
23        A.    Yes.  I've looked there already.
24        Q.    And do you remember signing this
25    document on or about May 26th of 2016?
```

Page 71

1	SHCHEGLYAEV
2	eight minutes past 6:00 p.m., as
3	indicated on the video screen.  Thank
4	you.
5	        (Recess)
6	        THE VIDEOGRAPHER:  This is the
7	beginning of Media 3, Volume I, in the
8	video deposition of Mr. Alexander
9	Shcheglyaev.  We're back on the record
10	at 6:23 p.m., as indicated on the
11	video screen.
12	BY MR. SMITH:
13	    Q.    Mr. Shcheglyaev, I just wanted
14	to make sure that I understood correctly
15	something you said before the break.
16	        You said at one point that
17	"Everything is possible, except for the
18	dates.  I do not recognize these dates."
19	        Looking back at the exhibit we
20	were looking at before the break, what did
21	you mean by that statement?
22	    A.    I meant that it says here that,
23	in spring of 2006, Vyulkova approached me,
24	and she was represented -- representing
25	Mr. Leontiev with a proposal to register

1      SHCHEGLYAEV
2  in my name a number of companies with
3  jurisdiction in Cyprus, while, in spring
4  2006, I did not know either Vyulkova nor
5  Zheleznyak and no one from group of
6  companies Life.
7        And to confirm my words, we can
8  see that the company Ambika could not have
9  been reregistered in my name earlier than
10 August 2015, possibly end of July 2015,
11 but not earlier.
12       What follows from this is that
13 there is some mistake in dates, because it
14 looks at least strange that, following
15 from this document, Vyulkova approached me
16 in spring 2006, and the company was
17 reregistered in the summer of 2015,
18 therefore, nine years later.
19    Q.    So just to make sure I
20 understand, your disagreement with the
21 statement is the date; is that right?
22       MR. KING:  Objection to form.
23    A.    Yes.  That's correct.  I don't
24 know how these dates came to be here.
25    Q.    Okay.

```
                                                       Page 74
 1                    SHCHEGLYAEV
 2              (Shcheglyaev Exhibit 7, Bates
 3         AVP0001095, was hereby marked for
 4         identification, as of this date.)
 5         Q.    I've just had marked as
 6    Shcheglyaev Exhibit 7 a document bearing
 7    Bates No. AVP0001095 through 102.
 8              Looking at this document, can
 9    you verify that your signature appears on
10    this document?
11         A.    Yes.
12         Q.    Do you remember signing this
13    document on or about the 7th of June 2016?
14         A.    Yes.  It's possible.  I cannot
15    say exactly.
16         Q.    When you say you can't say
17    exactly, do you mean you can't say exactly
18    which date you signed it?
19         A.    No, I can't.
20         Q.    I ask you to review the document
21    and tell us whether there are any
22    statements in this document that you
23    disagree with.
24              MR. KING:  Objection to form.
25         A.    Of course.
```

Page 75

1              SHCHEGLYAEV
2      Q.    Which one?
3      A.    "The 30th of August, 2007, in my
4  name, a company called Vermenda Holdings
5  was registered."
6            It could not have been
7  registered in my name on the 30th of
8  August 2007, because it could have only
9  been registered in my name after the
10 August of 2015.  And I think that the
11 registrar can confirm this.
12     Q.    Other than the date in this
13 document, is there anything else with
14 which you disagree?
15           MR. KING:  Objection to form.
16     A.    (Witness perusing document.)
17           Yes.
18     Q.    Please explain.
19     A.    Point 2:  "As far as I know,
20 regular cash flows were made between
21 Ambika Investment Limited and Vermenda
22 Holdings Limited."  I was not aware of
23 this.
24     Q.    Anything else?
25     A.    Yes.  I also have doubts about

```
 1
 2                    CERTIFICATION
 3
 4      I, SHARON LENGEL, a Notary Public for
 5   and within the State of New York, do
 6   hereby certify:
 7      That the witness whose testimony as
 8   herein set forth, was duly sworn by me;
 9   and that the within transcript is a true
10   record of the testimony given by said
11   witness.
12      I further certify that I am not
13   related to any of the parties to this
14   action by blood or marriage, and that I am
15   in no way interested in the outcome of
16   this matter.
17      IN WITNESS WHEREOF, I have hereunto
18   set my hand this 17th day of January,
19   2017.
20        [Signature: Sharon Lengel]
21   _____
22   SHARON LENGEL, RPR, CRR
23              *    *    *
24
25
```